UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------- x
NML CAPITAL, LTD.,                         :
                                           :    08 Civ. 6978 (TPG)
                        Plaintiff,         :    09 Civ. 1707 (TPG)
                                           :    09 Civ. 1708 (TPG)
            v.                             :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
-------------------------------------------------- x
                                           :
AURELIUS CAPITAL MASTER, LTD. and          :
ACP MASTER, LTD.,                          :    09 Civ. 8757 (TPG)
                                           :    09 Civ. 10620 (TPG)
                        Plaintiffs,        :
                                           :
            v.                             :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
                                           :
-------------------------------------------------- x
                                           :
AURELIUS OPPORTUNITIES FUND II, LLC        :
and AURELIUS CAPITAL MASTER, LTD.,         :    10 Civ. 1602 (TPG)
                                           :    10 Civ. 3507 (TPG)
                        Plaintiffs,        :
                                           :
            v.                             :
                                           :
THE REPUBLIC OF ARGENTINA,                 :
                                           :
                        Defendant.         :
                                           :    **(captions continued on next page)**
-------------------------------------------------- x
```

## PLAINTIFFS' OPPOSITION TO CITIBANK, N.A.'S MOTION FOR "CLARIFICATION OR MODIFICATION"

```
-------------------------------------------------- x
AURELIUS CAPITAL MASTER, LTD. and        :
AURELIUS OPPORTUNITIES FUND II, LLC,     :        10 Civ. 3970 (TPG)
                                         :        10 Civ. 8339 (TPG)
                        Plaintiffs,      :
                                         :
              v.                         :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                        Defendant.       :
-------------------------------------------------- x
BLUE ANGEL CAPITAL I LLC,                :
                                         :
                        Plaintiff,       :        10 Civ. 4101 (TPG)
                                         :        10 Civ. 4782 (TPG)
              v.                         :
                                         :
THE REPUBLIC OF ARGENTINA,               :
                                         :
                        Defendant.       :
-------------------------------------------------- x
```

2958793.1

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 6

I.      THE AMENDED FEBRUARY 23 ORDERS ARE CLEAR AND
UNAMBIGUOUS, AND CITIBANK HAS NO NEED FOR ANY
"CLARIFICATION" .......................................................................................... 6

II.     CITIBANK LACKS STANDING TO SEEK A MODIFICATION OF
THE AMENDED FEBRUARY 23 ORDERS AND IN ALL EVENTS
COULD NOT MEET THE STANDARD FOR MODIFICATION
UNDER RULE 60(B) ......................................................................................... 8

III.    CITIBANK IMPROPERLY SEEKS ADVANCE PERMISSION TO
PARTICIPATE IN A VIOLATION OF THE AMENDED
FEBRUARY 23 ORDERS ................................................................................ 10

        A.    This Court Unquestionably Has Jurisdiction Over Citibank If It
Participates in a Violation of the Amended February 23 Orders,
No Matter Where That Participation Occurs ........................................... 10

        B.    The "Separate Entity" Rule Does Not Excuse Citibank From
Complying with the Amended February 23 Orders ................................. 12

                1.    New York Law Does Not Govern the Applicability
of a Federal Injunction ............................................................... 12

                2.    Federal Law Does Not Recognize the "Separate Entity" Rule ..... 13

                3.    The "Separate Entity" Rule Applies Only to
Attachment and Execution ........................................................... 14

        C.    The "Act of State" Doctrine Does Not Excuse Citibank from
Complying with the Amended February 23 Orders ................................. 16

        D.    The "Foreign Sovereign Compulsion" Doctrine Does Not
Permit Citibank to Aid and Abet Violations of the
Amended February 23 Orders .................................................................. 19

                1.    The "Foreign Sovereign Compulsion" Doctrine Does Not
Abrogate Rule 65(d)(2) ............................................................... 19

                2.    Citibank Has Not Made a Showing of Compulsion ....................... 20

CONCLUSION ...................................................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*,
 154 F.3d 1345 (Fed. Cir. 1998)....................................................................................12

*Alfred Dunhill of London, Inc. v. Republic of Cuba*,
 425 U.S. 682 (1974)......................................................................................................18

*Allied Bank Int'l v. Banco Credito Agricola de Cartago*,
 757 F.2d 516 (2d Cir. 1985)....................................................................................17, 18

*Aurelius Capital Partners, LP v. Republic of Argentina*,
 No. 07 Civ. 2715, 2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) ...............................5, 15

*Ayyash v. Koleilat*,
 38 Misc.3d 916 (Sup. Ct. N.Y. Cty. 2012) ..................................................................15

*Baker's Aid v. Hussmann Foodservice Co.*,
 830 F.2d 13 (2d Cir. 1987)...........................................................................................12

*Banco Nacional de Cuba v. Sabbatino*,
 376 U.S. 398 (1964)......................................................................................................16

*CE Int'l Res. Holdings, LLC v. S.A. Minerals P'Ship*,
 No. 12-CV-08087, 2013 WL 2661037 (S.D.N.Y. Jun. 12, 2013) ...............................15

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
 645 F.3d 114 (2d Cir. 2011)..........................................................................................10

*Cronan v. Schilling*,
 100 N.Y.S.2d 474 (Sup. Ct. N.Y. Cty. 1950) ..........................................................15, 16

*Dat Bergenske Dampskibsselskab v. Sabre Shipping Corp.*,
 341 F.2d 50 (2d Cir. 1965)............................................................................................16

*Dunlop v. Pan American World Airways*,
 672 F.2d 1044 (2d Cir. 1982)..........................................................................................8

*EM Ltd. v. Republic of Argentina*,
 865 F. Supp. 2d 415 (S.D.N.Y. 2012)..............................................................................5

*Fidelity Partners, Inc. v. Philippine Export & Foreign Loan Guarantee Corp.*,
 921 F. Supp. 1113 (S.D.N.Y. 1996)..............................................................................15

*Grace v. Bank Leumi Tr. Co. of N.Y.*,
 443 F.3d 180 (2d Cir. 2006)............................................................................................8

*Gucci America, Inc. v. Weixing Li*,
    10 Civ. 4974, 2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011) ....................................................5

*John Wiley & Sons, Inc. v. Kirtsaeng*,
    No. 08 Civ. 7834, 2009 WL 3003242 (S.D.N.Y. Sept. 15, 2009) ..........................................13

*Lightwater Corp. Ltd. v. Republic of Argentina*,
    No. 02 Civ. 3804, 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003) .....................................17, 18

*Lok Prakashan, Ltd. v. India Abroad Pubs.*,
    No. 00 Civ. 5852, 2003 WL 1701903 (S.D.N.Y. Mar. 31, 2003),
    *aff'd*, 94 Fed. Appx. 856 (2d Cir. 2004) .....................................................................................9

*In re M.B. Int'l W.W.L.*,
    No. 12 Civ. 4945, 2012 WL 3195761 (S.D.N.Y. Aug. 6, 2012) ..........................................13

*Mobay Chem. Co. v. Hudson Foam Plastics Corp.*,
    277 F. Supp. 413 (S.D.N.Y. 1967) .............................................................................................9

*Motorola Credit Corp. v. Uzan,*,
    561 F.3d 123 (2d Cir. 2009)........................................................................................................9

*N. Mariana Islands v. Millard*,
    287 F.R.D. 204 (S.D.N.Y. 2012) .............................................................................................22

*NML Capital, Ltd. v. Republic of Argentina*,
    699 F.3d 246 (2d Cir. 2012).............................................................................................3, 7, 15

*NML Capital, Ltd. v. Republic of Argentina*,
    727 F.3d 230 (2d Cir. 2013).............................................................................................4, 11, 18

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 03 Civ. 8845, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013) ...............................................22

*Regal Knitwear Co. v. Nat'l Labor Relations Bd.*,
    324 U.S. 9 (1945)......................................................................................................................20

*Rep. of Austria v. Altmann*,
    541 U.S. 677 (2004)..................................................................................................................18

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)..................................................................................................................18

*Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*,
    No. 98-CV-5951, 2012 WL 919664 (S.D.N.Y. Mar. 14, 2012) ............................................13

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*,
    364 U.S. 642 (1961)....................................................................................................................9

*Tire Eng'ng & Dist. L.L.C. v. Bank of China Ltd.*,
   740 F.3d 108 (2d Cir. 2014)..................................................................16, 22

*United Nuclear Corp. v. Gen. Atomic Co.*,
   629 P.2d 231 (N.M. 1980) ............................................................................20

*United States v. Davis*,
   767 F.2d 1025 (2d Cir. 1985)........................................................................11

*United States v. First Nat'l City Bank*,
   379 U.S. 378 (1965)......................................................................................13

*United States v. Swift & Co.*,
   286 U.S. 106 (1932)........................................................................................9

*United States v. Watchmakers of Switzerland Info. Ctr., Inc.*,
   1963 Trade Cases (CCH) 70,600,
   1962 U.S. Dist. LEXIS 5816 (S.D.N.Y. 1962) ............................................20

*In re Vitamin C Antitrust Litig.*,
   584 F. Supp. 2d 546 (E.D.N.Y. 2008) ..........................................................20

## Federal Rules of Civil Procedure

Fed.R.Civ.P. 60.................................................................................................8, 9

Fed.R.Civ.P. 64...............................................................................................12, 13

Fed.R.Civ.P. 65............................................................................................. *passim*

Fed.R.Civ.P. 69...............................................................................................12, 13

## Statutes

12 U.S.C. § 633.....................................................................................................16

N.Y. Banking Law § 138(1) .................................................................................16

N.Y. Uniform Comm. Code §§ 4-A-105, 5-116(b), 8-112(c) .............................16

2958793.1

Plaintiffs NML Capital, Ltd. ("NML"); and Aurelius Capital Master, Ltd., Aurelius Opportunities Fund II, LLC, ACP Master, Ltd., and Blue Angel Capital I LLC (collectively, the "Aurelius Plaintiffs," and together with NML, "Plaintiffs"); through their undersigned counsel, respectfully submit this Memorandum of Law in opposition to the motion by Citibank, N.A. to clarify or modify the Amended February 23, 2012 Orders (the "Amended February 23 Orders").

## PRELIMINARY STATEMENT

By this motion, Citibank, N.A. ("Citibank") is requesting advance permission to aid and abet a violation by the Republic of Argentina (the "Republic") of this Court's Amended February 23 Orders in respect of certain so-called Argentine Law Bonds. The Amended February 23 Orders prohibit the Republic from making payments on any Exchange Bonds without making a Ratable Payment in advance or concurrently to Plaintiffs. Citibank expressly concedes that the bonds that are the subject of this motion are Exchange Bonds as defined in the Amended February 23 Orders. And yet, Citibank argues that the Amended February 23 Orders should not apply to these bonds, and that Citibank should be permitted to facilitate the Republic's violation of the Orders, because these bonds are governed by Argentine law and paid in Argentina.

Although Citibank styles its motion as one for "clarification or modification," there is in actuality nothing to clarify because the bonds at issue are plainly subject to the Amended February 23 Orders. What Citibank really seeks is a *modification* that would – after almost three years of litigation and an appeal to the Supreme Court – change the basic terms of the Orders. Specifically, Citibank would have this Court modify the definition of Exchange Bonds to exclude the bonds where its Argentina branch has a role in the process of paying Exchange Bondholders. Citibank's motion is patently improper. A non-party like Citibank does

not have standing to seek a modification of a permanent injunction, and, in any event, the standards for granting modification, even if the Republic were to seek it, cannot be met here.[1]

In addition to being improper, Citibank's motion seeks relief that would be inequitable. If the Republic in fact *is* going to violate the injunctions issued by the Court, and make payments on these Exchange Bonds without making a Ratable Payment to Plaintiffs, this Court should not be burdened with requests from any institutions that plan to facilitate or enable the Republic's evasion. It is at least worth noting that shortly after the Republic announced through its President and Economy Minister that it had a plan to exchange the Exchange Bonds for new bonds payable in Argentina, Citibank filed this motion asking the Court to give it permission to facilitate payments on bonds payable in Argentina. (Citibank filed a similar motion in May 2013, just a few months before the Republic announced a similar evasion plan.)

None of Citibank's arguments remotely justifies relief. New York's "separate entity" rule, for example, is relevant only to attachment and execution, and in any event *state* law does not determine the scope of a *federal* injunction. The "act of state" doctrine does not apply because the Republic – in refusing to make Ratable Payments to Plaintiffs – would neither be acting within its own borders nor acting in its sovereign capacity. The "foreign sovereign compulsion" doctrine has no bearing when the foreign sovereign is the *defendant* that is allegedly compelling others to help it violate a court order, and Citibank provides no evidence that it would actually face sanctions in Argentina.

---

[1] When Citibank originally filed its motion in May 2013, the motion was styled simply as one "for clarification." Now, apparently recognizing that the Amended February 23 Orders are clear and unambiguous in including all Exchange Bonds, including Argentine law Exchange Bonds within their scope, Citibank now says it is seeking "clarification or modification."

Were the Court to grant Citibank's motion, Citibank may have created what the Republic believes is a roadmap for evading and undermining the jurisdiction of this Court – that is, simply channel payments for Exchange Bondholders through Argentine entities or branches of U.S. entities located in Argentina.  Such was plainly not this Court's intent, nor is it remotely consistent with the Orders of this Court that have been fully affirmed.  The Republic is unquestionably subject to the jurisdiction of this Court, and if the Republic makes payments in violation of the Amended February 23 Orders, any entity that participates in the payment process and thereby facilitates or enables the Republic's violation – including Citibank – is itself in violation of the orders of this Court.

## BACKGROUND

As the Court is well aware, the Amended February 23 Orders have now, after more than two-and-a-half years of litigation, been affirmed on appeal, and all stays have expired.

This Court first entered summary judgment on Plaintiffs' claims under the *pari passu* clause in December 2011.  On February 23, 2012, the Court entered the original orders requiring the Republic to make a Ratable Payment to Plaintiffs whenever it made a payment on the Exchange Bonds (the "February 23 Orders").  The Republic appealed the February 23 Orders, and in a decision dated October 26, 2012, the Second Circuit affirmed.  The Second Circuit stated that the orders do not "attach, arrest, or execute upon any property," they simply "direct Argentina to comply with its contractual obligations not to alter the rank of its payment obligations."  *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012).

The Second Circuit remanded for the limited purpose of clarifying two narrow aspects of the original orders:  (1) the payment formula governing how much the Republic must pay Plaintiffs if it pays on the Exchange Bonds, and (2) which third parties the Orders bind.  *Id.* at 265.  On remand, this Court clarified the two issues identified by the Second Circuit, and

issued the Amended February 23 Orders.  The Republic again appealed, and in a decision dated

August 23, 2013 the Second Circuit again affirmed.  *See NML Capital, Ltd. v. Republic of*

*Argentina*, 727 F.3d 230 (2d Cir. 2013).  The Republic filed a petition for a writ of *certiorari*,

which the Supreme Court denied by order dated June 16, 2014.  The stay of the Amended

February 23 Orders entered by the Second Circuit has expired, and the Orders are now in full

force and effect.

        The original February 23 Orders and the Amended February 23 Orders both used

the exact same language to define "Exchange Bonds" as:

> bonds or other obligations issued pursuant to the Republic's 2005
> or 2010 Exchange Offers, or any subsequent exchange of or
> substitution for the 2005 and 2010 Exchange Offers that may occur
> in the future

(February 23 Orders, ¶ 2.a.; Amended February 23 Orders, ¶ 2.a.)  As Citibank concedes, the

bonds at issue in the present motion were issued pursuant to the Republic's 2005 and 2010

Exchange Offers, and thus, are Exchange Bonds.  (Memorandum of Law in Support of Citibank,

N.A.'s Renewed Motion by Order to Show Cause for Clarification or Modification ("Citi Mem."

at 1, 4).)  At no point in these proceedings did the Republic or any of the Exchange Bondholders

argue that these bonds should not be included within the scope of the Court's injunction.

        While Citibank attempts to portray itself as an innocent bystander to the litigation

between Plaintiffs and the Republic, it in fact has a long history of aligning itself with the

Republic and cooperating with the Republic to frustrate Plaintiffs' collection efforts.  The

Republic has maintained accounts with Citibank containing hundreds of millions of dollars in

assets and engages in other transactions with Citibank; Citibank acted as one of the deal

managers for the 2010 Exchange Offer; and ███████████████████████████████

███████████████████████████████████.  *See, e.g.*, Declaration of Charles E. Enloe

("Enloe Decl.") Exs. A-C; *Aurelius Capital Partners, LP v. Republic of Argentina*, 07 Civ. 2715, 2010 WL 768874, at *1 (S.D.N.Y. Mar. 5, 2010) (Griesa, J.).

Throughout this litigation, Citibank has acted in lockstep with the Republic to strenuously resist Plaintiffs' attempts to seek discovery concerning the Republic's assets and transactions, and in so doing has often asserted the Republic's interests (for example, by making sovereign immunity arguments, advocating for Argentina's view of the proper scope of discovery, and most recently seeking a stay from this Court so that it would not have to produce documents located at its Argentine branch concerning transactions with the Republic). (*See, e.g.*, Enloe Decl. Exs. D-E.) And Citibank's counsel (representing Mexico) even filed an *amicus* brief urging the Supreme Court to grant the Republic's petition for a writ of *certiorari*. (Enloe Decl. Ex. F.) Tellingly, Citibank's original motion for "clarification," made more than six months after the Amended February 23 Orders were entered, preceded the announcement by Argentina's President that the Republic would attempt to evade the Orders by exchanging the Exchange Bonds for new Argentine law bonds payable in Argentina – the type of bonds that Citibank says should be exempted from the Orders.

In short, Citibank has made a decision to solicit the Republic's business and to aid and abet the Republic in its litigation efforts. Having made that decision, Citibank cannot now complain about being subject to an injunction prohibiting it from aiding and abetting any effort by the Republic to violate the Court's orders.

**ARGUMENT**

**I.**

**THE AMENDED FEBRUARY 23 ORDERS ARE CLEAR AND UNAMBIGUOUS, AND CITIBANK HAS NO NEED FOR ANY "CLARIFICATION"**

Citibank claims that it "needs clarity as to whether the November 21 Orders [i.e., the Amended February 23 Orders] apply to the Argentine Law Bonds." (Citi Mem. at 2; Declaration of Karen E. Wagner ("Wagner Decl.") ¶ 8.) But there is no need for any "clarification." Under the clear and unambiguous terms of the Amended February 23 Orders (which have been affirmed by the Second Circuit, with *certiorari* denied by the Supreme Court), the Republic may not make payments on the bonds that are the subject of Citibank's motion, unless it makes Ratable Payments to Plaintiffs. If Citibank assists the Republic in evading the orders by making such payments, it too will be in violation.

The Amended February 23 Orders require the Republic to make a Ratable Payment whenever it makes payment on the *Exchange Bonds*, which are defined as "the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future." The so-called "Argentine Law Bonds" that are the subject of Citibank's motion are certain bonds – some denominated in U.S. dollars, some denominated in Argentine pesos – that are governed by Argentine law and "were issued by the Republic of Argentina in 2005 and 2010." (Citi Mem. at 2.) In other words, the so-called Argentine Law Bonds were issued in the 2005 and 2010 Exchange Offers, and are thus unquestionably Exchange Bonds as defined by the Amended February 23 Orders. Citibank acknowledges this at page 4 of its memorandum: "The Argentine Law Bonds, which are also Exchange Bonds..." Thus, there can be no doubt that the

Argentine Law Bonds are Exchange Bonds, and are fully subject to the terms of the Amended February 23 Orders issued by this Court and affirmed by the Second Circuit.

Citibank contends that certain peso-denominated bonds are not "External Indebtedness" under the Fiscal Agency Agreement ("FAA"). (Citi Mem. at 6-7.) That question is beside the point. Because the Amended February 23 Orders are applicable to "Exchange Bonds" rather than "External Indebtedness," it is possible that their reach is not exactly congruent with the definition of "External Indebtedness" (they may be broader, narrower, or both). The Second Circuit, of course, has held in this case that "[t]he performance required by a decree need not . . . be identical with that promised in the contract." *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 261 (2d Cir. 2012). The fact that the Amended February 23 Orders may permissibly depart from the exact terms of the FAA does not make them any less unambiguous, and does not necessitate any "clarification." Notably, the Republic itself has never challenged the scope of the definition of Exchange Bonds, not even after it had the benefit of seeing the initial motion for "clarification" Citibank filed in May 2013. The Republic presumably recognized that making the Orders applicable to "Exchange Bonds" rather than "External Indebtedness" benefitted the Republic overall, since "Exchange Bonds" is in many ways a narrower category than "External Indebtedness."

Although Citibank styles its motion as one for "clarification or modification," it is simply a motion for substantive modification. Citibank is asking this Court to modify the Amended February 23 Orders to declare that the Argentine Law Bonds – which are clearly within the definition of Exchange Bonds as those orders are written – are now to be carved out from the definition of Exchange Bonds. Such a modification would leave the Republic free to make payments on those bonds without having to make a Ratable Payment to Plaintiffs. As

7

explained in the next section of this brief, such a request for modification is entirely improper. Citibank, a non-party, has no standing to request a modification that has not been requested by the Republic or any other party.  Even if the Republic itself were to request such a modification, there are multiple reasons why such a request would be improper and should be denied.

## II.

### CITIBANK LACKS STANDING TO SEEK A MODIFICATION OF THE AMENDED FEBRUARY 23 ORDERS AND IN ALL EVENTS COULD NOT MEET THE STANDARD FOR MODIFICATION UNDER RULE 60(B)

A non-party to an action does not have standing to move for modification of a judgment or order in the action, except in very specific circumstances not relevant here.  This basic rule is not changed where the judgment or order in question is an injunction, and the non-party may face liability for aiding and abetting a party that violates that injunction.

In its papers, Citibank does not even mention Federal Rule of Civil Procedure 60(b), which allows only a "party or its legal representative" to seek relief from a final judgment or order.  The Second Circuit has allowed non-parties to bring Rule 60(b) motions only in highly unusual situations in which the parties *agreed* to a judgment that hurt a third party *not* involved in the litigation.  *See Grace v. Bank Leumi Tr. Co. of N.Y.*, 443 F.3d 180, 188 (2d Cir. 2006) (after plaintiffs settled with judgment-proof *pro se* defendant with intent to use settlement to collect from third party, third party could seek to vacate judgment); *Dunlop v. Pan American World Airways*, 672 F.2d 1044, 1051-52 (2d Cir. 1982) (employees could seek amendment of stipulation dismissing Secretary of Labor's claims against employer, when discrimination claims were precluded by stipulation despite Secretary's assurances they would not be).  Citibank's situation, however, is completely different because the parties here have not *agreed* to anything.

Of course, Citibank is prohibited by Rule 65(d)(2) from assisting the Republic in evading or violating the injunction, but that fact does not give it standing:  "[n]either Rule 60(b)

nor Rule 65(d) indicates that the two rules are to be read together or that because one is bound under Rule 65(d) he has a right to bring a motion under Rule 60(b)."  *Mobay Chem. Co. v. Hudson Foam Plastics Corp.*, 277 F. Supp. 413, 417 (S.D.N.Y. 1967).  To the extent Citibank plans to engage in action that would facilitate or enable a violation or evasion by Argentina, there is no rule or principle that allows it to seek an advisory opinion providing advance permission to do so.

Even if Citibank had standing, it could not make the difficult showing required to obtain a modification.  "Rule 60(b) provides a mechanism for extraordinary judicial relief available only if the moving party demonstrates exceptional circumstances."  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 126 (2d Cir. 2009) (citation omitted).  Rule 60(b) does not permit a modification where there has been no change in the law or facts.  *See Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) (court may modify injunction "if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.").  "Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead [a court] to change what was decreed."  *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932); *see also Lok Prakashan, Ltd. v. India Abroad Pubs.*, No. 00 Civ. 5852, 2003 WL 1701903, at *2 (S.D.N.Y. Mar. 31, 2003), *aff'd*, 94 Fed. Appx. 856 (2d Cir. 2004) (refusing to allow use of Rule 60(b) to have "arguments [that] could have been made" previously be "litigated anew.").

Citibank does not demonstrate anything extraordinary, let alone newly arisen.  It merely makes arguments about the breadth of the Court's orders that the Republic itself had ample opportunity to make, but did not make.  As described below, those arguments are completely without merit.

2958793.1

**III.**

**CITIBANK IMPROPERLY SEEKS ADVANCE PERMISSION TO
PARTICIPATE IN A VIOLATION OF THE AMENDED FEBRUARY 23 ORDERS**

Citibank presents an amalgam of arguments – "separate entity rule," "act of state doctrine," "foreign sovereign compulsion doctrine" – that all boil down to one thing:  Citibank wants a ruling from this Court that it will not face contempt or other liability in this Court if it facilitates or enables the Republic's violation of the Amended February 23 Orders through its Argentinian branch.  A request for permission to participate in a violation of this Court's orders is entirely improper.

**A.      This Court Unquestionably Has Jurisdiction Over Citibank If It
Participates in a Violation of the Amended February 23 Orders,
No Matter Where That Participation Occurs**

The principal theme of Citibank's motion – that it should somehow be permitted to violate the Court's orders as long as its activities occur in Argentina – ignores basic jurisdictional principles.  "[A] District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 146 n.30 (2d Cir. 2011) (citation omitted) (collecting cases).  This Court unquestionably has personal jurisdiction over both the Republic (which consented to jurisdiction in the governing bond documents), and Citibank (which has its headquarters and an extensive presence in New York).  Thus, the Amended February 23 Orders prohibit the Republic from taking certain actions *anywhere*, and, under Rule 65(d)(2), prohibit Citibank (which has actual notice of the Orders) from assisting with such actions *anywhere*.

Indeed, the Second Circuit and this Court have already expressly addressed the extraterritorial reach of the Amended February 23 Orders.  In its August 23, 2013 decision, the Second Circuit recognized that the Orders can enjoin payment systems that occur overseas

10

because "federal courts can enjoin conduct that 'has or is intended to have substantial effect within the United States." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 243 (2d Cir. 2013) (citing *United States v. Davis*, 767 F.2d 1025, 1036 (2d Cir. 1985). This Court made the same point at the hearing held on June 18, 2014, at which Citibank's counsel entered an appearance. (*See* Enloe Decl. Ex. G (June 18, 2014 Transcript) at 2:13-14 (noting appearance of Citibank's counsel).) At that hearing, the Court made clear that if the Republic arranged an exchange of the Exchange Bonds for bonds issued under Argentine law and payable in Argentina (which is itself prohibited), the Ratable Payment obligation would apply to any payments on the new bonds. (*See id.* at 3:14-4:1.) Citibank suggests no reason – and there is none – why the same analysis should not apply to original Exchange Bonds that are payable in Argentina. Citibank cannot lawfully facilitate or enable the Republic's violation of this Court's injunctions, whether Citibank is acting in Argentina, the United States, or anywhere else.[2]

---

[2] Citibank also suggests that enforcing Rule 65(d)(2) against it somehow exceeds the Court's equity powers because, in the absence of the Amended February 23 Orders, its conduct would be "lawful" and is "independent" of Argentina's violation. (Citi Mem. at 21.) These very arguments were pressed – at length and without success – to the Second Circuit by other participants in the Exchange Bond payment chains and their *amici*. *See, e.g.*, Brief for Non-Party Appellant The Bank of New York Mellon (2d Cir. Dkt. No. 637), at 21 ("[T]he Injunctions bar BNY Mellon from engaging in purely lawful conduct – the receipt of funds from Argentina and the distribution of those funds to the Exchange Holders"); *id.* at 22 (same); *id.* at 29 (insisting that BNY's processing of payments on exchange bonds "has nothing to do with Plaintiffs"); *see also* Brief for Non-Party Appellant Fintech Advisory Inc. (2d Cir. Dkt. No. 652), at 25; Brief of the American Bankers Association as *Amicus Curiae* (2d Cir. Dkt. No. 683-2), at 13; Brief for Non-Party Intervenors Euro Bondholders (2d Cir. Dkt. No. 702), at 14.

In any event, Citibank elides the fundamental distinction between the enjoined party and non-parties who are prohibited by Rule 65(d)(2) from assisting the enjoined party's violation. As the Second Circuit recognized, "the district court has issued injunctions against no one except Argentina," *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d at 243, so there is no question that the injunctions properly address unlawful conduct. The whole point of Rule 65(d)(2)(C) is that, once a non-party has actual notice that a party has been enjoined, conduct that might otherwise be "lawful" or "independent" is prohibited.

**B.** **The "Separate Entity" Rule Does Not Excuse Citibank**
   **From Complying with the Amended February 23 Orders**

Citibank relies on the "separate entity" rule created by New York law to argue

that "Citibank's presence in New York is irrelevant and that Citibank Argentina must be treated

as an Argentine juridical entity separate from Citibank, N.A. for purposes of the November 21

Orders." (Citi Mem. at 15-17.)  This argument is unavailing for at least three reasons.  First,

state law does not control the scope of a *federal* injunction.  Second, federal law does not impose

anything resembling a "separate entity" rule in the type of situation presented here.  Third, New

York's "separate entity" rule even by its own terms applies only to situations where a party seeks

to attach or execute upon bank accounts; it does not otherwise prohibit a court from issuing an

injunction governing the conduct of a bank's foreign branches.

**1.** **New York Law Does Not Govern the Applicability of a Federal Injunction**

As an initial matter, Citibank does not explain why this Court should even

consider the scope of New York's "separate entity" rule.  "[T]he question of the extent to which

a federal injunction applies to non-parties" – a procedural question – "is governed by Federal

Rule of Civil Procedure 65(d), not by state law." *Additive Controls & Measurement Sys., Inc. v.*

*Flowdata, Inc.*, 154 F.3d 1345, 1355 (Fed. Cir. 1998); *see also Baker's Aid v. Hussmann*

*Foodservice Co.*, 830 F.2d 13, 15 (2d Cir. 1987) ("The question whether a preliminary injunction

should be granted is generally one of federal law even in diversity actions.").  New York's

"separate entity" rule is simply irrelevant.

The federal cases discussing the "separate entity" rule that Citibank cites are

inapposite because they involved applications for prejudgment attachment or postjudgment

execution.  The "separate entity" rule was potentially relevant because the Federal Rules of Civil

Procedure applicable to those remedies – Rules 64 and 69 – expressly incorporate state law.  *See,*

*e.g.*, *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3003242, at *2 (S.D.N.Y. Sept. 15, 2009) ("[P]ursuant to Fed.R.Civ.P. 64, the remedy of *attachment* . . . is governed by state law."); *Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*, No. 98-CV-5951, 2012 WL 919664, at *2 (S.D.N.Y. Mar. 14, 2012) ("Under Fed.R.Civ.P. 69(a), a federal district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the district court sits.").  In contrast, "Rule 65, which governs injunctions, does not incorporate state-law standards for granting relief." *In re M.B. Int'l W.W.L.*, No. 12 Civ. 4945, 2012 WL 3195761, at *9 (S.D.N.Y. Aug. 6, 2012).

Accordingly, Citibank cannot use New York's "separate entity" rule – regardless of its scope – to avoid the Court's injunctions.  Whether and to what extent Citibank is bound by those injunctions is a question entirely of federal law.

### 2.     Federal Law Does Not Recognize the "Separate Entity" Rule

As the Supreme Court and this Court have recognized, federal law requires that all of Citibank's branches and components, wherever located, be treated as a single entity.  In *United States v. First Nat'l City Bank*, 379 U.S. 378 (1965), the Supreme Court considered the exact question presented here:  whether the alleged "separateness" of a bank's various branches prevented a U.S. court from enjoining the activities of a foreign branch (in that case, the district court had temporarily enjoined a bank from transferring certain funds held at its branch in Montevideo, Uruguay).  The Supreme Court emphatically answered "no":

> Whether the Montevideo branch is a 'separate entity,' . . . is not germane to the present narrow issue.  It is not a separate entity in the sense that it is insulated from respondent's managerial prerogatives.  Respondent has actual, practical control over its branches; it is organized under a federal statute, 12 U.S.C. s 24, which authorizes it 'To sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons' – as one entity, not branch by branch.  The branch bank's affairs are, therefore, as much within the reach of the in personam order

13

> entered by the District Court as are those of the home office. Once
> personal jurisdiction of a party is obtained, the District Court has
> authority to order it to 'freeze' property under its control, whether
> the property be within or without the United States.

*Id.* at 384.

The same is true here. The Court unquestionably can exercise personal jurisdiction over Citibank, and its orders therefore are binding on all of Citibank's branches worldwide. The Court reached the same conclusion previously when Citibank sought to resist discovery from its Argentine branch: "Since plaintiffs have served a subpoena on Citibank N.A., a New York-based institution, Citibank N.A. is required to produce information within its control, regardless of where the information is physically located." (Enloe Decl. Ex. D at 2 (*citing United States v. First Nat'l City Bank*, 396 F.2d 897, 900 (2d Cir. 1968)). There is no reason for the Court to reach a different decision now – under federal law, all of Citibank's branches (including the branch located in Argentina) are obligated to comply with the Amended February 23 Orders.

### 3.     The "Separate Entity" Rule Applies Only to Attachment and Execution

Even if the Court were to consider New York's "separate entity" rule, that rule by its own terms applies only to *attachment and execution* of bank accounts, and does not restrict the reach of *injunctions*. As a court in this District recently explained:

> The [separate entity] rule has long been applied in New York as a
> qualifier on the court's *attachment power* under New York law in
> the specific context of extraterritorial banking, even where
> personal jurisdiction over a defendant is otherwise obtained vis-a-
> vis a New York branch. By contrast, where the remedy sought is
> an injunction or a subpoena, the "separate entity" rule has not
> barred enforcement; courts have held that only personal
> jurisdiction over the legal entity, the bank and its branches, is
> necessary.

*CE Int'l Res. Holdings, LLC v. S.A. Minerals P'Ship*, No. 12-CV-08087, 2013 WL 2661037, at

*16-17 (S.D.N.Y. Jun. 12, 2013) (citations omitted); *see also Gucci America, Inc. v. Weixing Li*,

10 Civ. 4974, 2011 WL 6156936, at *4 n.6 (S.D.N.Y. Aug. 23, 2011) (holding that "[t]he

"separate entity" rule . . .  applies only for attachment purposes," and that "it is inapposite here,

where Plaintiffs merely seek a preliminary injunction").  As the Second Circuit recognized, the

Amended February 23 Orders do not attach or execute upon any property, *NML Capital, Ltd. v.*

*Republic of Argentina*, 699 F.3d 246, 262 (2d Cir. 2012), and thus the "separate entity" rule and

the prior rulings of this Court concerning attempted attachment efforts by Plaintiffs are

irrelevant.  *See EM Ltd. v. Republic of Argentina*, 865 F. Supp. 2d 415 (S.D.N.Y. 2012) (denying

attachment order); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715,

2010 WL 768874 (S.D.N.Y. Mar. 5, 2010) (denying attachment and execution orders).

   Citibank does not cite a single case applying the separate entity rule to injunctions

such as the Amended February 23 Orders,[3] and many of the cases it cites explicitly recognize the

limited scope of the "separate entity" rule.  *See, e.g.*, *Fidelity Partners, Inc. v. Philippine Export*

*& Foreign Loan Guarantee Corp.*, 921 F. Supp. 1113, 1119 (S.D.N.Y. 1996) ("[T]he Court

agrees that the New York branch and the Manila office should be viewed as separate entities *for*

_____

  [3] Two of the cases cited by Citibank applied the single entity rule to bar
enforcement of subpoenas seeking certain documents held at foreign bank branches.  *See Ayyash
v. Koleilat*, 38 Misc.3d 916 (Sup. Ct. N.Y. Cty. 2012); *Cronan v. Schilling*, 100 N.Y.S.2d 474
(Sup. Ct. N.Y. Cty. 1950).  Although these decisions extended the rule beyond its usual context
of attachment and execution, the courts were apparently concerned that attachment or execution
were the plaintiffs' ultimate goals.  *See Ayyash*, 38 Misc.3d at 926 (subpoenas were "but the first
step in the proceeding, with the ultimate goal of subsequent attachment and turn-over"); *Cronan*,
100 N.Y.S.2d at 476-77 (repeatedly discussing "the doctrine that each branch of a bank is to be
treated as a separate entity *for attachment purposes*.").  This logical leap has been criticized.
*See CE Int'l Res. Holdings*, 2013 WL 2661037, at *17 (criticizing *Ayyash* as "improperly
expand[ing] the application of the "separate entity" rule.")  In any event, these cases about
*subpoenas* do not change the fact that the "separate entity" rule is inapplicable to *injunctions*.

*the purposes of attachment and execution*.") (emphasis added); *Dat Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53 (2d Cir. 1965) ("A review of the New York cases indicates a consistent line of authority holding that accounts in a foreign branch bank *are not subject to attachment or execution* by the process of a New York court served in New York on a main office, branch, or agency of the bank.") (emphasis added).  Similarly, the various purported "codifications" of the "separate entity" rule cited by Citibank have nothing to do with the applicability of injunctive relief.  *See* N.Y. Banking Law § 138(1) (limiting liability of New York banks for contracts to be performed at foreign branches); 12 U.S.C. § 633 (excusing banks from repaying deposits made at foreign branches if payment is prevented by war or by an act of foreign government); N.Y. Uniform Comm. Code §§ 4-A-105, 5-116(b), 8-112(c) (state law provisions discussing funds transfers, letters of credit, and investment securities).

Under the "separate entity" rule, a foreign bank branch "is a not a separate legal entity *generally*, but only for certain limited purposes." *Cronan v. Schilling*, 100 N.Y.S.2d 474, 477 (Sup. Ct. N.Y. Cty. 1950) (cited by Citi Mem. at 13) (emphasis added).  Those purposes are not implicated here.  Thus, even if New York law governed this motion, the "separate entity" rule would not apply.[4]

## C.     The "Act of State" Doctrine Does Not Excuse Citibank from Complying with the Amended February 23 Orders

Citibank argues that the "act of state" doctrine permits the Republic to make payments on Exchange Bonds in Argentina, and thus Citibank should be permitted to aid and abet the Republic if it makes those payments without a Ratable Payment to Plaintiffs in violation

---

[4] Indeed, it is unclear whether the "separate entity" rule remains viable even in the context of postjudgment enforcement efforts.  *See Tire Eng'ng & Dist. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108 (2d Cir. 2014) (certifying questions to the New York Court of Appeals about the rule's continuing vitality in that context).

16

of the Amended February 23 Orders.  (*See* Citi Mem. at 17-18.)  This Court has already rejected the Republic's attempt to invoke the "act of state" doctrine to avoid its obligations to defaulted bondholders, *Lightwater Corp. Ltd. v. Republic of Argentina*, No. 02 Civ. 3804, 2003 WL 1878420, at *5 (S.D.N.Y. Apr. 14, 2003) (Griesa, J.), and it should not countenance Citibank's attempt to re-litigate the issue.  Not only is the argument untimely, but it has no merit.

At most, the "act of state" doctrine applies to the "taking of property within its own territory by a foreign sovereign."  *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 428 (1964).  The doctrine does not, however, "preclude judicial resolution of all commercial consequences that result from acts of foreign sovereigns within their own borders."  *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 521 (2d Cir. 1985) (citation omitted).  Where the sovereign has an obligation to perform outside its own borders, conduct taken within its territory that may have consequences with respect to those obligations is not protected by the doctrine.  So, for example, the Republic previously argued that its decision to default on its obligations to bondholders was covered by the doctrine because the decision was made in Argentina.  This Court properly rejected the argument, which even the Republic recognized was at odds with the Second Circuit's decision in *Allied*, because notwithstanding where the decision to default was made, it violated the Republic's duty to its bondholders outside of Argentina. *See Lightwater*, 2003 WL 1878420, at *5.

Here too Citibank's contention that the "payment of the [Argentine law] debt occurs solely within [Argentina's] borders" (Citi Mem. at 8) misses the mark, because it ignores the fact that the Republic is legally barred from making such payment unless it also makes a Ratable Payment to Plaintiffs.  Making the payment on the Argentine law bonds without a Ratable Payment has consequences outside of Argentina that are not protected by the "act of

17

state" doctrine.  The Republic's failure to meet its obligations to Plaintiffs, just like the failures

to pay debts at issue in *Allied Bank* and *Lightwater*, occurs within the United States.

       The "act of state" doctrine is also inapplicable because the Republic, in making

payments on the Exchange Bonds, would be acting in a *commercial* capacity rather than a

*sovereign* capacity.  In *Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682 (1974),

a four-Justice plurality of the Supreme Court held that the act of state doctrine does not extend to

"acts committed by foreign sovereigns in the course of their purely commercial operations."  *Id.*

at 706.  The plurality's recognition of this exception was based, among other things, on the fact

that adjudicating the legality of a commercial act was not likely to embarrass the Executive

Branch in its conduct of foreign relations, and on the long-standing commercial exception to

foreign sovereign immunity.  *Id.* at 695-706.  A majority of the Supreme Court, moreover, has

subsequently indicated in *dicta* that the "act of state" doctrine pertains only to "acts *jure*

*imperii*."  *Rep. of Austria v. Altmann*, 541 U.S. 677, 700 (2004).  Given that commercial acts are

understood to be acts "*jure gestionis*" rather than acts "*jure imperii*," *see Saudi Arabia v. Nelson*,

507 U.S. 349, 360 (1993), it is likely that the Supreme Court would affirm the existence of a

"commercial activity" exception to the "act of state" doctrine.  And because the Republic's

actions in making payments on its bonds would undoubtedly be commercial in nature, the "act of

state" doctrine does not apply.

       At its core, Citibank's argument is that the Republic should be allowed to

countermand the Amended February 23 Orders just because it is a sovereign.  The Republic

already made that argument – threatening during oral argument before the Second Circuit that if

the Amended February 23 Orders were affirmed, it "would not voluntarily obey" them.  *NML*

*Capital, Ltd. v. Republic of* Argentina, 727 F.3d 230, 238 (2d Cir. 2013).  This Court and the

18

Second Circuit have roundly rejected the Republic's threats.  The Republic voluntarily submitted to the jurisdiction of U.S. courts and must comply with their Orders; so too must those who act in concert or participation with the Republic.

**D.     The "Foreign Sovereign Compulsion" Doctrine Does Not Permit
Citibank to Aid and Abet Violations of the Amended February 23 Orders**

Citibank also cannot rely on the "foreign sovereign compulsion" doctrine, which in some instances excuses violations of U.S. law when those violations were compelled by a foreign sovereign.  (*See* Citi Mem. 19-20.)  The doctrine is completely inapplicable when the foreign sovereign at issue is the *defendant* in the lawsuit, and the "compelled" violations are attempts to facilitate or enable the defendant's violation of an injunction.  And in any event, Citibank does not sufficiently demonstrate that the Republic will compel it to do anything.

**1.     The "Foreign Sovereign Compulsion" Doctrine
Does Not Abrogate Rule 65(d)(2)**

Citibank asserts that if called to account for aiding and abetting the Republic's violations of the Amended February 23 Orders, it would argue "the defendant made me do it," and that it therefore should be permitted in advance to aid and abet those violations notwithstanding Rule 65(d)(2), which prohibits those in active concert or participation with the Republic from helping it violate the Orders.  This interpretation of the "foreign sovereign compulsion" doctrine is unprecedented and would turn Rule 65(d)(2) on its head.

The "foreign sovereign compulsion" doctrine normally arises in situations – typically antitrust cases – in which the defendant claims that its allegedly illegal conduct was compelled by a foreign sovereign that is not a party and did not consent to the jurisdiction of the U.S. courts.  The situation here could not be more different.  The foreign sovereign has consented to the jurisdiction of the U.S. courts and is the *defendant,* but is nonetheless purportedly compelling others to help it violate orders issued against it by U.S. courts.  Citibank

19

cites no authority for the proposition that the Republic, having consented to this Court's jurisdiction, should be allowed to vitiate the Amended February 23 Orders by threat of sanctions against those who refuse to help it violate the Orders.  To permit the Republic to do so would run completely counter to the goals of Rule 65(d)(2).  As the Supreme Court has explained, the "essence" of that rule "is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."  *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 14 (1945).  This Court has worked hard to protect its jurisdiction and close off potential avenues of evasion of its Orders, and it should not allow Citibank and the Republic to open a giant loophole at this late stage because the Republic allegedly threatens those who will not help it violate the Orders.

### 2.     Citibank Has Not Made a Showing of Compulsion

Even if the Court were to consider the "foreign sovereign compulsion" doctrine, Citibank's conclusory, self-serving and speculative assertions that it might face sanctions are not sufficient.  *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 584 F. Supp. 2d 546, 559 (E.D.N.Y. 2008) (cited by Citi Mem. at 19) (allegations of compulsion "too ambiguous"); *United Nuclear Corp. v. Gen. Atomic Co.*, 629 P.2d 231, 261-62 (N.M. 1980) (refusing to apply doctrine in the face of conflicting evidence as to whether foreign government compelled defendants to join cartel).  There is no evidence that the Republic has or would actually force Citibank to help it violate the Amended February 23 Orders.

*First*, Citibank contends that if it has to comply with the Amended February 23 Orders, its *customers* may transfer their bonds to another bank.  (Citi Mem. at 8.)  But a fear that it will lose business has nothing to do with *governmental* compulsion.  *See United States v. Watchmakers of Switzerland Info. Ctr., Inc.,* 1963 Trade Cases (CCH) 70,600, 1962 U.S. Dist.

2958793.1

LEXIS 5816, at *153 (S.D.N.Y. 1962) (cited by Citi Mem. at 19) (rejecting "foreign sovereign compulsion" defense, and holding that "arguments of business necessity" were not sufficient).

       *Second*, Citibank asserts that its customers could bring breach of contract actions or seek injunctions from Argentine courts.  (Citi Mem. at 8.)  Notably, however, Citibank failed to submit any of the relevant contracts with its motion.  ███████████████████

████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████

████████████████████

       *Third,* Citibank asserts that it could be exposed to criminal penalties or regulatory sanctions if it did not help the Republic violate the Amended February 23 Orders.  (Citi Mem. at 7.)  None of the materials submitted with Citibank's motion demonstrate that the Republic would in fact impose such sanctions.  At most, the materials speculate about potential enforcement, without any evidence that the laws or regulations have ever been or would ever be enforced in such manner.  Indeed, were the Republic to penalize banks for complying with U.S. court orders, every international financial institution with a presence in the United States – *i.e.*, all of the world's major banks – would have to seriously consider whether it wanted to continue to do

business in and with Argentina.  There is no evidence that the Republic has done or would do any such thing.

This is not the first time that Citibank has tried to hide behind Argentine law to avoid its legal obligations.  Citibank previously argued that it should be relieved of its obligations to comply with a subpoena issued out of this Court because it would supposedly face liability under various Argentine statutes.  (*See* Enloe Decl. Ex. D.)  This Court overruled Citibank's objections, dismissing as not "credible Citibank's assertions that disclosure would subject it to severe sanctions under Argentine law."  *Id.* at 4; *see also NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845, 2013 WL 491522, at *11 (S.D.N.Y. Feb. 8, 2013) (likelihood of prosecution is "slight and speculative" where no cited instances in which sanctions were ever imposed) (citation omitted).  Citibank's assertions of severe sanctions are no more credible now, and the Court should reject them.

Finally, it is worth nothing that to the extent Citibank would face consequences in Argentina for complying with this Court's orders, it has only itself to blame.  Citibank – an American institution – has voluntarily chosen to do business in Argentina, and "it is hardly uncommon that a large corporation, by doing business in many jurisdictions, subjects itself to potentially conflicting laws."  *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 n.75 (S.D.N.Y. 2012); *see also Tire Eng'g & Dist. L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 117 (2d Cir. 2014) ("[C]ourts in New York have suggested that the risk of double liability is assumed as part of the business of a bank.") (citation omitted).  Citibank has chosen not only to do business in Argentina, but to work in close partnership with the Republic.  It cannot ask to be relieved of the consequences of its own choices at the expense of Plaintiffs and the enforcement of this Court's fully affirmed Amended February 23 Orders.

2958793.1

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that Citibank's motion should be denied in its entirety.

Dated: New York, New York
       June 26, 2014

*Edward A. Friedman*

Edward A. Friedman (efriedman@fklaw.com)
Daniel B. Rapport (drapport@fklaw.com)
Charles E. Enloe (cenloe@fklaw.com)
FRIEDMAN KAPLAN SEILER
   & ADELMAN LLP
7 Times Square
New York, New York 10036-6516
(212) 833-1100

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd.,*
*Aurelius Opportunities Fund II, LLC, ACP Master,*
*Ltd., Blue Angel Capital I LLC*

Kevin S. Reed
(kevinreed@quinnemanuel.com)
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000

*Attorneys for Plaintiff NML Capital, Ltd.*

23