UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

NML CAPITAL, LTD.,                                          08 Civ. 6978 (TPG)
                                                           09 Civ. 1707 (TPG)
                               Plaintiff,                  09 Civ. 1708 (TPG)

        v.

THE REPUBLIC OF ARGENTINA,

                               Defendant.
-------------------------------------------------------x

-------------------------------------------------------x
AURELIUS CAPITAL MASTER, LTD. and                          09 Civ. 8757 (TPG)
ACP MASTER, LTD.,                                          09 Civ. 10620 (TPG)

                               Plaintiffs,

        v.

THE REPUBLIC OF ARGENTINA,

                               Defendant.
-------------------------------------------------------x  *(captions continue on following pages)*

**PLAINTIFFS' OPPOSITION TO THE EURO BONDHOLDERS'
EMERGENCY MOTION FOR CLARIFICATION**

```
-------------------------------------------------------x
```

AURELIUS OPPORTUNITIES FUND II,        10 Civ. 1602 (TPG)
LLC and AURELIUS CAPITAL MASTER,    10 Civ. 3507 (TPG)
LTD.,

             Plaintiffs,

     v.

THE REPUBLIC OF ARGENTINA,

             Defendant.
```
-------------------------------------------------------x
```

```
-------------------------------------------------------x
```

AURELIUS CAPITAL MASTER, LTD. and    10 Civ. 3970 (TPG)
AURELIUS OPPORTUNITIES FUND II,       10 Civ. 8339 (TPG)
LLC,

             Plaintiffs,

     v.

THE REPUBLIC OF ARGENTINA,

             Defendant.
```
-------------------------------------------------------x
```

```
-------------------------------------------------------x
```

BLUE ANGEL CAPITAL I LLC,         10 Civ. 4101 (TPG)
                               10 Civ. 4782 (TPG)
            Plaintiff,

     v.

THE REPUBLIC OF ARGENTINA,

              Defendant.
```
-------------------------------------------------------x  (captions continue on following page)
```

```
-------------------------------------------------------x
```

PABLO ALBERTO VARELA, et al.,                    10 Civ. 5338 (TPG)

               Plaintiffs,

      v.

THE REPUBLIC OF ARGENTINA,

               Defendant.

```
-------------------------------------------------------x
```

```
-------------------------------------------------------x
```

OLIFANT FUND, LTD.,                              10 Civ. 9587 (TPG)

               Plaintiff,

      v.

THE REPUBLIC OF ARGENTINA,

               Defendant.

```
-------------------------------------------------------x
```

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 5

ARGUMENT ...................................................................................................................... 10

I.     The Euro Bondholders And Euroclear Seek Modification—Not Clarification—Of The Injunctions, Contrary To The Second Circuit's Ruling............................................. 10

II.    The Euro Bondholders' Requests For Modification Lack Merit. .................................... 12

      A.    Providing Argentina With The Identities Of The Beneficial Interest Holders Of The Exchange Bonds Would Facilitate Evasion And The Injunctions Should Not Be Modified To Permit That. ......................................... 12

      B.    There Is No Basis For Modifying The Injunctions To Permit Euroclear And Clearstream To Process Illegal Payments On The Exchange Bonds............ 15

            1.    The Euro Bondholders Identify No New Circumstances That Conceivably Could Warrant Modification Of The Injunctions To Permit Euroclear and Clearstream To Assist Argentina In Making Illegal Payments................................................................................... 15

            2.    There Is No Need To Resolve The Euro Bondholders' Contention That The Court Lacks Jurisdiction Over Euroclear And Clearstream, Because The Court Is Not Now Asserting Jurisdiction Over Those Entities.................................................................................. 18

            3.    If Euroclear Or Clearstream Assisted Argentina In Processing An Illegal Payment, This Court Clearly Would Have Jurisdiction To Hold Those Entities In Contempt. ........................................................... 22

CONCLUSION.................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,*
126 F. Supp. 2d 328 (S.D.N.Y. 2001) ................................................................. 20

*Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.,*
869 F.2d 34 (2d Cir. 1989) ..................................................................... 24, 25

*ClearOne Comm'cns, Inc. v. Bowers,*
651 F.3d 1200 (10th Cir. 2011) ................................................................. 24

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014) ......................................................................... 18

*Datskow v. Teledyne, Inc., Cont'l Products Div.,*
899 F.2d 1298 (2d Cir. 1990) ................................................................. 23

*DeWeerth v. Baldinger,*
38 F.3d 1266 (2d Cir. 1994) ................................................................. 20

*Donovan v. Sovereign Sec., Ltd.,*
726 F.2d 55 (2d Cir. 1984) ................................................................. 15

*Dunlop v. Pan Am. World Airways, Inc.,*
672 F.2d 1044 (2d Cir. 1982) ................................................................. 15

*Eli Lilly & Co. v. Gottstein,*
617 F.3d 186 (2d Cir. 2010) ..................................................... 2, 5, 24, 25

*Franchise Tax Bd. v. Alcan Aluminium Ltd.,*
493 U.S. 331 (1990) ......................................................................... 22

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
131 S. Ct. 2846 (2011) ................................................................. 18, 23

*Hillside Metro Assocs. LLC v. JPMorgan Chase Bank, Nat'l Ass'n,*
747 F.3d 44 (2d Cir. 2014) ................................................................. 22

*Horne v. Flores,*
557 U.S. 433 (2009) ......................................................................... 15

*Ins. Co. of N. Am. v. ABB Power Generation, Inc.,*
690 N.E.2d 1249 (N.Y. 1997) ................................................................. 19

*Int'l Shoe Co. v. Washington,*
326 U.S. 310 (1945) ......................................................................... 24

*Liverpool, N.Y. & Phila. S.S. Co. v. Comm'rs of Emigration,*
113 U.S. 33 (1885) ......................................................................... 19

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
84 F.3d 560 (2d Cir. 1996) ................................................................. 19

*NML Capital, Ltd. v. Republic of Argentina*,
   03 CIV. 8845 TPG, 2013 WL 491522
   (S.D.N.Y. Feb. 8, 2013) ................................................................................ 21

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012) ......................................................................... 11

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013) ................................................................... passim

*Regal Knitwear Co. v. NLRB*,
   324 U.S. 9 (1945) .......................................................................................... 20

*S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*,
   24 F.3d 427 (2d Cir. 1994) ........................................................................... 19

*SEC v. Homa*,
   514 F.3d 661 (7th Cir. 2008) ........................................................................ 24

*Sys. Fed'n No. 91 v. Wright*,
   364 U.S. 642 (1961) ................................................................................ 15, 16

*The Sennar* (No. 2),
   [1985] 2 All E.R. 104 .................................................................................... 22

*United States v. Swift & Co.*,
   286 U.S. 106 (1932) ...................................................................................... 15

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983) ...................................................................................... 21

*Waffenschmidt v. MacKay*,
   763 F.2d 711 (5th Cir. 1985) ........................................................................ 24

*Warth v. Seldin*,
   422 U.S. 490 (1975) ...................................................................................... 22

**Rules**

Fed. R. Civ. P. 12 ................................................................................................ 22

Fed. R. Civ. P. 59 ................................................................................................ 15

Fed. R. Civ. P. 60 ................................................................................................ 15

Fed. R. Civ. P. 65 ........................................................................................ passim

N.Y.C.P.L.R. § 302 ............................................................................................ 24

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2013) ......... 15

DTCC, Proxy Services ........................................................................................ 14

IMF, Legal Dep't, *The Design & Effectiveness of Collective Action Clauses*
   (June 6, 2002) ............................................................................................... 14

James Wm. Moore *et al.*, *Moore's Federal Practice* (3d ed. 2013) ............................. 24

Republic of Argentina, Prospectus Supplement (Jan. 12, 2005) .................................................. 14

*Restatement (Second) of Contracts* (1981) ............................................................................. 21

*Restatement (Third) of Foreign Relations Law* (1987)............................................................ 21

## INTRODUCTION

During the hearing held on June 27, 2014, this Court denied the Euro Bondholders' request to modify the Equal Treatment Injunctions now in effect ("Injunctions") to permit the Republic of Argentina to make payments on euro-denominated Exchange Bonds.  This Court explained that the Injunctions plainly prohibit Argentina from making payments on those Exchange Bonds—regardless of whether the bonds are paid in "Luxembourg or Denmark" or wherever—unless Argentina also makes a payment on Plaintiffs' bonds.  Undeterred, the Euro Bondholders renew and expand this request, styling their motion as one requesting "clarification":  "that the Injunctions do not apply to foreign third parties that process payments" on euro-denominated Exchange Bonds; and (newly introduced in their "corrected" motion) that DTC, Euroclear, and Clearstream (the "depositories and clearing agencies") may "shar[e] information regarding the identity of the beneficial owners of the Exchange Bonds with Argentina."  Like the Euro Bondholders' request this Court rejected during the June 27 hearing, this motion should be denied.

At the threshold, the motion is not one for "clarification" at all.  The obligations under the Injunctions are unambiguous, and the Euro Bondholders do not contend otherwise.  As the Second Circuit recognized, Argentina may not make payments under the Exchange Bonds— including the euro-denominated Exchange Bonds—unless a Ratable Payment (as defined in the Injunctions) is first or concurrently paid to Plaintiffs.  And the Injunctions specify expressly that, among others, Euroclear, Clearstream, and Bank of New York-Mellon ("BNY-Mellon"), would be in violation of the Court's orders if they act in concert or participation with Argentina in making unlawful payments.  There is no aspect of these requirements in need of any "clarification."

What the Euro Bondholders actually seek is to *modify* the Injunctions after they have been fully affirmed on appeal.  But their grounds for doing so are illegitimate and incorrect.  The premises of the Euro Bondholders' request are (1) that Argentina will continue to violate the Injunctions by making illegal payments and (2) that this Court lacks the authority to hold in contempt foreign third parties that—if the trustee (BNY-Mellon) were to forward the funds— would help Argentina to make payments that this Court has declared illegal.  In the month since the Supreme Court denied Argentina's petition for certiorari on June 16, Argentina has repeatedly violated the Injunctions, first by declaring a plan to evade the Injunctions by changing the Exchange Bonds' payment mechanism, and then by attempting to make a payment on the Exchange Bonds without also paying Plaintiffs.  This behavior only underscores the importance of ensuring that third parties are not allowed to facilitate Argentina's violations of the Injunctions.  What is more, there is no reason to believe that New York-based BNY-Mellon would further Argentina's violations by forwarding funds onto Euroclear or Clearstream, but if it did, this Court has ample authority under the Second Circuit's decision in *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010), to assert specific personal jurisdiction over foreign entities that act in active concert or participation with a violation of an injunction.

Indeed, the Euro Bondholders' proposed modifications to the Injunctions would risk their nullification:  Exempting Euroclear and Clearstream from the Injunctions makes sense only if one believes that Argentina will successfully (and unlawfully) circumvent or replace BNY-Mellon (which has made clear it will not violate this Court's orders) to pay the debt via non-U.S. entities, perhaps in Argentina, as Argentine officials repeatedly have suggested.  And providing Argentina with the identities of the beneficial holders would give Argentina a critical tool that it

now lacks (and has no legitimate need to possess) to aid an attempt to restructure its Exchange Bonds outside the United States.

Beyond that, the Euro Bondholders' belated request is inappropriate for numerous reasons.

*First*, the Second Circuit considered and rejected precisely the arguments the Euro Bondholders now ask this Court to accept.  In the Second Circuit, the Euro Bondholders argued that euro-denominated Exchange Bonds should be excluded from the compass of the Injunctions because they are paid outside of the jurisdiction of the U.S. courts.  Br. for Non-Party Intervenors Euro Bondholders 18-20, 24-25, No. 12-105 (2d Cir. Jan. 4, 2013) (Dkt. 702) ("2d Cir. Brief").  But the Second Circuit rejected those arguments and affirmed the Injunctions in their entirety.  It held that, because Argentina unquestionably is within the Court's jurisdiction, the Injunctions properly could bind its conduct outside of the United States; that Federal Rule of Civil Procedure 65 makes persons who assist in the violation of an injunction potentially liable for contempt; and that "[i]f others in active concert or participation with Argentina are outside the jurisdiction or reach of the district court, they may assert as much if and when they are summoned to that court for having assisted Argentina in violating United States law."  *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 244 (2d Cir. 2013) ("*NML II*").  The Euro Bondholders thus invite this Court to reverse the rulings of this Court and the Second Circuit that the Injunctions properly named those entities involved in the payment of the euro-denominated Exchange Bonds as persons potentially liable under Rule 65.

*Second*, this Court should not authorize the depositories and clearing agencies to reveal to Argentina the identities of the Exchange Bonds' beneficial owners.  Doing so would give Argentina critical information that it could use to attempt to restructure the Exchange Bonds to

evade the Injunctions (as Argentina has publicly expressed on numerous occasion its desire to do).  Moreover, Argentina has no need for this information in order to seek "waivers" from Exchange Bondholders of their rights under the Exchange Bonds' Rights Upon Future Offers ("RUFO") clause.  For many reasons that are beyond the scope of this memorandum, Argentina has no need to seek a waiver of its RUFO clause because a settlement with Plaintiffs, if Argentina were interested in reaching one, would not implicate that clause.  But even if such a waiver were necessary, waivers of this type routinely are sought and obtained through procedures for proxy solicitations that would not require depositories or clearing agencies to give Argentina the list of beneficial owners.  In any event, Argentina has not to this point expressed a willingness to seek a waiver of RUFO, so the Euro Bondholders' new request for relief, in addition to being unnecessary, is wholly academic.

*Third*, though modification of an injunction generally is available only upon a showing of a substantial change in circumstances, the Euro Bondholders show no new circumstances here that possibly could warrant the relief they seek.  Their motion is supported by exactly the same declarations that this Court and the Second Circuit previously considered and found insufficient.  And the only change in applicable law the Euro Bondholders identify—that pertaining to general personal jurisdiction over foreign corporations by virtue of a subsidiary's conduct—has no relevance here.  Moreover, their contention that this Court misapprehended the way that the euro-denominated Exchange Bonds are paid obscures the fact that the New York-based BNY-Mellon—not any European BNY entity—participates in and directs the payment process on the euro-denominated Exchange Bonds.

*Fourth*, the Euro Bondholders' arguments are premature and unnecessary to resolve these jurisdictional issues at this juncture.  With BNY-Mellon committed to obeying this Court's

orders, these euros will remain in BNY-Mellon's bank account at the Argentine Central Bank pending further order of this Court; neither Euroclear nor Clearstream will receive Argentina's funds.  Accordingly, unless Argentina and the Euro Bondholders are hatching a plan to displace BNY-Mellon as the indenture trustee and replace it with an entity outside of the United States, neither Euroclear nor Clearstream faces any serious prospect of processing an illegal Argentine payment such that they risk being cited for contempt before this Court.  Indeed, the Second Circuit made clear that third parties challenging this Court's jurisdiction should do so in the context of contempt proceedings, not before.  And the only reason that the Euro Bondholders present to justify review at this time—that Euroclear and Clearstream could face conflicting obligations—is speculative and illusory.

*Fifth*, the contention that this Court could not hold Euroclear or Clearstream in contempt is flat wrong.  Binding circuit precedent makes clear that this Court would have personal jurisdiction over them if they act in active concert or participation with Argentina's violation of the Injunctions.  *See Eli Lilly*, 617 F.3d at 195.  And at least one court in this district has recently held that Clearstream is—by virtue of its offices in New York—subject to jurisdiction, and there is no reason to doubt that conclusion or to think the result would be different for Euroclear, which also has a representative office in New York.

The Euro Bondholders' motion for "clarification" should be denied.

## BACKGROUND

To remedy Argentina's breach of the Equal Treatment Provision in Plaintiffs' bonds, this Court entered Injunctions against Argentina.  The relevant provision reads:

> Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the

Republic shall concurrently or in advance make a "Ratable Payment" to
[Plaintiffs] . . . .

Injunction ¶ 2(a) (Nov. 21, 2012) (Dkt. 425).[1]

Because of the probability that Argentina would "refuse to comply with the Injunctions"
and attempt "to make the payments on the Exchange Bonds without making the payments to
plaintiffs," this Court explained that "it is necessary that the process for making payment on the
Exchange Bonds be covered by the Injunctions."  Op. at 9 (Nov. 21, 2012) (Dkt. 424).  If the
payment processes were not covered, "the District Court and the Court of Appeals' rulings and
the Injunctions will be entirely for naught."  *Id.*

Accordingly, and in response to the Second Circuit's October 2012 remand, this Court
identified the third parties that facilitate payments on the Exchange Bonds, and indicated that
those entities would likely act in active concert or participation if Argentina made an illegal
payment on the Exchange Bonds.  *See* Injunction ¶ 2(e)-(f).  Among the third parties identified
were the entities responsible for facilitating payments on the euro-denominated Exchange Bonds
owned by the Euro Bondholders:  BNY-Mellon, which acts as the Exchange Bonds' Indenture
Trustee and "trustee paying agent" and accepts and controls payment from Argentina (including
on all of the Euro-denominated bonds at issue in this motion); BNYM Luxembourg, which the
Euro Bondholders claim has been designated by BNY-Mellon as a (nominal) trustee paying
agent; and Euroclear and Clearstream, the operators of clearing systems that accept fund
transfers from one of the BNY entities and then distribute the proceeds to the Exchange
Bondholders' banks.  *See* Injunction ¶ 2(f).

---

[1]   Unless otherwise indicated, all docket entries correspond to No. 08-cv-6978 (S.D.N.Y.).

BNY-Mellon's July 10, 2014 brief and declaration, as well as declarations submitted by the Euro Bondholders and Euroclear, demonstrate precisely how Argentina transfers payments to the euro-denominated Exchange Bonds.  Argentina first transfers funds to BNY-Mellon via an account that BNY-Mellon maintains with the Argentine Central Bank.  *See* Decl. of Christopher J. Clark, Ex. A ¶ 10(1) (June 29, 2014) (Dkt. 544) ("The Republic transfers funds to a Euro deposit account in the name of the Paying Agent [defined in ¶ 7 as BNY-Mellon] at Banco Central de la Republica Argentina."); BNY-Mellon's Br. of Law in Response to Non-Parties Euro Bondholders' Emergency Mot. for Clarification 2 (July 10, 2014) (Dkt. 581) ("BNY-Mellon Br.").  As BNY-Mellon explains, the Euro Bondholders' prior assertion to the contrary was a "misstatement[,] . . . and contrary to the Euro Bondholders' description," the "funds related to the Euro-Denominated Bonds are never deposited into an account in the name of—or owned, operated, or controlled by—BNYM Luxembourg."  BNY-Mellon Br. 1, 3; *see also* Decl. of Evan K. Farber, Ex. C ¶¶ 9-11 (July 10, 2014) (Dkt. 582-1); Decl. of Fabien Debarre ¶ 23(2) (July 9, 2014) (Dkt. 571); Hr'g Tr. 12:9-10, 12:24-25, 14:8-10 (June 27, 2014) (attached as Ex. A to Decl. of Robert A. Cohen) (description by BNY-Mellon counsel).  BNY-Mellon then transfers the funds from its account at the Argentine Central Bank to an account in Brussels opened in the name of a third BNY entity, the Bank of New York Mellon, Brussels branch ("BNYM Brussels").  *See* BNY-Mellon Br. 2; Farber Decl., Ex. C ¶ 9; Debarre Decl. ¶ 23(2); Clark Decl., Ex. A ¶ 10(2).  Then, "[a]t the direction of BNY Mellon," the funds are transferred from the BNYM Brussels account to Euroclear Bank in Belgium or Clearstream in Luxembourg. BNY-Mellon Br. 2; *see also* Debarre Decl. ¶ 23(3); Clark Decl., Ex. A ¶ 10(3).  Euroclear and Clearstream then distribute the funds to the institutions that participate in their clearing systems, which ultimately distribute the funds to the Exchange Bonds' beneficial owners (the Euro

Bondholders).  *See* BNY-Mellon Br. 2; Debarre Decl. ¶ 23(4); Clark Decl., Ex. A ¶ 10(3).  Thus, neither BNYM Luxembourg nor BNYM Brussels plays an active role in processing Argentina's Exchange Bond payments.  Rather, it is indisputably BNY-Mellon—the New York-based entity—that receives the funds from Argentina and controls them until they reach Euroclear or Clearstream.

The Euro Bondholders first appeared in this case in connection with Argentina's appeals from this Court's November 2012 orders.  There, the Euro Bondholders filed a brief as non-party intervenors, arguing that the Injunctions should be vacated because, among other things, (1) this Court lacks personal jurisdiction over foreign third parties and (2) the Injunctions subjected foreign third parties to conflicting legal obligations.  *See* 2d Cir. Brief 18-20, 24-25.  Euroclear also participated in that briefing, claiming that the Injunctions could give rise to conflicting legal obligations, but did not assert that the district court would lack personal jurisdiction over it.  *See* Clark Decl., Ex. B.

The court of appeals rejected these arguments.  At the outset, it held that the Euro Bondholders lacked standing to appeal the Injunctions.  *See NML II*, 727 F.3d at 240.  The panel nonetheless addressed their arguments, as they were raised by other parties, and explained that these arguments were "premature" but could be "assert[ed] [by the foreign third parties] if and when they are summoned to th[e district] court for having assisted Argentina in violating United States law."  *Id.* at 243-44.

The Euro Bondholders and Euroclear then filed briefs in support of Argentina's petition for certiorari in the Supreme Court.  The Supreme Court denied Argentina's petition on June 16, 2014.

Just ten days later, Argentina violated paragraph 2(a) of the Injunctions by paying more than $800 million on the Exchange Bonds without paying Plaintiffs.  At a hearing on June 27, 2014, this Court said it would nullify the payment, warning that "this payment cannot be made, and anybody who attempts to make it will be in contempt of court by the express terms of this order [the Injunctions]."  Hr'g Tr. 23:22-24, 25:13-15; *see also id.* at 33:7-14.

At that same hearing, the Euro Bondholders renewed their effort to carve the euro-denominated Exchange Bonds out of the Injunctions.  If the Euro Bondholders' request had been granted, Argentina would have been able to pay €225.9 million ($306 million) to the Euro Bondholders without making any payment to Plaintiffs.  But this Court declined to revisit the Second Circuit's ruling and denied the request, explaining that "if the Republic makes payments in a way that involves Luxembourg or Denmark or whatever, it's still a payment by the Republic, and paragraph two of the order applies, and it applies to the Republic."  *Id.* at 31:14-18.

Two days later, the Euro Bondholders filed their "Emergency Motion for Clarification," which repeats the arguments they previously advanced in this Court, the Second Circuit, and the Supreme Court that the Injunctions should not reach foreign third parties that—after BNY-Mellon forwards the funds—would process payments on the euro-denominated Exchange Bonds. Fintech, another holder of Exchange Bonds that litigated in the Second Circuit and Supreme Court, joined the Euro Bondholders' motion on June 30, 2014.  Euroclear also joined the motion on July 9, 2014.  BNY-Mellon filed a response to the Euro Bondholders' motion on July 10, 2014, to correct several misstatements regarding BNY-Mellon's involvement in Argentina's payments on the euro-denominated Exchange Bonds.  The Euro Bondholders then filed a "Corrected" memorandum on July 14, 2014 ("Mot."), that not only purported to correct these misstatements, but also included new arguments and an additional request that the depositories

and clearing agencies be permitted to reveal to Argentina the identities of the Exchange Bonds' beneficial owners.

## ARGUMENT

**I.      The Euro Bondholders And Euroclear Seek Modification—Not Clarification—Of The Injunctions, Contrary To The Second Circuit's Ruling.**

The Euro Bondholders ask this Court to "clarify that the Injunctions do not apply to foreign third parties that process payments" on euro-denominated Exchange Bonds.  Mot. 19. That is not a request for clarification but rather a request to undo the rulings of this Court and the Second Circuit, and it should be rejected.

The application of the Injunctions to the payment on euro-denominated Exchange Bonds is indisputable.  As the Second Circuit recognized, the Injunctions unambiguously prohibit Argentina from making any payments on "obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers," Injunction ¶ 2(a), which include not only Exchange Bonds paid through New York, but also Exchange Bonds paid through Europe and elsewhere, Hr'g Tr. 31:14-19 ("Now, if the republic makes payments in a way that involves Luxembourg or Denmark or whatever, it's still a payment by the republic, and paragraph two of the [Injunctions] applies."); *cf. NML II*, 727 F.3d at 241 n.9 (holding that Argentina's "euro-denominated GDP-linked securities" are "Exchange Bonds" under the Injunctions).  And as the Second Circuit confirmed on appeal, this command binds Argentina wherever it acts.  *NML II*, 727 F.3d at 243 ("[A] federal court sitting as a court of equity having personal jurisdiction over a party [here, Argentina] has power to enjoin him from committing acts elsewhere.").

The application of the Injunctions to the third parties that process Argentina's payments on the Exchange Bonds, including euro-denominated Exchange Bonds, is equally clear.  When it first reviewed this Court's decision to grant equitable relief, the Second Circuit remanded to this

Court so it could explain precisely how that relief would apply to third parties involved in the payments of the Exchange Bonds.  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 264-65 (2d Cir. 2012) ("*NML I*").  On remand, this Court explicitly named the entities that assist Argentina with the processing of payments on the Exchange Bonds and identifying them as persons potentially subject to contempt under Rule 65(d).  *See* Injunction ¶ 2(e) ("[A]ll participants in the payment process of the Exchange Bonds . . . . shall be bound by the terms of this ORDER as provided by Rule 65(d)(2) and prohibited from aiding and abetting any violation of this ORDER . . . ."); *id.* ¶ 2(f) (identifying "Participants").  Argentina and others appealed, and the Euro Bondholders argued to the Second Circuit that European corporations that process payments on euro-denominated Exchange Bonds should be excluded from the Injunctions.  The Second Circuit rejected that argument:  "Every injunction issued by a district court automatically forbids others—who are not directly enjoined but who act 'in active concert or participation' with an enjoined party—from assisting in a violation of the injunction."  *NML II*, 727 F.3d at 243 (quoting Fed. R. Civ. P. 65(d)).  And the Second Circuit specifically affirmed this Court's naming of certain foreign entities involved in part of the payment chain for the euro-denominated Exchange Bonds as persons who could be subject to contempt under Rule 65.  *See id.* at 244 ("By naming certain foreign system participants . . . the district court was . . . simply recognizing the automatic operation of Rule 65.").  Any argument that the district court lacks jurisdiction to hold such an entity in contempt, the Second Circuit held, would be properly raised if and when the contempt was sought for their assistance in Argentina's violation of the Injunctions.  *Id.*

The Euro Bondholders' request for "clarification" also is not permitted by the Injunctions' clarification provision.  Paragraph 2(h) of the Injunctions provides:  "Any non-party that has received proper notice of this ORDER, pursuant to Rule 65(d)(2), and that requires

clarification *as to its duties*, if any, under this ORDER may make an application to this Court, with notice to the Republic and NML." Injunction ¶ 2(h) (emphasis added). The Euro Bondholders' motion for clarification plainly does not seek "clarification" of *their* "duties" under the Injunctions. At most, their motion seeks clarification of the *Clearstream's, Euroclear's, and BNYM Brussels's* duties, which, as explained above, require no clarification.

The Euro Bondholders' request to strike the European payment processors from the Injunctions to enable Argentina to make illegal payments on the Exchange Bonds, therefore, is not a request for clarification at all. It is instead a request to revisit the conclusion that this Court reached on remand, which the Second Circuit then affirmed. Such relief should not be requested in the guise of "clarification." It is, as the Euro Bondholders acknowledge only in passing, an audacious request for "modification of the Injunctions." Mot. 2 n.3.[2]

## II.     The Euro Bondholders' Requests For Modification Lack Merit.

### A.     Providing Argentina With The Identities Of The Beneficial Interest Holders Of The Exchange Bonds Would Facilitate Evasion And The Injunctions Should Not Be Modified To Permit That.

In their "corrected" memorandum, the Euro Bondholders request a new form of relief not present in their prior submission: that depositories and clearing systems be permitted to give Argentina a list of the Exchange Bonds' beneficial owners. Mot. 18. This Court must deny this request. Granting this relief would give Argentina crucial information that would aid its ongoing efforts to evade the Injunctions by setting up an alternative payment structure for the Exchange

---

[2]   In a footnote, the Euro Bondholders suggest that the Court's decision with respect to the motion by Citibank, N.A., concerning certain bonds it helps pay entitles the processors of payments of the euro-denominated Exchange Bonds to similar relief. Mot. 7 n.7. Unlike certain bonds at issue in the Citibank motion, all of the euro-denominated Exchange Bonds are unquestionably External Indebtedness, covered by both the Equal Treatment provision in the FAA and the Injunctions. In any event, in a motion submitted on July 10, 2014, Plaintiffs have sought reconsideration of certain aspects of the Court's order with respect to Citibank to make clear that those bonds which are External Indebtedness remain subject to the Injunctions. *See* Dkt. 586.

Bonds.  Such relief is also unnecessary; the reason the Euro Bondholders' proffer to justify this request is hypothetical and without merit.  Even if Argentina needed to communicate with beneficial owners, standard commercial processes would permit it to do so without learning their identities.  Argentina would thus have no legitimate reason to learn this information.

Argentina's illegal payment to BNY-Mellon demonstrates that Argentina certainly is willing to violate the Injunctions.  But it has been thwarted by the law-abiding third parties that process Argentina's payments on the Exchange Bonds (such as BNY-Mellon).  If Argentina learned the identities of its Exchange Bondholders, Argentina potentially could offer to swap the Exchange Bonds for new bonds paid through third parties far less likely than BNY-Mellon to heed this Court's orders.  In other words, granting Argentina access to the list of beneficial owners would enable Argentina to "take action to evade the directives" of the Injunctions by altering the way "by which it makes payments on the Exchange Bonds"—the very conduct that the Injunctions expressly forbid.  Injunction ¶ 4.  Indeed, Argentina's Minister of Economy Axel Kicillof announced just such a scheme on June 17, and this Court declared it illegal on June 20.  Dkt. 527.  The Injunctions certainly do not require a "clarification" that aids Argentina's ongoing efforts to violate the Injunctions.

The Euro Bondholders suggest that—to conclude any settlement with Plaintiffs—sharing "such information may be necessary" to seek waivers from the Exchange Bondholders of their rights under the Exchange Bonds' RUFO clause.  Mot. 18.  That assertion is incorrect and, in any event, academic.  The RUFO clause applies when Argentina "'voluntarily makes an offer . . . to purchase or exchange . . . or solicits to amend . . . any outstanding Non-Performing Securities [Plaintiffs' bonds].'"  Mot. 18.  The RUFO clause's express limitations to "voluntar[y]" offers to "purchase or exchange . . . or . . . amend" Plaintiffs' bonds leaves ample room for Argentina to

reach a settlement with Plaintiffs, should Argentina desire to do so.  For instance, Argentina's prospectus for the Exchange Bonds specifically provided that the RUFO clause did *not* preclude Argentina from settling Plaintiffs' claims.[3]  But the point is entirely academic in any event because, to this point, Argentina has expressed no willingness to attempt to free itself from whatever strictures RUFO might impose.  Simply put, there is no need to worry about amending the RUFO clause unless Argentina actually wants to do so.

Even if Argentina wished to solicit the Exchange Bondholders' consent to amend or delete the RUFO clause, it most certainly does not need the list of beneficial owners to do so. The clearing agencies and depositories have established processes allowing issuers to solicit investor consent without learning investors' identities.  As the IMF has explained, when bonds are held with a central depository as a "global note" (as the Exchange Bonds are), "notice is typically given through the clearing systems":  "the Depositary Trust Company in the United States and [in Europe] Euroclear and Clearstream."  IMF, Legal Dep't, *The Design & Effectiveness of Collective Action Clauses* 5 & n.5 (June 6, 2002), https://www.imf.org/external/np/psi/2002/eng/060602.pdf.  For example, DTC also allows issuers to send proxy forms to investors through a DTC-operated electronic service, thereby eliminating the need to contact the DTC participants themselves.  *See* DTCC, Proxy Services, http://www.dtcc.com/asset-services/issuer-services/proxy-services.aspx (last accessed July 15, 2014).  Argentina thus has no legitimate reason to obtain a list of beneficial owners; providing that information would serve only to help Argentina evade.

---

[3]  *See* Republic of Argentina, Prospectus Supplement at S-60 (Jan. 12, 2005) ("Argentina reserves the right, in its absolute discretion, to purchase, exchange, offer to purchase or exchange, or enter into a settlement in respect of any Eligible Securities that are not exchanged pursuant to the Offer . . . . The terms of any such purchases, exchanges, offers or settlements could differ from the terms of the Offer."), http://www.sec.gov/Archives/edgar/data/914021/000095012305000302/y04567e424b5.htm (last accessed July 17, 2014).

**B.      There Is No Basis For Modifying The Injunctions To Permit Euroclear And Clearstream To Process Illegal Payments On The Exchange Bonds.**

**1.      The Euro Bondholders Identify No New Circumstances That Conceivably Could Warrant Modification Of The Injunctions To Permit Euroclear and Clearstream To Assist Argentina In Making Illegal Payments.**

The avenues for obtaining relief from a final judgment or final order are limited and available only to parties.  *See* Fed. R. Civ. P. 59(e), 60(b).[4]  It is well settled, moreover, that "modification" of an injunction "is not a means by which a losing litigant can attack the court's decree collaterally."  11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2961 (3d ed. 2013).  Such modifications are generally appropriate only when "the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen."  *Sys. Fed'n No. 91 v. Wright*, 364 U.S. 642, 647 (1961).  Even when circumstances have changed, a court must weigh these new circumstances against "the policies of res judicata."  *Id.* at 647-48; *see also United States v. Swift & Co.*, 286 U.S. 106, 119 (1932) (An "injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making."); *Donovan v. Sovereign Sec., Ltd.*, 726 F.2d 55, 60 (2d Cir. 1984) (Litigants cannot "use [Rule 60(b)] simply to relitigate matters settled by the original judgment.").  That is why "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead [a court] to change what was decreed after years of litigation."  *Swift & Co.*, 286 U.S. at 119.  And "[t]he party seeking relief" must "establish[] that changed circumstances warrant relief."  *Horne v. Flores*, 557 U.S. 433, 447 (2009).

The Euro Bondholders—not even a "party" eligible to seek Rule 60(b) relief, *Dunlop v. Pan Am. World Airways, Inc.*, 672 F.2d 1044, 1052 (2d Cir. 1982)—do not come close to

---

[4]   Relief under Rule 59(e) also would be improper, as any motion under that rule "must be filed no later than 28 days after the entry of the judgment," a deadline that has long since passed.  Fed. R. Civ. P. 59(e).

satisfying that burden here.[5]  Instead, the Euro Bondholders support their motion only with the same substantive declarations considered in earlier rounds of this case, and a legal development that—as explained below, *see* pp. 18, 22-25, *infra*—has no relevance here.

As to changes in the facts, the Euro Bondholders claim that "clarifications to the factual record" since the Injunctions issued "make clear that the foreign third parties that process payments on the Euro Bonds cannot be bound either by the Injunctions themselves or pursuant to Rule 65(d)(2)."  Mot. 2.  But the factual circumstances here are undoubtedly the same as those "obtaining at the time of . . . issuance."  *Cf. Wright*, 364 U.S. at 647.  The Euro Bondholders do not say that the payment process for their bonds has changed.  Indeed, the very declarations that they rely on here were presented to and considered by this Court and the Second Circuit during the last challenge to the Injunctions.  *See* Clark Decl., Ex. A (Decl. of Kevin F. Binnie (Nov. 16, 2012)) (identical to Dkt. 397); *id.*, Ex. B (Letter from Yves Poullet to Second Circuit (Jan. 3, 2013)) (identical to Dkt. 780 in No. 12-105 (2d Cir.)).  Euroclear's freshly executed declaration does not provide the Court with any new facts, except perhaps those facts necessary to correct the Euro Bondholders factual inaccuracies.  *See* Debarre Decl. ¶¶ 30-32.  Even BNY-Mellon's newest declaration—which BNY-Mellon filed in the Euro Bondholders' Belgian litigation on June 17 (nearly two weeks *before* the Euro Bondholders filed their emergency motion here) to correct the Euro Bondholders' identical misstatements in that case—merely clarifies BNY-Mellon's earlier declaration submitted in November 2012.  *See* Farber Decl., Ex. C.

In any event, the Euro Bondholders mischaracterize the relevant facts.  They assert that "[a]t no point in the Euro Bonds' payment chain do funds comprise U.S. dollars or enter the U.S."  Mot. 2.  But that statement—made in the Euro Bondholders' purportedly "corrected"

---

[5]  Neither entity that has joined the Euro Bondholders' motion—Fintech and Euroclear—is a "party."

memorandum—obscures the fact that a New York-based financial institution, BNY-Mellon, plays an active role in shepherding Argentina's payments to Euroclear and Clearstream.  As BNY-Mellon explains, "BNY Mellon, a banking institution chartered and headquartered in New York," comprehensively directs payments on the euro-denominated Exchange Bonds.  BNY-Mellon Br. 2.  Argentina initially deposits funds "into a euro deposit account in the name of BNY Mellon" that BNY-Mellon "exclusively owns, operates, and controls" at the Argentine Central Bank.  *Id.*  Then BNY-Mellon transfers the funds from its account to the German account of BNYM Brussels, who is "BNY Mellon's agent."  *Id.*  "At the direction of BNY Mellon," BNYM Brussels then transfers the funds to Euroclear or Clearstream, who distribute the funds to participants, who distribute the funds to the ultimate beneficial holders of the Euro Bonds.  *Id.*

Despite the Euro Bondholders' apparent acceptance of BNY-Mellon's statement that it—and not its European entities—controls the flow of payments from Argentina to Euroclear and Clearstream, Mot. 5, the Euro Bondholders seek to exempt BNYM Luxembourg and BNYM Brussels from the Injunctions, Mot. 11-14.  To the extent that the Euro Bondholders maintain this request as an implicit suggestion that either entity plays a meaningful role in processing Exchange Bond payments, they are mistaken.  BNYM Luxembourg plays no role in processing Argentina's payments.  *See* BNY-Mellon Br. 2-3 & n.3.  And BNYM Brussels "acts as BNY-Mellon's agent," and even then merely as a "cash distribution center."  *Id.* at 2.  Thus, BNY-Mellon's filing makes clear that the essential premise of the Euro Bondholders' motion for modification is wrong, and there is no factual basis for modifying the Injunctions.

But even if the Euro Bondholders had their facts right, it would be irrelevant.  As the Second Circuit explained, "the amended injunctions enjoin no one but Argentina . . . .  If others in active concert or participation with Argentina are outside the jurisdiction or reach of the

district court, they may assert as much if and when they are summoned to that court for having assisted Argentina in violating United States law." *NML II*, 727 F.3d at 244. If a third party believes that Rule 65(d)(2)(C) cannot lawfully apply to it, that third party can present its defense in a contempt proceeding. *See* Part II.B.2, *infra*. Modifying the Injunctions is not the answer.

As to the legal circumstances, the Euro Bondholders argue that the Supreme Court's decision in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), changed the law governing personal jurisdiction. *See* Mot. 10-12. That is wrong. *Daimler*, a case about general personal jurisdiction, merely followed prior precedent in *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846 (2011). *See* 134 S. Ct. at 751 (explaining that the Court's holding was "[i]nstructed by *Goodyear*"). In any event, this Court would unquestionably have authority to assert *specific* jurisdiction over Euroclear and Clearstream. *See* Part II.B.3, *infra*. And the Euro Bondholders claim no change in that law. Indeed, their legal arguments regarding personal jurisdiction are identical to the arguments they (unsuccessfully) made to the Second Circuit and the Supreme Court. *Compare* Mot. 10-17, *with* 2d Cir. Brief 18-20, 24-25, *and* Br. of Respondents Euro Bondholders 14-16 & n.8, No. 13-990 (U.S. Mar. 24, 2014).

The absence of changed circumstances makes clear that the Euro Bondholders' true aim is re-arguing the merits of the Injunctions. Because the Euro Bondholders have presented no "new and unforeseen conditions," their motion to modify the Injunctions must be denied.

> **2.      There Is No Need To Resolve The Euro Bondholders' Contention That The Court Lacks Jurisdiction Over Euroclear And Clearstream, Because The Court Is Not Now Asserting Jurisdiction Over Those Entities.**

This Court should decline to render an advisory opinion on the personal-jurisdiction issues raised by the Euro Bondholders because they are premature. Federal courts may adjudicate only "'the legal rights of litigants in actual controversies.'" *S. Jackson & Son, Inc. v.*

*Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) (quoting *Liverpool, N.Y. &*

*Phila. S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)).  "In other words, in order to

achieve the status of a case or controversy, a dispute must exist between two parties having

adverse legal interests."  *Id.*

 Here, there is no case or controversy involving Euroclear or Clearstream.  BNY-

Mellon—the New York entity over whom this Court unquestionably has jurisdiction—has made

clear that it will not forward Argentina's illegal payments to either Euroclear or Clearstream.  Its

request for clarification concerns only what to do with the funds it received from Argentina.

BNY-Mellon Mot. for Clarification 2 (July 10, 2010) (Dkt. 578).  Therefore, unless the Euro

Bondholders have in mind some plan to replace the Indenture Trustee in violation of the

Injunctions, whether Euroclear or Clearstream would face contempt sanctions for helping

Argentina to make illegal payments on the euro-denominated Exchange Bonds is entirely

academic, because BNY-Mellon will not permit the funds to get that far.  As a result, this Court

does not now, and may never, have before it the record necessary to resolve Euroclear's and

Clearstream's hypothetical personal jurisdiction defenses.  *See Ins. Co. of N. Am. v. ABB Power*

*Generation, Inc.*, 690 N.E.2d 1249, 1252 (N.Y. 1997) ("[T]he existence of personal jurisdiction

is dependent on the facts.");  *accord Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,

570 (2d Cir. 1996).

 Even if Argentina's illegal payments made it as far as Euroclear and Clearstream,

moreover, the Second Circuit has already concluded that third-party defenses to contempt should

be considered during a contempt proceeding, and not before.  The Euro Bondholders raised

before the Second Circuit the same personal-jurisdiction arguments they raise here.  *See* 2d Cir.

Brief 18-20, 24-25.  The Second Circuit declined to adjudicate these defenses.  *NML II*, 727 F.3d

at 243.  Rather, the court explained:  "If others in active concert or participation with Argentina are outside the jurisdiction or reach of the district court, they may assert as much if and when they are summoned to that court for having assisted Argentina in violating United States law."  *Id.* at 243-44.  This ruling—which the Supreme Court has declined to review—not only comports with proper limits on advisory opinions, but is also now the law of the case.  *See DeWeerth v. Baldinger*, 38 F.3d 1266, 1271 (2d Cir. 1994).

The clarification procedure outlined in paragraph 2(h) of the Injunctions is consistent with the Second Circuit's ruling.  Clarification proceedings are intended "to avoid unwitting contempts," *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945), and to "facilitate compliance with the [court's] orders," *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328, 334 (S.D.N.Y. 2001).  Ruling on the Euro Bondholders' motion would not advance these goals.  To the contrary, this Court made clear that the Injunctions prohibit Argentina from making payments on the euro-denominated Exchange Bonds.  *See* Hr'g Tr. 31:14-18 ("Now, if the Republic makes payments in a way that involves Luxembourg or Denmark or whatever, it's still a payment by the Republic, and paragraph two of the order applies . . . .").  And the Euro Bondholders (and presumably Euroclear as well) understand that Euroclear and Clearstream will face contempt if they assist Argentina in making illegal payments on the Exchange Bonds, because those foreign parties likely would be acting in active concert or participation with Argentina's violation of the Injunctions.  *See* Mot. 12-13.  There is thus no argument that contempt by these parties would be "unwitting."  *See Regal Knitwear*, 324 U.S. at 15.  Rather, the Euro Bondholders seek to immunize a possible violation of the Injunctions in advance— making it easier for Argentina to make payments that this Court said are "illegal and will not be made."  Hr'g Tr. 24:2.  Such a result would not "facilitate compliance" with the Injunctions.

The Euro Bondholders' argument that the Injunctions "restrict certain foreign third parties from fulfilling their contractual and legal duties on foreign soil, under foreign law," Mot. 14, does not provide an adequate reason to ignore these procedural defects.  They point to no foreign laws that the Injunctions would force third parties to violate—even though they have the burden to demonstrate that foreign law imposes a conflicting obligation.  *See NML Capital, Ltd. v. Republic of Argentina*, 03 CIV. 8845 TPG, 2013 WL 491522 (S.D.N.Y. Feb. 8, 2013). Neither foreign law they cite *compels* either Euroclear or Clearstream to forward Argentina's payments.  Indeed, Euroclear itself notes that the Euro Bondholders' motion misstates the effect of the Belgian law at issue—contrary to the Euro Bondholders' assertions, that Belgian statute specifically permits those entities to decline to make a payment.  *See* Debarre Decl. ¶ 20 ("Article 9 of the [Belgian] Finality Act . . . does not impose any obligations on Euroclear Bank . . . .  In other words, Euroclear Bank is not prohibited from blocking an account . . . ."); *see also id.* ¶¶ 30-32 (correcting the Euro Bondholders' misstatement).  Accordingly, the Euro Bondholders have not demonstrated that this is a case where the court is forcing someone to "refrain from doing an act in another state that is required by the law of that state or by the law of the state of which he is a national."  *Restatement (Third) of Foreign Relations Law* § 441 (1987).

The Euro Bondholders also suggest that the Injunctions would force Euroclear and Clearstream to violate their contractual duty to distribute funds.  Mot. 14.  But a contractual obligation is discharged when "the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order."  *Restatement (Second) of Contracts* § 264 (1981); *see also W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766-67 (1983) ("A contract provision the performance of which has been enjoined is unenforceable.").  And the Euro Bondholders make no argument that foreign courts would rebuff a contractual

defense based on complying with the Injunctions.  To the contrary, Plaintiffs would expect a

foreign court to give comity and respect to well-considered decisions rendered by U.S. courts.

*See The Sennar* (No. 2), [1985] 2 All E.R. 104, 111 ("[T]his is a classic case of issue estoppel

created by the judgment of a foreign court of competent jurisdiction.").  In any event, Euroclear

has an exculpation clause in its contracts that would stand in the way of any suit against it, and it

is likely that Clearstream has similar protections.  Debarre Decl. ¶ 34 ("[T]he contract between

Euroclear Bank and its Participants allows Euroclear Bank not to make such transfer if a court

order prohibits it to do so.").[6]

> ### 3. If Euroclear Or Clearstream Assisted Argentina In Processing An Illegal Payment, This Court Clearly Would Have Jurisdiction To Hold Those Entities In Contempt.

At the outset, Euroclear—the only foreign third party that raises a jurisdiction defense in

its own right—has forfeited any objection to personal jurisdiction.[7]  Unlike objections to subject-

matter jurisdiction, which can be asserted by any party at any time, objections to personal

jurisdiction must be immediately raised by the party over whom jurisdiction is lacking;

otherwise, that defense is waived.  *Compare* Fed. R. Civ. P. 12(h)(1) (personal jurisdiction

waived if not asserted in the first pleading), *with* Fed. R. Civ. P. 12(h)(3) ("If the court

determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

---

[6]   In a footnote introduced as part of their "corrections" to their earlier memorandum, the Euro Bondholders assert without citation that complying with this Court's orders "will expose BNYM to liability in England." Mot. 17 n.15. This is incorrect.  BNY-Mellon does not even make this argument, as its trustee agreement contains an exculpation clause.  *See NML II*, 727 F.3d at 243 n.11 (describing the exculpation clause in BNY-Mellon's contract); Farber Decl., Ex. A ¶¶ 5.1(c), (g), 5.2(a)(xx) (Trust Indenture).

[7]   The Euro Bondholders, of course, lack standing to assert defenses on behalf of Clearstream, or any third party. A litigant "'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'"  *Franchise Tax Bd. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).  In other words, where a third-party's right "is a necessary component" of a litigant's claim, the litigant lacks standing to advance that claim in federal court.  *See Hillside Metro Assocs. LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 747 F.3d 44, 48-49 (2d Cir. 2014).  The Euro Bondholders' request for clarification of the other foreign third parties' duties clearly fails under this standard.

action.").  In the Second Circuit, Euroclear filed a letter raising a variety of defenses—none based on personal jurisdiction.  *See* Clark Decl., Ex. B.  Euroclear has thus forfeited its right to assert a personal-jurisdiction defense.  *See Datskow v. Teledyne, Inc., Cont'l Products Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) (defendant forfeits personal jurisdiction defense by "participating in the litigation without questioning personal jurisdiction").

In arguing that this Court would lack personal jurisdiction over Euroclear and Clearstream, the Euro Bondholders focus on recent case law about *general* jurisdiction.  Given the consistent contacts that Euroclear and Clearstream have with New York, general jurisdiction likely would exist over them.  *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 10-cv-4518, 2013 WL 1155576, at *18 (S.D.N.Y. Mar. 13, 2013) (finding Clearstream subject to general jurisdiction in New York based on New York office); *see also* Debarre Decl. ¶ 8 (Euroclear "maintains a representative office in New York, for client relationship and support purposes").

But whether or not general jurisdiction exists over such parties, this Court unquestionably would have *specific* jurisdiction.  "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (internal quotation marks omitted).  Here, the "controversy that establishes" jurisdiction would be Argentina's violation of the Injunctions.  If foreign third parties act in active concert or participation with Argentina's violation, their contempt proceedings would be an "adjudication of issues deriving from, or connected with," the violation. *See Waffenschmidt v. MacKay*, 763 F.2d 711, 722 (5th Cir. 1985) (finding personal jurisdiction where "the sole 'contact' these respondents had with Mississippi was their acceptance and dissipation of the enjoined funds from [the enjoined party] in Texas as his agents, with

knowledge of the court's orders").  The relevant question here, therefore, would be whether there is specific personal jurisdiction.  As Euroclear has conceded, the foreign third parties who act in active concert or participation with a violation of a court order are subject to New York's long-arm statute.[8]  The sole remaining question concerns whether Euroclear or Clearstream have sufficient "minimum contacts" with the New York to satisfy due process.  *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, the foreign third parties would establish minimum contacts with New York by acting in active concert or participation with Argentina's violation.  "'Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order.'" *Eli Lilly*, 617 F.3d at 195 (quoting *Waffenschmidt*, 763 F.2d at 714); *see also* 13 James Wm. Moore *et al.*, *Moore's Federal Practice* § 65.61 (3d ed. 2013) (court has jurisdiction over nonparty who aids and abets party's violation of injunction); *see also ClearOne Comm'cns, Inc. v. Bowers*, 651 F.3d 1200, 1215-16 (10th Cir. 2011) (same); *SEC v. Homa*, 514 F.3d 661, 675 (7th Cir. 2008) (same).  As the Fifth Circuit explained, when third parties purposefully act in active concert or participation with the violation of an order, "they cannot [then] complain that it was unforeseeable or unreasonable for them to be haled before that court." *Waffenschmidt*, 763 F.2d at 723 (cited by *Eli Lilly*, 617 F.3d 195).

The Euro Bondholders suggest that an earlier Second Circuit case is to the contrary.  Mot. 13 (citing *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989)).

---

[8]   *See* Br. of Euroclear Bank SA/NV as Amicus Curiae Supporting Petitioner 6, *Republic of Argentina v. NML Capital, Ltd.*, No. 13-990 (U.S. Mar. 24, 2014) ("Long-arm jurisdiction typically provides for jurisdiction based solely on wrongdoing in a foreign state which causes injury within the forum state.  (*See, e.g.*, N.Y.C.P.L.R. § 302(a)(3)).  The courts below have already held that violations of the Order will cause injury in the U.S., so those who violate the Order may be subject to long-arm jurisdiction regardless of where they do so.").

*Canterbury* cannot support the weight they would place on it.  That decision did not need to reach the question of whether "active concert or participation" with a violation of an injunction gives rise to specific jurisdiction because the alleged contemnor's subsidiary had consented to jurisdiction, thereby subjecting the contemnor to jurisdiction under the then-prevailing law. *Canterbury*, 869 F.2d at 40.  Moreover, in *Eli Lilly*, the Second Circuit held that facilitating the violation of an injunction establishes minimum contacts sufficient to support specific jurisdiction—a more recent holding that conclusively confirms the availability of jurisdiction here.  617 F.3d at 195.

The Euro Bondholders' argument that this Court would lack personal jurisdiction over the foreign third parties is without merit.

## CONCLUSION

The Euro Bondholders' motion is procedurally improper and without merit.  If granted, the Euro Bondholders "clarification" would give Argentina not only a green light to violate the Injunctions, but also another route to restructure the Exchange Bonds to evade the Injunctions. The Court should deny the Euro Bondholders' motion.

Respectfully submitted,

July 18, 2014

By: _Robert A. Cohen_

Theodore B. Olson
(tolson@gibsondunn.com)
Matthew D. McGill
(mmcgill@gibsondunn.com)
Jason J. Mendro
(jmendro@gibsondunn.com)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036-5306
(202) 955-8500

Robert A. Cohen
(robert.cohen@dechert.com)
DECHERT LLP
1095 Avenue of the Americas
New York, NY  10036-6796
(212) 698-3500

*Attorneys for Plaintiff NML Capital, Ltd.*

Leonard F. Lesser
(llesser@simonlesser.com)
SIMON LESSER PC
355 Lexington Avenue, 10th Floor
New York, New York 10017
(212) 599-5455

*Attorney for Plaintiff Olifant Fund, Ltd.*

Edward A. Friedman
(efriedman@fklaw.com)
Daniel B. Rapport
(drapport@fklaw.com)
FRIEDMAN KAPLAN SEILER & ADELMAN LLP
7 Times Square
New York, NY  10036
(212) 833-1100

*Attorneys for Plaintiffs Aurelius Capital Master, Ltd., Aurelius Capital Master Ltd., Aurelius Opportunity Fund II, ACP Master, Ltd., Blue Angel Capital I LLC*

Michael C. Spencer
(mspencer@milberg.com)
MILBERG LLP
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

*Attorney for Plaintiffs Pablo Alberto Varela, et al.*