UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x :

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                               Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                              Defendant.

No. 09 Civ. 8757 (TPG)

----------------------------------------------------------------x :

AURELIUS CAPITAL MASTER, LTD. and
ACP MASTER, LTD.,

                               Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                              Defendant.

No. 09 Civ. 10620 (TPG)

----------------------------------------------------------------x :

AURELIUS OPPORTUNITIES FUND II, LLC
and AURELIUS CAPITAL MASTER, LTD.,

                               Plaintiffs,

                - against -

THE REPUBLIC OF ARGENTINA,

                              Defendant.

No. 10 Civ. 1602 (TPG)

----------------------------------------------------------------x : *(captions continue on following pages)*


**PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION FOR LEAVE TO
AMEND AND SUPPLEMENT COMPLAINTS**

```
------------------------------------------------------------x :
AURELIUS OPPORTUNITIES FUND II, LLC          :
and AURELIUS CAPITAL MASTER, LTD.,           :
                                             :   No.  10 Civ. 3507 (TPG)
                           Plaintiffs,       :
                                             :
             - against -                     :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                           Defendant.        :
------------------------------------------------------------x :
AURELIUS CAPITAL MASTER, LTD. and            :
AURELIUS OPPORTUNITIES FUND II, LLC,         :
                                             :   No.  10 Civ. 3970 (TPG)
                           Plaintiffs,       :
                                             :
             - against -                     :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                           Defendant.        :
------------------------------------------------------------x :
BLUE ANGEL CAPITAL I LLC,                    :
                                             :
                           Plaintiff,        :   No.  10 Civ. 4101 (TPG)
                                             :
             - against -                     :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                                             :
                           Defendant.        :
------------------------------------------------------------x :
```

```
------------------------------------------------------------x :
BLUE ANGEL CAPITAL I LLC,                                    :
                                                            :
                              Plaintiff,                    :      No.  10 Civ. 4782 (TPG)
                                                            :
                    - against -                             :
                                                            :
THE REPUBLIC OF ARGENTINA,                                   :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------x :
AURELIUS CAPITAL MASTER, LTD. and                           :
AURELIUS OPPORTUNITIES FUND II, LLC,                        :
                                                            :      No.  10 Civ. 8339 (TPG)
                              Plaintiffs,                   :
                                                            :
                    - against -                             :
                                                            :
THE REPUBLIC OF ARGENTINA,                                   :
                                                            :
                              Defendant.                    :
------------------------------------------------------------x :
```

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ............................................................................................1

FACTS .............................................................................................................................4

    A.     In the FAA, Argentina Promises That It Will Rank Its Payment
           Obligations under Plaintiffs' Bonds at Least Equally with Payment
           Obligations on Other External Indebtedness .............................................................4

    B.     This Court Enters—and the Second Circuit Affirms—the Injunction
           Prohibiting Argentina from Making Discriminatory Payments on the
           Exchange Bonds and from Evading the Injunction .................................................5

    C.     Argentina Has Violated the Injunction and Continues To Violate the Equal
           Treatment Provision .................................................................................................8

    D.     Argentina Issues and Makes Payment on New External Indebtedness – the
           BONAR 2024 Bonds – in Violation of the Equal Treatment Provision ...............10

ARGUMENT ....................................................................................................................16

CONCLUSION ................................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Block v. First Blood Assocs.*,
   988 F.2d 344 (2d Cir. 1993)..................................................................................18

*Foman v. Davis*,
   371 U.S. 178 (1962)....................................................................................16, 17

*Matthew Bender & Co. v. W. Pub. Co.*,
   No. 94 Civ. 0589 (JSM), 1995 WL 702389 (S.D.N.Y. Nov. 28, 1995) ............................18

*Monahan v. N.Y.C. Dep't of Corr.*,
   214 F.3d 275 (2d Cir. 2000).................................................................................19

*NML Capital, Ltd. v. Republic of Argentina*,
   699 F.3d 246 (2d Cir. 2012)..........................................................................4, 5, 6, 7

*NML Capital, Ltd. v. Republic of Argentina*,
   727 F.3d 230 (2d Cir. 2013)..................................................................................7

*Quaratino v. Tiffany & Co.*,
   71 F.3d 58 (2d Cir. 1995)...................................................................................17

*Republic of Argentina v. NML Capital, Ltd.*,
   134 S. Ct. 2819 (2014).......................................................................................7

*Republic of Argentina v. NML Capital, Ltd.*,
   No. 13-990 (U.S. May 27, 2014) .............................................................................8

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981).................................................................................18

*Topps Co. v. Cadbury Stani S.A.I.C.*,
   No. 99 Civ. 9437 (CSH) (GWG), 2002 WL 31014833 (S.D.N.Y. Sept. 10,
   2002) ....................................................................................................18

*United States for & on Behalf of Maritime Admin. v. Cont'l Illinois Nat. Bank
   & Trust Co. of Chicago*,
   889 F.2d 1248 (2d Cir. 1989)................................................................................18

**Other Authorities**

Federal Rule of Civil Procedure 15(a), (d).......................................................................16, 17

Plaintiffs Aurelius Capital Master, Ltd., ACP Master, Ltd., Aurelius Opportunities Fund II, LLC and Blue Angel Capital I LLC (collectively "Plaintiffs") respectfully submit this Memorandum of Law in Support of their Motion for Leave To Amend and Supplement the Complaints in these eight actions to add two additional claims for declaratory and injunctive relief. The two new claims concern the BONAR 2024 Bonds and Argentina's other existing and future External Indebtedness (other than the Exchange Bonds which are already the subject of declaratory and injunctive relief issued by this Court). Plaintiffs are requesting: (i) a declaratory judgment that the BONAR 2024 Bonds are External Indebtedness within the meaning of the 1994 Fiscal Agency Agreement (the "FAA") governing the defaulted bonds issued by the Republic of Argentina ("Argentina") that are the subject of these actions, and (ii) specific performance of the Republic's obligations under the Equal Treatment Provision in the FAA by preliminarily and permanently enjoining the Republic from making payments of interest and/or principal on the BONAR 2024 Bonds and other External Indebtedness unless a "Ratable Payment" is made in respect of Plaintiffs' defaulted bonds.

## **PRELIMINARY STATEMENT**

This Court's Amended February 23, 2012 Orders (the "Injunction") (Ex. 9) enforced Plaintiffs' rights under the Equal Treatment provision of the FAA (Ex.10).[1] The Injunction prohibited payments on "Exchange Bonds" without "Ratable Payments" to Plaintiffs. That injunctive relief should have resulted in the Republic honoring its legal obligations or negotiating a settlement with Plaintiffs. The Republic has done neither. Regrettably, the Republic has pursued a path of defiance, contempt, violation and evasion.

---

[1] Unless otherwise specified, all exhibits are annexed to the accompanying Declaration of Daniel B. Rapport, and all references to docket numbers are made with respect to No. 09 Civ. 8757.

Plaintiffs could have initially requested a broader injunction covering all External Indebtedness, not just Exchange Bonds, but Plaintiffs did not do so.  They believed and hoped that the scope of the original injunction would have been sufficient to lead to compliance or at least negotiations by the Republic.  Now, the broader relief is warranted both because the original injunctive relief has not resulted in compliance or good faith negotiations by the Republic and because the Republic has been expanding the universe of its External Indebtedness.  And, as to all External Indebtedness, the Republic has been continuing its blatant, deliberate disregard for its obligations under the Equal Treatment provision.

The latest issuance of more External Indebtedness came to light late last month—on Monday, April 20, 2015, Argentina's economy ministry issued a press release inviting potential investors around the world to purchase BONAR 2024 Bonds, that would be payable in U.S. Dollars.  Concerned that the Republic was issuing these bonds in a manner designed to avoid payment on outstanding judgments and to evade Plaintiffs' rights under the Equal Treatment Provision—which is exactly what the Argentine press was reporting— Plaintiffs applied to the Court for expedited discovery.

In opposing that application, the Republic's counsel told the Court that Plaintiffs could have no rights in respect of this offering—the new debt was said to be "purely internal, not external indebtedness."  (Apr. 22, 2015 Hr'g Tr. (Ex. 11, at 12:17-18.)  When the Court asked, what is meant by "purely internal," the Republic's counsel replied: "Offered exclusively in Argentina and therefore not falling within the definition in the 1994 Fiscal Agency Agreement of external indebtedness that was the subject of the court's pari passu decisions and the subject of the injunction."  (*Id.* at 12:19-25.)

The Court granted Plaintiffs' request for expedited discovery.  Unfortunately, the discovery obtained was too little too late.  The Republic simply produced already-public decrees and press releases.  Deutsche Bank said it could not begin producing information until 11 am on Thursday April 23, ████████████████████████████████████████████████

████████████████████████████████████████████████

Although the limited information obtained by Plaintiffs from Deutsche Bank about the offering was received too late to consider judgment enforcement actions, the information makes clear that, contrary to the assertion of the Republic's counsel, the BONAR 2024 Bonds were not offered exclusively in Argentina and are External Indebtedness.  Argentina distributed to the world an invitation to tender for new BONAR 2024 Bonds, and the BONAR 2024 Bonds were further marketed in Europe and the U.S. by Deutsche Bank and other international bankers and purchased by investors almost exclusively *outside* Argentina.  After the closing, the Argentine Minister of the Economy, Axel Kicillof, proclaimed the success of the BONAR 2024 sale, the interest shown by foreign investors, and the showing that Argentina continues to have "access to the international market of bond credit."

Argentina has repeatedly shown that it will continue to violate both the Injunction and Plaintiffs' contractual rights by subordinating Plaintiffs' bonds in violation of the FAA.  Plaintiffs therefore now respectfully request that they be permitted to amend and supplement their Complaints in the above-captioned actions to add claims for specific enforcement of the Equal Treatment Provision and for injunctive relief based on Argentina's issuances of the BONAR 2024 Bonds and other External Indebtedness.

3

## FACTS

**A.**   **In the FAA, Argentina Promises That It Will Rank Its Payment Obligations under Plaintiffs' Bonds at Least Equally with Payment Obligations on Other External Indebtedness**

In 1994, Argentina began issuing bonds under the FAA, and Plaintiffs currently own some of these bonds.  In a clause of the FAA known as the "Equal Treatment Provision," Argentina promises that "[t]he Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* and without any preferences among themselves [, and] [t]he payment obligations of the Republic under [the FAA Bonds] shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."  (FAA at 2.)  In 2001, Argentina defaulted on more than $80 billion of its debts, including the FAA Bonds.

In 2005, and again in 2010, Argentina sought to restructure its defaulted debt via take-it-or-leave-it exchange offers (the "Exchange Offers") that offered investors a small fraction of the amounts they were owed, and coerced participation by threatening never to make payments to bondholders who declined Argentina's Exchange Offers.  Argentina codified these threats of non-payment through annually enacted moratoriums on payment of Plaintiffs' Bonds and a series of laws, beginning with the 2005 "Lock Law," which "preclud[es] [Argentine] officials from paying defaulted bondholders and barring its courts from recognizing plaintiffs' judgments."  *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 260 (2d Cir. 2012) ("*NML I*").[2]  Since Argentina first began issuing and paying

---

[2] Argentina temporarily suspended the Lock Law during the 2010 Exchange Offer, but it went back into effect afterwards.  (*See* Law 26,547 (Ex. 12).)  In 2013, Argentina enacted Law 26,886 purportedly to reopen the bond exchange on the same terms that had been repeatedly rejected.  While Argentina may point out that Law 26,886 suspends certain provisions of the Lock Law, this suspension has no practical effect.  Law 26,886 "forbid[s]" Argentina from paying Plaintiffs according to their contract, and only allows Argentina to pay Plaintiffs on terms that are no "more favorable" than the terms of the original Exchange Offer.  (Law 26,886 (Ex. 13).)  These

Exchange Bonds in 2005, it has singled out the FAA Bonds for non-payment and lower ranking. *NML I*, 699 F.3d at 260.

**B.    This Court Enters—and the Second Circuit Affirms—the Injunction Prohibiting Argentina from Making Discriminatory Payments on the Exchange Bonds and from Evading the Injunction**

Plaintiffs sued Argentina and sought, among other things, an order "specifically enforcing the Equal Treatment Provision."  (Am. Compl. at Claim for Relief "D" [Dkt. 162].)  On December 13, 2011, this Court held that Argentina violates the Equal Treatment Provision "whenever it lowers the rank of its payment obligations under [the FAA] Bonds below that of any other present or future unsecured and unsubordinated External Indebtedness, including (and without limitation) by relegating [the FAA] bonds to a non-paying class by failing to pay the obligations currently due under [those] Bonds while at the same time making payments currently due to holders of other unsecured and unsubordinated External Indebtedness."  (Dec. 13, 2011 Order, ¶ 4 [Dkt. 164].)  The Court thus found that Argentina breached the Equal Treatment Provision by "lower[ing] the rank" of the FAA Bonds when it (1) "made payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under [the FAA] Bonds," and (2) enacted the Lock Law.  (*Id.* at ¶¶ 5-6.)

On February 23, 2012, this Court issued the Injunction that prohibits Argentina's payments on the Exchange Bonds without making a "Ratable Payment" on Plaintiffs' bonds. (Feb. 23, 2012 Order at  ¶ 2 [Dkt. 179].)  This Court reasoned that, "[a]bsent equitable relief, Plaintiffs would suffer irreparable harm because the Republic's payment obligations to Plaintiffs would remain debased of their contractually-guaranteed status," and

---

restrictions and Argentina's continued legislative extension of the moratorium on Plaintiffs' bonds put the lie to any purported suspension of the Lock Law.

the Republic would "defy any money judgment" issued as a remedy.  (*Id.* at ¶¶ 1(a)-(b).)  This Court further emphasized that the "balance of the equities strongly supports" the Injunction because it "requires of the Republic only that which it promised . . . creditors," the Republic has the financial wherewithal to meet [that] commitment," and the Injunction would serve the "public interest of enforcing contracts and upholding the rule of law."  (*Id.* at ¶¶ 1(c)-(d).)

In the Injunction, the Court also prohibited Argentina from "taking action to evade the directives of [the Exchange Bond Injunction], render it ineffective, or take any steps to diminish the Court's ability to supervise compliance with [it], including, but not limited to, altering or amending the processes or specific transfer mechanisms by which it makes payments on the Exchange Bonds."  (*Id.* at ¶ 4.)

On October 26, 2012, the Second Circuit affirmed this Court's interpretation of the Equal Treatment Provision and this Court's finding that injunctive relief was warranted. *See NML I*, 699 F.3d at 258-62.  It explained that the Equal Treatment Provision "prohibits Argentina, as bond payor, from paying on other bonds without paying on the FAA Bonds," and also "prohibits Argentina, as bond issuer, from formally subordinating the bonds by issuing superior debt."  *Id.* at 259.  Argentina had breached these prohibitions, the Second Circuit concluded, because Plaintiffs' "beneficial interests do not remain direct, unconditional, unsecured and unsubordinated obligations of the Republic," and "any claims that may arise from the Republic's restructured debt do have priority in Argentinian courts over claims arising out of the Republic's unstructured debt [i.e., Plaintiffs' bonds]."  *Id.* at 260.

The Second Circuit held that the requirements for specific performance were satisfied:  Plaintiffs lacked an adequate remedy at law because "Argentina will simply refuse

to pay any judgments"; and the equities—including the public interest—favored the Injunction because "the Republic had sufficient funds . . . to pay plaintiffs the judgments they are due" and "Argentina's disregard of its legal obligations exceeds any affront to its sovereign powers resulting from the Injunctions." *Id.* at 262-63.  Having found that "injunctive relief was warranted," the Second Circuit emphasized that this Court "had considerable latitude in fashioning the relief," and could order specific performance even if the performance decreed was not "identical with that promised in the contract," so long as the order "achieves a 'fair result' under the 'totality of the circumstances.'"  *Id.* at 261.

   The Second Circuit remanded the case to this Court to clarify the Injunction's payment formula and its effect on third parties.  *Id.* at 265.  This Court addressed those issues on November 26, 2012 by amending the February 23, 2013 Orders and Argentina again appealed.  At argument, Argentina's counsel from Cleary Gottlieb told the panel that the Republic "'would not voluntarily obey' [this Court]'s injunctions."  *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 238 (2d Cir. 2013) ("*NML II*").

   On August 23, 2013, the Second Circuit affirmed the Injunction as amended on remand.  *See id.*  The Second Circuit concluded that the Injunction's amended payment formula and its effect on third parties was appropriate relief.  It held that there was nothing inequitable about requiring Argentina to pay Plaintiffs their "full principal and all accrued interest" whenever it makes a single payment in full on the Exchange Bonds.  *Id.* at 241.

   The court of appeals stayed enforcement of the Injunction pending a timely petition for a writ of certiorari.  *Id.*  On June 16, 2014, the Supreme Court denied Argentina's petition for a writ of certiorari.  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2819 (2014).  Two days later, the Second Circuit confirmed that the stay had lifted and the

Injunction took effect.  *NML Capital, Ltd. v. Republic of Argentina*, No. 12-105, Doc. 1056, at 1 (2d Cir. June 18, 2014).

On September 22, 2014, Citibank, N.A., through an order to show cause, renewed an earlier motion asking the Court to address the application of the Injunction to U.S. Dollar Argentine Law Bonds that were issued during the 2005 and 2010 exchanges.  [Dkt. 490.]  On March 12, 2015, this Court ruled that the evidence showed that the U.S. Dollar Argentine Law Exchange Bonds were External Indebtedness under the FAA and subject to the Injunction.  (Mar. 12, 2015 Opinion at 8 [Dkt. 564].)

**C.**      **Argentina Has Violated the Injunction and Continues To Violate the Equal Treatment Provision**

Ever since this Court entered the Injunction, Argentina has continued to breach the Equal Treatment Provision and has persistently vowed, plotted, and attempted to evade the Injunction, despite having promised the Supreme Court that "absent relief [it] w[ould] comply with the orders under review."  (Reply Br. of Petitioner, *Republic of Argentina v. NML Capital, Ltd.*, No. 13-990 (U.S. May 27, 2014).)

For example, days after the stay of the Injunction was lifted, Argentina blatantly violated it by "transferring the equivalent of approximately $539 million . . . to Bank of New York Mellon ('BNY') accounts" at Argentina's central bank without having paid Plaintiffs.  (Aug. 6, 2014 Order at 1 [Dkt. 472].)  Argentina was prevented from completing this unlawful payment only because third parties that process Argentina's payments under the Exchange Bonds refused to participate in Argentina's illegal actions.  In particular, BNY, which is indenture trustee for certain Exchange Bonds, declined to transmit the funds on to the Exchange Bondholders.  (*See* July 2, 2014 Ltr. from Counsel for BNY at 1 [Dkt. 403].) Because Argentina had not made a ratable payment to Plaintiffs, the Court determined that the

payment "was a violation of the Amended February 23 Order and illegal," (Aug. 6, 2014 Order at 1), and ordered BNY to continue to retain the funds, (*id.* ¶ 2).

After its attempted payment was thwarted, Argentina proposed and implemented legislation that purports to alter the payment mechanism on the Exchange Bonds. Despite this Court's repeated warnings that "Argentina is prohibited from carrying out" a "debt exchange to pay the exchange bondholders in Argentina under Argentina law" (June 20, 2014 Order, at ¶¶ 1-2 [Dkt. 383]; *see also* Aug. 21, 2014 Hr'g Tr. (Ex. 14), at 21-22), Argentina attempted to do just that. On September 11, 2014, Argentina enacted Law No. 26,984, which permits the Ministry of Economy and Public Finances to: (i) replace BNY with a state affiliate (Nación Fideicomisos, S.A. ("NF")) willing to process the payments that Argentina makes in violation of the Injunction, and (ii) implement a swap of the Exchange Bonds for new securities governed by Argentine law and subject to Argentine jurisdiction under identical financial terms and conditions. (Law 26,984 (Ex. 15) at Arts. 3, 7; *see also* Sept. 24, 2014 Cohen Decl. Exs. 29-31 [Dkt. 499].) Then, on September 22, 2014, Argentina published a full-page so-called "Legal Notice" in the *New York Times* and *The Wall Street Journal* disclosing that Argentina had taken these steps and encouraging Exchange Bondholders to assist it in altering the payment mechanism by removing the current trustee. (Sept. 24, 2014 Cohen Decl. Ex. 46 [Dkt. 499].) On September 29, 2014, the district court found Argentina "in civil contempt of court" for this violation, among others. (Sept. 29, 2014 Order [Dkt. 507].)

On September 30, 2014, just one day later, Argentina purported to make an interest payment on the Exchange Bonds, without making a Ratable Payment to Plaintiffs. Even worse, Argentina did not purport to remit the payment to BNY, but, instead, sent the

$161 million to NF.  (Katia Porzecanski, *Argentina Deposits $161 Million in Local Bank for Debt Payment*, Bloomberg, Sept. 30, 2014 (Ex. 16).)  Again on December 31, 2014 and March 31, 2015, Argentina violated the Injunction by purporting to make interest payments by sending the payment to NF, rather than BNY.  (*To bypass the Griesa ruling, Argentina issued the funds for a maturing bond into an account at [Banco] Nación*, Clarín, Jan. 2, 2015 (Ex. 17); *Without Citibank, the Government Paid US$ 163 Million in Bonds*, Ámbito Financiero, Apr. 30, 2015 (Ex. 18).)  On March 31, 2015, Argentina further violated the Injunction by purporting to make the payment due on certain Argentine law Exchange Bonds by transferring funds to Caja de Valores, which Argentina forcibly appointed as the new payment agent for these bonds after the Court had ruled that they were covered by the Injunction.  (*See* Caja de Valores informs, *available at* http://www.cajval.sba.com.ar/pdf/informe_citi_ing.pdf (Ex. 19).)

**D.**    **Argentina Issues and Makes Payment on New External Indebtedness – the BONAR 2024 Bonds – in Violation of the Equal Treatment Provision**

Over the last twelve months, the Republic has issued more than $5.3 billion worth of BONAR 2024 Bonds, in each case offering the bonds outside of Argentina.

In May 2014, the Republic initially issued $3.25 billion of BONAR 2024 Bonds to the Spanish oil company, Repsol S.A., to settle claims Repsol had asserted against the Republic for the Republic's 2012 expropriation of Repsol's stake in the oil company YPF, including claims pending in New York and Spanish courts.  (*See* Repsol Settlement Agreement (Ex. 20), at 42, 83-85; Finance Secretary Decision 26/2014 (Ex. 21) at Art. 4.)  As part of the settlement agreement with Repsol, Argentina agreed that the BONAR 2024 Bonds would clear through Euroclear.  (Repsol Settlement Agreement at 51.)

Clearing the bonds through Euroclear was just one piece of an elaborate process by which Argentina and Repsol ensured that the BONAR 2024 Bonds given to Repsol would immediately be placed to investors in an international offering. Just days after the Republic delivered the BONAR 2024 Bonds, Repsol transferred them all to JPMorgan Securities PLC, JPMorgan's London-based broker-dealer, who immediately placed them with international investors.  (*See* Repsol Notice, May 9, 2014 (Ex. 22).) ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ Since their original issuance, the BONAR 2024 Bonds have been actively traded in the over-the-counter market in the United States.  In violation of its obligations under the Equal Treatment Provision of the FAA, Argentina made its first payment on the BONAR 2024 Bonds on November 7, 2014.  (Finance Secretary Decision No. 26/2014 at Art. 4.)

In December 2014, the Republic issued approximately $650 million additional BONAR 2024 Bonds.  Approximately $380 million of these BONAR 2024 Bonds offered in December 2014 were issued in exchange for BODEN 2015 bonds, with the rest a new issuance of bonds. ████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ And press reports confirmed that non-Argentine firms

purchased bonds from Argentina, including the New York-based Fintech Advisory led by

David Martinez.  (*See* Javier Blanco, *No Relief in 2015: Debt issue raises less than 10% of what was hoped*, La Nación, Dec. 13, 2014 (Ex. 54).)

In February 2015, Argentina planned to issue more BONAR 2024 Bonds through an underwriting by JPMorgan and Deutsche Bank.  ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ Argentina resumed the issuance

process by announcing on April 21 that it would issue more BONAR 2024 Bonds, in a

transaction that would settle just two days later.  (*See* Ministry of the Economy Press Release,

"Invitation to Bid" (Ex. 36); Joint Resolution 31/2015 & 10/2015 (Ex. 37).)

As it had since February, Deutsche Bank continued to play a key role in the

offering.  Deutsche Bank's New York syndicate desk immediately notified investors that it

was taking orders.  (Bloomberg Message from Deutsche New York Syndicate, Apr. 21, 2015

(Ex. 38).) ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ The Spanish bank BBVA

also accounted for a major portion of the bonds issued in April.  (*Deutsche Bank and*

*Marathon, Behind Kicillof's Debt Placement*, La Política Online, Apr. 22, 2015 (Ex. 40).)  In

all, Argentina sold over $1.4 billion principal amount of BONAR 2024 Bonds in the April

2015 issuance, the majority of which was placed by Deutsche Bank.  (*Id.*; *see also* Ministry of

the Economy Press Release, "Results of BONAR 2024 tender" (Ex. 41).)

Argentina tried to create a false appearance that the bonds were offered

exclusively within the Republic of Argentina, even though affiliates of international banks

were directly involved in placing almost the entire issuance internationally.  As an example,

Argentina announced that orders could only be placed through a lengthy list of eligible

institutional purchasers in Argentina—but the available evidence shows almost all the bonds

in fact were offered and sold to investors outside Argentina.  (Pablo Wende, *Government was

able to place US$ 1.415 billion (but paid almost 9% per year)*, Ámbito Financiero, Apr. 22,

2015 (Ex. 42); Esteban Rafele, *At high rates, Argentina covered 50% of key debt that will

come due in October*, Cronista, Apr. 24, 2015 (Ex. 43).)  And on the day Argentina accepted

bids for the offering, the Buenos Aires Securities Market, "Merval," issued a notice to its

agents that they could "use transfers to Merval's account [in] NY as a means of payment" for

the BONAR 2024 Bonds.  (Merval Press Release No. 15741, Apr. 21, 2015 (Ex 44).)



One such investor—Marathon Asset Management

(headquartered in New York, with offices in London and Singapore)—accounted for most of

the bonds sold.

According to press reports, Marathon

provided the "initial boost" for the "transaction orchestrated by Deutsche Bank," (*Deutsche

Bank and Marathon, Behind Kicillof's Debt Placement*, La Política Online, Apr. 22, 2015

(Ex. 40)), and Marathon and Deutsche Bank had worked with another New York-based investment firm, Latam Securities, to ensure the success of the offering, (Paola Quain, *Pepa and Szpigiel, the operators behind the "financial summer,"* Perfil, May 3, 2015 (Ex. 45)).

███████████████████████████████████████████████

██████████████ and press reports indicate that investor was Marathon (Ana Baron, *BONAR 24: half of it was reportedly bought by a U.S.-based fund,* Clarín, Apr. 27, 2015 (Ex. 46)).

Contrary to the representation made by Argentina's counsel to the Court that this recent offering was a "purely domestic transaction," (Apr. 22, 2015 Hearing Tr. (Ex. 11) at 11:5), Argentina's leaders have trumpeted the offering as evidence of the Republic's ability to tap into the international markets.  Economy Minister Axel Kicillof gloated:  "It has long been said that Argentina was isolated from the world, without access to the international markets; this [offering] lays that idea to rest."  (*Kicillof: "The bids received for BONAR 24 exceeded expectations,"* Prensa Argentina, Apr. 24, 2015 (Ex. 47).)  Argentina's President, Cristina Fernandez de Kirchner, triumphantly declared that the country had "returned to the capital markets at reasonable rates."  (*CFK: 'We'll Never Honour International Usury Or Scam,'* Buenos Aires Herald, Apr. 28, 2015 (Ex. 48).)  And, along the same lines, the President of Argentina's Central Bank crowed:  "The most important thing is that Argentina has the chance to access the markets."  (*Kicillof: "They must be annoyed",* La Nación, Apr. 23, 2015 (Ex. 49).)  Proving the point, he confirmed that foreign reserves had increased by $1.247 billion, consistent with reports that 90% of the BONAR 2024 Bonds had been

purchased by foreign investors.[3]  (Alejandro Vanoli, Twitter, Apr. 23, 2015, 11:24 AM, https://twitter.com/VanoliAlejandro/status/591306648511246337 (Ex. 50).)

Indeed, the Republic had targeted international investors.  Argentina had previously enacted regulations that made it easier for international investors to receive their newly purchased bonds.  (*See* CNV Regulations (Ex. 51), Art. 70 (requiring that purchasing agents hold newly purchased securities denominated in foreign currency in an account for 72 hours before they can be transferred to the beneficial owners); CNV Resolution, Dec. 10 2014 (Ex. 52), at Art. 1 (providing an exception to the 72-hour requirement purchases that are part of "primary placement processes," such as new bond issuances).)  According to press reports, the offering "built up steam" when Argentina enacted an exception to the capital controls regulations, opening a "channel that would open up access to bids in dollars from abroad." (Ignacio Olivero Doll, *Bonar: issuance built up steam thanks to the dollars from abroad*, Ámbito Financiero, Apr. 22, 2015 (Ex. 53)).

## ARGUMENT

Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend should be freely given when justice so requires.  In *Foman v. Davis*, the Supreme Court explained the Rule's purpose and application:

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. . . . If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

---

[3] Purchases by Argentinians with funds already in Argentina would not have increased Central Bank reserves because all foreign currency in the Argentinian financial system is held by the Central Bank and already accounted for in its reserve figures.

> amendment, futility of amendment, etc. – relief sought should,
> as the rules require, be "freely given."

371 U.S. 178, 182 (1962) (internal citation omitted).  Courts apply a similarly liberal standard

to grant motions to file supplemental pleadings under Rule 15(d).  *See Quaratino v. Tiffany &*

*Co.*, 71 F.3d 58, 66 (2d Cir. 1995) ("[L]eave to file a supplemental pleading should be freely

permitted when the supplemental facts connect it to the original pleading.").

   The Court should grant Plaintiffs leave to amend and supplement their

Complaints to add two new counts:  (1) for specific enforcement of the Equal Treatment

Provision and for injunctive relief with respect to Argentina's BONAR 2024 bonds; and (2)

for specific enforcement of the Equal Treatment Provision and for injunctive relief with

respect to all of Argentina's External Indebtedness.  These two new claims are certainly the

"proper subject of relief."  The Second Circuit has already affirmed this Court's determination

that Argentina's payments on the Exchange Bonds breached the Equal Treatment Provision.

Argentina's BONAR 2024 Bonds and its other External Indebtedness also are subject to the

Equal Treatment Provision, and Argentina can present no reason why it should be allowed to

issue more of these bonds and make payments on these bonds without making a ratable

payment under Plaintiffs' bonds.

   None of the reasons listed by the Supreme Court to justify denying leave to

amend exists here.  There has been no bad faith or dilatory motive on Plaintiffs' part, no

repeated failures to cure deficiencies by amendment and no undue delay or prejudice.

   Argentina will not be prejudiced if the Court allows the amendment of the

Complaints.  The amendments are necessary in light of Argentina's recent violations of the

FAA.  The Second Circuit has explained that the test for prejudice in the context of Rule 15

amendments is "whether the . . . new claim would:  (i) require the opponent to expend

17

significant additional resources to conduct discovery and prepare for trial; [or] (ii)

significantly delay the resolution of the dispute." *Block v. First Blood Assocs.*, 988 F.2d 344,

350 (2d Cir. 1993).  Amendment will not delay ongoing proceedings—this Court has already

granted Plaintiffs' summary judgment on current counts in the current operative complaints.

If Argentina cooperates with discovery, then addressing Plaintiffs' two new counts "will not

involve a great deal of additional discovery."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654

F.2d 843, 856 (2d Cir. 1981) (holding that district court abused its discretion in denying leave

to amend).  And the need for additional discovery arises only because of Argentina's

continued violation of Plaintiffs' contractual rights and its refusal to negotiate.  Thus, the

burden of any additional discovery is a problem of Argentina's own making.

       In any event, "the adverse party's burden of undertaking discovery, standing

alone, does not suffice to warrant denial of a motion to amend a pleading."  *United States for

& on Behalf of Maritime Admin. v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 889

F.2d 1248, 1255 (2d Cir. 1989).  That is particularly true here, where Plaintiffs would be

entitled to the same exact discovery if they filed a new action, rather than amended the

existing complaint.  *See Topps Co. v. Cadbury Stani S.A.I.C.*, No. 99 Civ. 9437 (CSH)

(GWG), 2002 WL 31014833, at *2 (S.D.N.Y. Sept. 10, 2002).  Judicial economy and

common sense thus compel the same conclusion:  Plaintiffs should be permitted to amend

their existing complaints so that the Court can address the "real merits" of Plaintiffs' dispute

with Argentina without the administrative burden of coordinating additional separate actions.

*See Matthew Bender & Co. v. W. Pub. Co.*, No. 94 Civ. 0589 (JSM), 1995 WL 702389, at *3,

*4 (S.D.N.Y. Nov. 28, 1995) ("It would be inefficient to force Bender to commence a

separate suit with respect to the current version of Search Master."); *see also Topps*, 2002 WL

31014833, at *3 ("[T]here will be a loss of judicial economy if Topps is required to initiate a second action . . . .").

Nor can Argentina claim surprise at Plaintiffs' new claims.  Argentina is well aware of Plaintiffs' rights under the Equal Treatment Provision, which have been litigated before this Court, the Second Circuit and the Supreme Court.  *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) (no unfair surprise when party "had knowledge of the facts giving rise to the [claim]" and the party "was well aware" of the underlying basis of the claim).  Indeed, statements by government officials confirm that Argentina's new issuances were designed specifically to frustrate Plaintiffs' efforts to vindicate their rights under the FAA, and to avoid negotiating a resolution with Plaintiffs.  Meanwhile, Argentina has repeatedly stated its intention not to comply with its obligations under the Injunction and Equal Treatment Provision to make payments to Plaintiffs on their bonds.  Having now chosen to issue new External Indebtedness not covered by the existing Injunction, Argentina cannot reasonably claim that it is either surprised or unfairly prejudiced by Plaintiffs' new claims to enforce their rights under the Equal Treatment Provision.

Argentina also cannot argue that Plaintiffs have unduly delayed in bringing this motion.  Plaintiffs did not seek to amend their Complaints when BONAR 2024 Bonds were issued to Repsol because the Injunction was not yet in effect, and did not seek to amend in light of Argentina's small international offering in December 2014 because Plaintiffs hoped that Argentina might negotiate in good faith after the RUFO clause expired on December 31, 2014.  It has turned out, unfortunately, that RUFO was just a convenient pretext for Argentina's refusal to negotiate and nothing changed when RUFO expired.

3072013.1

Argentina has demonstrated that it intends to continue to issue more External Indebtedness—including BONAR 2024 Bonds—to tap the "international [credit] markets," and that it will continue to make payments on those bonds without making payments to Plaintiffs as required by the Equal Treatment Provision.  It is therefore in the interest of justice to permit Plaintiffs to amend their Complaints in response to Argentina's recent actions and statements, and to seek specific performance of Argentina's obligations under the Equal Treatment Provision with respect to the BONAR 2024 Bonds and any other External Indebtedness issued by the Republic.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Leave

to Amend and Supplement the Complaints in these actions.

Dated:   New York, New York
         May 11, 2015

                                        Respectfully Submitted,

                                        FRIEDMAN KAPLAN SEILER &
                                          ADELMAN LLP


                                        _Edward A. Friedman_
                                        _____
                                        Edward A. Friedman (efriedman@fklaw.com)
                                        Daniel B. Rapport (drapport@fklaw.com)
                                        Marc G. Farris (mfarris@fklaw.com)
                                        7 Times Square
                                        New York, New York  10036-6516
                                        (212) 833-1100

                                        _Attorneys for Plaintiffs_

21