UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AURELIUS CAPITAL MASTER, LTD.
and ACP MASTER, LTD.,

                              Plaintiffs,

              - against -

THE REPUBLIC OF ARGENTINA,

                              Defendant.

---

09 Civ. 8757 (TPG)

ECF Case

**SECOND AMENDED
AND SUPPLEMENTAL
COMPLAINT**

Aurelius Capital Master, Ltd. and ACP Master, Ltd., by their attorneys,

Friedman Kaplan Seiler & Adelman LLP, allege as follows:

**Nature of the Action**

1.      Aurelius Capital Master, Ltd. and ACP Master, Ltd. file this

Second Amended and Supplemental Complaint for the purpose of adding further

allegations and claims concerning bonds that are subject to the Equal Treatment

Provision of the Fiscal Agency Agreement pursuant to which the Republic of Argentina

("Argentina") issued the defaulted bonds held by Plaintiffs in this action.  In this

pleading, Plaintiffs are asserting two additional claims for declaratory and injunctive

relief.  The two new claims concern the BONAR 2024 Bonds and Argentina's other

existing and future External Indebtedness (other than the Exchange Bonds which are

already the subject of declaratory and injunctive relief issued by this Court).  Plaintiffs

are requesting: (i) a declaratory judgment that the BONAR 2024 Bonds are External

Indebtedness within the meaning of the Fiscal Agency Agreement, and (ii) specific

performance of the Republic's obligations under the Equal Treatment Provision in the

3071969.1

Fiscal Agency Agreement by preliminarily and permanently enjoining the Republic from making payments of interest and/or principal on existing and future BONAR 2024 Bonds and other External Indebtedness unless a "Ratable Payment" is made in respect of Plaintiffs' defaulted bonds.

2.     This is an action for breach of contract.

3.     Aurelius Capital Master, Ltd. is the beneficial owner of $19,750,000 in original principal amount of debt securities, as more particularly described below, issued by the Republic of Argentina pursuant to a Fiscal Agency Agreement between the Republic of Argentina and Bankers Trust Company, as Fiscal Agent, dated as of October 19, 1994 (the "Fiscal Agency Agreement," or "FAA"), together with all accrued and unpaid interest thereon, including capitalized interest. Deutsche Bank is now the successor fiscal agent under the Fiscal Agency Agreement.  A copy of the Fiscal Agency Agreement is annexed hereto as Exhibit 1.

4.     ACP Master, Ltd. is the beneficial owner of $10,200,000 in principal amount of debt securities, as more particularly described below, issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, together with all accrued and unpaid interest thereon, including capitalized interest.

5.     On December 24, 2001, the Republic of Argentina declared a moratorium on the payment of principal and interest with respect to all of its external debt, including the debt securities issued pursuant to the Fiscal Agency Agreement that are beneficially owned by plaintiffs.  Since December 24, 2001, the Republic of Argentina has failed to make any payments of principal or interest on such debt securities, although such payments have been due and payable.

6.      The failure of the Republic of Argentina to pay principal and interest on the debt securities it issued pursuant to the Fiscal Agency Agreement when due and the declaration of a moratorium on the payment of amounts due on such debt securities each constitute an event of default under the Fiscal Agency Agreement and under the Global Securities evidencing the obligations of the Republic of Argentina respecting such debt securities.

7.      The defaults of the Republic of Argentina entitled plaintiffs to accelerate, and plaintiffs have accelerated, the obligation of the Republic of Argentina to pay the entire principal amounts of the debt securities issued pursuant to the Fiscal Agency Agreement that are beneficially owned by plaintiffs and that have not yet reached maturity according to their original terms.

8.      Accordingly, plaintiffs bring this action, and in particular their First Claim for Relief, to enforce their contractual right to immediate payment by the Republic of Argentina of the entire principal amount of the debt securities (as listed below) issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement that are beneficially owned by plaintiffs, together with all accrued and unpaid interest thereon, including capitalized interest.  By order dated March 13, 2012, the Court entered summary judgment in favor of plaintiffs on their First Claim for Relief for principal and all accrued and unpaid interest, including capitalized interest due.

9.      This action also seeks relief based on the Republic of Argentina's continuing breach of the Equal Treatment Provision of the Fiscal Agency Agreement, section 1(c) of the Fiscal Agency Agreement, which provides for equal treatment in terms of rank and priority of payment for holders of the bonds issued under the Fiscal Agency

3

Agreement with respect to any unsecured and unsubordinated External Indebtedness as defined in the Fiscal Agency Agreement (the "Equal Treatment Provision").

10.     Under color of Law 26,017 passed in 2005 and Law 26,547 passed in 2009, the Republic of Argentina issued bonds in its 2005 and 2010 Bond Exchanges with payment obligations that rank higher than those issued under the Fiscal Agency Agreement and held by plaintiffs.  The bonds issued in the 2005 and 2010 Bond Exchanges are External Indebtedness.  The Republic of Argentina's issuance of these higher ranking bonds, its continuing payments to the holders of these bonds, while paying nothing to plaintiffs and other bondholders who did not participate in the 2005 and 2010 Bond Exchanges, violate the Equal Treatment Provision of the Fiscal Agency Agreement.

11.     By order dated December 13, 2011, the Court entered summary judgment in favor of plaintiffs on their Second Claim for Relief finding that the Republic had violated the Equal Treatment Provision with respect to the bonds issued in the 2005 and 2010 Bond Exchanges.  To remedy this violation, the Court entered the Amended February 23, 2012 Orders to specifically enforce the Equal Treatment Provision with respect to the bonds issued in the 2005 and 2010 Bond Exchanges.[1]

12.     Beginning in May 2014, the Republic began issuing bonds with the ISIN ARARGE03H413 (the "BONAR 2024 Bonds"), which like the bonds issued in the 2005 and 2010 Bond Exchanges are also External Indebtedness.  The Republic has made payments on the BONAR 2024 Bonds, and on information and belief, it will continue to

---

[1] Specifically, the Amended February 23, 2012 Orders enforce the Equal Treatment Provision with respect to "the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the 'Exchange Bonds')."

make payments on and issue more BONAR 2024 Bonds—all while paying nothing to plaintiffs and other bondholders who did not participate in the 2005 and 2010 Bond Exchanges—in violation of the Equal Treatment Provision.  Accordingly, to remedy this violation and prevent further violations, plaintiffs seek in their Third Claim for Relief specific enforcement of the Equal Treatment Provision with respect to the BONAR 2024 Bonds.

13.     In addition to the bonds issued in the 2005 and 2010 Bond Exchanges and the BONAR 2024 Bonds, the Republic has issued other External Indebtedness, made payments on such External Indebtedness, and on information and belief, it will continue to make payments on and issue more of such External Indebtedness, Plaintiffs also seek in the Fourth Claim for Relief specific enforcement of the Equal Treatment Provision with respect to all External Indebtedness.

**Parties**

14.     Plaintiff Aurelius Capital Master, Ltd. is an exempted company with limited liability incorporated in the Cayman Islands.

15.     Plaintiff ACP Master, Ltd. is an exempted company with limited liability incorporated in the Cayman Islands.

16.     Defendant the Republic of Argentina is a foreign state as defined in 28 U.S.C. § 1603(a).

**Jurisdiction and Venue**

17.     This Court has jurisdiction pursuant to 28 U.S.C. § 1330.  The Republic of Argentina has explicitly and unconditionally waived sovereign immunity with respect to actions arising out of or based on the securities issued pursuant to the Fiscal Agency Agreement, or arising out of or based on the Fiscal Agency Agreement

itself, by holders of securities issued thereunder.  The Republic of Argentina is therefore

not entitled to immunity under 28 U.S.C. §§ 1605-1607 or under any applicable

international agreement.

18.     In addition, the Republic of Argentina consented in the Fiscal

Agency Agreement to submit to the jurisdiction of this Court in respect of actions arising

out of or based on the securities issued pursuant to the Fiscal Agency Agreement, or

arising out of or based on the Fiscal Agency Agreement itself, by holders of securities

issued thereunder.  Pursuant to Section 22 of the Fiscal Agency Agreement, the Republic

of Argentina appointed Banco de la Nación Argentina, which currently maintains an

office at 225 Park Avenue, New York, New York 10169, as its authorized agent for

service of process.  Section 23 of the Fiscal Agency Agreement provides that the Fiscal

Agency Agreement shall be "governed by, and interpreted in accordance with, the laws

of the State of New York."

19.     Venue is proper in this district by agreement of the parties and

pursuant to 28 U.S.C. § 1391(f).

## Factual Allegations

***The Fiscal Agency Agreement***

20.     The Republic of Argentina entered into the Fiscal Agency

Agreement as of October 19, 1994.  Exhibit A to the Fiscal Agency Agreement is a Form

of Registered Security that states the terms of Global Securities issued by the Republic of

Argentina pursuant to the Fiscal Agency Agreement, including Global Securities

evidencing the obligations of the Republic of Argentina in respect of the debt securities

that are beneficially owned by plaintiffs.  Section 1(c) of the Fiscal Agency Agreement

and the Form of Registered Security state that securities issued in accordance with the

6

3071969.1

terms of that agreement, subject to certain specified permissible liens, "will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic."

21.     Each of the debt securities that is the subject of this action constitutes a Series of Securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement.  Under section 12(a) of the Fiscal Agency Agreement, an Event of Default occurs if:

> the Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days.

22.     Under section 12(d) of the Fiscal Agency Agreement, an Event of Default occurs if:

> a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic.

23.     The Form of Registered Security incorporates by reference the definition of an Event of Default set forth in the Fiscal Agency Agreement and quoted in part in paragraphs 21 and 22 above.

24.     Section 12 of the Fiscal Agency Agreement provides that if an Event of Default pursuant to section 12(a) or 12(d) with respect to the Securities of any Series has occurred and is continuing,

> each holder of Securities of such Series may by . . . notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all of the Securities of such Series shall have been cured . . . .

The Global Securities contain substantially the same passage.

*The Debt Securities Owned by Plaintiffs*

      25.    Aurelius Capital Master, Ltd., is the beneficial owner of the following debt securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, in the principal amounts stated:

      (a)    $2,000,000 in original principal amount of the Global Bonds due June 19, 2018, bearing interest at 12.25%, ISIN No. US040114GG96.  The Global Bonds were issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001.

      (b)    $17,750,000 in original principal amount of the Global Bonds due June 19, 2031, bearing interest at 12%, ISIN No. US040114GH79.  The Global Bonds were issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001.

      26.    ACP Master, Ltd. is the beneficial owner of the following debt securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, in the principal amounts stated:

      (a)    $7,200,000 in original principal amount of the Global Bonds due June 19, 2018, bearing interest at 12.25%, ISIN No. US040114GG96.  The Global Bonds were issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001.

      (b)    $3,000,000 in original principal amount of the Global Bonds due June 19, 2031, bearing interest at 12%, ISIN No. US040114GH79.  The Global Bonds were issued pursuant to the Fiscal Agency Agreement and a prospectus supplement dated May 28, 2001.

3071969.1

27.     The $19,750,000 in original principal amount of debt securities beneficially owned by Aurelius Capital Master, Ltd., as described in paragraph 25 above, and the $10,200,000 in original principal amount of debt securities beneficially owned by ACP Master, Ltd., as described in paragraph 26 above, are in addition to, and separate and distinct from, the debt securities beneficially owned by Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., ACP Master, Ltd., and Aurelius Opportunities Fund II, LLC, that are the subject of *Aurelius Capital Partners, LP and Aurelius Capital Master, Ltd.* v. *Republic of Argentina,* No. 07 Civ. 2715 (TPG) (S.D.N.Y.) (judgment entered Apr. 28, 2008), *Aurelius Capital Partners, LP and Aurelius Capital Master, Ltd.* v. *Republic of Argentina,* No. 07 Civ. 11327 (TPG) (S.D.N.Y.) (judgment entered June 13, 2008), *Aurelius Capital Master, Ltd. and ACP Master, Ltd.* v. *Republic of Argentina,* No. 09 Civ. 10620 (TPG) (S.D.N.Y.), *Aurelius Opportunities Fund II, LLC and Aurelius Capital Master, Ltd.* v. *Republic of Argentina,* No. 10 Civ. 1602 (TPG) (S.D.N.Y.), *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC* v. *Republic of Argentina,* No. 10 Civ. 3507 (TPG) (S.D.N.Y.), *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC* v. *Republic of Argentina,* No. 10 Civ. 3970 (TPG) (S.D.N.Y.), and *Aurelius Capital Master, Ltd. and Aurelius Opportunities Fund II, LLC* v. *Republic of Argentina,* No. 10 Civ. 8339 (TPG) (S.D.N.Y.).

**The Events of Default**

28.     As set forth above, on December 24, 2001, the Republic of Argentina declared a moratorium on the payment of principal and interest with respect to all of its external debt.  The declaration of such a moratorium constituted an Event of Default under section 12(d) of the Fiscal Agency Agreement (and under the Global Securities) with respect to the debt securities issued by the Republic of Argentina

pursuant to the Fiscal Agency Agreement, including the debt securities beneficially owned by plaintiffs.  That Event of Default is continuing.

29.    As set forth above, since the declaration of that moratorium by the Republic of Argentina, the Republic of Argentina has failed to make any payments of principal or interest on the debt securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement, including the debt securities beneficially owned by plaintiffs, although payments of interest on the debt securities have been due and payable. That failure to pay interest when due or within thirty days thereafter constituted an Event of Default under section 12(a) of the Fiscal Agency Agreement (and under the Global Securities) with respect to such debt securities.  That Event of Default is continuing.

### The Notice of Acceleration

30.    By Notice of Acceleration dated October 14, 2009, plaintiffs declared the principal amounts (as listed in paragraphs 25 and 26 hereof) of the debt securities that are beneficially owned by plaintiffs to be immediately due and payable pursuant to the Fiscal Agency Agreement and the related Global Securities.  That notice was delivered to the Fiscal Agent on October 14, 2009, and pursuant to section 12 of the Fiscal Agency Agreement was effective immediately.  Accordingly, the entire principal amounts of the debt securities that are beneficially owned by plaintiffs, together with all accrued and unpaid interest thereon, including capitalized interest, are currently due and payable.

31.    Plaintiffs have been authorized to issue the Notice of Acceleration described above, and to institute and prosecute this litigation, pursuant to authorizations received from Goldman, Sachs & Co., the participant holding the interests of Aurelius Capital Master, Ltd. and ACP Master, Ltd. in the debt securities at issue in this action.

10

Goldman, Sachs & Co., in turn, granted such authorizations pursuant to authorizations received by Goldman, Sachs & Co. from Cede & Co., the holder of record of such debt securities and the nominee of the Depository Trust Company, depository for such debt securities.

32.     In any event, the Republic of Argentina has agreed to waive objections based on a beneficial owner's alleged lack of authorization to take action under the Fiscal Agency Agreements where a plaintiff provides certain evidence that Aurelius Capital Master, Ltd. and ACP Master, Ltd. are prepared to provide in this action.  *See Million Air Corp.* v. *Republic of Argentina*, No. 03 Civ. 1048 (TPG), 2005 WL 2656126 (S.D.N.Y. Oct. 17, 2005).  Aurelius Capital Master, Ltd. and ACP Master, Ltd. therefore need not demonstrate that they have obtained authorization to take action pursuant to the Fiscal Agency Agreements and the related documentation governing the debt securities at issue in this action.

### *The Republic of Argentina's Violations of the Equal Treatment Provision*

33.     The Fiscal Agency Agreement contains an Equal Treatment Provision which states:

> The Securities will constitute . . . direct, unconditional, unsecured and unsubordinated obligations of the Republic . . . .  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).

 Fiscal Agency Agreement at § 1(c) (emphasis supplied).

34.     As the Second Circuit has held, the first sentence of the Equal Treatment Provision "prohibits Argentina, as bond *issuer*, from formally subordinating the bonds by issuing superior debt. The second sentence . . . prohibits Argentina, as bond

*payor*, from paying on other bonds without paying on the FAA Bonds."   *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 259 (2d Cir. 2012).

35.     In 2005, the Republic of Argentina restructured its debt by offering a bond exchange to all holders of non-performing external debt (the "2005 Bond Exchange").

36.     The Bonds issued in the 2005 Bond Exchange (the "2005 Bonds") began paying interest in 2005.  The Republic of Argentina has paid all subsequent payments due on the 2005 Bonds to date.

37.     Upon information and belief, the Republic of Argentina intends to continue making all payments on the 2005 Bonds as they become due.

38.     To facilitate the 2005 Bond Exchange, the Senate and Chamber of Deputies of the Argentine Nation passed Law 26,017 ("the Lock Law") on February 9, 2005.  A copy of Law 26,017 and a certified translation are annexed hereto as Exhibit 2.

39.     In its January 28, 2010 Prospectus, the Republic of Argentina explained the purpose and effect of the Lock Law as follows:

> In an effort to reassure tendering Bondholders and increase the level of participation on the 2005 Debt Exchange, Congress subsequently passed Law 26,017, known as the "Lock Law".  The Lock Law prohibited the Executive Branch from reopening the 2005 Debt Exchange without Congressional approval **and also prohibited any type of settlement involving untendered securities that were eligible to participate in the 2005 Debt Exchange.**

 (Emphasis supplied.)

40.     The assurances to tendering bondholders provided by Law 26,017 facilitated the Republic of Argentina's completion of the 2005 Bond Exchange.

12

41.     Article 1 of Law 26,017 provided that Bonds not tendered in the 2005 Bond Exchange would be subject to the following provisions:

a.      Article 2 – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

b.      Article 3 - The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

c.      Article 4 - The national Executive Power must – within the framework of the terms of the issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions – order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

42.     In 2009, in preparation for another bond exchange in 2010 (the "2010 Bond Exchange"), the Senate and Chamber of Deputies of the Argentine Nation passed Law No. 26,547 which, among other things, suspended the Lock Law for purposes of the 2010 Exchange.  A copy of Law 26,547 and a certified translation are annexed hereto as Exhibit 3.

43.     Law 26,547 provided:

a.      Article 1.  The operation of Articles 2, 3, and 4 of Law No. 26,017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

b.      Article 3.  The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

13

      c.      Article 5.  It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

44.      The Bonds issued in the 2010 Bond Exchange (the "2010 Bonds") began paying interest in December 2010.

45.      Upon information and belief, the Republic of Argentina intends to make all payments on the 2010 Bonds as they become due.

46.      Holders of approximately 9% of the Republic of Argentina's defaulted bonds did not participate in the 2005 or 2010 Bond Exchanges.

47.      In 2013, Argentina enacted Law 26,886 purportedly to reopen the bond exchange on the same terms that had been repeatedly rejected by Plaintiffs.  While Law 26,886 suspends certain provisions of the Lock Law, this suspension has no practical effect, because Law 26,886 "forbid[s]" Argentina from paying Plaintiffs according to their contract, and only allows Argentina to pay Plaintiffs on terms that are no "more favorable" than the terms of the original Exchange Offer.  A copy of Law 26,886 and a certified translation are annexed hereto as Exhibit 4.

48.      Plaintiffs did not own defaulted Argentine bonds at the time of the 2005 Bond Exchange and did not participate in the 2010 Bond Exchange.

49.      Since May 2014, the Republic has issued approximately $5.3 billion of BONAR 2024 Bonds.

50.      In May 2014, the Republic initially offered and eventually issued $3.25 billion of BONAR 2024 Bonds to the Spanish oil company, Repsol S.A., to settle

14

claims Repsol had asserted against the Republic, including claims pending in New York and Spanish courts.

51.     Argentina structured the offer to facilitate the issuance of the BONAR 2024s to Repsol and other international investors.  As part of the settlement agreement with Repsol, Argentina agreed that the BONAR 2024 Bonds would clear through Euroclear, which would make the bonds more attractive to international investors.  JPMorgan also conducted a "shadow bookbuilding process" to secure investors interested in purchasing the newly-issued BONAR 2024 Bonds immediately after Repsol received those bonds.  Accordingly, just days after the Republic delivered the BONAR 2024 Bonds, Repsol sold them all to JPMorgan Securities PLC, JPMorgan's London-based broker-dealer.  Since their original issuance, the BONAR 2024 Bonds have been actively traded in the over-the-counter market in the United States.

52.     In December, 2014, the Republic issued approximately $650 million additional BONAR 2024 Bonds.  Approximately $380 million of these BONAR 2024 Bonds offered in December 2014 were issued in exchange for BODEN 2015 bonds, with the rest a new issuance of bonds.  ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

53.     In February 2015, Argentina planned to issue more BONAR 2024 Bonds through an underwriting by JPMorgan and Deutsche Bank.  ██████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

██    ████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

██    ████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

56.    Argentina "suspended" the issuance on February 26, 2015, after

this Court compelled JPMorgan and Deutsche Bank to provide discovery about the

transaction, ███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████Argentina resumed the issuance process by announcing

on April 21 that it would issue more BONAR 2024 Bonds, in a transaction that would settle just two days later.

57.    As it had since February, Deutsche Bank continued to play a key role in the offering.  Deutsche Bank's New York syndicate desk immediately notified investors that it was taking orders.  ███████████████████████████████

████████████████████████████████████████████████████████████████

██████  ██████████████████████████████████████████████████

██████████████████████  The Spanish bank BBVA also accounted for a major portion of the BONAR 2024 Bonds issued in April.  In all, Argentina sold over $1.4 billion principal amount of BONAR 2024 Bonds in the April 2015 issuance, the majority of which was placed by Deutsche Bank.

58.    Argentina tried to create a false appearance that the BONAR 2024 Bonds issued in April 2015 were offered exclusively within the Republic of Argentina.  As an example, Argentina announced that orders could only be placed through a lengthy list of eligible institutional purchasers in Argentina.

59.    In reality, affiliates of international banks purchased and re-sold internationally almost the entire offering.

60.    Notwithstanding these efforts to disguise the nature of the April 2015 issuance, Argentina targeted international investors and took regulatory steps to encourage their participation.  For example, Argentina enacted regulatory changes which made it easier for foreign purchasers to receive their bonds.  Moreover, on the day Argentina accepted bids for the offering, the Buenos Aires Securities Market, "Merval," issued a notice to its agents that they could "use transfers to Merval's account [in] NY as

a means of payment" for the BONAR 2024 Bonds.  Almost all of the bonds were sold to international investors.  ███████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ Argentina's leaders then publicly trumpeted the offering as evidence of the Republic's ability to tap into the international markets.

62. In violation of its obligations under the Equal Treatment Provision of the Fiscal Agency Agreement, Argentina made its first payment on the BONAR 2024 Bonds on November 7, 2014, and its second payment on May 7, 2015.

62. Upon information and belief, Argentina intends to make all payments due under the terms of the BONAR 2024 Bonds.

63. Upon information and belief, Argentina intends to issue additional External Indebtedness in the future.

64. Upon information and belief, Argentina intends to make all payments due under the terms of any other existing or future External Indebtedness.

65. Upon information and belief, Argentina will continue to pay nothing to plaintiffs.

66. Plaintiffs and the other non-tendering bondholders have been damaged as a result of these violations and will continue to be damaged by the continuing violations of the Equal Treatment Provision.

*     *     *

### First Claim for Relief
**(Breach of Contract)**

67.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 66 herein.

68.    By reason of the foregoing, the Republic of Argentina is in breach of its contractual obligations to plaintiffs under the Fiscal Agency Agreement (including the Form of Registered Security) and under the Global Securities evidencing the Republic of Argentina's obligations with respect to the debt securities beneficially owned by plaintiffs.

69.    By reason of the foregoing, the Republic of Argentina is liable to plaintiffs in an amount to be determined at trial.

### Second Claim for Relief
**(For Specific Enforcement of the Equal Treatment Provision and**
**for Injunctive Relief With Respect to the 2005 Bonds and 2010 Bonds)**

70.    Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 69 herein.

71.    Pursuant to section 1(c) of the Fiscal Agency Agreement, the Republic of Argentina provided that its bonds issued pursuant to the Fiscal Agency Agreement would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank <u>pari passu</u> and without preference among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

72.    The Republic of Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to

plaintiffs.  Any payment of External Indebtedness where the Republic of Argentina does not also make a ratable payment at the same time to plaintiffs constitutes a violation of the Equal Treatment Provision.

73.     Through the passage of Law 26,017, the Republic of Argentina issued a new series of bonds with payment obligations that rank higher than those held by plaintiffs and other non-tendering bondholders in violation of the Equal Treatment Provision.

74.     Through the passage of Law 26,547 the Republic of Argentina issued a new series of bonds with payment obligations that rank higher than those held by plaintiffs and other non-tendering bondholders in violation of the Equal Treatment Provision.

75.     The bonds issued in the 2005 and 2010 Bond Exchanges are External Indebtedness and their issuance violated the Equal Treatment Provision.

76.     The Republic of Argentina's past payments to the holders of 2005 Bonds, while paying nothing to plaintiffs and other non-tendering bondholders, violated the Equal Treatment Provision.

77.     The Republic of Argentina's continuing payments to the holders of 2005 Bonds will be a continuing violation of the Equal Treatment Provision.

78.     The Republic of Argentina's past payment to holders of 2010 Bonds, while paying nothing to plaintiffs and other non-tendering bondholders, violated the Equal Treatment Provision.

79.     The Republic of Argentina's continuing payments to holders of 2010 Bonds will be a continuing violation of the Equal Treatment Provision.

20

80.     Plaintiffs have suffered irreparable injury from the Republic of Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring the Republic of Argentina to pay plaintiffs ratably whenever it pays interest to the holders of the 2005 or 2010 Bonds.

81.     Remedies available at law are inadequate to compensate for such injury.

82.     Plaintiffs have performed their part of the contract with the Republic of Argentina.

83.     The Republic of Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

84.     The balance of the equities tips toward the issuance of an injunction.

85.     The public interest would not be disserved by a permanent injunction.

### Third Claim for Relief
**(For Specific Enforcement of the Equal Treatment Provision and for Injunctive Relief With Respect to the BONAR 2024 Bonds)**

86.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 85 herein.

87.     Pursuant to section 1(c) of the Fiscal Agency Agreement, the Republic of Argentina provided that its bonds issued pursuant to the Fiscal Agency Agreement would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank pari passu and without preference among themselves" and that "[t]he payment obligations of the Republic under the

21

Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

88.     The Republic of Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to plaintiffs.  Any payment of External Indebtedness where the Republic of Argentina does not also make a ratable payment at the same time to plaintiffs constitutes a violation of the Equal Treatment Provision.

89.     With the issuance of the BONAR 2024 Bonds, the Republic of Argentina issued a new series of bonds with payment obligations that rank higher than those held by plaintiffs and other non-tendering bondholders in violation of the Equal Treatment Provision.

90.      The BONAR 2024 Bonds are External Indebtedness.  The issuance of the BONAR 2024 Bonds to date and future issuances of these bonds has violated and will violate the Equal Treatment Provision.

91.     The Republic of Argentina's past payments to the holders of the BONAR 2024 Bonds, while paying nothing to plaintiffs and other non-tendering bondholders, violated the Equal Treatment Provision.

92.     The Republic of Argentina's continuing payments to the holders of the BONAR 2024 Bonds will be a continuing violation of the Equal Treatment Provision.

93.     Plaintiffs have suffered irreparable injury from the Republic of Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring the Republic of Argentina to pay plaintiffs ratably whenever it pays interest to

the holders of the BONAR 2024 Bonds (including, for the avoidance of doubt, any bonds with the ISIN ARARGE03H413, whether issued before or after the entry of the injunction) or holders of "Replacement Obligations" (meaning bonds or other obligations issued, whether before or after entry of the injunction, in exchange, substitution, restructuring, refinancing or satisfaction of any BONAR 2024 Bonds or other Replacement Obligations).

94.     Remedies available at law are inadequate to compensate for such injury.

95.     Plaintiffs have performed their part of the contract with the Republic of Argentina.

96.     The Republic of Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

97.     The balance of the equities tips toward the issuance of an injunction.

98.     The public interest would not be disserved by a permanent injunction.

**Fourth Claim for Relief**
**(For Specific Enforcement of the Equal Treatment Provision and**
**for Injunctive Relief With Respect to All External Indebtedness)**

99.     Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 98 herein.

100.     Pursuant to section 1(c) of the Fiscal Agency Agreement, the Republic of Argentina provided that its bonds issued pursuant to the Fiscal Agency Agreement would constitute "direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank <u>pari passu</u> and without preference

23

among themselves" and that "[t]he payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness."

101.    The Republic of Argentina, therefore, may not make any payment of its External Indebtedness without also making a ratable payment at the same time to plaintiffs.  Any payment of External Indebtedness where the Republic of Argentina does not also make a ratable payment at the same time to plaintiffs constitutes a violation of the Equal Treatment Provision.

102.    The Republic of Argentina has issued—and, on information and belief, will issue in the future—External Indebtedness in violation of the Equal Treatment Provision.

103.    The Republic of Argentina's past payments to the holders of External Indebtedness, while paying nothing to plaintiffs and other non-tendering bondholders, violated the Equal Treatment Provision.

104.    The Republic of Argentina's continuing payments to the holders of External Indebtedness—including External Indebtedness that the Republic of Argentina will issue in the future—will be a continuing violation of the Equal Treatment Provision.

105.    Plaintiffs have suffered irreparable injury from the Republic of Argentina's violation of the Equal Treatment Provision and will continue to suffer such injury unless the Court specifically enforces that Provision with a mandatory injunction requiring the Republic of Argentina to pay plaintiffs ratably whenever it pays interest to the holders of External Indebtedness.

106.    Remedies available at law are inadequate to compensate for such injury.

107.    Plaintiffs have performed their part of the contract with the Republic of Argentina.

108.    The Republic of Argentina is capable of performing its obligations pursuant to the Equal Treatment Provision.

109.    The balance of the equities tips toward the issuance of an injunction.

110.    The public interest would not be disserved by a permanent injunction.

WHEREFORE, plaintiffs request the entry of judgment against defendant as follows:

A.    On the First Claim for Relief, awarding Aurelius Capital Master, Ltd. an amount equal to the principal amount of the debt securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement that are beneficially owned by Aurelius Capital Master, Ltd., together with all accrued and unpaid interest, including capitalized interest, due under the terms of such debt securities; and

B.    On the First Claim for Relief, awarding ACP Master, Ltd. an amount equal to the principal amount of the debt securities issued by the Republic of Argentina pursuant to the Fiscal Agency Agreement that are beneficially owned by ACP Master, Ltd., together with all accrued and unpaid interest, including capitalized interest, due under the terms of such debt securities; and

C. On the Second Claim for Relief, specifically enforcing the Equal Treatment Provision with respect to the 2005 Bonds and 2010 Bonds;

D. On the Third Claim for Relief, specifically enforcing the Equal Treatment Provision with respect to the BONAR 2024 Bonds;

E. On the Fourth Claim for Relief, specifically enforcing the Equal Treatment Provision with respect to all outstanding External Indebtedness and to all External Indebtedness that the Republic of Argentina will issue in the future; and

F. Awarding plaintiffs the costs and expenses of this action, prejudgment interest, and such other and further relief as this Court deems just and proper.

3071969.1

Dated:   New York, New York
         July 17, 2015

FRIEDMAN KAPLAN SEILER &
ADELMAN LLP

By:

Edward A. Friedman
Daniel B. Rapport
Marc G. Farris
7 Times Square
New York, NY 10036-6516
(212) 833-1100

*Attorneys for Plaintiffs*

# EXHIBIT 1

FISCAL AGENCY AGREEMENT

between

THE REPUBLIC OF ARGENTINA

and

BANKERS TRUST COMPANY, Fiscal Agent

Dated as of October 19, 1994

ARG 0001

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| 1. | Securities Issuable in Series . . . . . . . . . . . . . . | 1 |
| 2. | Appointment of Fiscal Agent; Paying Agents . . . . . . . . | 3 |
| 3. | Authentication . . . . . . . . . . . . . . . . . . | 3 |
| 4. | Registration, Transfers and Exchanges . . . . . . . . . | 4 |
| 5. | Global Securities . . . . . . . . . . . . . . . . | 6 |
| 6. | Payment . . . . . . . . . . . . . . . . . . . | 9 |
| 7. | Additional Amounts . . . . . . . . . . . . . . . . | 11 |
| 8. | Mutilated, Destroyed, Stolen or Lost Certificates . . . . | 11 |
| 9. | Redemption and Purchases . . . . . . . . . . . . . | 12 |
| 10. | Cancellation and Destruction . . . . . . . . . . . . | 14 |
| 11. | Negative Pledge and Covenants . . . . . . . . . . . | 14 |
| 12. | Default; Acceleration of Maturity . . . . . . . . . . | 17 |
| 13. | Limit on Liability; Acceptance of Appointment . . . . . . | 19 |
| 14. | Expenses and Indemnity . . . . . . . . . . . . . . | 20 |
| 15. | Successor Fiscal Agent . . . . . . . . . . . . . . | 20 |
| 16. | Meetings of Holders of Securities; Modifications . . . . . | 22 |
| 17. | Further Issues . . . . . . . . . . . . . . . . . | 26 |
| 18. | Reports . . . . . . . . . . . . . . . . . . . | 26 |
| 19. | Forwarding of Notice; Inquiries . . . . . . . . . . . | 27 |
| 20. | Listings . . . . . . . . . . . . . . . . . . . | 27 |
| 21. | Notices . . . . . . . . . . . . . . . . . . . | 27 |
| 22. | Consent to Service; Jurisdiction . . . . . . . . . . . | 28 |
| 23. | Governing Law and Counterparts . . . . . . . . . . . | 29 |

ARG 0002

Page

24.   Headings . . . . . . . . . . . . . . . . . . . . . . . . .  29

      Exhibit A - Form of Registered Security

-ii-

ARG 0003

THE REPUBLIC OF ARGENTINA


FISCAL AGENCY AGREEMENT dated as of October 19, 1994, between The Republic of Argentina (the "Republic") and Bankers Trust Company, a New York banking corporation, as fiscal agent.

1.   Securities Issuable in Series.   (a)  The Republic may issue its notes, securities, debentures or other evidences of indebtedness (the "Securities") in separate series from time to time (each such series of Securities being hereinafter referred to as a "Series" or the "Securities of a Series").  The aggregate principal amount of the Securities of all Series which may be authenticated and delivered under this Agreement and which may be outstanding at any time is not limited by this Agreement.   The text of the Securities of a Series delivered to the Fiscal Agent (as hereinafter defined) for authentication on original issuance pursuant to Section 3 of this Agreement shall establish (i) the specific designation of the Securities of such Series (which shall distinguish the Securities of such Series from all other Series); (ii) any limit on the aggregate principal amount of the Securities of such Series which may be authenticated and delivered under this Agreement (except for Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Securities of such Series pursuant to the provisions of this Agreement or of the Securities of such Series); (iii) the price or prices (expressed as a percentage of the aggregate principal amount thereof) at which the Securities of such Series will be issued; (iv) the date or dates on which the principal and premium, if any, of the Securities of such Series is payable; (v) the rate or rates (which may be fixed or floating) per annum at which the Securities of such Series shall bear interest, if any, the date or dates from which such interest, if any, shall accrue, the interest payment dates on which such interest shall be payable and the record dates for the determination of holders of the Securities of such Series to whom interest is payable; (vi) the place or places where the principal of, and premium, if any, and interest on the Securities of such Series are payable; (vii) the price or prices at which, the period or periods within which and the terms and conditions upon which Securities of such Series may be redeemed, in whole or in part, at the option of the Republic or otherwise; (viii) the obligation, if any, of the Republic to redeem, purchase or repay Securities of such Series pursuant to any sinking fund or analogous provisions and the price or prices at which, the

ARG 0004

period or periods within which, and the terms and conditions
upon which Securities of such Series shall be redeemed,
purchased or repaid, in whole or in part, pursuant to such
obligation; (ix) the minimum denomination and any multiples
thereof of the Securities of such Series, which may be in
U.S. dollars, another foreign currency, units of two or more
currencies or amounts determined by reference to an index;
(x) the currency or currencies in which the principal,
premium, if any, or interest on such Securities may be
payable; (xi) the manner in which the amount of payments of
principal, premium, if any, or interest on such Securities
is to be determined and if such determination is to be made
with reference to any index; (xii) any covenants or
agreements of the Republic and events which give rise to the
right of a holder of a Security of such Series to accelerate
the maturity of such Security other than such covenants,
agreements or events specified herein; and (xiii) any other
terms of the Securities of such Series.  Securities may be
issuable pursuant to warrants (if so provided in the text of
such Securities) and the Fiscal Agent may act as warrant
agent or in any similar capacity in connection therewith.

        (b)  The Securities of a Series are to be issued
in fully registered form only, without interest coupons, and
will be issuable in the denominations specified in the text
of the Securities of such Series, substantially in the form
of Exhibit A hereto ("registered Securities").  The
Securities of a Series may also have such additional
provisions, omissions, variations or substitutions as are
not inconsistent with the provisions of this Agreement, and
may have such letters, numbers or other marks of
identification and such legends or endorsements placed
thereon as may be required to comply with any law or with
any rules made pursuant thereto or with the rules of any
securities exchange or governmental agency or as may,
consistent herewith, be determined by the officials
executing such Securities, as evidenced by their execution
of such Securities.  All Securities of a particular Series
shall be otherwise substantially identical except as to
denomination and as provided herein.

        (c)  The Securities will constitute (except as
provided in Section 11 below) direct, unconditional,
unsecured and unsubordinated obligations of the Republic and
shall at all times rank pari passu and without any
preference among themselves.  The payment obligations of the
Republic under the Securities shall at all times rank at
least equally with all its other present and future
unsecured and unsubordinated External Indebtedness (as
defined in this Agreement).

2

ARG 0005

2.   Appointment of Fiscal Agent; Paying Agents.
(a)   The Republic hereby appoints Bankers Trust Company, at
present having its office at 4 Albany Street, New York, New
York 10006 as fiscal agent, transfer agent, registrar and
principal paying agent of the Republic for the Securities,
upon the terms and conditions set forth herein.  Bankers
Trust Company accepts such appointments, and along with its
successors as such fiscal agent, is hereinafter referred to
as the "Fiscal Agent".  The Republic reserves the right to
appoint different fiscal agents for different series of
securities.

(b)   The Republic may appoint one or more
additional agents (hereinafter called a "Paying Agent" or
the "Paying Agents") for the payment (subject to the
applicable laws and regulations) of the applicable payment
of principal, premium, if any, and interest or Additional
Amounts (as defined in Section 7 hereof), if any, on the
Securities at such place or places as the Republic may
determine pursuant to an agreement (each, a "Paying Agency
Agreement"); provided that the Republic will maintain at all
times until no Security is outstanding a Paying Agent (who
may be the Fiscal Agent) in the Borough of Manhattan, The
City of New York.  The Republic will keep the Fiscal Agent
informed as to the name, address, and telephone and
facsimile numbers of each Paying Agent appointed by it and
will notify the Fiscal Agent of the resignation of any
Paying Agent.  The Fiscal Agent shall arrange with each
Paying Agent for the payment, as provided herein, of the
principal and interest or Additional Amounts, if any, on the
Securities on terms previously approved in writing by the
Republic (further references herein to principal and
interest shall be deemed to also refer to any Additional
Amounts).

3.   Authentication.  (a)  The Fiscal Agent shall,
upon delivery of the Securities to it by the Republic, and a
written order or orders to authenticate and deliver
Securities in a stated aggregate principal amount, (i)
authenticate and register not more than said aggregate
principal amount of Securities and deliver them in
accordance with the written order or orders of the Republic
and (ii) thereafter authenticate and register Securities and
deliver them in accordance with the provisions of Sections
4, 5 and 9 of this Agreement.  The total principal amount of
the Securities to be issued and outstanding at any time
shall not be limited hereby.

(b)   The Fiscal Agent may, with the prior written
consent of the Republic, appoint by an instrument or
instruments in writing one or more agents (which may include

3

itself) for the authentication of Securities of a Series and, with such consent, vary or terminate any such appointment upon written notice and approve any change in the office through which any authenticating agent acts. The Republic (by written notice to the Fiscal Agent and the authenticating agent whose appointment is to be terminated) may also terminate any such appointment at any time. The Fiscal Agent hereby agrees to solicit written acceptances from the entities concerned (in form and substance satisfactory to the Republic) of such appointments. In its acceptance of such appointment, each such authenticating agent shall agree to act as an authenticating agent pursuant to the terms and conditions of this Agreement.

(c)   Until definitive Securities of a Series are prepared, the Republic may execute, and there shall be authenticated and delivered in accordance with the provisions hereof (in lieu of definitive Securities of such Series), temporary Securities of such Series. Such temporary Securities of a Series shall be subject to the same limitations and conditions and entitled to the same rights and benefits as definitive Securities of such Series, except as provided herein or therein. Temporary Securities of a Series shall be exchangeable for definitive Securities of such Series when such definitive Securities are available for delivery; and upon the surrender for exchange of such temporary Securities of a Series, the Republic shall execute and there shall be authenticated and delivered, in accordance with the provisions of Sections 3 and 4 hereof, in exchange for such temporary Securities of a Series, a like aggregate principal amount of definitive Securities of such Series and of like tenor. The Republic shall pay all charges, including (without limitation) stamp and other taxes and governmental charges, incident to any exchange of temporary Securities for definitive Securities. All temporary Securities shall be identified as such and shall describe the right of the holder thereof to effect an exchange for definitive Securities and the manner in which such an exchange may be effected.

4.   Registration, Transfers and Exchanges.   (a) The Fiscal Agent, as agent of the Republic for such purpose, will at all times keep at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, a register or registers for the registration and registration of transfers and exchanges of Securities, in which shall be entered the names and addresses of the registered holders of Securities and the particulars of the Securities held by such registered holders. Subject to Section 5 hereof, upon surrender for transfer of any Security of any Series at said office, the Fiscal Agent shall authenticate, register and

4

deliver in the name of the transferee or transferees a new Security or Securities of any Series for a like aggregate principal amount.  Subject to Section 5 hereof, upon surrender of any Security at said office for exchange, the Fiscal Agent shall authenticate, register and deliver in exchange for such Security a new Security or new Securities of the appropriate authorized denomination(s) and for a like aggregate principal amount in accordance with the provisions of the Securities.

(b)   All new Securities authenticated and delivered by the Fiscal Agent upon registration of transfer or in exchange for Securities of other denominations shall be so dated that neither gain nor loss of interest shall result from such registration of transfer or exchange.

(c)   All Securities presented or surrendered for registration of transfer, exchange or payment shall be accompanied by a written instrument or instruments of transfer in form satisfactory to the Fiscal Agent, duly executed by the registered holder or its attorney duly authorized in writing and with the signatures thereon duly guaranteed by a commercial bank or trust company having its principal office in The City of New York or by a member of the New York Stock Exchange.

(d)   The Fiscal Agent shall not impose any service charge on the registered holder on any such registration, transfer or exchange of Securities; however, the Republic may require of the party requesting such transfer or exchange, as a condition precedent to the exercise of any right of transfer or exchange contained in this Agreement or in the Securities, the payment of a sum sufficient to cover any stamp or other tax or other governmental charge payable in connection therewith.

(e)   The Republic, the Fiscal Agent and any Paying Agent may treat the person in whose name any Security is registered as the owner of such Security for the purpose of receiving payment of principal of and interest on such Security, and all other purposes whatsoever, whether or not such Security be overdue, and none of the Republic, the Fiscal Agent or any Paying Agent shall be affected by any notice to the contrary and any such payment shall be a good and sufficient discharge to the Republic, the Fiscal Agent and any Paying Agent for the amount so paid.

(f)   The Fiscal Agent shall not be required to register any transfer or exchange of Securities during the period from the Regular Record Date (as defined in such Securities) to the Interest Payment Date (as defined in such

5

Securities) and for the purposes of any interest payment made in accordance with Section 6 hereof, such payment shall be made to those persons in whose names the Securities are registered on such Regular Record Date.

5.   <u>Global Securities</u>.  The Securities of any Series may be issued in whole or in part in the form of one or more global securities ("Global Securities") that will be deposited with, or on behalf of, a depositary (the "Depositary") relating to such Series.  Global Securities may be issued only in fully registered form and in either temporary or definitive form.  Unless and until it is exchanged in whole or in part for Securities in definitive form, a Global Security may not be transferred except as a whole by the Depositary for such Global Security to a nominee of such Depositary or by a nominee of such Depositary to such Depositary or another nominee of such Depositary or by such Depositary or any nominee of such Depositary to a successor Depositary or any nominee of such successor.

Upon the issuance of a Global Security, the Depositary for such Global Security will credit on its book-entry registration and transfer system the respective principal amounts of the Securities represented by such Global Security to the accounts of Persons that have accounts with such Depositary ("Participants").  The accounts to be credited shall be designated by the agents or underwriters with respect to such Securities or by the Republic if such Securities are offered and sold directly by the Republic.  Ownership of beneficial interests in a Global Security will be limited to Participants or Persons that may hold interests through Participants.  Ownership of beneficial interests in a Global Security will be shown on, and the transfer of that ownership will be effected only through, records maintained by the applicable Depositary (with respect to interests of Participants) and records of Participants (with respect to interests of Persons who hold through Participants).  Owners of beneficial interests in a Global Security (other than Participants) will not receive written confirmation from the applicable Depositary of their purchase.  Each beneficial owner is expected to receive written confirmation providing details of the transaction, as well as periodic statements of its holdings, from the Depositary (if such beneficial owner is a Participant) or from the Participant through which such beneficial owner entered into the transaction (if such beneficial owner is not a Participant).  The laws of some states require that certain purchasers of securities take physical delivery of such securities in definitive form.  Such limits and such

6

ARG 0009

laws may impair the ability to own, pledge or transfer beneficial interests in a Global Security.

So long as the Depositary for a Global Security, or its nominee, is the registered owner of such Global Security, such Depositary or such nominee, as the case may be, will be considered the sole owner or holder of the Securities represented by such Global Security for all purposes under this Agreement.  Except as specified below or with respect to the terms of Securities of a Series, owners of beneficial interests in a Global Security will not be entitled to have any of the individual Securities represented by such Global Security registered in their names, and will not receive or be entitled to receive physical delivery of any such Securities in definitive form and will not be considered the owners or holders thereof under such Securities or this Agreement.  Accordingly, each Person owning a beneficial interest in a Global Security must rely on the procedures of the Depositary for such Global Security and, if such Person is not a Participant, on the procedures of the Participant through which such Person owns its interest, to exercise any rights of a holder under the Securities or this Agreement.  The Republic understands that under existing industry practices, if the Republic requests any action of holders, or an owner of a beneficial interest in such Global Security desires to take any action which a holder is entitled to take under the Fiscal Agency Agreement, the Depositary for such Global Security would authorize the Participants holding the relevant interests to take such action, and such Participants would authorize beneficial owners owning through such Participants to take such action or would otherwise act upon the instructions of beneficial owners holding through them.

Payments of principal of and any premium and any interest on Securities registered in the name of a Depositary or its nominee will be made to the Depositary or its nominee, as the case may be, as the holder of the Global Security representing such Securities.  None of the Republic, any Paying Agent or the Fiscal Agent, in its capacity as registrar for such Debt Securities, will have any responsibility or liability for any aspect of the records relating to or payments made on account of beneficial interests in a Global Security or for maintaining, supervising or reviewing any records relating to such beneficial interests.

The Republic expects that the Depositary for a series of Securities or its nominee, upon receipt of any payment of principal, premium or interest in respect of a Global Security representing such Securities will credit

ARG 0010

Participants' accounts with payments in amounts proportionate to their respective beneficial interests in the principal amount of such Global Security as shown on the records of such Depositary.  The Republic also expects that payments by Participants to owners of beneficial interests in such Global Security held through such Participants will be governed by standing instructions and customary practices, as is now the case with securities held for the accounts of customers in bearer form or registered in "street name".  Such payments will be the responsibility of such Participants.

If at any time the Depositary notifies the Republic that it is unwilling or unable to continue as Depositary for the Securities, or if the Republic notifies the Depositary that it will no longer continue as Depositary for the Securities, or if at any time the Depositary ceases to be a clearing agency registered under the United States Securities Exchange Act of 1934, as amended, or otherwise ceases to be eligible to be a Depositary, the Republic shall appoint a successor Depositary with respect to such Securities.  If a successor Depositary for such Securities is not appointed by the Republic within 90 days after the Republic receives such notice or becomes aware of such ineligibility, or if the Depositary notifies the Fiscal Agent or the Republic of the acceleration of the indebtedness under the Securities in accordance with the terms of the Securities, the Republic will execute, and the Fiscal Agent upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series), in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

The Republic may at any time and in its sole discretion determine not to have any of the Securities held in the form of Global Securities.  In such event, the Republic will execute, and the Fiscal Agent, upon receipt of such executed definitive Securities will authenticate and deliver, Securities in definitive registered form without coupons, in denominations of U.S.$1,000 and integral multiples thereof (unless some other denomination is specified in terms of the Securities of a Series, in an aggregate principal amount equal to the aggregate principal amount of the Global Securities.

Upon the exchange of the Global Securities for Securities in definitive registered form the Global Securities shall be canceled by the Fiscal Agent.

8

ARG 0011

Securities in definitive registered form issued in exchange
for the Global Securities pursuant to this section shall be
registered in such names as the Depositary, pursuant to
instructions from its direct or indirect participants or
otherwise, shall instruct the Fiscal Agent or the Republic.
The Fiscal Agent shall deliver such Securities in definitive
registered form to or as directed by the persons in whose
names such definitive registered Securities are so
registered and will direct all payments to be made in
respect of such Securities in definitive registered form to
the registered holders thereof on or after such exchange
regardless of whether such exchange occurred after the
record date for such payment.

        All Securities in definitive registered form,
issued upon the exchange of the Global Securities, shall be
valid obligations of the Republic, evidencing the same debt,
and entitled to the same benefits under this Agreement, as
the Global Securities surrendered upon such exchange.

        6.   Payment.  (a)   The Republic will pay to the
Fiscal Agent, the amounts, at the times and for the purposes
set forth herein and in the text of the Securities of a
Series, not later than 1:00 p.m. New York City time to an
account to be specified by the Fiscal Agent, on the day on
which the same shall become due, all amounts to be paid on
the Securities of such Series as required by the terms of
the Securities, and the Republic hereby authorizes and
directs the Fiscal Agent, from the funds so paid to it, to
make payments in respect of the Securities in accordance
with their terms and the provisions set forth below.  If any
date for payment in respect of a Security is not a Business
Day, such payment shall be made on the next following
Business Day.  "Business Day" means a day on which banking
institutions in The City of New York and at the applicable
place of payment are not authorized or obligated by law or
executive order to be closed.  The Fiscal Agent shall
arrange directly with any Paying Agent who may have been
appointed pursuant to the provisions of Section 2 hereof for
the payment from funds so paid by the Republic of the
principal of (and premium, if any) and any interest on the
Securities of such Series as set forth herein and in the
text of said Securities.  Notwithstanding the foregoing,
where the terms of such Securities expressly so provide and
the Republic so notifies the Fiscal Agent the Republic may
provide directly a Paying Agent with funds for the payment
of the principal thereof and premium and interest, if any,
payable thereon under an agreement with respect to such
funds containing substantially the same terms and conditions
set forth in this Section; and the Fiscal Agent shall have

9

ARG 0012

no responsibility with respect to any funds so provided by the Republic to any such Paying Agent.

(b)   All payments with respect to the Global Securities shall be made by the Fiscal Agent to the Depositary in accordance with the regular procedures established from time to time by the Depositary.

(c)   Payment of principal and premium, if any, in respect of Securities in definitive registered form issued pursuant hereto shall be made at the office of the Fiscal Agent in the Borough of Manhattan, The City of New York, or at the office of any Paying Agent appointed by the Republic for such purpose pursuant to this Agreement against surrender of such Securities. Any interest on Securities of a Series shall be paid, unless otherwise provided in the text of the Securities of such Series, to the persons in whose names such Securities are registered on the register maintained for such purposes at the close of business on the record dates designated in the text of the Securities of such Series. If so provided with respect to the Securities of a Series, payments of interest due prior to or on maturity may be made by forwarding by post or otherwise delivering a check to the registered addresses of registered holders of Securities, or, at the option of the Republic, otherwise transferring funds to the registered holders of the Securities. Such check shall be made payable to the order of the registered holder or, in the case of joint registered holders, to the order of all such joint holders (failing instructions from them to the contrary) and shall be sent to the address of that one of such joint holders whose name stands first in the register as one of such joint holders. The Fiscal Agent shall mail or otherwise deliver such checks to the names and addresses of registered holders of Securities sufficiently in advance of the relevant due date for payment that receipt of such checks by registered holders on or before the due date is reasonably assured.

(d)   All money paid to the Fiscal Agent under Section 6(a) of this Agreement shall be held by it in a separate account from the moment when such money is received until the time of actual payment, in trust for the registered holders of Securities to be applied by the Fiscal Agent to payments due on the Securities at the time and in the manner provided for in this Agreement and the Securities. Any money deposited with the Fiscal Agent for the payment in respect of any Security remaining unclaimed for two years after such principal or interest shall have become due and payable shall be repaid to the Republic upon written request without interest, and the registered holder

10

of Security may thereafter look only to the Republic for any payment to which such holder may be entitled.

      7.  <u>Additional Amounts</u>.  All payments of principal, premium, if any, and interest in respect of the Securities by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax (together "Taxes"), unless such withholding or deduction is required by law.  In such event, the Republic shall pay such additional amounts ("Additional Amounts") as will result in receipt by the holders of Securities of such amounts of principal, premium and interest as would have been received by them had no such withholding or deduction been required, except that no such Additional Amounts shall be payable with respect to any Security:

    (a)    to a holder (or to a third party on behalf of a holder) where such holder is liable for such Taxes in respect of any Security by reason of his having some connection with the Republic other than the mere holding of such Security or the receipt of principal, premium or interest in respect thereof; or

    (b)    presented for payment more than 30 days after the Relevant Date, as defined herein, except to the extent that the holder thereof would have been entitled to Additional Amounts on presenting the same for payment on the last day of such period of 30 days.

      "Relevant Date" in respect of any Security means the date on which payment in respect thereof becomes due or (if the full amount of the money payable on such date has not been received by the Fiscal Agent on or prior to such due date) the date on which notice is duly given to the holders in the manner described in Section 21 below that such moneys have been so received and are available for payment.  Any reference herein to "principal" and/or "interest" shall be deemed to include any Additional Amounts which may be payable under the Securities.

      So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

11

ARG 0014

8.   Mutilated, Destroyed, Stolen or Lost
Certificates.   (a)   In case any Security certificate is
mutilated, defaced, destroyed, stolen or lost, application
for replacement shall be made to the Fiscal Agent who shall
promptly transmit such application to the Republic.   Such
application shall be accompanied by the mutilated or defaced
certificate or receipt of proof, satisfactory to the
Republic in its discretion, of the destruction, theft or
loss of the certificate, and upon receipt by it of an
indemnity satisfactory to the Republic and the Fiscal Agent,
the Republic shall execute a new certificate of like tenor,
and upon written instructions from the Republic the Fiscal
Agent shall thereupon cancel the mutilated or defaced
certificate if applicable and authenticate, register and
deliver such new certificate in exchange for the mutilated
or defaced certificate or in substitution for the destroyed,
stolen or lost certificate.   Such new certificate will be so
dated that neither gain nor loss in interest will result
from such exchange or substitution.   All expenses associated
with procuring such indemnity and with the preparation,
authentication and delivery of a new certificate will be
borne by the registered holder of the mutilated, defaced,
destroyed, stolen or lost certificate.

(b)   Whenever any Security, alleged to have been
lost, stolen or destroyed in replacement for which a new
Security has been issued, is presented to the Fiscal Agent
or any Paying Agent for payment at maturity or at redemption
or for registration of transfer or exchange, the Fiscal
Agent or the Paying Agent, as the case may be, shall
immediately notify the Republic in respect thereof and shall
deal with such Security in accordance with the Republic's
instructions.

9.   Redemption and Purchases.   (a)   Unless
otherwise permitted by the terms of the Securities of a
Series, Securities will not be redeemable prior to maturity
at the option of the Republic or the registered holders
thereof.

(b)   The Republic hereby authorizes and directs
the Fiscal Agent to administer the sinking fund with respect
to the Securities of any Series having a mandatory sinking
fund or similar provision in accordance with the provisions
set forth in the terms of the Securities of such Series.   If
the provisions of the Securities of a Series permit the
Republic to redeem Securities of such Series at its option,
then the Republic shall, unless otherwise provided in the
terms of the Securities of such Series, give written notice
to the Fiscal Agent of the principal amount of Securities of
such Series to be so redeemed not less than 60 days prior to

12

ARG 0015

the optional redemption date. If the provisions of the
Securities of a Series permit the Republic to redeem
Securities of such Series only upon the occurrence or
satisfaction of a condition or conditions precedent thereto,
then prior to the giving of notice of redemption of the
Securities of such Series, the Republic shall deliver to the
Fiscal Agent a certificate stating that the Republic is
entitled to effect such redemption and setting forth in
reasonable detail a statement of facts showing that such
condition or conditions precedent have occurred or been
satisfied. If the provisions of the Securities of a Series
obligate the Republic at the request of the holders to
redeem Securities of such Series upon the occurrence of
certain events (each hereinafter referred to as a
"Redemption Event"), then the Republic shall promptly
deliver written notice to the Fiscal Agent that a Redemption
Event has occurred. Promptly after receiving written notice
of a Redemption Event, the Fiscal Agent shall deliver
written notice to each holder of the Securities of such
Series stating that a Redemption Event has occurred and that
such holder may tender its Securities by delivering written
notice of its election to tender for redemption, together
with the certificate or certificates for the Securities to
be redeemed, to the Fiscal Agent within 60 days of the
Fiscal Agent's notice (hereinafter referred to as the
"Option Period"). Thereafter, the Republic shall (i) in the
manner provided in the provisions of the Securities of such
Series and as contemplated by Section 6 hereof, arrange with
the Fiscal Agent (and each Paying Agent for the purpose, if
applicable) for the provision.of funds sufficient to make
payments to such holders in respect of such redemptions, and
(ii) redeem such Securities within 60 days of the expiration
of the Option Period. The Fiscal Agent shall provide the
Republic from time to time during and upon expiration of the
Option Period with reasonable detailed information as to
Securities tendered for redemption.

          All notices of redemption of or Redemption Events
relating to Securities of a Series to the holders thereof
shall be made in the name and at the expense of the Republic
and shall be given in accordance with the provisions
applicable thereto set forth in the terms of the Securities
of such Series.

          Whenever less than all the Securities of a Series
with the same interest rate and maturity at any time
outstanding are to be redeemed at the option of the
Republic, the particular Securities of such Series with such
interest rate and maturity to be redeemed shall be selected
not more than 60 days prior to the redemption date by the
Fiscal Agent from the outstanding Securities of such Series

13

not previously called for redemption by such usual method as the Fiscal Agent shall deem fair and appropriate, which method may provide for the selection for redemption of portions of the principal amount of registered Securities of such Series the minimum denominations of which, if any, will be specified in the terms of the Securities of such Series. Upon any partial redemption of a registered Security of a Series, the Fiscal Agent shall authenticate and deliver in exchange therefor one or more registered Securities of such Series, of any authorized denomination and like tenor as requested by the holder thereof, in aggregate principal amount equal to the unredeemed portion of the principal of such Security.

(c)   The Republic may at any time purchase Securities at any price in the open market or otherwise, provided that in any such case such purchase or purchases are in compliance with all relevant laws, regulations and directives.  Securities so purchased by the Republic, may, at the Republic's discretion, be held, resold or surrendered to the Fiscal Agent for cancellation.  The Securities so purchased, while held by or on behalf or for the benefit of the Republic shall not entitle the registered holder thereof to vote at any meetings of registered holders of Securities and shall not be deemed to be outstanding for the purposes of calculating quorums at meetings of the registered holders of the Securities.  Notwithstanding the foregoing, the Republic will not acquire any beneficial interest in any Securities unless it gives prior written notice of each acquisition to the Fiscal Agent.  The Fiscal Agent will be entitled to rely without further investigation on any such notification (or lack thereof).

(d)   If the Republic elects to cancel any Securities when Securities have been issued in the form of a Global Security, it may request the Fiscal Agent to instruct the Depositary to reduce the outstanding aggregate principal amount of the Global Securities in accordance with the regular procedures of the Depositary in effect at such time.

10.   <u>Cancellation and Destruction</u>.  All Securities which are paid at maturity or upon earlier repurchase, or are mutilated, defaced or surrendered in exchange for other certificates, shall be cancelled by the Fiscal Agent who shall register such cancellation.  The Fiscal Agent shall, as soon as practicable after the date of any such cancellation, furnish the Republic with a certificate or certificates stating the serial numbers and total number of Securities that have been cancelled.  The Fiscal Agent shall destroy all cancelled Securities in accordance with the instructions of the Republic and shall furnish to the

14

Republic, on a timely basis, certificates of destruction stating the serial numbers, dollar value and total number of all Securities destroyed hereunder.

11. <u>Negative Pledge and Covenants</u>.  So long as any Security remains outstanding, save for the exceptions set forth below, the Republic will not create or permit to subsist any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness of the Republic unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by the holders of the Securities (as provided in Section 16).

Notwithstanding the foregoing, the Republic may permit to subsist:

(i)  any Lien upon property to secure Public External Indebtedness of the Republic incurred for the purpose of financing the acquisition of such property; any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(ii)  any Lien existing on such property at the time of its acquisition to secure Public External Indebtedness of the Republic and any renewal or extension of any such Lien which is limited to the original property covered thereby and which secures any renewal or extension of the original secured financing;

(iii)  any Lien created in connection with the transactions contemplated by the Republic of Argentina 1992 Financing Plan dated June 23, 1992 sent to the international banking community with the communication dated June 23, 1992 from the Minister of Economy and Public Works and Services of Argentina (the "1992 Financing Plan") and the implementing documentation therefor, including any Lien to secure obligations under the collateralized securities issued thereunder (the "Par and Discount Bonds") and any Lien securing indebtedness outstanding on the date hereof to the extent required to be equally and rateably secured with the Par and Discount Bonds;

15

ARG 0018

(iv)  any Lien in existence on the date of this Agreement;

(v)  any Lien securing Public External Indebtedness of the Republic issued upon surrender or cancellation of any of the Par and Discount Bonds or the principal amount of any indebtedness outstanding as of June 23, 1992, in each case, to the extent such Lien is created to secure such Public Indebtedness on a basis comparable to the Par and Discount Bonds;

(vi)  any Lien on any of the Par and Discount Bonds; and

(vii)  any Lien securing Public External Indebtedness incurred for the purpose of financing all or part of the costs of the acquisition, construction or development of a project provided that (a) the holders of such Public External Indebtedness expressly agree to limit their recourse to the assets and revenues of such project as the principal source of repayment of such Public External Indebtedness and (b) the property over which such Lien is granted consists solely of such assets and revenues.

For purposes of this Agreement:

"External Indebtedness" means obligations (other than the Securities) for borrowed money or evidenced by securities, debentures, notes or other similar instruments denominated or payable, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic provided that no Domestic Foreign Currency Indebtedness, as defined below, shall constitute External Indebtedness.

"Public External Indebtedness" means, with respect to the Republic, any External Indebtedness of, or guaranteed by, the Republic which (i) is publicly offered or privately placed in securities markets, (ii) is in the form of, or represented by, securities, notes or other securities or any guarantees thereof and (iii) is, or was intended at the time of issue to be, quoted, listed or traded on any stock exchange, automated trading system or over-the-counter or other securities market (including, without prejudice to the generality of the foregoing, securities eligible for PORTAL or a similar market for the trading of securities eligible for sale pursuant to Rule 144A under the U.S. Securities Act of 1933 (or any successor law or regulation of similar effect)).

16

ARG 0019

"Domestic Foreign Currency Indebtedness" means (i) the following indebtedness: (a) Bonos del Tesoro issued under Decree No. 1527/91 and Decree No. 1730/91, (b) Bonos de Consolidación issued under Law No. 23,982 and Decree No. 2140/91, (c) Bonos de Consolidación de Deudas Previsionales issued under Law No. 23,982 and Decree No. 2140/91, (d) Bonos de la Tesorería a 10 Años de Plazo issued under Decree No. 211/92 and Decree No. 526/92, (e) Bonos de la Tesorería a 5 Años Plazo issued under Decree No. 211/92 nd Decree No. 526/92, (f) Ferrobonos issued under Decree No. 52/92 and Decree No. 526/92 and (g) Bonos de Consolidación de Regalías Hidrocarburíferas a 16 Años de Plaxo issued under Decree No 2284/92 and Decree No. 54/93; (ii) any indebtedness issued in exchange, or as replacement, for the indebtedness referred to in (i) above; and (iii) any other indebtedness payable by its terms, or which at the option of the holder thereof may be payable, in a currency other than the lawful currency of the Republic of Argentina which is (a) offered exclusively within the Republic of Argentine or (b) issued in payment, exchange, substitution, discharge or replacement of indebtedness payable in the lawful currency of the Republic of Argentine; provided that in no event shall the following indebtedness be deemed to constitute "Domestic Foreign Currency Indebtedness": (1) Bonos Externos de la República Argentina issued under Law No. 19,686 enacted on June 15, 1972 and (2) any indebtedness issued by the Republic in exchange, or as replacement, for any indebtedness referred to (1) above.

12.   Default; Acceleration of Maturity. If any of the following events ("Events of Default") with respect to the Securities of any Series occurs and is continuing:

(a)   Non-Payment: the Republic fails to pay any principal of any of the Securities of such Series when due and payable or fails to pay any interest on any of the Securities of such Series when due and payable and such failure continues for a period of 30 days; or

(b)   Breach of Other Obligations: the Republic does not perform or comply with any one or more of its other obligations in the Securities of such Series or in this Agreement, which default is incapable of remedy or is not remedied within 90 days after written notice of such default shall have been given to the Republic by the Fiscal Agent; or

(c)   Cross Default: any event or condition shall occur which results in the acceleration of the maturity (other than by optional or mandatory prepayment or redemption) of the Securities of any other Series or of any

17

ARG 0020

Public External Indebtedness of the Republic having an aggregate principal amount of U.S. $30,000,000 or more, or any default in the payment of principal of, or premium or prepayment charge (if any) or interest on, the Securities of any other Series or any such Public External Indebtedness having an aggregate principal amount of U.S. $30,000,000 or more, shall occur when and as the same shall become due and payable, if such default shall continue for more than the period of grace, if any, originally applicable thereto; or

(d) Moratorium: a moratorium on the payment of principal of, or interest on, the Public External Indebtedness of the Republic shall be declared by the Republic or;

(e) Validity: the validity of the Securities of such Series shall be contested by the Republic;

then the holders of not less than 25 percent in aggregate principal amount of the Securities of such Series by notice in writing to the Republic at the specified office of the Fiscal Agent shall declare the principal amount of all the Securities of such Series to be due and payable immediately, and, in the case of (a) and (d) above, each holder of Securities of such Series may by such notice in writing declare the principal amount of Securities of such Series held by it to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable upon the date that such written notice is received by the Republic unless prior to such date all Events of Default in respect of all the Securities of such Series shall have been cured; provided that in the case of (b), (d) and (e) above, such event is materially prejudicial to the interests of the holders of the Securities of such Series, and provided further, that if, at any time after the principal of the Securities of such Series shall have been so declared due and payable, and before any sale of property under any judgment or decree for the payment of the monies due shall have been obtained or entered as hereinafter provided, the Republic shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured amounts of interest and principal upon all the Securities which shall have become due and otherwise than solely by declaration (with interest on overdue amounts of interest, to the extent permitted by law, and on such principal of each of the Securities at the rate of interest applicable thereto, to the date of such payment or deposit) and the expenses of the Fiscal Agent, and reasonable compensation to the Fiscal Agent, its agents, legal advisers, and any and all defaults under the Securities of such Series, other than the non-payment of principal on the

18

Securities of such Series which shall have become due solely by declaration, shall have been remedied, then, and in every such case, the holders of 75 percent in aggregate principal amount of the Securities of such Series then outstanding, after a meeting of holders of Securities held in accordance with the procedures described in Section 16 below, by written notice to the Republic at the specified office of the Fiscal Agent, may on behalf of the holders of all of the Securities of such Series waive all defaults and rescind and annul such declaration and its consequences: but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default, or shall impair any right consequent thereon.

13.   (a)   _Limit on Liability_.   In acting under this Agreement the Fiscal Agent and any Paying Agent are acting solely as agents of the Republic and do not assume any obligation or relationship of agency or trust for or with any of the holders of the Securities, except that all funds held by the Fiscal Agent for payment of principal or interest shall be held in trust, subject to the provisions of Section 6.

(b)   _Acceptance of Appointment_.   The Fiscal Agent and each Paying Agent accepts its obligations set forth in or arising under this Agreement, the Paying Agency Agreements and the Securities upon the terms and conditions hereof and thereof, including the following, to all of which the Republic agrees and to all of which the holders of the Securities shall be subject:

(i)   the Fiscal Agent may consult as to legal matters with lawyers selected by it, who may be employees of or regular independent counsel to the Republic, and the Fiscal Agent shall be protected and shall incur no liability for action taken, or suffered to be taken, with respect to such matters in good faith and in accordance with the opinion of such lawyers; and

(ii)   the Fiscal Agent and each Paying Agent, and their officers, directors and employees, may become the holder of, or acquire any interest in, any Securities, with the same rights that it or they would have if it were not the Fiscal Agent or a Paying Agent hereunder, or they were not such officers, directors, or employers, and may engage or be interested in any financial or other transaction with the Republic and may act on, or as depository, trustee or agent for, any committee or body of holders of Securities or other obligations of the Republic as freely as if it were not

19

ARG 0022

the Fiscal Agent or a Paying Agent hereunder or they were not such officers, directors, or employees.

14.  Expenses and Indemnity.  (a)  In connection with the Fiscal Agent's appointment and duties as Fiscal Agent, the Republic will pay the Fiscal Agent compensation agreed upon by them.  The Republic will indemnify the Fiscal Agent and each Paying Agent against any loss or liability and agrees to pay or reimburse the Fiscal Agent and each Paying Agent for any reasonable expense, which loss, liability or reasonable expense may be incurred by the Fiscal Agent or any Paying Agent by reason of, or in connection with, the Fiscal Agent's or any Paying Agent's appointment and duties as such, except as such result from the negligence, bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.  In addition, the Republic shall pursuant to arrangements separately agreed upon by the Republic and the Fiscal Agent, transfer to the Fiscal Agent, upon presentation of substantiating documentation satisfactory to the Republic, amounts sufficient to reimburse the Fiscal Agent for certain out-of-pocket expenses reasonably incurred by it and by any Paying Agent in connection with their services.  The obligation of the Republic under this paragraph shall survive payment of the Securities and resignation or removal of the Fiscal Agent.

(b)  The Fiscal Agent and each Paying Agent agrees to indemnify and hold harmless the Republic against all direct claims, actions, demands, damages, costs, losses and liabilities (excluding consequential and punitive damages) arising out of or relating to the bad faith or wilful misconduct of the Fiscal Agent or any Paying Agent or their respective directors, officers, employees or agents.

15.  Successor Fiscal Agent.  (a)  The Republic agrees that there shall at all times be a Fiscal Agent hereunder, and that the Fiscal Agent shall be a bank or trust company organized and doing business under the laws of the United States of America or of the State of New York, in good standing and having a place of business in the Borough of Manhattan, The City of New York, and authorized under such laws to exercise corporate trust powers.

Any corporation or bank into which the Fiscal Agent hereunder may be merged or converted, or any corporation with which the Fiscal Agent may be consolidated, or any corporation or bank resulting from any merger, conversion or consolidation to which the Fiscal Agent shall sell or otherwise transfer all or substantially all of the corporate trust business of the Fiscal Agent, provided that

20

ARG 0023

it shall be qualified as aforesaid, shall be the successor Fiscal Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto, but subject to prior notice to and the prior approval of the Republic.

(b)   The Fiscal Agent may at any time resign by giving written notice to the Republic of its resignation, specifying the date on which its resignation shall become effective (which shall not be less than 120 days after the date on which such notice is given unless the Republic shall agree to a shorter period); provided that no such notice shall expire less than 30 days before or 30 days after the due date for any payment of principal or interest in respect of the Securities.   The Republic may remove the Fiscal Agent at any time by giving written notice to the Fiscal Agent specifying the date on which such removal shall become effective.   Such resignation or removal shall only take effect upon the appointment by the Republic of a successor Fiscal Agent and upon the acceptance of such appointment by such successor Fiscal Agent.   Any Paying Agent may resign or may be removed at any time upon like notice, and the Republic in any such case may appoint in substitution therefor a new Paying Agent or Paying Agents.

(c)   The appointment of the Fiscal Agent hereunder shall forthwith terminate, whether or not notice of such termination shall have been given, if at any time the Fiscal Agent becomes incapable of performing its duties hereunder, or is adjudged bankrupt or insolvent, or files a voluntary petition on bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of a liquidator or receiver of all or any substantial part of its property or admits in writing its inability to pay or meet its debts as they mature or suspends payment thereof, or if a resolution is passed or an order made for the winding up or dissolution of the Fiscal Agent, or if a liquidator or receiver of the Fiscal Agent of all or any substantial part of its property is appointed, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of the Fiscal Agent or its property or affairs for the purposes of rehabilitation, conservation or liquidation.

(d)   Prior to the effective date of any such resignation or removal of the Fiscal Agent, or if the Fiscal Agent shall become unable to act as such or shall cease to be qualified as aforesaid, the Republic shall appoint a successor Fiscal Agent, qualified as aforesaid.   Upon the appointment of a successor Fiscal Agent and its acceptance

21

ARG 0024

of such appointment, the retiring Fiscal Agent shall, at the direction of the Republic and upon payment of its compensation and expenses then unpaid, deliver and pay over to its successor any and all securities, money and any other properties then in its possession as Fiscal Agent and shall thereupon cease to act hereunder.

Any successor Fiscal Agent appointed hereunder shall execute, acknowledge and deliver to its predecessor and to the Republic an instrument accepting such appointment hereunder, and thereupon such successor without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor, with like effect as if originally named Fiscal Agent hereunder.

(e)   If the Fiscal Agent resigns or ceases to act as the Republic's fiscal agent in respect of the Securities pursuant to Section 15(c) of this Agreement, the Fiscal Agent shall only be entitled to annual fees otherwise payable to it under this Agreement on a pro rata basis for that period since the most recent anniversary of this Agreement during which the Fiscal Agent has acted as fiscal agent hereunder.   In the event that the Fiscal Agent ceases to act as the Republic's fiscal agent in respect of the Securities for any other reason, the Fiscal Agent shall be entitled to receive the full amount of the annual fees payable to it in respect of the Securities pursuant to Section 14 of this Agreement.

16.   Meetings of Holders of Securities: Modifications.   (a)   A meeting of registered holders of Securities of any Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given or taken by registered holders of Securities of any Series or to modify, amend or supplement the terms of the Securities of any Series or this Agreement as hereinafter provided.   The Fiscal Agent may at any time call a meeting of registered holders of Securities of any Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine.   Notice of every meeting of registered holders of Securities of any Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of any Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting.   In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding

22

Securities of any Series (as defined in subsection (d) of
this Section) shall have requested the Fiscal Agent to call
a meeting of the registered holders of Securities of any
Series for any such purpose, by written request setting
forth in reasonable detail the action proposed to be taken
at the meeting, the Fiscal Agent shall call such meeting for
such purposes by giving notice thereof.

To be entitled to vote at any meeting of
registered holders of Securities of any Series, a person
shall be a registered holder of Outstanding Securities of
any Series or a person duly appointed by an instrument in
writing as proxy for such a holder.  Any person appointed by
an instrument in writing as proxy for a registered holder
need not be a registered holder of Outstanding Securities of
any Series.  At any meeting each registered holder shall be
entitled to one vote for each of those amounts held by such
holder which represent the lowest denomination in which
Securities of such Series as to which such holder is a
holder may be transferred.  The persons entitled to vote a
majority in principal amount of the Outstanding Securities
of any Series shall constitute a quorum.  At the reconvening
of any meeting adjourned for a lack of a quorum, the persons
entitled to vote 25% in principal amount of the Outstanding
Securities of any Series shall constitute a quorum for the
taking of any action set forth in the notice of the original
meeting.  The Fiscal Agent may make such reasonable and
customary regulations as it shall deem advisable for any
meeting of registered holders of Securities of any Series
with respect to the appointment of proxies in respect of
registered holders of Securities, the record date for
determining the registered holders of Securities who are
entitled to vote at such meeting (which date shall be set
forth in the notice calling such meeting hereinabove
referred to and which shall be not less than 30 nor more
than 90 days prior to such meeting, the adjournment and
chairmanship of such meeting) the appointment and duties of
inspectors of votes, the submission and examination of
proxies, certificates and other evidence of the right to
vote, and such other matters concerning the conduct of the
meeting as it shall deem appropriate.

(b)  (i)  At any meeting of registered holders of
Securities of a Series duly called and held as specified
above, upon the affirmative vote, in person or by proxy
thereunto duly authorized in writing, of the registered
holders of not less than 66 2/3% in aggregate principal
amount of the Securities  of any Series then Outstanding (or
of such other percentage as may be set forth in the
Securities of any Series with respect to the action being
taken), or (ii) with the written consent of the owners of

23

ARG 0026

not less than 66 2/3% in aggregate principal amount of the Securities of any Series then Outstanding (or of such other percentage as may be set forth in the text of the Securities of any Series with respect to the action being taken), the Republic and the Fiscal Agent may modify, amend or supplement the terms of the Securities of any Series or this Agreement, in any way, and the registered holders of Securities of any Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Agreement or the Securities of any Series to be made, given, or taken by registered holders of Securities of any Series; provided, however, that no such action may, without the consent of the registered holder of each Security of such Series, (A) change the due date for the payment of the principal of (or premium, if any,) or any installment of interest on any Security of such Series, (B) reduce the principal amount of any Security of such Series, the portion of such principal amount which is payable upon acceleration of the maturity of such Security, the interest rate thereon or the premium payable upon redemption thereof, (C) change the coin or currency in which or the required places at which payment with respect to interest, premium or principal in respect of Securities of such Series is payable, (D) amend the definition of Redemption Event in the Securities of such Series or the procedures provided therefore, (E) shorten the period during which the Republic is not permitted to redeem the Securities of such Series if, prior to such action, the Republic is not permitted to do so, (F) reduce the proportion of the principal amount of Securities of such Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of such Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (G) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of any Series, to (i) any modification of any provisions of the Fiscal Agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in this Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of this Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of any Series and, if the Fiscal Agent so requires, such

24

ARG 0027

modification shall be notified to the registered holders of Securities of any Series as soon as practicable.

It shall not be necessary for the vote or consent of the registered holders of the Securities of any Series to approve the particular form of any proposed modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action, but it shall be sufficient if such vote or consent shall approve the substance thereof.

(c) Any instrument given by or on behalf of any registered holder of a Security in connection with any consent to or vote for any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action will be irrevocable once given and will be conclusive and binding on all subsequent registered holders of such Security or any Security issued directly or indirectly in exchange or substitution therefor or in lieu thereof.  Any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of a Series will be conclusive and binding on all registered holders of Securities of such Series, whether or not they have given such consent or cast such vote, and whether or not notation of such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action is made upon the Securities of such Series. Notice of any modification or amendment or, supplement to, or request, demand, authorization, direction, notice, consent, waiver or other action with respect to the Securities of such Series or this Agreement (other than for purposes of curing any ambiguity or of curing, correcting or supplementing any defective provision hereof or thereof) shall be given to each registered holder of Securities of such Series, in all cases as provided in the Securities of such Series.

Securities of any Series authenticated and delivered after the effectiveness of any such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action with respect to such Series may bear a notation in the form approved by the Fiscal Agent and the Republic as to any matter provided for in such modification, amendment, supplement, request, demand, authorization, direction, notice, consent, waiver or other action.  New Securities modified to conform, in the opinion of the Fiscal Agent and the Republic, to any such modification, amendment, supplement, request, demand, authorization, direction,

25

ARG 0028

notice, consent, waiver or other action may be prepared by
the Republic, authenticated by the Fiscal Agent (or any
authenticating agent appointed pursuant to Section 3 hereof)
and delivered in exchange for Outstanding Securities of any
Series.

(d)   For purposes of the provisions of this
Agreement and the Securities of any Series, any Security
authenticated and delivered pursuant to this Agreement
shall, as of any date of determination, be deemed to be
"Outstanding", except:

(i)   Securities of any Series theretofore
cancelled by the Fiscal Agent or delivered to the
Fiscal Agent for cancellation or held by the Fiscal
Agent for reissuance but not reissued by the Fiscal
Agent; or

(ii)   Securities of any Series which have become
due and payable at maturity or otherwise and with
respect to which monies sufficient to pay the principal
thereof, premium, if any, and any interest thereon
shall have been made available to the Fiscal Agent;

provided, however, that in determining whether the
registered holders of the requisite principal amount of
Outstanding Securities of any Series are present at a
meeting of registered holders of Securities for quorum
purposes or have consented to or voted in favor of any
request, demand, authorization, direction, notice, consent,
waiver, amendment, modification or supplement hereunder,
Securities of any Series owned directly or indirectly by the
Republic shall be disregarded and deemed not to be
Outstanding.

17.   Further Issues.   The Republic may from time
to time, without notice to or the consent of the registered
holders of the Securities of a Series, create and issue
further securities ranking pari passu with the Securities of
such Series in all respects (or in all respects except for
the payment of interest accruing prior to the issue date of
such further securities or except for the first payment of
interest following the issue date of such further
securities) and so that such further securities shall be
consolidated and form a single series with the Securities of
such Series and shall have the same terms as to status,
redemption or otherwise as the Securities.

18.   Reports.   (a)   The Fiscal Agent shall furnish
to the Republic such reports as may be required by the
Republic relative to the Fiscal Agent's performance under

26

this Agreement.  The Republic may, whenever it deems it necessary, inspect books and records maintained by the Fiscal Agent pursuant to this Agreement, if any.

(b)  The Fiscal Agent shall (on behalf of the Holders) submit such reports or information as may be required from time to time in relation to the issue and purchase of Securities by applicable law, regulations and guidelines promulgated by the United States government.

(c)  The Republic covenants to notify the Fiscal Agent in writing immediately on becoming aware of any Event of Default or any event or circumstance which could with the giving of notice or lapse of time become an Event of Default (a "Potential Event of Default").

(d)  The Republic will send to the Fiscal Agent, on or before December 31 in each year (beginning with December 31, 1994), and within 14 days after any written notice by the Fiscal Agent, a certificate of the Republic signed by a duly authorized official of the Republic to the effect that, having made all reasonable inquiries, to the best knowledge of such duly authorized official, no Event of Default or Potential Event of Default has occurred and is continuing on the date of such certificate or, if an Event of Default or a Potential Event of Default has occurred, the circumstances surrounding it and the steps that the Republic has taken or proposes to take to remedy it.

(e)  The Republic will send to the Fiscal Agent as soon as practicable after being so requested by the Fiscal Agent a certificate of the Republic, signed by a duly authorized official of the Republic stating the aggregate principal amount of the Securities held by or on behalf of the Republic at the date of such certificate.

19.  _Forwarding of Notice: Inquiries_.  (a)  If the Fiscal Agent shall receive any notice or demand addressed to the Republic pursuant to the provisions of the Securities, the Fiscal Agent shall promptly forward such notice or demand to the Republic.

(b)  The Fiscal Agent shall respond promptly to any inquiries received from any registered holder of Securities regarding the matters covered by paragraphs (b), (c) or (d) of Section 18 of this Agreement.

20.  _Listings_.  In the event that the terms of the Securities of any Series provide for a listing on any stock exchange, the Republic agrees to use all reasonable endeavors to maintain the listing of the Securities on such

27

exchange.  If, however, it is unable to do so, having used such endeavors, or if the maintenance of such listing is agreed by the Fiscal Agent to be unduly onerous and the Fiscal Agent is satisfied that the interests of registered holders of the Securities would not thereby be materially prejudiced, it will instead use all reasonable endeavors to obtain and maintain a listing of the Securities on such other stock exchange or exchanges as it may decide.

    21.  _Notices_.  (a)  Any communications from the Republic to the Fiscal Agent with respect to this Agreement shall be addressed to Bankers Trust Company, 4 Albany Street, New York, New York 10006, Fax No.: 212-250-6961 or 212-250-6392, Tel. No.: 212-250-6571 and any communications from the Fiscal Agent to the Republic with respect to this Agreement shall be addressed to the Subsecretaría de Financiamiento, Hipolito Yrigoyen 250, Piso 10 - Oficina 1001, 1310 - Buenos Aires, Attention: Deuda Externa, Fax No.: 011-54-1-349-6080, Tel. No.: 011-541-349-6242 (or such other address as shall be specified in writing by the Fiscal Agent or by the Republic, as the case may be) and shall be delivered in person or sent by first class prepaid post or by facsimile transmission subject, in the case of facsimile transmission, to confirmation by telephone to the foregoing addresses.  Such notice shall take effect in the case of delivery in person, at the time of delivery, in the case of delivery by first class prepaid post seven (7) business days after dispatch and in the case of delivery by facsimile transmission, at the time of confirmation by telephone.

    (b)  All notices to the registered holders of Securities of a Series will be published in such publications at such locations as any of the Securities of such Series are listed for the period of time of such listing and as otherwise provided pursuant to the terms of the Securities of such Series.  If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine.  [In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine.]  Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.  Written notice will also be given to the Depositary, if at the time of such notice any of the Securities is represented by a Global Security.

28

ARG 0031

22.   <u>Consent to Service: Jurisdiction</u>.   The
Republic hereby appoints Banco de la Nación Argentina, at
its office located at 299 Park Avenue, New York, New York
10171, and, if such person is not maintained by the Republic
as its agent for such purpose, the Republic will appoint CT
Corporation System to act as its agent for such purpose] as
its authorized agent (the "Authorized Agent") upon whom
process may be served in any action arising out of or based
on the Securities or this Agreement by the holder of any
Security which may be instituted in any state or federal
court in The City of New York, and expressly accepts the
jurisdiction of any such court in respect of such action.
Such appointment shall be irrevocable until all amounts in
respect of the principal of and any interest due and to
become due on or in respect of all the Securities have been
provided to the Fiscal Agent pursuant to the terms hereof,
except that, if for any reason, such Authorized Agent ceases
to be able to act as Authorized Agent or to have an address
in the Borough of Manhattan, The City of New York, the
Republic will appoint another person in the Borough of
Manhattan, The City of New York, selected in its discretion,
as such Authorized Agent.   Prior to the date of issuance of
any Securities hereunder, the Republic shall obtain the
consent of Banco de la Nación Argentina to its appointment
as such Authorized Agent, a copy of which acceptance it
shall provide to the Fiscal Agent.   The Republic shall take
any and all action, including the filing of any and all
documents and instruments, that may be necessary to continue
such appointment or appointments in full force and effect as
aforesaid.   Upon receipt of such service of process, the
Authorized Agent shall advise the Subministry of Finance
promptly by telecopier at 011-54-1-349-6080.   Service of
process upon the Authorized Agent at the address indicated
above, as such address may be changed within the Borough of
Manhattan, The City of New York by notice given by the
Authorized Agent to each party hereto, shall be deemed, in
every respect, effective service of process upon the
Republic.   The Republic hereby irrevocably and
unconditionally waives, to the fullest extent permitted by
law, any objection which it may now or hereafter have to the
laying of venue of any aforesaid action arising out of or in
connection with this Agreement brought in any such court has
been brought in an inconvenient forum.   Neither such
appointment nor such acceptance of jurisdiction shall be
interpreted to include actions brought under the United
States federal securities laws.   This appointment and
acceptance of jurisdiction is intended to be effective upon
execution of this agreement without any further act by the
Republic before any such court and introduction of a true
copy of this Agreement into evidence shall be conclusive and
final evidence of such waiver.

29

ARG 0032

Notwithstanding the foregoing, any action arising out of or based on the Securities may be instituted by the holder of any Security in any competent court in the Republic of Argentina.

The Republic hereby irrevocably waives and agrees not to plead any immunity from the jurisdiction of any such court to which it might otherwise be entitled in any action arising out of or based on the Securities or this Agreement by the holder of any Security.

23. <u>Governing Law and Counterparts</u>. This Agreement shall be governed by, and interpreted in accordance with, the laws of the State of New York. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

24. <u>Headings</u>. The headings for the sections of this Agreement are for convenience only and are not part of this Agreement.

30

ARG 0033

IN WITNESS WHEREOF, the parties hereto have executed this Fiscal Agency Agreement as of the date first above written.

THE REPUBLIC OF ARGENTINA


By:  /s/ Noemi LaGreca
     Name:  Noemi LaGreca
     Title: Financial
        Representative of
            Argentina in the
            United States


BANKERS TRUST COMPANY


By:  /s/ Wanda Camacho
     Name:  Wanda Camacho
     Title: Assistant
        Secretary


31

ARG 0034

## EXHIBIT A

### FORM OF REGISTERED SECURITY

[Form of Face
of Security]

[If the Security is a global Security, insert a legend relating to limitations on the transferability of such global Security in such form as may be required by the U.S. Depositary.]

[INSERT ANY LEGEND(S) REQUIRED BY THE INTERNAL REVENUE CODE]

### THE REPUBLIC OF ARGENTINA

[Title of Series of Securities]

No. R-_____                                    [Principal Amount]

Issue Price:

Original Issue Date:

Maturity Date:

Currency of Denomination:

Option to Receive Payments
in Specified Currency:            _____Yes    _____No

Authorized Denominations:

Form:                             ( )  Book-Entry
                                  ( )  Certificated

Initial Interest
Payment Date:

Interest Rate:

Interest Rate Reset:              ( )  The Interest Rate may not
                                       be changed prior to
                                       Maturity Date.

                                        ( )  The Interest Rate may be
                                             changed prior to Stated
                                             Maturity (see attached).

Optional Reset Dates
(if applicable):

Interest Payment Dates:

Optional Extension of
Maturity Date:                          _____Yes  _____No

     Final Maturity:


Total Amount of OID:

Yield to Maturity:

Initial Accrual Period OID:

Optional Redemption:                    _____Yes  _____No

     Optional Redemption Dates:

     If applicable as described above, the Redemption Price
     shall initially be        % of the principal amount of
     this Security to be redeemed and shall decline at each
     anniversary of the Initial Redemption Date by        % of
     the principal amount to be redeemed until the
     Redemption Price is 100% of such principal amount;
     *provided, however*, that if this Security is a Discount
     Note (as defined below), the Redemption Price shall be
     the Amortized Face Amount (as defined below) of this
     Note.

Optional Repayment:                     _____Yes  _____No

     Optional Repayment Dates:

     Optional Repayment Prices:

Conversion into or
Exchange for
Other Securities                        ( )  This Security may not be
                                             converted into or
                                             exchanged for other
                                             securities.

                                        ( )  This Security may be
                                             converted into or

                                   2

ARG 0036

exchanged for _____
[specify securities].

Terms of Conversion
or Exchange
(if applicable):

Indexed Note:  _____ Yes (see attached) _____ No

Exchange Rate Agent:

Other Terms:                    _____ Yes _____ No

A-3

ARG 0037

THE REPUBLIC OF ARGENTINA (herein called the "Republic"), for value received, hereby promises to pay to _____

or registered assigns, the principal sum of _____ U.S. Dollars (U.S.$ _____) [other currency] on _____ [If the Security is to bear interest prior to maturity, insert--, and to pay interest thereon from _____ or from the most recent Interest Payment Date to which interest has been paid or duly provided for, [specify frequency] in arrears on [and _____] in each year, commencing _____ (each an "Interest Payment Date"), at the rate [of ____ % per annum] [to be determined in accordance with the provisions hereinafter set forth], until the principal hereof is paid or made available for payment. The interest so payable, and punctually paid or duly provided for, on any Interest Payment Date will, as provided in the Fiscal Agency Agreement hereinafter referred to, be paid to the person (the "registered Holder") in whose name this Security (or one or more predecessor Securities) is registered in the register of such Securities maintained pursuant to the Fiscal Agency Agreement at the close of business on the date (whether or not a business day) [, as the case may be] (each a "Regular Record Date") [,] [_____ calendar days] next preceding such Interest Payment Date; provided, however, that the first payment of interest on any Security originally issued on a date between a Regular Record Date and an Interest Payment Date or on an Interest Payment Date will be made on the Interest Payment Date following the next succeeding Regular Record Date to the registered Holder on such next succeeding Regular Record Date. Any such interest not so punctually paid or duly provided for will forthwith cease to be payable to the registered Holder on such Regular Record Date and may either be paid to the person in whose name this Security (or one or more predecessor Securities) is registered at the close of business on a special record date for the payment of such interest to be fixed by the Republic, notice whereof shall be given to registered Holders of Securities of this Series not less than 10 days prior to such special record date, or be paid at any time in any other lawful manner [not inconsistent with the requirements of any securities exchange on which the Securities of this series may be listed, and upon such notice as may be required by such exchange.]

[Insert floating interest rate provisions, if applicable.]

[If the Security is not to bear interest prior to maturity, insert--(the "Stated Maturity"). The principal of

A-4

ARG 0038

this Security shall not bear interest except in the case of
a default in payment of principal upon acceleration, upon
redemption or at Stated Maturity.]

Principal of (and premium, if any, on) [and
interest payable at maturity or upon earlier redemption or
repayment in respect of] this Security shall be payable in
immediately available funds against surrender hereof at the
corporate trust office of the Fiscal Agent hereinafter
referred to and at the offices of such other Paying Agents
as the Republic shall have appointed pursuant to the Fiscal
Agency Agreement.  Payments of principal of (and premium, if
any[, on]) [and interest on] this Security shall be made in
same-day funds in accordance with the foregoing and subject
to applicable laws and regulations, by [(if the Republic so
elects) transfer to an account denominated in U.S. dollars
which is maintained by the payee with [any] [a] bank
[located in _____].  If the Republic does not so
elect, payments of principal (and premium, if any) shall be
made against surrender of this Security [if applicable,
insert—, and payments of interest shall be made,] by]
forwarding by post or otherwise delivering a check [on or
before the due date for such payment] to the registered
address of the registered Holder of this Security.  [If
applicable, insert payment provisions for Securities
denominated in a currency other than U.S. dollars].  This
Security is a direct obligation of the Republic and does not
have the benefit of any separate undertaking of other
government entities (including Banco Central).  The Republic
covenants that until all amounts in respect of the principal
and interest due and to become due on or in respect of this
Security have been paid as provided herein or in the Fiscal
Agency Agreement, it will at all times maintain offices or
agencies in the Borough of Manhattan, The City of New York
for the payment of the principal of (and premium, if any[,
on]) [and interest on] the Securities as herein provided.

Reference is hereby made to the further provisions of
this Security set forth on the reverse hereof, which further
provisions shall for all purposes have the same effect as if
set forth at this place.

Unless the certificate of authentication hereon has
been executed by the Fiscal Agent by manual signature, this
Security shall not be valid or obligatory for any purpose.

λ-5

ARG 0039

IN WITNESS WHEREOF, the Republic has caused this instrument to be duly executed.

Dated:

THE REPUBLIC OF ARGENTINA

By_____
             [Title]

Attest:

_____
      [Title]

Date of Authentication:

This is one of the Securities of the series designated therein referred to in the within-mentioned Fiscal Agency Agreement.

BANKERS TRUST COMPANY,
as Fiscal Agent

By_____
      Authorized Signatory

A-6

ARG 0040

[Form of reverse
of Security]

This Security is one of a duly authorized issue of securities of the Republic (herein called the "Securities") issued and to be issued in one or more series in accordance with a Fiscal Agency Agreement, dated as of _____ (herein called the "Fiscal Agency Agreement"), between the Republic and Bankers Trust Company, as Fiscal Agent (herein called the "Fiscal Agent"), which term includes any successor fiscal agent under the Fiscal Agency Agreement), copies of which Fiscal Agency Agreement are on file and available for inspection at the corporate trust office of the Fiscal Agent in the Borough of Manhattan, The City of New York.  This Security is one of the Securities of the Series designated on the face hereof[, limited in aggregate principal amount to U.S.$_____]. The Fiscal Agency Agreement may be amended from time to time in accordance with the terms thereof.

The Securities will constitute the direct, unconditional, unsecured and unsubordinated obligations of the Republic.  Each Series will rank *pari passu* with each other Series, without any preference one over the other by reason of priority of date of issue or currency of payment or otherwise, and at least equally with all other present and future unsecured and unsubordinated External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic.

The Securities of this Series are issuable only in fully registered form.  The Securities are issuable in [the] authorized denomination[s] of [currency/U.S.$_____ [and [any integral multiple thereof] [integral multiples of [currency/U.S.$_____ above that amount]].

Until all amounts in respect of the principal and interest due and to become due on or in respect of this Security have been paid, the Republic shall maintain in the Borough of Manhattan, The City of New York, an office or agency where Securities may be surrendered for registration of transfer or exchange.  The Republic has initially appointed the corporate trust office of the Fiscal Agent as its agent in the Borough of Manhattan, The City of New York, for such purpose and has agreed to cause to be kept at such office a register in which subject to such reasonable regulations as it may prescribe, the Republic will provide for the registration of Securities and of transfers of Securities.  The Republic reserves the right to vary or terminate the appointment of the Fiscal Agent as security

A-7

ARG 0041

registrar or transfer agent or to appoint additional or
other registrars or transfer agents or to approve any change
in the office through which any security registrar or any
transfer agent acts, provided that there will at all times
be a security registrar in the Borough of Manhattan, The
City of New York.

Subject to the provisions on the face hereof
concerning transfer restrictions, the transfer of a Security
is registrable on the aforementioned register upon surrender
of such Security at the corporate trust office of the Fiscal
Agent duly endorsed by, or accompanied by a written
instrument of transfer in form attached hereto duly executed
by, the registered Holder thereof or his attorney duly
authorized in writing.  Upon such surrender of this Security
for registration of transfer, the Republic shall execute,
and the Fiscal Agent shall authenticate and deliver, in the
name of the designated transferee or transferees, one or
more new Securities, dated the date of authentication
thereof, of any authorized denominations and of a like
aggregate principal amount.

Subject to the provisions on the face hereof
concerning transfer restrictions, at the option of the
registered Holder upon request confirmed in writing,
Securities may be exchanged for Securities of any authorized
denominations and of a like aggregate principal amount, upon
surrender of the Securities to be exchanged at the corporate
trust office of the Fiscal Agent.  Any registration of
transfer or exchange will be effected upon the Fiscal Agent
being satisfied with the documents of title and identity of
the person making the request and subject to such reasonable
regulations as the Republic may from time to time agree with
the Fiscal Agent.  Whenever any Securities are so
surrendered for exchange, the Republic shall execute, and
the Fiscal Agent shall authenticate and deliver, the
Securities which the registered Holder making the exchange
is entitled to receive.  The new Security issued upon such
exchange shall be so dated that neither gain nor loss of
interest shall result from such exchange.  [If the Security
is a permanent global Security, insert--Notwithstanding the
foregoing, the exchange of this Security is subject to
certain limitations set forth in the Fiscal Agency Agreement
and on the face hereof.]

[In the event of a redemption of the Securities of
this series in part, the Republic shall not be required (i)
to register the transfer of or exchange any Security during
a period beginning at the opening of business 15 days
before, and continuing until, the date notice is given
identifying the Securities to be redeemed, or (ii) to

A-8

ARG 0042

register the transfer of or exchange any Security, or
portion thereof, called for redemption.]

All Securities issued upon any registration of
transfer or exchange of Securities shall be the valid
obligation of the Republic evidencing the same indebtedness
and entitled to the same benefits this Security has at the
time of such registration of transfer or exchange.

No service charge shall be made for any
registration of transfer or exchange, but the Republic may
require payment of a sum sufficient to cover any tax or
other governmental charge payable in connection therewith,
other than an exchange in connection with a partial
redemption of a Security not involving any registration of a
transfer.

Prior to due presentment of this Security for
registration of transfer, the Republic, the Fiscal Agent and
any agent of the Republic or the Fiscal Agent may treat the
person in whose name this Security is registered as the
owner hereof for all purposes, whether or not this Security
is overdue, and neither the Republic nor the Fiscal Agent
nor any such agent shall be affected by notice to the
contrary.

In any case where the due date or the payment of
the principal of (and premium, if any[, on]) [or interest
on] any Security[, or the date fixed for redemption of any
Security,] shall be, at any place from which any check in
respect thereof is to be mailed or where such Security is to
be surrendered for payment [or, in the case of payments by
transfer, where such transfer is to be made], a day on which
banking institutions [If the Securities are denominated in
U.S. dollars, insert--in The City of New York] [If the
Securities are denominated in a currency other than U.S.
Dollars, insert--in [name of financial center of the country
in whose currency the securities are denominated] are
authorized or obligated by law to close [If the Securities
are denominated in a currency other than U.S. Dollars,
insert--or a day on which banking institutions in [name of
non-U.S. financial center] are not carrying out transactions
in [name of non-U.S. currency]], then such payment need not
be made on such date at such place but may be made on the
next succeeding day at such place which is not a day on
which banking institutions are authorized or obligated by
law to close, with the same force and effect as if made on
the date for such payment payable in respect of any such
delay.

A-9

ARG 0043

The Republic shall provide to the Fiscal Agent at its principal office in the Borough of Manhattan, The City of New York, prior to each date on which a payment on or in respect of the Securities of this series shall become due, monies in such amounts which (together with any amounts then held by the Fiscal Agent and available for the purpose) are sufficient to make such payment. Any monies provided by the Republic to the Fiscal Agent for the payment on or in respect of the Securities of this series and remaining unclaimed at the end of two years after such payment shall have become due shall then be returned to the Republic, and upon the return of such monies all liabilities of the Fiscal Agent with respect thereto shall cease, without, however, limiting in any way any obligation the Republic may have to pay the principal of (or premium, if any[, on]) [or interest on] this Security as the same shall become due.

So long as any Security remains outstanding, save for the exceptions set forth in the Fiscal Agency Agreement, the Republic will not create or permit to subsist, or permit Banco Central to create or permit to subsist, any lien, pledge, mortgage, security interest, deed of trust, charge or other encumbrance or preferential arrangement which has the practical effect of constituting a security interest ("Lien") upon the whole or any part of its assets or revenues to secure any Public External Indebtedness (as defined in the Fiscal Agency Agreement) of the Republic or Banco Central unless, at the same time or prior thereto, the Republic's obligations under the Securities either (i) are secured equally and ratably therewith, or (ii) have the benefit of such other security, guarantee, indemnity or other arrangement as shall be approved by not less than 66 2/3% of the registered holders of Securities of any Series then outstanding.

If an Event of Default (as defined in the Fiscal Agency Agreement) occurs and is continuing then the holders of not less than 25 percent in aggregate principal amount of the Securities of this Series, by notice in writing to the Republic at the specified office of the Fiscal Agent, shall declare the principal amount of all the Securities of this Series to be due and payable as set forth in the Fiscal Agency Agreement.

All payments of principal, premium, if any, and interest on this Security by the Republic will be made free and clear of, and without withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied collected, withheld or assessed by or within the Republic or any authority therein or thereof having power to tax

A-10

ARG 0044

(together "Taxes"), unless such withholding or deduction is required by law. In such event, the Republic shall pay such Additional Amounts as will result in receipt by the holders of Securities of this Series of such amounts of principal, premium and interest which would have been received by them had no such withholding or deduction been required, save for the exceptions set forth in the Fiscal Agency Agreement.

So long as any Security remains outstanding, the Republic covenants to maintain its membership in, and its eligibility to use the general resources of, the International Monetary Fund.

[The Securities of this Series will not be subject to any sinking fund and will not be redeemable except as described below.]

[The Securities of this Series are subject to redemption upon not less than 30 days' notice given as hereinafter provided, (if applicable, insert--(1) on _____ in any year commencing with the year ____ and ending with the year ____ through operation of the sinking fund for this series at a redemption price equal to 100% of the principal amount, (2)] [at any time [on or after _____, 19 __], as a whole or in part, at the election of the Republic, at the following redemption prices (expressed as percentages of the principal amount of the Securities to be redeemed): If redeemed [on or before _____, ____%, _____ of the years indicated,

| Year | Redemption Price | Year | Redemption Price |
|------|------------------|------|------------------|
|      |                  |      |                  |

and thereafter at a redemption price equal to ___% of the principal amount, and (3)] under the circumstances described in the next succeeding paragraph at a redemption price equal to 100% of the principal amount of the Securities to be redeemed, together in each case with accrued interest (except if the redemption date is an Interest Payment Date) to the redemption date, but interest installments on Securities that are due on or prior to such redemption date will be payable to the holders of such Securities of record at the close of business on the relevant Record Dates referred to above; provided, that if the redemption date occurs between a Record Date and an Interest Payment Date, the interest due and payable will be paid to the holders of

A-11

ARG 0045

such Securities of record at the close of business on such Record Date. [Partial redemptions must be in an amount not less than U.S.$_____ principal amount of Securities.]

[As and for a sinking fund for the retirement of the Securities of this Series, the Republic will, until all Securities of this Series are paid or payment thereof provided for, deposit with the Fiscal Agent, prior to _____ in each year, commencing in ____ and ending in ____, an amount in cash sufficient to redeem on such _____ [not less than U.S.$_____ and not more than] U.S.$_____ principal amount of Securities of this Series at the redemption price specified above for redemption through operation of the sinking fund. [The minimum amount of any sinking fund payment as specified in this Paragraph is herein referred to as a "mandatory sinking fund payment", and any payment in excess of such minimum amount is herein referred to as an "optional sinking fund payment".] The cash amount of any [mandatory] sinking fund payment is subject to reduction as provided below. Each sinking fund payment shall be applied to the redemption of Securities in this Series on such _____ as herein provided. [The right to redeem Securities of this Series through optional sinking fund payments shall not be cumulative and to the extent not availed of on any sinking fund redemption date will terminate.]]

[Notwithstanding the foregoing, the Republic may not, prior to _____, redeem any Securities of this Series as [and optional sinking fund payment] contemplated by the preceding paragraph as a part of, or in anticipation of, any refunding operation by the application, directly or indirectly, of monies borrowed having an interest cost to the Republic (calculated in accordance with general accepted financial practice) of less than __% per annum.]

[Securities of this Series acquired or redeemed by the Republic otherwise than through [mandatory] sinking fund payments may be credited against subsequent [mandatory] sinking fund payments otherwise required to be made [in the inverse order in which they become due].]

[The Republic (i) may deliver outstanding Securities of this Series (other than any previously called for redemption) and (ii) may apply as a credit Securities of this series which have been redeemed otherwise than through the application of [mandatory] sinking fund payments, in each case in satisfaction of all or any part of any [mandatory] sinking fund payment and the amount of such [mandatory] sinking fund payment shall be reduced accordingly.]

A-12

ARG 0046

[In the case of any partial redemption of Securities of this Series pursuant to the sinking fund or at the option of the Republic, the Securities to be redeemed shall be selected by the Fiscal Agent not more than 60 days prior to the redemption date from the outstanding Securities not previously called for redemption, by such method as the Fiscal Agent shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to U.S.$_____ or any integral multiple thereof) of the principal amount of Securities of a denomination larger than U.S.$_____].

[This Security shall be redeemed, at the option of the registered Holder thereof, upon the occurrence, on or after _____, of a Redemption Event (as hereinafter defined), at the redemption price equal to 100% of the principal amount of this Security, together with interest accrued thereon to the date of redemption; provided, however, that the right of the registered Holder to present this Security [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] for redemption shall, if the Republic gives a Notice of Redemption Event (as hereinafter defined), terminate upon expiration of the Option Period (as hereinafter defined) relating to such Redemption Event.  In the event of the occurrence of more than one Redemption Event, each such Redemption Event shall be deemed to confer upon the registered Holder of this Security a separate right of redemption.]

[The Republic agrees that, if a Redemption Event occurs, it will promptly give written notice thereof to the Fiscal Agent (a "Notice of Redemption Event").  Promptly after receiving such Notice of Redemption Event, the Fiscal Agent shall give written notice to the registered Holder of this Security (a "Notice of Right to Tender") stating that a Redemption Event has occurred and including a form of notice (a "Redemption Notice") pursuant to which the registered Holder of this Security may elect to cause redemption.  The Republic may, but shall not be obligated to, fix a record date for the purpose of determining the registered Holders of Securities of this series entitled to elect to cause redemption of any such Holder elects to cause redemption of this Security, deliver the Redemption Notice, together with the certificate or certificates representing the Securities to be redeemed [if the Security is a permanent global Security, insert--, or evidence of ownership of the Securities represented by this permanent global Security (as hereinafter provided),] to the Fiscal Agent within a period of 60 days (the "Option Period") of the date of the Notice

A-13

ARG 0047

of Right to Tender, and (ii) the Republic shall select a
date for redemption (the "Redemption Date"), which shall be
within 60 days from the end of the Option Period, and, on
the Redemption Date, shall redeem the Securities tendered
for redemption within the Option Period.  At least 10 days
prior to the Redemption Date, the Republic shall [(i)]
deliver notice of the Redemption Date in the manner provided
for herein to each registered Holder who requested
redemption[, or (ii) publish notice of the Redemption Date
in the manner provided for herein, as the case may be].]

     [If the Security is a permanent global Security,
insert--It is understood that, notwithstanding the foregoing
provisions relating to redemption at the option of a
registered Holder and without otherwise limiting any right
of any other registered Holder to act by agent or proxy, the
Fiscal Agent may treat a person authorized, in a manner
satisfactory to the Fiscal Agent, by the U.S. Depositary to
take action in respect of a portion of this permanent global
Security as the registered Holder of such portion of such
Security and may make arrangements satisfactory to it, the
Republic and the U.S. Depositary in connection with this
partial redemption of this permanent global Security.]

     [Insert description of those events, if any, which
constitute Redemption Events.]

     [If notice of redemption has been given in the
manner set forth herein, the Securities so to be redeemed
shall become due and payable on the redemption date
specified in such notice and upon presentation and surrender
of the Securities [if the Security is a permanent global
Security, insert--, or evidence of ownership of the
Securities represented by this permanent global Security
satisfactory to the Fiscal Agent,] at the place or places
specified in such notice, the Securities shall be paid and
redeemed by the Republic at the places, in the manner and
currency and at the redemption price herein specified
together with accrued interest (unless the redemption date
is an Interest Payment Date) to the redemption date.  From
and after the redemption date, if monies for the redemption
of Securities called for redemption shall have been made
available at the corporate trust office of the Fiscal Agent
for redemption on the redemption date, the Securities called
for redemption shall cease to bear interest, and the only
right of the holder of such Securities shall be to receive
payment of the redemption price together with accrued
interest (unless the redemption date is an Interest Payment
Date) to the redemption date as aforesaid.  If monies for
the redemption of the Securities are not made available for
payment until after the redemption date, the Securities

               A-14

ARG 0048

called for redemption shall not cease to bear interest until such monies have been so made available.]

[Any Security which is to be redeemed only in part shall be surrendered with, if the Republic or the Fiscal Agent so requires, due endorsement by, or a written instrument of transfer in form satisfactory to the Republic and the Fiscal Agent duly executed by, the holder thereof or such holder's attorney duly authorized in writing, and the Republic shall execute, and the Fiscal Agent shall authenticate and deliver to the registered Holder of such Security without service charge, a new Security or Securities of this Series, of any authorized denomination as required by such Holder, in aggregate principal amount equal to and in exchange for the unredeemed portion of the principal of the Security so surrendered.]

A meeting of registered holders of Securities of this Series may be called at any time and from time to time to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given or taken by registered holders of Securities of this Series or to modify, amend or supplement the terms of the Securities of this Series or the Fiscal Agency Agreement as hereinafter provided. The Fiscal Agent may at any time call a meeting of registered holders of Securities of this Series for any such purpose to be held at such time and at such place as the Fiscal Agent shall determine. Notice of every meeting of registered holders of Securities of this Series, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given as provided in the terms of the Securities of this Series, not less than 30 nor more than 60 days prior to the date fixed for the meeting. In case at any time the Republic or the registered holders of at least 10% in aggregate principal amount of the Outstanding Securities of this Series (as defined in the Fiscal Agency Agreement) shall have requested the Fiscal Agent to call a meeting of the registered holders of Securities of this Series for any such purpose, by written request setting forth in reasonable detail the action proposed to be taken at the meeting, the Fiscal Agent shall call such meeting for such purposes by giving notice thereof.

At any meeting of registered holders of Securities duly called and held as specified above, upon the affirmative vote, in person or by proxy thereunto duly authorized in writing, of the registered holders of not less than 66-2/3% [or ___ %] in aggregate principal amount of the

A-15

ARG 0049

Securities of this Series then Outstanding, or (ii) with the written consent of the registered holders of not less than 66-2/3% [or ___ %] in aggregate principal amount of the Securities of this Series then Outstanding, the Republic [and the Fiscal Agent] may modify, amend or supplement the terms or provisions contained in the Securities of this Series, in any way, and the registered holders of Securities of this Series may make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided by the Fiscal Agency Agreement or the Securities of this Series to be made, given, or taken by registered holders of Securities of this Series; *provided, however*, that no such action may, without the consent of the registered holder of each Security, (A) change the due date for the payment of the principal of or any installment of interest on any Security, (B) reduce the principal amount of any Security, the portion of such principal amount which is payable upon acceleration of the maturity of such Security or the interest rate thereon, (C) change the coin or currency in which or the required places at which payment with respect to interest or principal in respect of the Securities of this Series is payable, (D) reduce the proportion of the principal amount of Securities of this Series the vote or consent of the holders of which is necessary to modify, amend or supplement this Agreement or the terms and conditions of the Securities of this Series or to make, take or give any request, demand, authorization, direction, notice, consent, waiver or other action provided hereby or thereby to be made, taken or given, or (E) change the obligation of the Republic to pay additional amounts.

The Fiscal Agent and the Republic may agree, without the consent of the registered holders of Securities of this Series to (i) any modification of any provisions of the Fiscal agency Agreement which is of a formal, minor or technical nature or is made to correct a manifest error and (ii) any other modification (except as mentioned in the Fiscal Agency Agreement), and any waiver or authorization of any breach or proposed breach, of any of the provisions of the fiscal Agency Agreement which is in the opinion of the Fiscal Agent not materially prejudicial to the interests of the registered holders of Securities. Any such modification, authorization or waiver shall be binding on the registered holders of Securities of this Series and, if the Fiscal Agent so requires, such modification shall be notified to the registered holders of Securities of this Series as soon as practicable.

All notices to the registered holders of Securities will be published in such publications at such locations as any of the Securities are listed for the period

A-16

ARG 0050

of time of such listing and as otherwise provided pursuant to the terms of the Securities of this Series. If at any time publication in any such publication is not practicable, notices will be valid if published in an English language newspaper with general circulation in the respective market regions as the Republic with the approval of the Fiscal Agent, shall determine. In addition, notices will be published in Spanish in a newspaper of general circulation in Argentina, as the Republic shall determine. Any such notice shall be deemed to have been given on the date of such publication or, if published more than once or on different dates, on the first date on which publication is made.

No reference herein to the Fiscal Agency Agreement and no provision of this Security or of the Fiscal Agency Agreement shall alter or impair the obligation of the Republic to pay the principal of (and premium, if any[, on]) [and interest on] this Security at the times, place and rate, and in the coin or currency, herein prescribed.

Claims against the Republic for payment in respect of the Securities of this Series and interest payments thereon shall be prescribed and become void unless made within 10 years (in the case of principal) and 5 years (in the case of interest) from the appropriate Relevant Date in respect thereof.

This Security shall be governed by and construed in accordance with the laws of the State of New York, except with respect to authorization and execution by the Republic.

The Republic has in the Fiscal Agency Agreement irrevocably submitted to the jurisdiction of any New York state or federal court sitting in the Borough of Manhattan, The City of New York and the courts of the Republic of Argentina (the "Specified Courts") over any suit, action, or proceeding against it or its properties, assets or revenues with respect to the Securities of this Series or the Fiscal Agency Agreement (a "Related Proceeding"). The Republic has in the Fiscal Agency Agreement waived any objection to Related Proceedings in such courts whether on the grounds of venue, residence or domicile or on the ground that the Related Proceedings have been brought in an inconvenient forum. The Republic agrees that a final non-appealable judgment in any such Related Proceeding (the "Related Judgment") shall be conclusive and binding upon it and may be enforced in any Specified Court or in any other courts to the jurisdiction of which the Republic is or may be subject (the "Other Courts"), by a suit upon such judgment.

A-17

ARG 0051

The Republic has in the Fiscal Agency Agreement
agreed that (i) service of all writs, process and summonses
in any Related Proceeding or any action or proceeding to
enforce or execute any Related Judgment brought against it
in the State of New York may be made upon Banco de la Nación
Argentina, presently located at 299 Park Avenue, New York,
New York 10171, and, if such person is not maintained by the
Republic as its agent for such purpose, the Republic will
appoint CT Corporation System to act as its agent for such
purpose.

To the extent that the Republic or any of its
revenues, assets or properties shall be entitled, in any
jurisdiction in which any Specified Court is located, in
which any Related Proceeding may at any time be brought
against it or any of its revenues, assets or properties, or
in any jurisdiction in which any Specified Court or Other
Court is located in which any suit, action or proceeding may
at any time be brought solely for the purpose of enforcing
or executing any Related Judgment, to any immunity from
suit, from the jurisdiction of any such court, from set-off,
from attachment prior to judgment, from attachment in aid of
execution of judgment, from execution of a judgment or from
any other legal or judicial process or remedy, and to the
extent that in any such jurisdiction there shall be
attributed such an immunity, the Republic has irrevocably
agreed not to claim and has irrevocably waived such immunity
to the fullest extent permitted by the laws of such
jurisdiction (and consents generally for the purposes of the
Foreign Sovereign Immunities Act to the giving of any relief
or the issue of any process in connection with any Related
Proceeding or Related Judgment), provided that such waiver
shall not be effective (i) with respect to the assets which
constitute freely available reserves pursuant to Article 6
of the Convertibility Law (the "Convertibility Law"), the
amount, composition and investment of which will be
reflected on the balance sheet and accounting statement of
Banco Central consistently prepared pursuant to Article 5 of
the Convertibility Law and (ii) with respect to property of
the public domain located in the territory of The Republic
of Argentina or property owned by the Republic and located
in its territory which is dedicated to the purpose of an
essential public service, and provided further that such
agreement and waiver, insofar as it relates to any
jurisdiction other than a jurisdiction in which a Specified
Court is located, is given solely for the purpose of
enabling the Fiscal Agent or a holder of Securities of this
Series to enforce or execute a Related Judgment. The waiver
of immunities referred to herein constitutes only a limited
and specific waiver for the purpose of the Securities of
this Series and the Fiscal Agency Agreement and under no

A-18

ARG 0052

circumstances shall it be interpreted as a general waiver of the Republic or a waiver with respect to proceedings unrelated to the Securities of this Series or the Fiscal Agency Agreement.

Unless the certificate of authentication hereon has been executed by the Fiscal Agent by manual signature, this Security shall not be entitled to any benefit under the Fiscal Agency Agreement or be valid or obligatory for any purpose.

A-19

ARG 0053

FOR VALUE RECEIVED the undersigned hereby sell(s), assigns
or transfers unto
PLEASE INSERT SOCIAL SECURITY OR OTHER
  IDENTIFYING NUMBER OF ASSIGNEE

_____

Please print or typewrite name and address including postal

zip code of assignee

the within Security and all rights thereunder, hereby

irrevocably constituting and appointing to transfer such

Security on the books of the Trustee, with full power of

substitution in the premises.

Dated: _____        Signature: _____

                          Notice:  the signature to
                          this assignment must
                          correspond with the name
                          as written upon the face
                          of the written instrument
                          in every particular,
                          without alteration or
                          enlargement or any change
                          whatever.


A-20

ARG 0054

# EXHIBIT 2

**PUBLIC DEBT**

**Law 26,017**

**Provisions additional to the provisions governing the bonds of the National State that are eligible for the swap established in Decree No. 1735/2004, but that have not been submitted for the swap ordered by the aforementioned decree. Let Decree No. 1733/2004 be ratified.**

**Passed: February 9, 2005**

**Promulgated: February 10, 2005**

The Senate and Chamber of Deputies of the Argentine Nation, in Congress assembled, etc.
do pass with force of Law:

**ARTICLE 1** – Without prejudice to the effectiveness of any laws and regulations that may apply, the bonds of the National State that are eligible for the swap established in Decree No. 1735 dated December 9, 2004 that have not been submitted for the swap as established in the aforementioned decree shall be subject additionally to the provisions of this law.

**ARTICLE 2** – The national Executive Power may not, with respect to the bonds referred to in Article 1 of this law, reopen the swap process established in the aforementioned Decree No. 1735/04.

**ARTICLE 3** – The national State shall be prohibited from conducting any type of in-court, out-of-court or private settlement with respect to the bonds referred to in Article 1 of this law.

**ARTICLE 4** – The national Executive Power must—within the framework of the terms of issuance of the respective bonds, and the applicable laws and regulations in the corresponding jurisdictions—order the pertinent administrative acts and fulfill the necessary procedures to remove the bonds referred to in the preceding article from listing on all domestic and foreign securities markets and exchanges.

**ARTICLE 5** – The national Executive Power shall submit a report to the Congress of the Nation that reflects the effects of the swap and the new levels of debt and reduction therein.

**ARTICLE 6** – Without prejudice to the above provisions, the bonds of the national State that are eligible pursuant to Decree No. 1735/04 that are deposited for any reason or on any basis to the order of courts of any instance, authority or jurisdiction, whose owners have not adhered to the swap ordered by the aforementioned decree or have not expressly stated, in the respective court proceedings, their intent not to adhere to the aforementioned swap before the closing date thereof, according to the timetable established in the aforementioned decree No. 1735/04 shall be replaced, automatically, by the "2038 STEP UP BONDS OF THE REPUBLIC OF ARGENTINA AT PAR," under the conditions established for the allocation, liquidation and issuance of such bonds by Decree No. 1735/04 and complementary provisions.

Let the Ministry of Economy and Production be authorized to issue any necessary complementary provisions to implement the replacement ordered in this article.

**ARTICLE 7** – Let Decree No. 1733 dated December 9, 2004 be ratified.

**ARTICLE 8** – Be it communicated to the national Executive Power.

ISSUED IN THE HALL OF SESSIONS OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON FEBRUARY NINTH, TWO THOUSAND FIVE.

–RECORDED UNDER No. 26,017–

EDUARDO O. CAMAÑO. – DANIEL O. SCIOLI. – Eduardo D. Rollano. – Juan Estrada.

law 26017.doc


**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK        )
                         )
                         )   ss
COUNTY OF NEW YORK       )

## CERTIFICATION

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached Law 26,017.

Sara Rosner, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this _18_ day of _MAY_, 20 _07_.

EVAN FINCH
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6134600
Qualified in New York County
My Commission Expires October 03, 2009

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel 212.631.7432 fax 212.631.7778
San Francisco  220 Montgomery Street, 3rd Floor, San Francisco, CA 94104, U.S.A. tel 415.576.9600 fax 415.520.0625
London  107-111 Fleet Street, London EC4A 2AB, United Kingdom tel +44.(0)20.7936.9002 fax +44.(0)20.7990.9909
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082

translations@geotext.com  |  www.geotext.com

DEUDA PUBLICA

Ley 26.017

**Disposiciones adicionales a las que quedarán sujetos los bonos del Estado Nacional que resulten elegibles para el canje establecido en el Decreto Nº 1735/2004 y que no hubiesen sido presentados al canje dispuesto por el mencionado decreto. Ratifícase el Decreto Nº 1733/2004.**

**Sancionada: Febrero 9 de 2005**

**Promulgada: Febrero 10 de 2005**

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de Ley:

**ARTICULO 1º** — Sin perjuicio de la vigencia de las normas que resulten aplicables, los bonos del Estado nacional que resulten elegibles para el canje establecido en el Decreto Nº 1735 del 9 de diciembre de 2004, que no hubiesen sido presentados al canje según lo establecido en dicho decreto, quedarán sujetos adicionalmente a las disposiciones de la presente ley.

**ARTICULO 2º** — El Poder Ejecutivo nacional no podrá, respecto de los bonos a que se refiere el artículo 1º de la presente, reabrir el proceso de canje establecido en el Decreto Nº 1735/04 mencionado.

**ARTICULO 3º** — Prohíbese al Estado nacional efectuar cualquier tipo de transacción judicial, extrajudicial o privada, respecto de los bonos a que refiere el artículo 1º de la presente ley.

**ARTICULO 4º** — El Poder Ejecutivo nacional deberá, dentro del marco de las condiciones de emisión de los respectivos bonos, y de las normas aplicables en las jurisdicciones correspondientes, dictar los actos administrativos pertinentes y cumplimentar las gestiones necesarias para retirar de cotización en todas las bolsas y mercados de valores, nacionales o extranjeros, los bonos a que se refiere el artículo anterior.

**ARTICULO 5º** — El Poder Ejecutivo nacional remitirá al Honorable Congreso de la Nación un informe que refleje los efectos del canje y los nuevos niveles de deuda y reducción de la misma.

**ARTICULO 6º** — Sin perjuicio de lo establecido precedentemente, los bonos del Estado nacional elegibles de acuerdo a lo dispuesto por el Decreto Nº 1735/04, depositados por cualquier causa o título a la orden de tribunales de cualquier instancia, competencia y jurisdicción, cuyos titulares no hubieran adherido al canje dispuesto por el decreto antes citado o no hubieran manifestado, en forma expresa, en las respectivas actuaciones judiciales, su voluntad de no adherir al mencionado canje antes de la fecha de cierre del mismo, según el cronograma establecido por el referido decreto Nº 1735/04, quedarán reemplazados, de pleno derecho, por los "BONOS DE LA REPUBLICA ARGENTINA A LA PAR EN PESOS STEP UP 2038", en las condiciones establecidas para la asignación, liquidación y emisión de tales bonos por el Decreto Nº 1735/04 y sus normas complementarias.

Facúltase al Ministerio de Economía y Producción a dictar las normas complementarias que fueren necesarias para instrumentar el reemplazo dispuesto en el presente artículo.

**ARTICULO 7º** — Ratifícase el Decreto Nº 1733 del 9 de diciembre de 2004.

**ARTICULO 8º** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS NUEVE DIAS DEL MES DE FEBRERO DEL AÑO DOS MIL CINCO.

—REGISTRADO BAJO EL Nº 26.017—

EDUARDO O. CAMAÑO. — DANIEL O. SCIOLI. — Eduardo D. Rollano. — Juan Estrada.

law 26017.doc

# EXHIBIT 3

**PUBLIC DEBT**

**Law No. 26.547**

**Restructuring of the Public Instruments eligible for exchange. Suspension of operation of Articles 2, 3, and 4 of Law No. 26.017.**

**Passed: 18 November 2009**

**Promulgated in fact: 9 December 2009**

The Senate and the Chamber of Deputies of the Argentine Nation, assembled in Congress, etc., pass with force of Law:

**ARTICLE 1.** The operation of Articles 2, 3, and 4 of Law No. 26.017 is suspended until 31 December 2010, or until the National Executive Branch, through the Ministry of Economy and Public Finance, declares that the process of restructuring the public instruments covered by said law is completed, whichever occurs first.

**ARTICLE 2.** The National Executive Branch, through the Ministry of Economy and Public finance, is authorized to perform all those acts that are necessary for the completion of the process of restructuring the public instruments that were eligible for the exchange established in Decree No. 1735 of 9 December 2004 and its supplementary provisions and which were not presented for said exchange, pursuant to the terms of Article 65 of Law No. 24.156 on Financial Administration and National Public Sector Control Systems and its amendments, for the purpose of adapting said debt service to the payment possibilities of the National State in the medium and long terms.

**ARTICLE 3.** The financial terms and conditions that may be offered may not be equal to or better than those offered to creditors in the debt restructuring established by Decree No. 1735/04.

**ARTICLE 4.** The public debt instruments that may be issued as a consequence of the provisions of the within law and the provisions of Articles 7 and 10 of Law No. 23.928 and its amendments, as pertinent, are excepted.

**ARTICLE 5.** Holders of public instruments that were eligible for the exchange established in Decree No. 1735/04 and its supplementary provisions who wish to participate in the restructuring operation carried out pursuant to the provisions of the within law must waive all the rights they hold by virtue of said instruments, including those rights recognized by any judicial or administrative decision, arbitration award, or decision of any other authority, and must desist from and hold the Argentine Republic harmless of any judicial, administrative, or arbitration proceedings or any other type of proceeding that has been or may be brought in the future in relation to the said instruments or the obligations of the Argentine Republic that may arise therefrom, including any action designed to collect principal or interest service on said instruments.

It is forbidden to offer to the holders of public debt that have brought judicial, administrative, or arbitration proceedings or any other type of proceeding treatment more favorable than the treatment afforded to holders who did not bring such proceedings.

**ARTICLE 6**. The Ministry of Economy and Public Finance shall report quarterly to the Honorable Congress of the Nation on the progress in the negotiations and the agreements reached during the negotiation process.

**ARTICLE 7**. This Law is sent to the National Executive Branch.

GIVEN IN THE ASSEMBLY HALL OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON THE EIGHTEENTH DAY OF THE MONTH OF NOVEMBER IN THE YEAR TWO THOUSAND NINE.

- RECORDED UNDER No. 26.547 –

JOSE J.B. PAMPURO. – EDUARDO A. FELLNER. - Enrique Hidalgo. – Juan H. Estrada

Juris Services International
Translation Studio
23 Normandy Terrace
Bronxville, NY 10708
Tel: 212 759-5400 Fax: 212 401-8125

CERTIFICATE OF ACCURACY

State of New York            )
Village of Bronxville     : ss.:
County of Westchester        )

This is to certify that the attached translation from SPANISH into ENGLISH of the document entitled/described below is a true and accurate rendition of the original Spanish document:

INFOLEG                                          Page 1 of 1

**DEUDA PUBLICA**

**Ley 26.547**

**Reestructuración de los Títulos Públicos elegibles para el canje. Suspéndese la vigencia de los artículos 2°, 3° y 4° de la Ley N° 26.017.**

**Sancionada: Noviembre 18 de 2009**

**Promulgada de Hecho: Diciembre 9 de 2009**

.........................................................................................................................................

**ARTICULO 7°** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS DIECIOCHO DIAS DEL MES DE NOVIEMBRE DEL AÑO DOS MIL NUEVE.

— REGISTRADA BAJO EL N° 26.547 —

JOSE J. B. PAMPURO — EDUARDO A. FELLNER — Enrique Hidalgo. — Juan H. Estrada.

John E. Considine
President

Date _____

**DEUDA PUBLICA**
**Ley 26.547**
**Reestructuración de los Títulos Públicos elegibles para el canje. Suspéndese la vigencia de los artículos 2°, 3° y 4° de la Ley N° 26.017.**
**Sancionada: Noviembre 18 de 2009**
**Promulgada de Hecho: Diciembre 9 de 2009**

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de Ley:

**ARTICULO 1°** — Suspéndese la vigencia de los artículos 2°, 3° y 4° de la Ley 26.017 hasta el 31 de diciembre del 2010 o hasta tanto el Poder Ejecutivo nacional, a través del Ministerio de Economía y Finanzas Públicas, declare terminado el proceso de reestructuración de los títulos públicos alcanzados por la referida norma, lo que ocurra primero.

**ARTICULO 2°** — Autorízase al Poder Ejecutivo nacional, a través del Ministerio de Economía y Finanzas Públicas, a realizar todos aquellos actos necesarios para la conclusión del proceso de reestructuración de los títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1735 del 9 de diciembre de 2004 y sus normas complementarias que no hubiesen sido presentados al mismo, en los términos del artículo 65 de la Ley 24.156 de Administración Financiera y de los Sistemas de Control del Sector Público Nacional y sus modificatorias, a fin de adecuar los servicios de dicha deuda a las posibilidades de pago del Estado nacional en el mediano y largo plazo.

**ARTICULO 3°** — Los términos y condiciones financieros que se ofrezcan no podrán ser iguales ni mejores que los ofrecidos a los acreedores, en la reestructuración de deuda dispuesta por el Decreto N° 1735/04.

**ARTICULO 4°** — Exceptúase a los títulos de deuda pública que se emitan como consecuencia de lo dispuesto en la presente ley, de lo dispuesto en los artículos 7° y 10 de la Ley 23.928 y sus modificaciones, de corresponder.

**ARTICULO 5°** — Los tenedores de títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1735/04 y sus normas complementarias que deseen participar de la operación de reestructuración que se realice en el marco de lo dispuesto en la presente ley, deberán renunciar a todos los derechos que les correspondan en virtud de los referidos títulos, inclusive a aquellos derechos que hubieran sido reconocidos por cualquier sentencia judicial o administrativa, laudo arbitral o decisión de cualquier otra autoridad, y renunciar y liberar a la República Argentina de cualquier acción judicial, administrativa, arbitral o de cualquier otro tipo, iniciada o que pudiere iniciarse en el futuro con relación a los referidos títulos o a las obligaciones de la República Argentina que surjan de los mismos, incluyendo cualquier acción destinada a percibir servicios de capital o intereses de dichos títulos.

Prohíbese ofrecer a los tenedores de deuda pública que hubieran iniciado acciones judiciales, administrativas, arbitrales o de cualquier otro tipo un trato más favorable que a aquellos que no lo hubieran hecho.

**ARTICULO 6°** — El Ministerio de Economía y Finanzas Públicas informará trimestralmente al Honorable Congreso de la Nación, el avance de las tratativas y los acuerdos a los que se arribe durante el proceso de negociación.

**ARTICULO 7°** — Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS DIECIOCHO DIAS DEL MES DE NOVIEMBRE DEL AÑO DOS MIL NUEVE.

— REGISTRADA BAJO EL N° 26.547 —

JOSE J. B. PAMPURO. — EDUARDO A. FELLNER. — Enrique Hidalgo. — Juan H. Estrada.

# EXHIBIT 4

**GOVERNMENT DEBT**

**Law No. 26,886**

**Restructuring process of government-issued debt.**

**Enacted: September 11, 2013**

**Promulgated: September 20, 2013**

The Senate and Chamber of Representatives of Argentina, Meeting in Congress, etc. sign into

Law:

**ARTICLE 1** – The Federal Executive Branch is authorized, through the Ministry of Economy and Public Finance, to carry out all acts necessary for the conclusion of the restructuring process of government-issued debt eligible for the swap provided by Decree No. 1,735 dated December 9, 2004, and supplementary regulations, that were not submitted to the same nor to the swap provided by Decree No. 563 dated April 26, 2010, as provided by Article 65 of the Law of Financial Administration and Oversight Systems of the Federal Government No. 24,156 and modifications thereof, for the purpose of adjusting debt service to the payment possibilities of the National State in the medium and long term.

**ARTICLE 2** – The financial terms and conditions to be offered are prohibited from being more favorable than those offered to creditors in the debt restructuring provided by Decree No. 563/10.

**ARTICLE 3** – Government-issued debt issued as a consequence of the provisions of this law, the provisions of Articles 7 and 10 of Law No. 23,928 and modifications thereof, as applicable, shall be exempted.

**ARTICLE 4** – Holders of government-issued debt that are eligible for the swap provided under Decree No. 1,735/04 and supplementary regulations who wish to participate in any restructuring operation carried out within the framework of the provisions of this law, shall waive all rights under the referenced government-issued debt, including rights recognized by any court or administrative ruling, arbitral award or decision of any authority, and release the Argentine Republic from any court, administrative or arbitral action or any other type of action that has been filed or may be filed in the future in relation to the referenced government-issued debt or the obligations of the Argentine Republic that may arise therefrom, including any action for the purpose of receiving services related to capital or interest from the referenced government-issued debt.

It is forbidden to offer to holders of government-issued debt who have filed court, administrative or arbitral actions or actions of any other type treatment more favorable than that given to those who have not done so.

**ARTICLE 5** – The Ministry of Economy and Public Finance will inform the Federal Congress of the results of the provisions of this law on a quarterly basis.

**ARTICLE 6** – Government-issued debt eligible pursuant to the provisions of Decree No. 1,735/04 deposited for any reason due to an order from courts of any instance, authority or jurisdiction, whose holders did not observe the provisions of the swap provided by the aforementioned decree or the provisions of Decree No. 563/10, or who did not expressly state in the respective legal proceedings their wish not to abide by the same, shall be automatically replaced by "2038 Par Value Step-Up Bonds of the Argentine Republic," under the conditions established for assignment, liquidation, and issuance of such bonds by Decree No. 1,735/04 and supplementary regulations.

The Ministry of Economy and Public Finance is authorized to issue any supplementary rules necessary to implement the replacement provided in this article.

**ARTICLE 7** – Articles 2, 3, and 4 of Law No. 26,017 are suspended until the Federal Congress declares the termination of the restructuring process for the government-issued debt under the referenced law.

**ARTICLE 8** – This law will enter into effect on the day of its publication in the Official Bulletin.

**ARTICLE 9** – Be it notified to the Federal Executive Branch.

ISSUED IN THE HALL OF SESSIONS OF THE ARGENTINE CONGRESS, IN BUENOS AIRES, ON THE ELEVENTH DAY OF THE MONTH OF SEPTEMBER IN THE YEAR TWO THOUSAND THIRTEEN.

–REGISTERED UNDER NUMBER 26,886–

AMADO BOUDOU. – JULIAN A. DOMINGUEZ. – Gervasio Bozzano. – Juan H. Estrada.



**GEOTEXT**
Translations, Inc.

STATE OF NEW YORK    )
                       )
                       )    ss
COUNTY OF NEW YORK  )

## <u>CERTIFICATION</u>

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Spanish into English of the attached Law No. 26,886, enacted on

September 11, 2013.

Ken Hetzel, Project Manager
Geotext Translations, Inc.

Sworn to and subscribed before me

this 24ᵗʰ day of October, 20 13 .

LYNDA GREEN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01GR6205401
Qualified in New York County
My Commission Expires May 11, 2017

New York  259 West 30th Street, 17th Floor, New York, NY 10001, U.S.A. tel +1.212.631.7432 fax +1.212.631.7778
San Francisco  220 Montgomery Street Ste. 438, San Francisco CA 94104 U.S.A tel +1.415.576.9500 fax +1.415.520.0525
Washington 1025 Connecticut Avenue, Suite 1000, Washington, DC 20036, U.S.A. Tel +1.202.828.1267 Fax +1.202.828.1271
London  8-11 St. John's Lane, London EC1M 4BF, United Kingdom Tel +44.20.7553.4100 Fax+44.20.7990.9909
Paris 75 Boulevard Haussmann, F- 75008 Paris, France tel +33.1.42.68.51.47 fax +33.1.77.72.90.25
Hong Kong  20th Floor, Central Tower, 28 Queen's Road, Central, Hong Kong tel +852.2159.9143 fax +852.3010.0082
translations@geotext.com | www.geotext.com

Esta norma fue consultada a través de InfoLEG, base de datos del Centro de Documentación e Información, Ministerio de Economía y Finanzas Públicas.

**DEUDA PUBLICA**

**Ley 26.886**

**Proceso de reestructuración de títulos públicos.**

**Sancionada: Septiembre 11 de 2013**

**Promulgada: Septiembre 20 de 2013**

El Senado y Cámara de Diputados de la Nación Argentina reunidos en Congreso, etc. sancionan con fuerza de

Ley:

**ARTICULO 1° —** Autorízase al Poder Ejecutivo nacional, a través del Ministerio de Economía y Finanzas Públicas, a realizar todos aquellos actos necesarios para la conclusión del proceso de reestructuración de los títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1.735 del 9 de diciembre de 2004 y sus normas complementarias que no hubiesen sido presentados al mismo al canje dispuesto por el Decreto N° 563 de fecha 26 de abril de 2010, en los términos del artículo 65 de la ley 24.156 de Administración Financiera y de los Sistemas de Control del Sector Público Nacional y sus modificatorias, con el fin de adecuar los servicios de dicha deuda a las posibilidades de pago del Estado nacional en el mediano y largo plazo.

**ARTICULO 2° —** Los términos y condiciones financieros que se ofrezcan no podrán ser mejores que los ofrecidos a los acreedores en la reestructuración de deuda dispuesta por el Decreto N° 563/10.

**ARTICULO 3° —** Exceptúase a los títulos de deuda pública que se emitan como consecuencia de lo dispuesto en la presente ley, de lo dispuesto en los artículos 7° y 10 de la ley 23.928 y sus modificaciones, de corresponder.

**ARTICULO 4° —** Los tenedores de títulos públicos que fueran elegibles para el canje dispuesto en el Decreto N° 1.735/04 y sus normas complementarias que deseen participar de cualquier operación de reestructuración que se realice en el marco de lo dispuesto en la presente ley, deberán renunciar a todos los derechos que les correspondan en virtud de los referidos títulos, inclusive a aquellos derechos que hubieran sido reconocidos por cualquier sentencia judicial o administrativa, laudo arbitral o decisión de cualquier otra autoridad, y renunciar y liberar a la República Argentina de cualquier acción judicial, administrativa, arbitral o de cualquier otro tipo, iniciada o que pudiere iniciarse en el futuro con relación a los referidos títulos o a las obligaciones de la República Argentina que surjan de los mismos, incluyendo cualquier acción destinada a percibir servicios de capital o intereses de dichos títulos.

Prohíbese ofrecer a los tenedores de deuda pública que hubieran iniciado acciones judiciales, administrativas, arbitrales o de cualquier otro tipo un trato más favorable que a aquellos que no lo hubieran hecho.

**ARTICULO 5° —** El Ministerio de Economía y Finanzas Públicas informará trimestralmente al Honorable Congreso de la Nación los resultados de lo dispuesto en la presente.

**ARTICULO 6° —** Los bonos del Estado nacional elegibles de acuerdo a lo dispuesto por el Decreto N° 1.735/04, depositados por cualquier causa o título a la orden de tribunales de cualquier instancia, competencia y jurisdicción, cuyos titulares no hubieran adherido al canje dispuesto por el decreto antes citado o el dispuesto por el Decreto N° 563/10, o no hubieran manifestado, en forma expresa, en las respectivas actuaciones judiciales, su voluntad de no adherir a los mismos, quedarán reemplazados, de pleno derecho, por los "Bonos de la República Argentina a la Par en Pesos Step Up 2038", en las condiciones establecidas para la asignación, liquidación y emisión de tales bonos por el Decreto N° 1.735/04 y sus normas complementarias.

Facúltase al Ministerio de Economía y Finanzas Públicas a dictar las normas complementarias que fueren necesarias para instrumentar el reemplazo dispuesto en el presente artículo.

**ARTICULO 7° —** Suspéndese la vigencia de los artículos 2°, 3° y 4° de la ley 26.017 hasta tanto el Congreso de la Nación declare terminado el proceso de reestructuración de los Títulos Públicos alcanzados por la referida norma.

**ARTICULO 8° —** La presente ley entrará en vigencia el día de su publicación en el Boletín Oficial.

**ARTICULO 9° —** Comuníquese al Poder Ejecutivo nacional.

DADA EN LA SALA DE SESIONES DEL CONGRESO ARGENTINO, EN BUENOS AIRES, A LOS ONCE DIAS DEL MES DE SEPTIEMBRE DEL AÑO DOS MIL TRECE.

—REGISTRADO BAJO EL N° 26.886—

AMADO BOUDOU. — JULIAN A. DOMINGUEZ. — Gervasio Bozzano. — Juan H. Estrada.