# EXHIBIT A

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

| | | |
|---|---|---|
| WASHINGTON, DC | ONE LIBERTY PLAZA | ROME |
| PARIS | NEW YORK, NY 10006-1470 | MILAN |
| BRUSSELS | (212) 225-2000 | HONG KONG |
| LONDON | FACSIMILE (212) 225-3999 | BEIJING |
| FRANKFURT | WWW.CLEARYGOTTLIEB.COM | BUENOS AIRES |
| COLOGNE | Writer's Direct Dial: +1 212 225 2891 | SÃO PAULO |
| MOSCOW | E-Mail kbresnahan@cgsh.com | ABU DHABI |
| | | SEOUL |

BY FEDEX

Robert A. Cohen, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036-6797

Edward A. Friedman, Esq.
Friedman Kaplan Seiler & Adelman LLP
7 Times Square
New York, NY 10036-6516

> Re: *NML Capital, Ltd. v. Republic of Argentina*, Nos. 03 Civ. 8845 (TPG) *et al.*;
> *Aurelius Capital Master, Ltd. v. Republic of Argentina*, Nos. 07 Civ. 2715
> (TPG) *et al.*

Dear Robert and Edward:

      I enclose a disk that contains documents, Bates range REPARG00000310 through REPARG00001352, that are responsive to plaintiff NML Capital, Ltd.'s Discovery Requests dated August 14, 2012 and plaintiffs Aurelius Capital Partners, LP, et al.'s Discovery Requests dated December 13, 2011 (and subsequently amended on May 27, 2013). The password for the encrypted disk will be sent by e-mail.

                                 Very truly yours,

                                 Kristin A. Bresnahan

Enclosure

# EXHIBIT B

# WOLLMUTH MAHER & DEUTSCH LLP

### 500 FIFTH AVENUE

### NEW YORK, NEW YORK 10110

TELEPHONE (212) 382-3300
FACSIMILE (212) 382-0050

July 6, 2015

<u>BY HAND DELIVERY</u>

Honorable Thomas P. Griesa
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street, Room 1630
New York, New York 10007-1312

      Re:    *NML Capital, Ltd.  v. The Republic of Argentina*,
            <u>Nos. 08 Civ. 6978, 09 Civ. 1707, 09 Civ. 1708; and related cases</u>

Dear Judge Griesa:

      My firm, along with Christopher J. Clark of Latham & Watkins, represent non-parties Fintech Advisory, Inc. ("Fintech"), ███████████████████, in connection with subpoenas served on them on March 27 and March 30, 2015 (the "Subpoenas") by plaintiff NML Capital, Ltd. ("NML" or "Plaintiff").  Pursuant to Your Honor's Individual Practices, we write to request a conference for permission to make a discovery motion (i) seeking to quash the Subpoenas to the extent they seek testimony of ████, and (ii) for a protective order under Rule 26(c) of the Federal Rules of Civil Procedure.  In response to the Subpoenas, our clients conducted searches for relevant documents in their possession, including all Fintech internal emails and personal devices, and made a full good-faith production of documents to NML on April 24, 2015.  NML, however, continued to pursue improper, intrusive and overbroad discovery demands.  In the interest of cooperation, we have made good-faith efforts to meet and confer with NML to avoid the need for this court's intervention, including multiple telephone conversations and email exchanges over the past several weeks, as well as sharing of documents and emails on key issues of asserted importance to NML.  Despite these efforts, NML insists on continuing efforts to harass our clients, requiring the relief sought below.

      In sum, Fintech, a private investment manager that manages its own investments, already has searched for documents concerning so-called "Evasion Plans" and has agreed to search for documents in its possession, if any, concerning Argentina's assets, "financial circulatory system"

and planned or actual structure of Argentina's international bond issues. Fintech also is prepared to produce a corporate representative for a deposition. Despite this, NML seeks to delve into Fintech's private business by seeking discovery beyond the foregoing, and ███████████████ ████████████████████████████████████████████ ████████████ Accordingly, Fintech, ████████████████████ seek permission to move to quash and for a protective order. Fintech has had to go down this road before. For the court's reference, Fintech previously filed a motion to quash a subpoena served by Plaintiff in December of 2012 (Docket Nos. 444-47) as part of an effort by Plaintiff to blanket the financial community with subpoenas. This court directed that efforts to pursue that discovery "should be entirely discontinued." Fintech, █████████████████████ are entitled to similar relief again.

I.   NML's Improper Document Requests Requiring a Protective Order

Fintech is an investment advisor that manages its own investments and has no involvement with the flow of Argentina's assets. ██████████████████ ███████████████████ Fintech is a direct competitor of the Plaintiff in these actions, including NML, its parent company Elliott Management, and Aurelius. Fintech and the plaintiffs in these matters often target the same assets and investments, and sharing strategies and analysis with them would harm Fintech.

NML's Subpoenas at issue here sought 63 categories of documents. Within 30 days of being served, Fintech, ███████████████████ complied with NML's demands by running searches for relevant documents in its possession, including all internal Fintech emails and personal devices, and making a complete good-faith production of all documents to which NML is entitled. Indeed, our clients have produced documents in response to every request in the Subpoenas except for those concerning "Financing Arrangements." NML's requests for "Financing Arrangements," however, are a pure fishing expedition seeking private information unrelated to "Evasion Plans"[1] or judgment collection.

Fintech requested that NML clarify and justify such an overbroad request. Indeed, during a previous discovery hearing on April 22, 2015 in which NML sought discovery from non-party Deutsche Bank, the court directed Plaintiff to "specify . . . the information you need -- you say you need -- and not just all about the transaction but what specifically do you need." Transcript of Oral Argument at 22, *NML Capital, Ltd. v. The Republic of Argentina* (No. 08 Civ. 6978).

NML responded trying to justify its overbroad and harassing demand by saying it is entitled to documents regarding Argentina's assets, "financial circulatory system" and the structure of Argentina's bond financing. Accordingly, in an effort to compromise, even though Fintech is not a bank and is not involved with the flow of Argentina's assets, Fintech agreed to

---

[1] In response to the Subpoenas, Fintech, ███████████████████ agreed to search for documents in connection with any "Evasion Plan," defined as "any plan or course of action—whether pursued directly by Argentina or through any representative, agent, instrumentality, political subdivision, or other Person or entity whether or not acting on Argentina's behalf—to evade or attempt to evade the purposes and directives of the Amended February 23 Order, to render or attempt to render that Order ineffective, or to diminish or attempt to diminish the Court's ability to supervise compliance with the Amended February 23 Order without prior approval of the Court."

search for and produce documents in its possession, if any, concerning the location of Argentina's assets, Argentina's "financial circulatory system" and planned or actual structure of Argentina's international bond issues. However, betraying its true intention to harass and delve into private matters not proper for discovery in this case, NML has indicated that it will not accept documents related to financing arrangements that could shed some light into Argentina's assets or its financial circulatory system. NML instead seeks to pursue a nebulous, overbroad concept of "Financing Arrangements" knowing that such a broad concept would certainly pick up transactions that are unrelated to the case at hand, where it has an adversarial interest, and that would not be relevant for purposes of judgment collection.

Indeed, Plaintiff's requests for documents concerning "Financing Arrangements" exceed the permissible scope of discovery in connection with the enforcement of a judgment, which they purport to be undertaking. Discovery under Federal Rule of Civil Procedure 69(a)(2) must be calculated to assist in collection on a judgment, and limited to a search for the judgment debtor's—here, Argentina's—assets. *See EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012); *GMA Accessories v. Elec. Wonderland, Inc.*, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977) (finding that FRCP 69(a) only authorized discovery by a judgment creditor for the purpose of discovering any concealed or fraudulently transferred assets held by the judgment debtors). The Second Circuit has similarly limited the scope of permissible discovery from non-parties under CPLR 5223 to only that which "is relevant to the judgment debtor's income and property." *Rossini v. Republic of Argentina*, 453 F. App'x 22, 24-25 (2d Cir. 2011); *see also Parts Auth., Inc. v. Eagle Serv. Station, Inc.*, 10 Misc. 3d 1066(A), 814 N.Y.S.2d 563 (Civ. Ct. 2005) (finding that disclosure under CPLR 5223 "does have its limits and a court has broad discretionary power to control and regulate enforcement procedures in order to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts"). Fintech has agreed to produce such documents, if any, in its possession, but NML wants to pry further. It is not entitled to do this. If a private individual or entity has any communications about that person's or entity's private business in a particular market, such discussions are not subject to discovery. Thus, Fintech, ███████████████████ are entitled to a protective order to prevent disclosure concerning "Financing Arrangements" beyond information pertaining to Argentina's assets, "financial circulatory system" or the structure of Argentina's international bond issues.

II.   <u>Motion to Quash Depositions of</u> ███████████████





**III.** <u>Protective Order as to</u>

We look forward to the opportunity to confer with the court regarding Fintech's request to move to quash and for a protective order.

4

Respectfully submitted,

_____
William F. Dahill

_____
Christopher J. Clark

cc:     Dennis Hranitzky, Esq. (By Hand)
        Debra O'Gorman, Esq. (By Hand)

5

# EXHIBIT C



**MOSES & SINGER LLP**

The Chrysler Building
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800    Fax: 212.554.7700
www.mosessinger.com

Philippe A. Zimmerman
Direct: 212.554.7895  Fax: 917.206.4395
pzimmerman@mosessinger.com

July 6, 2015

**VIA ECF**

Honorable Thomas P. Griesa
Daniel Patrick Moynihan
United States Courthouse
Southern District of New York
Courtroom 26B
500 Pearl Street
New York, NY 10007-1312

Re:  *NML Capital, Ltd.  v. The Republic of Argentina*, 08 Civ. 6978 (TPG) and related matters
*Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 09 Civ. 8757 (TPG) and related matters
*Aurelius Opportunities Fund II, LLC, et al. v. The Republic of Argentina*, 10 Civ. 1602 (TPG) and related matters
*Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 10 Civ. 3970 (TPG) and related matters
*Blue Angel Capital I LLC v. The Republic of Argentina*, 10 Civ. 4101 (TPG) and related matters
*Pablo Alberto Varela, et al. v. The Republic of Argentina*, 10 Civ. 5338 (TPG)
*Olifant Fund, Ltd. v. The Republic of Argentina*, 10 Civ. 9587 (TPG)

Dear Judge Griesa:

We represent non-parties Deutsche Bank AG – New York branch, Deutsche Bank Americas Holding Corp. (subpoenaed as "Deutsche Bank America Holding Corp."), Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas and DB USA Corporation (f/k/a Taunus Corporation) (collectively, "DB") in the above-referenced matters.  Pursuant to Rule 2(A) of Your Honor's Individual Practices and Rule 37.2 of the Local Rules of the U.S. District Court for the Southern District of New York, we write to request a pre-motion discovery conference in connection with an anticipated motion: (i) to quash the subpoena duces tecum ad testifcandum, dated May 5, 2015 (the "Subpoena"), served on DB by plaintiffs NML Capital, Ltd. and certain of its affiliates (collectively, "NML") on their behalf and purportedly on behalf of Aurelius Capital Master Ltd. and certain of its affiliates (collectively, "Aurelius"), Pablo Alberto Varela, et al. ("Varela"), and Olifant Fund, Ltd. ("Olifant"; together with NML, Aurelius and Varela, "Plaintiffs"); and (ii) to modify the Stipulations and Orders Governing Confidential Material (the "Confidentiality Orders") in the above-referenced matters.  A copy of the Subpoena is attached hereto as Exhibit A.  DB and Plaintiffs have met and conferred regarding DB's objections to the

1961939 007756.0152

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 2

Subpoena, including Plaintiffs' abuse of the discovery process, but have been unable to resolve Plaintiffs' objections.

Non-party DB has been served with dozens of subpoenas over the past few years related to judgments and pending actions filed against the Republic of Argentina (the "Republic"). DB has spent substantial time and expense responding in good faith to these subpoenas. It is now evident that the subpoenas being issued by NML, Aurelius and other plaintiffs are less an effort to obtain information to locate and ultimately seize attachable assets of the Republic and more a tool under the auspices of the Court to punish entities and affiliates of entities that are identified as having played a role in financial transactions with the Republic and to instigate press reports intended to suggest that such entities or their affiliates have acted illegally or otherwise improperly in being involved in such transactions— despite the fact that Your Honor and Plaintiffs have previously acknowledged that there is no general prohibition on the Republic raising capital in the financial markets.

DB submits that any doubt as to Plaintiffs' true purpose in issuing subpoenas has been removed by (1) the false statements made by NML's counsel on behalf of NML and Aurelius to the Court at an emergency hearing held on April 22, 2015, statements NML has refused to correct despite DB's repeated demands that it do so, (2) Plaintiffs' failure to properly treat information that was produced in response to subpoenas and designated as "Confidential" pursuant to the Confidentiality Orders entered in the relevant proceedings, (3) a "public notice" issued by Aurelius that threatened to "bring suit" against, among others, financial institutions that participated in an auction of BONAR 2024 bonds in Argentina that occurred in April 2015, and (4) Plaintiffs' disingenuous use, in violation of the Confidentiality Orders, of press reports, which include Confidential information that appears to have been leaked to the media, and information that was shared with other plaintiffs in filings to this Court. Evidently frustrated that their prior actions and threats have not bullied non-parties into not engaging in lawful activity with the Republic, Plaintiffs issued the Subpoena (and served similar subpoenas on other entities reputed to have purchased bonds or played a role in connection with the April 2015 BONAR 2024 auction in Argentina).

1.     In support of its request to obtain expedited discovery related to the Bonar 2024 bonds, at the April 22nd Hearing, NML's counsel, Robert Cohen of Dechert LLC, represented to the Court that there were media reports identifying an unidentified DB entity *in New York* as having subscribed to $1 billion of the BONAR 2024 bonds. NML has now confirmed that no such media reports exist. Specifically, Mr. Cohen, speaking on behalf of both NML and Aurelius, represented to Your Honor, "[w]e understand that *two banks in New York* have subscribed to this offering which is now reported to be almost one and a half billion dollars." (Transcript of Hearing of April 22, 2015 ("Tr.") at 4: 4-6, a copy of which is attached hereto as Exhibit B) (emphasis added).) After identifying DB and BBVA as the banks in New York to which he was referring, Mr. Cohen continued, "[a]nd the information we have is that Deutsche Bank has subscribed either on behalf of itself or customers for about a billion dollars of these bonds...." (Tr. at 4: 20-22.) When pressed by Your Honor to explain the discovery being requested, Mr. Cohen represented, without qualification, "Here *we know* that Deutsche Bank *in New York* is buying these bonds." (Tr. at 19: 5-6 (emphasis added).) In response to

1961939 007756.0152

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 3

the Court's question as to "[w]hat information do you have *about Deutsche Bank in New York?*" (Tr. at 19: 13-14) (emphasis added), Mr. Cohen stated, again without qualification, "That these are the buyers of these bonds." (Tr. at 19: 15.) Based, at least, in part on these statements by Mr. Cohen, the Court directed DB to provide NML and Aurelius with information concerning the April BONAR 2024 auction. As directed, and as discussed more below, on behalf of DB, I provided NML's and Aurelius' counsel with information related to the BONAR 2024 auction, which was expressly designated "Confidential."[1]

Not only were the purported representations of fact made by Mr. Cohen false, but his co-counsel for NML, Keven Reed of Quinn Emanuel, has confirmed that the represented media reports do not exist. There were no media reports linking Deutsche Bank in New York with the BONAR 2024 auction. Following the April 22nd Hearing, we repeatedly requested copies of the media reports and further requested that, if such reports could not be provided, NML and Aurelius immediately inform the Court that the alleged basis presented to justify expedited discovery did not exist. These requests were made during an April 22nd meet and confer and reiterated in e-mails and telephone calls throughout April and May 2015. On May 18, 2015, counsel for NML finally admitted during a meet and confer related to the Subpoena that no such media reports exist. Confronted with this admission, DB immediately renewed its request that NML and Aurelius correct their misstatements to the Court. NML and Aurelius have refused to make any corrections.

2.      DB is also aware of at least two egregious violations of the Confidentiality Orders, which further reveal Plaintiffs' actual purpose in seeking discovery. First, on April 23, 2015, I provided counsel for NML and Aurelius with information concerning various bids placed at the BONAR 2024 auction by Deutsche Bank Argentina (SA) on behalf of Deutsche Bank AG - London Branch ("DB AG - London") for certain of its customers, whose identities were not provided. Among the bids, I imprecisely identified a bid for $834 million of the bonds as a single bid by a single bidder at a single price. This amount in fact referred to the aggregate amount of bids that were made at the same price by all the customers bidding through Deutsche Bank in the auction. Shortly after that incorrect information was made available exclusively to NML and Aurelius, DB became aware of media reports in the Argentine press referring to alleged bids of US $830 and US $840 million by a single entity, Marathon Asset Management ("Marathon"). As no bid approaching US $830 or US $840 million was actually made on behalf of Marathon or any other single customer at the auction, it strongly suggests, to put it lightly, that someone with access to the incorrect information provided by DB to NML and Aurelius violated the Confidentiality Orders by leaking that information to the media. No other credible explanation for the false press reports exists.

---

[1] Remarkably, the only support presented by NML and Aurelius of their request for expedited discovery was Mr. Cohen's oral representations to the Court. No papers were filed with the Court or served on non-party DB or BBVA from whom discovery was demanded. Further evidence that Plaintiffs are more interested in getting press coverage to support their efforts against the Republic than obtaining useful information, is that Plaintiffs provided DB with only about an hour's notice of the emergency hearing, while press reports of a hearing, obviously made after leaks from Plaintiffs, were circulating about 2 ½ hours before the hearing.

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 4

   Second, on May 11 and 12, 2015, plaintiffs Aurelius, Olifant and NML filed Motions for Leave to Amend their Complaints with supporting declarations attaching documents produced by DB in February and March 2015, which had been marked "Confidential", and deposition testimony of Jeanmarie Genirs on behalf of DB from February 26, 2015, which was designated "Confidential." This information was provided after NML and Aurelius orally requested and were granted an emergency hearing for expedited discovery. The docket numbers in which expedited discovery was sought (and, for NML, pursuant to which the Court's February 25, 2015 order was issued) were only NML and Aurelius actions, including 03-cv-8845, 05-cv-2434, 06-cv-6466, 07-cv-1910, 07-cv-2690, 07-cv-6563, 08-cv-2541, 08-cv-3302, 08-cv-6978, 09-cv-1707, 09-cv-1708, 07-cv-2715, 07-cv-11327, 07-cv-2693, 10-cv-4101, 10-cv-4782, 09-cv-8757, 09-cv-10620, 10-cv-1602, 10-cv-3507, 10-cv-3970 and 10-cv-8339. Olifant did not issue a subpoena in February and DB did not produce any information to Olifant at that time. Nevertheless, Olifant's motion for leave to amend includes Confidential material produced by DB to NML and Aurelius, including excerpts of the Confidential deposition testimony of Ms. Genirs. *See Olifant Fund, Ltd. v. The Republic of Argentina*, 10 Civ. 9587 (TPG), ECF No. 241.

   During a meet and confer on May 18, 2015, I asked counsel for NML and Aurelius how Olifant's counsel obtained DB's Confidential material. Counsel for NML and Aurelius refused to answer. The next day, I received an e-mail from Olifant's lawyer, Simon Lesser, referencing my question and suggesting that his possession of the Confidential material was justified by the Court's April 22, 2015 minute order. I responded to Mr. Lesser, asking how the Court's April 22nd direction was relevant to the documents produced by DB in February and early March. Having not heard back from Mr. Lesser, I sent him a second e-mail on May 21, 2015, specifically requesting how and from whom Olifant obtained DB's Confidential material. On May 26, 2015, Mr. Lesser advised me by telephone that in late February, NML's counsel, Mr. Reed, provided him with copies of the Confidential material that DB produced to NML at about that time, along with Ms. Genirs' deposition transcript. The provision of DB's Confidential material is a clear violation of the Confidentiality Orders. NML did not have the right to share DB's Confidential material with a plaintiff in another matter. Under the Confidentiality Orders, access to Confidential material is restricted and may only be used in connection with the matter in which it has been produced. Here, NML ignored the Confidentiality Orders and shared the material with Olifant, a plaintiff in another matter.

   3. The "Public Notice" issued by Aurelius in April 2015 is a transparent effort to threaten third parties that they should not have any role in connection with transactions with the Republic, even clearly legal ones. In light of Your Honor's prior discussion of what "evading" the "pari passu" order would mean (*see* Exhibit B at 20:23 - 21:2) and despite the fact that no credible interpretation of the Court's orders generally bars capital raising by the Republic (or financial intermediary involvement in such a transaction), Aurelius' claim that it believes that the BONAR 2024 auction was intended to "hinder, delay or defraud Aurelius" and that it intends to bring fraudulent transfer or other clams against persons that purchase such bonds (or play any role in connection with the sale of such bonds) is, as Justice Scalia recently wrote, "pure applesauce." The Public Notice confirms that Aurelius is playing a public game of trying to intimidate parties to lawful transactions.

1961939 007756.0152

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 5

     4.     As noted above, information that was designated by DB as Confidential appears to have been shared with both members of the press and at a minimum one other Plaintiff in violation of the Confidentiality Orders. Remarkably, not only has plaintiff Olifant used the information that it was improperly provided in an application to this Court (see *Olifant Fund, Ltd.*, 10 Civ. 9587 (TPG), ECF No. 241), but Plaintiffs have even pointed to articles in the Argentine press, which are based on leaked information to support their applications. See *Aurelius Capital Master, Ltd., et al. v. The Republic of Argentina*, 09 Civ. 8757 (TPG), ECF No. 580, Ex. 46; *Olifant Fund, Ltd.*, 10 Civ. 9587 (TPG), ECF No. 241, Ex. 39.

*       *       *

     Not only should the Subpoena be quashed because of the misconduct detailed above, including NML's and Aurelius' misrepresentations to the Court, but because, by the Subpoena, Plaintiffs seeks discovery from non-parties in violation of Fed. R. Civ. P. 45 and 69 and CPLR §§ 5223 and 5224. On May 5, 2015, Plaintiffs served the Subpoena on DB requesting, in the broadest of terms, documents, communications and testimony related to the contemplated or actual offering, purchase or sale of BONAR 2024 bonds, as well as documents, communications and testimony related to the purchase or sale of BODEN 2015 bonds. Despite DB's prior productions of information related to the BONAR 2024 bonds, and despite the fact that DB has even been subjected to a Fed. R. Civ. P. 30(b)(6) deposition related to the BONAR 2024 bonds, the Subpoena demanded that DB produce documents on or before May 19, 2015, and a witness for deposition on May 22, 2015. On May 15, 2015, Plaintiffs agreed to extend DB's time to produce documents until June 2, 2015 and adjourned the deposition until June 9, 2015. The deadlines have been extended several times to permit the parties to meet and confer. Unfortunately, it is now clear that Plaintiffs will not agree to any meaningful limitations on the Subpoena or to otherwise protect DB from Plaintiffs' violations of the Confidentiality Orders, which are discussed above.

     Pursuant to Fed. R. Civ. P. 45(d)(3)(iv), a court "must quash or modify a subpoena that … subjects a person to undue burden." The Subpoena is clearly unduly burdensome to the extent it is duplicative of (i) the February 9, 2015 subpoena served on DB by plaintiff NML; (ii) the Court's Order, dated February 25, 2015; (iii) the February 26, 2015 subpoena served on DB by plaintiff Aurelius, all of which relate to the purchase and sale of the BONAR 2024 bonds; and (iv) the Court's direction that DB provide NML and Aurelius with certain information on April 22, 2015. See, e.g., *AP Links, LLC v. Russ*, 299 F.R.D. 7, 14 (E.D.N.Y. 2014) (subpoena requests regarding invoices of non-party attorney were duplicative, and thus such subpoena would be quashed, since law firm already provided court with non-party attorney's unredacted invoices pursuant to court order); *Asset Value Fund Ltd. P'ship v. Care Grp., Inc.*, No. 97 CIV. 1487 (DLC)(JCF), 1997 WL 706320, at *9 (S.D.N.Y. Nov. 12, 1997) ("A court may quash discovery requests that are unreasonably duplicative or cumulative."). Indeed, DB has already produced 2,920 pages of documents and a witness for deposition (Jeanmarie Genirs) related to the contemplated purchase and sale of the BONAR 2024 bonds. Prior to the issuance of the current Subpoena, NML and Aurelius never indicated that DB's production was incomplete nor

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 6

sought a meet and confer concerning the completeness of DB's production or testimony.  In addition, following the Court's April 22, 2015 hearing on NML and Aurelius' request for expedited discovery related to an auction of the BONAR 2024 bonds (the "April 22nd Hearing"), on April 23, 2015, DB's counsel orally provided NML's and Aurelius' counsel with detailed information concerning the BONAR 2024 bonds, including the anticipated flow of funds as understood by DB and information concerning the amounts of various bids that had been made, and sent an email to NML's and Aurelius' counsel further discussing the bidding process. Plaintiffs' offer during the parties' meet and confer to "excuse" DB from producing previously provided information was hardly a meaningful narrowing of the Subpoena sufficient to remedy the Subpoena's undue burden.

Pursuant to Fed. R. Civ. P. 69, "[a] judgment creditor ... may obtain discovery ... as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  The procedure for enforcing judgments in New York State is found in Article 52 of the CPLR.  CPLR § 5223 speaks to post-judgment disclosure and provides that "[a]t any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter *relevant to the satisfaction of the judgment*, by serving upon any person a subpoena...." CPLR § 5223 (emphasis added).  "[I]nformation subpoenas, served on an individual or entity other than the judgment debtor, may be served on an individual, corporation, partnership or sole proprietorship only if the judgment creditor or the judgment creditor's attorney has a *reasonable belief* that the party receiving the subpoena has in their possession information about the debtor that will assist the creditor in collecting his or her judgment."  CPLR § 5224 (emphasis added). Further, CPLR § 5224 requires information subpoenas to be accompanied by a certification stating that the judgment creditor or his or her attorney possess the requisite reasonable belief. *See* CPLR § 5224.

Plaintiffs have not demonstrated and cannot demonstrate a reasonable belief that this most recent discovery attempt will lead to relevant information pertaining to the Republic's attachable assets.  Not surprisingly, the Subpoena lacks the requisite certification that any of Plaintiffs or their counsel have such a reasonable belief.  Rather, the fact that all of the documents produced to date concerning the BONAR 2024 bonds (and otherwise) have not led to the discovery of material attachable assets underscores that Plaintiffs' true motivation is not discovery of relevant information but harassment of financial intermediaries.

Even assuming, *arguendo*, that Plaintiffs had not abused the discovery process and were not motivated by an improper purpose, the Subpoena is the most recent voyage on a long-running fishing expedition consisting of numerous subpoenas from NML and Aurelius to DB (and other non-parties) seeking discovery in the broadest of terms.  Notwithstanding Your Honor's endorsement of broad discovery in this and related matters, while a judgment creditor is permitted to look for assets, "[t]hat is not to say ... that the plaintiff may embark on a fishing expedition." *D'Avenza S.p.A. in Bankruptcy v. Garrick & Co., Ltd.*, No. 96 CIV. 0166 (DLC)(KNF), 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998) (finding document requests overbroad and modifying requests to permit disclosure of only those documents which appeared to be reasonably related to ascertaining the status or whereabouts of judgment debtor's assets). *See also Rossini v. Republic of Argentina*, 453 Fed.Appx. 22, 24-25 (2d Cir. 2011) ("It is not an

# MOSES & SINGER LLP

Hon. Thomas P. Griesa
July 6, 2015
Page 7

abuse of discretion to limit discovery to that reasonably related to the discovery of attachable assets.") (citing *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007)); *GMA Accessories, Inc. v. Elec. Wonderland, Inc., et al.*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *6 (S.D.N.Y. May 22, 2012) (plaintiff may not embark on a fishing expedition and must tailor its requests appropriately) (citation omitted); *Jacobson v. Moller & Moller, Inc.*, No. CV 2002-6316 (ERK)(MDF), 2007 WL 1989260, at *1 (E.D.N.Y. July 5, 2007) ("plaintiff may not 'embark on a fishing expedition'") (citation omitted); *Riggi v. Riggi*, 177 A.D.2d 788, 576 N.Y.S.2d 399, 400 (3d Dep't 1991) ("reasonable relation to the subject matter under investigation [must] be demonstrated") (citation omitted). Without any reasonable belief that the documents and testimony sought will lead to relevant assets, the Subpoena goes substantially beyond the scope of non-party discovery permitted by the CPLR and should not be allowed.

In addition, to the extent that DB is ultimately required to produce further information, the existing Confidentiality Orders should include an "Attorneys' Eyes Only" designation, which would permit DB to limit the disclosure of additional documents or testimony to Plaintiffs' outside litigation counsel, their experts or consultants, the Court, court reporters and copy services. Notably, in a further showing of Plaintiffs' true purpose in seeking the subpoenaed information, Aurelius' counsel had flatly rejected modifying the existing Confidentiality Orders to permit the produced information to be designated "Attorneys' Eyes Only."

Non-party DB understands that the litigation between Plaintiffs and the Republic has been protracted and hotly contested. DB does not, however, understand that litigation to have resulted in any order precluding the Republic from raising capital or barring financial intermediaries from participating in such efforts on behalf of their investor clients or the Republic. While Plaintiffs would obviously prefer that financial intermediaries (including affiliates of DB) not participate in any such activities of the Republic, punishing DB for the lawful activities of its affiliates is not appropriate. No matter how bitter or protracted the litigation, Plaintiffs' preference does not justify abusive discovery obtained as a result of false representations to the Court, violations of Confidentiality Orders, leaks to the press of Confidential material or the subsequent use of improperly shared and/or leaked material to bolster litigation positions.

Respectfully submitted,

/s/ Philippe A. Zimmerman

Philippe A. Zimmerman

Encs.

cc:   All Counsel of Record

1961939 007756.0152

# EXHIBIT D


# BLEICHMAR FONTI
# TOUNTAS & AULD LLP

Stephen W. Tountas
Partner
stountas@bftalaw.com
212-789-1343

May 28, 2015

Debra D. O'Gorman, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036

Re:    *NML Capital v. The Republic of Argentina, 03 Civ. 8845 (TPG), et al*

Dear Debra:

I am writing regarding the subpoenas that you issued to my firm, Bleichmar Fonti Tountas & Auld LLP ("BFTA"), and to my partner, Javier Bleichmar, in the above-referenced matter. For the reasons stated below, BFTA and Mr. Bleichmar objects to these subpoenas.

## Background

Mr. Bleichmar is a nationally recognized securities litigator who has extensive experience in high-stakes litigations, including as co-lead counsel for the securities plaintiffs in MF Global, a case in which your firm is actively involved. He graduated from Columbia Law School and has practiced law in New York City for nearly two decades. Prior to founding BFTA, Mr. Bleichmar was a partner of Labaton Sucharow LLP and began his career at Kirkland & Ellis.

Mr. Bleichmar has a longstanding personal relationship with a representative of the Republic that pre-dates the *NML* litigation. In the Summer of 2014, the Republic contacted Mr. Bleichmar following the Supreme Court's denial of *certiorari*, seeking to retain a second New York law firm to provide advice and strategy in connection with the outstanding debt disputes, and provide an independent perspective on the litigation. Thereafter, Mr. Bleichmar contacted Paul Sarkozi of Tannenbaum Halpern Syracuse Hirschtritt LLP, with whom he has worked on other matters, because Mr. Sarkozi (and his firm) is not only a distinguished hedge fund litigator but has substantial experience with complex hedge fund negotiations.



**BLEICHMAR FONTI**
**TOUNTAS & AULD** LLP

Debra D. O'Gorman, Esq.
May 28, 2015
Page 2

## The Subpoenas

BFTA and Mr. Bleichmar join in the objections articulated by the Tannenbaum firm and Mr. Sarkozi in Jamie Stecher's letter dated May 28, 2015. Indeed, without any regard for the attorney-client relationship between my firm and the Republic, the subpoenas seek virtually every document created by my firm, or received by it, in connection with the legal advice that we have provided to the Republic in connection with this matter. In short, they constitute a transparent and improper attempt to harass the Republic, and seek to interfere with my firm's and Mr. Bleichmar's attorney-client relationship with the Republic.

Moreover, with regard to the two areas of potentially non-privileged subject matters identified in Mr. Stecher's letter, neither my firm nor Mr. Bleichmar have any responsive documents. Specifically, like the Tannenbaum firm, we do not have any documents reflecting the Republic's assets, we are not holding any of the Republic's funds as a retainer, and we hold no security interest in any of the Republic's assets. Further, we have not communicated on behalf of the Republic with any holders of Argentinian debt, or any bank, or trustee, or counsel for any such person or entity. Nor have we communicated with any of the entities listed in the subpoena (such as the Administración Nacional de Seguridad Social and Banco Central de la República Argentina).

Additionally, neither BFTA nor Mr. Bleichmar are aware of who makes the decisions on behalf of the Republic with respect to the *NML* litigation.

For the foregoing reasons, and for the reasons stated in Mr. Stecher's May 28 letter, your client has no basis to proceed with a deposition of Mr. Bleichmar in his capacity as legal counsel for the Republic, and we request that you withdraw that subpoena.

Very truly yours,

Stephen W. Tountas

# EXHIBIT E

**TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP**
900 Third Avenue
New York, NY 10022
(212) 508-6700
FACSIMILE: (212) 371-1084

Jamie B.W. Stecher
Direct Dial: (212) 508-6738
Direct Fax: (212 937-3621
E-mail: Stecher@thsh.com

May 28, 2015

Debra D. O'Gorman, Esq.
Dechert LLP
1095 Avenue of the Americas
New York, New York 10036

*NML Capital v. The Republic of Argentina,* **03 Civ. 8845 (TPG), et al**

Dear Ms. O'Gorman:

My firm, Tannenbaum Helpern Syracuse Hirschtritt LLP, has been advising the Republic of Argentina in connection with matters arising from this action in which you represent the plaintiff. You have issued subpoenas to my firm and to my partner, Paul Sarkozi, in which you seek documents from them, as well as Mr. Sarkozi's deposition. I write to set forth our objections.

### BACKGROUND

The Republic engaged our firm last summer, following the Supreme Court's denial of *certiorari,* to provide another, independent perspective on litigation issues that have arisen and to provide advice about strategic choices relating to the outstanding debt disputes.

My firm has extensive experience with hedge funds and hedge fund litigation, and Mr. Sarkozi is a well-known commercial litigator. He is the Chair of the New York State Bar Association's Commercial and Federal Litigation Section, and he displays more than a passing deference to the rule of law.

**TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP**

Debra D. O'Gorman, Esq.
May 28, 2015
Page 2

### THE SUBPOENAS

The subpoenas – in particular the one addressed to Mr. Sarkozi – seek virtually every document created by my firm, or received by it, in connection with our representation of the Republic, as if the privileges regularly attendant to the attorney-client relationship did not exist. In particular, the Sarkozi subpoena asks for, among other improper requests –

- all documents concerning the retention of our firm by the Republic (Sarkozi Subpoena, Item 1),

- all communications with two other law firms that represent the Republic (*id.*, Items 3-4),

- all documents concerning Cleary's provision of legal services to the Republic (*id.*, Items 5 and 23), and

- all documents concerning any advice we gave our client (*id.*, Items 10 and 29).

The subpoenas constitute an improper attempt to deprive the Republic of counsel, to harass counsel, to degrade applicable privileges, and to interfere with our ability to advise to our client.

When we spoke, you identified three areas of inquiry in which you thought we might have non-privileged documents that are responsive to the subpoenas:  (a) documents that might identify the assets of the Republic; (b) documents that might reflect the Republic's compliance (or lack of compliance) with court orders; and (c) documents that might identify the Republic's decision-makers.

<u>Assets</u>

We have no documents reflecting the Republic's assets, we are not holding any of the Republic's funds as a retainer, and we hold no security interest in any of the Republic's assets.  Perhaps more significantly, we have not communicated on behalf of the Republic with any holders of Argentinian debt, or any bank, or trustee, or counsel for any such person or entity.  Nor have we communicated with any of the entities listed in the subpoena (such as the Administración Nacional de Securidad Social and Banco Central de la República Argentina).  Moreover, you presumably have the ability to serve discovery requests upon the Republic itself to obtain information about its assets, and there is no basis on which to burden both Mr. Sarkozi and my firm, neither of which is a party to your client's dispute with the Republic.

**TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT LLP**

Debra D. O'Gorman, Esq.
May 28, 2015
Page 3

### Compliance or Non-Compliance with Court Orders

As you know, there have been considerable disputes concerning the interpretation of the Court's Orders – disputes that have been raised before Judge Griesa and appealed to the Second Circuit. Given these disputes, your requests for documents concerning compliance or non-compliance with court orders are impermissibly vague and confusing. Moreover, to the extent that you seek documents concerning advice the Republic may have sought or my firm may have provided concerning court orders, such information is presumptively privileged, and it is not a proper subject for a subpoena addressed to attorneys for a party.

### Decision-Makers

We do not know who makes decisions on behalf of the Republic with respect to the litigation your client has brought. You presumably have the right to serve discovery requests upon the Republic to obtain that information.

In sum, the subpoenas *duces tecum* are designed to drive a wedge between the Republic and its counsel, to harass our firm, and to limit the scope and nature of our communications with the Republic, thereby depriving the Republic of an important source of independent legal advice. Moreover, the requests are unduly burdensome, redundant, vague and ambiguous, and, as set forth above, you have much less burdensome means of obtaining the information you seek. You should withdraw the subpoena.

### DEPOSITION

The subpoena *ad testificandum* addressed to Mr. Sarkozi, a partner in a law firm that represents the party whom your client is suing, is without justification. I see no basis on which you should be taking Mr. Sarkozi's deposition, and to the extent that your subpoena requests it, you should withdraw it.

\* \* \*

I will be away until next Wednesday. We should plan to discuss these issues upon my return.

Sincerely,

Jamie B.W. Stecher

JBWS:slf

[1014288-3]