# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| NML CAPITAL, LTD. | : | 03 Civ. 8845 (TPG) |
| | : | 05 Civ. 2434 (TPG) |
| | : | 06 Civ. 6466 (TPG) |
| Plaintiff, | : | 07 Civ. 1910 (TPG) |
| | : | 07 Civ. 2690 (TPG) |
| - against - | : | 07 Civ. 6563 (TPG) |
| | : | 08 Civ. 2541 (TPG) |
| THE REPUBLIC OF ARGENTINA, | : | 08 Civ. 3302 (TPG) |
| | : | 08 Civ. 6978 (TPG) |
| Defendant. | : | 09 Civ. 1707 (TPG) |
| | : | 09 Civ. 1708 (TPG) |

------------------------------------------------------------x

## SUBPOENA DUCES TECUM

To:    Bleichmar Fonti Tountas & Auld
       Times Square Tower
       7 Times Square, 27th Floor
       New York, NY 10036

PLEASE TAKE NOTICE THAT you are commanded, pursuant to Rule 34(c) and

Rule 45 of the Federal Rules of Civil Procedure (the "Rules"), to produce for inspection and

copying to the offices of Dechert LLP, attention: Debra D. O'Gorman, on or before May 21,

2015, all Documents specified in Attachment B to this subpoena, in accordance with the

Definitions and Instructions set forth in Attachment B.

This subpoena has been issued by the United States District Court for the Southern

District of New York. Your failure to comply with this subpoena may be punished as a

contempt of that Court. Pursuant to the requirements of Rule 45(a)(1)(A)(iv) of the Rules, the

text of Rule 45(d) and (e) is reproduced herein.

Dated: New York, New York
       May 7, 2015

1

DECHERT LLP

By: _____

Dennis H. Hranitzky
(dennis.hranitzky@dechert.com)
Debra D. O'Gorman
(debra.ogorman@dechert.com)

1095 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 698-3500
Facsimile:  (212) 698-3599

*Attorneys for Plaintiff NML Capital, Ltd.*

2

## ATTACHMENT A

### BACKGROUND TO SUBPOENA

On April 18, 2015, the blog "Elimanando Variables" (which is dedicated to rooting out corruption) posted an article entitled "Kicillof Retains Firm of 'Blue' Attorneys to Devise Strategies to Avoid Effects of Griesa Judgment" in which it was reported that Argentina "secretly retain[ed] another firm of New York attorneys in an effort to resolve the problems that its strategy of epic resistance against the onslaught of the speculative funds brought in its train." A true and correct copy of this blog post, along with an English translation, is attached hereto as Exhibit A.

According to the post:

> Since August 2014, the Republic of Argentina has had a second firm of attorneys dedicated to trying to resolve the issue of the default. The firm in question is that of Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH), who will be responsible for finding strategies to ensure that those bondholders that participated in both the 2005 and the 2010 swaps (and that are located in the United States) can collect those amounts currently blocked by the judgments issued by Judge Thomas Griesa.

The Elimanando Variables blog post referenced and included as an attachment the official opinion dated August 11, 2014 which authorized the engagement of Tannenbaum Helpern Syracuse & Hirschtritt LLP ("**THSH**") "in certain matters stemming from the effects of the measures taken by the United States of America's justice system in the *NML Capital Ltd. V. Republic of Argentina* case, proceeding in the Southern District Court of the City of New York [sic], United States of America" as well as the payment of a retainer $35,000 to the firm. The opinion explains:

> This measure was undertaken within the context of the adoption of legal measures unlawfully affecting the relationship between the Republic of Argentina and the bondholders who entered into debt swap agreements . . .
>
> It was emphasized that the aforementioned situation was becoming urgent, and there was a need to obtain specialized professional services for the purposes of guaranteeing that the Republic of Argentina's effective fulfillment of its obligations to the aforementioned bondholders would be respected by the financial institutions obliged to allow the bondholders' collection of payments.

A true and correct copy of Opinion No. 144 dated August 11, 2014 and signed by Horacio Pedro Diez, Assistant Counsel of the Office of Legal Counsel, along with an English translation, is attached hereto as Exhibit B.

In the following days, news outlets reported further on the retention of THSH. According to an article published on April 20, 2015 in *Cronista*:

> The Ministry of Economy has hired US law firm [THSH] as counsel in
> litigation against the Vulture Funds. As reported in the blog Eliminando
> Variables and based on official documents, the firm is responsible for
> seeking alternatives ways for bondholders trapped by Griesa's decisions to
> collect, and it will work independently from Cleary Gottlieb, [the firm]
> conducting the trial.

A true and correct copy of the *Cronista* article, along with an English translation, is attached
hereto as Exhibit C.

On April 22, 2015, in an article entitled "Ministry of the Economy Hires a Second
Law Firm to Handle Debt," *Perfil* reported:

> The Government has hired a new law firm in New York in order to protect
> its relationship with bondholders who entered into the 2005 and 2010
> swaps, as revealed by the blog Eliminando Variables. The firm
> Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH) is responsible
> for coming up with strategies to successfully make payments to
> bondholders stuck in their tracks by judge Thomas Griesa, a task which
> the original law firm Cleary Gottlieb Steen & Hamilton was not able to
> accomplish in any of the US legal proceedings.

A true and correct copy of the *Perfil* article, along with an English translation, is
attached hereto as Exhibit D.

NML has learned from various sources that Javier Bleichmar, a Argentine native who
currently resides in New York and is a name partner in the firm Bleichmar Fonti Tountas &
Auld, was instrumental in arranging the contact between Argentina's Economy Minister, Axel
Kicillof ("**Kicillof**") and THSH (and, specially, Paul D. Sarkozi of that firm). Kicillof has
actively and defiantly led Argentina's attempt to evade an injunction (the "**Equal Treatment
Injunction**") issued by the Federal District Court in the Southern District of New York; the
Federal District Court issued a contempt citation against Argentina for Minister Kicillof's
evasion. The press reports and legal opinion demonstrate that Argentina's retention of THSH
is part of Argentina's improper and ongoing scheme to violate the Equal Treatment
Injunction.

Among other things, this subpoena seeks information regarding the facts and
circumstances surrounding Argentina's retention of THSH, as well as the nature of the
matters on which this firm has been retained to provide advice. In addition, NML seeks
information concerning the nature of the relationship between Javier Bleichmar and his firm
Bleichmar Fonti Tountas & Auld and Argentina, and the role they played in orchestrating
Argentina's retention of THSH.

4

**ATTACHMENT B**

**DEFINITIONS**

1.      Local Civil Rule 26.3(c) (Uniform Definitions in Discovery Requests) shall apply to this Subpoena.

2.      The term **"Amended February 23 Order"** means the Order entered in the above-captioned actions bearing index numbers 08 Civ. 6978 (TPG), 09 Civ. 1707 (TPG) and 09 Civ. 1708 (TPG) on February 23, 2012, as amended on November 21, 2012, a copy of which is attached as Exhibit E.

3.      The term **"ANSES"** means the Administración Nacional de Securidad Social, as well as its representatives and assigns, and all Persons acting or purporting to act on its behalf, whether or not authorized to do so.

4.      The term **"Argentina"** means the Republic of Argentina, as well as its agencies, instrumentalities, ministries, political subdivisions, representatives, attorneys, consultants, bankers, advisors and all other Persons acting or purporting to act for or on behalf of Argentina, whether or not authorized to do so.  For the avoidance of doubt, "Argentina" includes BCRA and ANSES.

5.      The term **"August 2014 Retention"** means the retention of THSH by Argentina referenced in the Opinion (as that term is defined below) and the articles attached hereto as Exhibits A, C and D.

6.      The term **"BCRA"** means Banco Central de la República Argentina.

7.      The term **"Cleary"** means Cleary Gottlieb Steen & Hamilton LLP, its attorneys, paralegals, employees, agents, representatives, affiliates, and all other Persons acting or purporting to act on its behalf, whether or not authorized to do so.

5

8. The term **"Electronically Stored Information"** ("ESI") includes, without limitation, the following:

    i.      information that is generated, received, processed, and recorded by computers and other electronic devices including, without limitation, voicemail;

    ii.      internal or external websites;

    iii.      output resulting from the use of any software program, including, without limitation, word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, AOL Instant Messenger (or similar programs) or bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; and activity listings of electronic mail receipts and/or transmittals; and

    iv.      any and all items stored on computer memories, hard disks, floppy disks, CD-ROM, magnetic tape, microfiche, or on any other media for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, *e.g.*, BlackBerry, iPhone, Palm Pilot, or similar devices, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all documents requested herein.

9. The term **"Evasion Plan"** means any plan or course of action—whether pursued directly by Argentina or through any representative, agent, instrumentality, political subdivision, or other Person or entity whether or not acting on Argentina's behalf—to evade or attempt to evade the purposes and directives of the Amended February 23 Order, to render or attempt to render that Order ineffective, or to diminish or attempt to diminish the Court's ability to supervise compliance with the Amended February 23 Order without prior approval of the Court. This includes any step toward an action, or toward planning or devising a means by which to take an action, to evade or attempt to evade the purposes and directives of the Amended February 23 Order, including, without limitation, the formulation or design of any alteration, amendment, change, or exchange of the processes or specific transfer mechanisms

6

by which Argentina was to make payment on the Exchange Bonds at the time of the Amended February 23, Order (including without limitation any substitution or exclusion of any of the Persons or entities involved in those processes), or the formulation or design of any means by which the Republic might transfer, recreate, refinance, exchange, or substitute obligations now existing under the Exchange Bonds through other debt instruments, contracts, or securities in the future.

10.　　The term **"Exchange Bondholder"** means any holder of beneficial interests in Exchange Bonds.

11.　　The term **"Exchange Bonds"** means debt Securities or any other form of debt obligation of Argentina issued pursuant to Argentina's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the debt instruments issued in the 2005 and 2010 Exchange Offers that may occur in the future.

12.　　The term **"Exchange Offer(s)"** means the offers made in or about 2005 or in or about 2010 to exchange debt securities issued by Argentina that is in default for performing debt securities issued by Argentina.

13.　　The term **"Financing Arrangement"** means any arrangement through which Argentina has or might obtain financing, directly or indirectly.

14.　　The term **"Law No. 26,984"** means the legislation proposed by Argentina's President Cristina Fernandez de Kirchner in August 2014, and passed by the Argentine Congress in September 2014, numbered Law 26,984, which purports to, among other things, replace the indenture trustee responsible for processing Argentina's payments on some of the Exchange Bonds.

15.    The term **"Opinion"** means Opinion No. 144 dated August 11, 2014 and signed by Horacio Pedro Diez, Assistant Counsel of the Office of Legal Counsel and attached hereto as Exhibit B.

16.    The term **"Plaintiff"** means the NML Capital, Ltd., the plaintiff in the above-captioned action.

17.    The term **"THSH"** means Tannenbaum Helpern Syracuse & Hirschtritt LLP and any of its attorneys, paralegals, employees, agents, representatives, affiliates, and all other Persons acting or purporting to act on its behalf, whether or not authorized to do so.

18.    The term **"You"** or **"Your"** means Bleichmar Fonti Tountas & Auld and any of its attorneys, paralegals, employees, agents, representatives, affiliates, and all other Persons acting or purporting to act on its behalf, whether or not authorized to do so.

## INSTRUCTIONS

1.    Unless otherwise indicated, the Relevant Time Period for this Subpoena is January 1, 2014 through and including the date on which You produce Documents in response to this Subpoena.

2.    Documents called for by this subpoena are to include all portions and pages of each Document, and all attachments, enclosures, appendices, and supporting documentation, including, without limitation, originals, copies, non-identical copies (that may contain handwritten notes, markings, stamps, interlineations or electronic information), drafts, working papers, routing slips, and similar materials.

3.    A Document is deemed in Your actual or constructive possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other Person and You (a) own such Document in whole or in part; (b) have a right, by control, contract, statute, order, or otherwise, to use inspect, examine or copy such Document on any terms; (c)

8

have an understanding, express or implied, that You may use, inspect, examine, or copy such Document upon any terms; or (d) have, as a practical matter, been able to use, inspect, examine, or copy such Document when You sought to do so. For the avoidance of doubt, a Document is deemed in Your actual or constructive possession, custody, or control if it is accessible on a network or server that You maintain.

       4.      The specifications of this subpoena are to be construed as being inclusive rather than exclusive. Thus, use of the singular form of any word includes the plural and vice versa; words importing one gender include both genders; the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this subpoena all Documents that might otherwise be construed to be outside of its scope; the words "all," "any," and "each" shall each be construed as encompassing "any and all." Local Civil Rule 26.3(d).

       5.      In producing responsive Documents, You should furnish all Documents in Your possession, custody, or control, regardless of whether such Documents are possessed directly by You or by Your principals, employers, directors, officers, partners, members, agents, employees, representatives, subsidiaries, managing agents, affiliates, investigators, or by Your attorneys or their agents, employees, representatives or investigators.

       6.      You are to produce any and all drafts and copies of each Document that are responsive to any specification of this subpoena and all copies of each such Document that are not identical in any respect, including but not limited to handwritten notes, markings, stamps, interlineations, and electronic information.

       7.      With respect to ESI:

            i.      All electronic mail and spreadsheets responsive to this subpoena that are maintained in the usual course of business in electronic

9

format are to be produced in their native format along with the software necessary to interpret such files if such software is not readily available.

ii.    All other Documents responsive to this subpoena that are maintained in the usual course of business in electronic format are to be produced in properly utilized, multi-page TIFF Group IV format complete with full text extracts and all associated metadata.

iii.   All Documents responsive to this subpoena are to be produced with the metadata normally contained within such Documents, and the necessary Concordance, Introspect or other database load files. If such metadata is not available, each Document is to be accompanied by a listing of all file properties relating to such Documents, including, but not limited to, all information relating to the date(s) the Documents was last accessed, created, modified or distributed, and the author(s) and recipient(s) of the Documents.

iv.    Under no circumstances should ESI be converted from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome to use. ESI should not be produced in a form that removes or significantly degrades the ability to search the ESI by electronic means where the ESI is ordinarily maintained in a way that makes it searchable by electronic means. Databases or underlying data should not be produced without first discussing production format issues with Plaintiff's counsel. If You decline to search or produce ESI on the ground that such ESI is not reasonably accessible because of undue burden or cost, identify such information by category or source and provide detailed information regarding the burden of cost You claim is associated with the search or production of such ESI.

8.    All Documents that are physically attached to each other when located for production are to be left so attached when produced. Documents that are segregated or separated from other Documents, whether by inclusion in binders, files, subfiles, or by use of dividers, tabs or any other method, are to be left so segregated or separated when produced. Documents are to be produced in the order in which they were maintained and in the files in which they were found.

9.    If any Document, or any part of a Document, called for by this subpoena has been destroyed, discarded, lost, or otherwise disposed of or placed beyond Your custody or

control, You are to furnish a list identifying each such Documents by: (a) date; (b) author;

(c) recipient(s); (d) type of Documents (e.g., letter, memorandum, chart, e-mail, etc.);

(e) general subject matter; (f) the Document's present or last-known location or custodian;

(g) the date of the Document's destruction or other disposition; (h) the reason for such

destruction or other disposition; and (i) the Person authorizing such destruction or other

disposition.

10.     Each specification of this subpoena requires production in full, without

abbreviation, redaction, or expurgation, of any responsive Documents. If any responsive

Document is not or cannot be produced in full, produce it to the extent possible, indicating

which Document, or portion of that Document is being withheld, and the reason(s) it is being

withheld.

11.     Documents not otherwise responsive to specifications of this subpoena are to

be produced if such Documents mention, discuss, refer to, or explain the Documents that are

responsive to this subpoena, or if such Documents are attached to Documents responsive to

this subpoena and constitute routing slips, transmittal memoranda, or letters, comments,

evaluations or similar materials.

12.     If in responding to this subpoena, You encounter any ambiguity in construing

it or any definitions and instructions relevant to it, set forth the matter or term deemed

"ambiguous" and the construction used in responding to the subpoena.

13.     If a privilege is claimed as the basis for not producing any Document, You are

to furnish a privilege log setting forth, for each such Document: (a) nature of the privilege

(including work product) which is being claimed and, if the privilege is governed by state law,

indicate the state's privilege rule being invoked; (b) the type of Document (e.g., letter,

11

memorandum, etc.); (c) the general subject matter of the Document; (d) the date of the Document; and (e) the author of the Document, the addressees and any other recipients of the Document and, where not apparent, the relationship of the author, addressees, and recipients to each other. Local Civil Rule 26.2(a).

14.     The specifications of this subpoena are submitted for the purposes of discovery and are not to be taken as waiving any objections to the introduction of evidence on subjects covered by this subpoena, or as an admission of the relevance or materiality of any of the matters covered by this subpoena.

15.     Unless otherwise specified, the Documents subject to this Subpoena are those created during the Relevant Time Period.

## DOCUMENTS TO BE PRODUCED

1.      All Documents Concerning the nature of Your relationship with Argentina. This request includes, but is not limited to, all Documents reflecting the facts and circumstances surrounding Argentina's initial contact with You, the Identity of all Persons involved in Argentina's initial contact with You, all retainer and/or engagement letters and any other Documents reflecting the terms and conditions of Your relationship with Argentina, all Documents Concerning the scope of the matters on which You have advised, are expected to advise or have been asked to advise Argentina, and all Documents Concerning Argentina's authorization or approval of Your relationship.

2.      All Documents Concerning the August 2014 Retention. This request includes, but is not limited to, all Documents reflecting Your involvement in Argentina's initial contact with THSH, all retainer and/or engagement letters and any other Documents reflecting the terms and conditions of THSH's relationship with Argentina, all Documents Concerning the

12

scope of the matters on which THSH has advised, is expected to advise or has been asked to advise Argentina, and all Documents Concerning Argentina's authorization or approval of THSH's retention.

3.      All Documents and Communications Concerning the Opinion.

4.      All Communications with Cleary.

5.      All Communications with THSH.

6.      All Documents Concerning Cleary's provision of legal services to Argentina, including but not limited to all Documents Concerning Argentina's satisfaction or dissatisfaction with the legal services provided to it by Cleary.

7.      All Documents Concerning THSH's provision of legal services to Argentina, including but not limited to all Documents Concerning Argentina's satisfaction or dissatisfaction with the legal services provided to it by THSH.

8.      Documents sufficient to identify each partner, associate, counsel or other attorneys affiliated with You who have or are expected to perform legal services and/or provide legal advice to Argentina.

9.      Documents sufficient to identify all Persons acting on behalf of Argentina who participated in discussions with You regarding the scope, and terms and conditions, of Your relationship with Argentina.

10.     Documents sufficient to identify all Persons acting on behalf of Argentina who participated in discussions with You regarding the August 2014 Retention.

11.     All Documents Concerning any legal advice You provided to Argentina related to the above-captioned action, the payment of Exchange Bonds, Argentina's relationship with the Exchange Bondholders or any other matters referenced in the Opinion.

13

12.     All Documents Concerning Communications between You and any other Person Concerning any Evasion Plan, Law No. 26,984, any Financing Arrangement or the August 2014 Retention.

13.     All Documents Concerning Communications between Argentina and any other Person Concerning any Evasion Plan, Law No. 26,984, any Financing Arrangement or the August 2014 Retention.

14.     All Documents Concerning any Communications between You and any Exchange Bondholder relating to any debt of Argentina.

15.     All Documents Concerning any Communications between Argentina and any Exchange Bondholder relating to any debt of Argentina.

16.     All Documents Concerning any course of action, whether or not implemented, through which Argentina has or might attempt to make payments on Exchange Bonds without making payments to Plaintiff in accordance with the Amended February 23 Order.

17.     Documents sufficient to identify each law firm, attorney, consultant, bank, banker, financial institution or adviser that has advised Argentina, on or after June 16, 2014, with respect to any Evasion Plan, Law No. 26,984, any Financing Arrangement, or any aspect or part thereof.

18.     All Documents Concerning any payment or other consideration, including retainer fees, You have requested from Argentina, or that Argentina has offered to You, in connection with services You have rendered or expect to render, or expenses You have incurred or expect to incur, for or on behalf of Argentina during the Relevant Time Period, including but not limited to any billing statements that You sent to Argentina.

14

19.     All Documents Concerning any payment or other consideration, including retainer fees, You have received or expect to receive directly or indirectly from Argentina in connection with services You have rendered or expect to render, or expenses You have incurred or expect to incur, for or on behalf of Argentina during the Relevant Time Period.

20.     Documents sufficient to identify all institutions and accounts from or through which You have received or expect to receive compensation, consideration or reimbursement from Argentina, directly or indirectly, during the Relevant Time Period.

21.     All Documents Concerning any formal or informal agreement whereby Argentina guaranteed or will guarantee payment for Your services rendered or expenses You have incurred or will incur for or on behalf of Argentina.

22.     All Documents Concerning any property, whether tangible or intangible, over which Argentina gave or will give You a security interest or actual or constructive possession, custody or control in connection with services that You have rendered or might render, or expenses You have incurred or might incur, for or on behalf of Argentina during the Relevant Time Period.

## RULE 45 FEDERAL RULES OF CIVIL PROCEDURE, PARTS D & E

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

16

# EXHIBIT A

[From the blog (Eliminando Variables)]

# Saturday April 18, 2015

## Kicillof Retains Firm of "Blue" Attorneys to Devise Strategies to Avoid Effects of Griesa Judgment

**By José M. Stella and Ignacio Montes de Oca**

It's so unusual for a Kirchnerist official to acknowledge having committed an error that, when they do so, they confess their failings in some document that's always hard to locate. Such is the case with the negotiations with the holdouts, known locally as the "vulture funds," in which Minister **Axel Kicillof's team cast itself as the victor, while secretly retaining another firm of New York attorneys in an effort to resolve the problems that its strategy of epic resistance against the onslaught of the speculative funds brought in its train.**



Opinion of the Attorney General's Office revealing the hiring of THSH

So it is that the multimillion-dollar retention of the law firm of Cleary Gottlieb Steen & Hamilton LLP of New York to represent Argentina before District Judge Thomas Griesa was reinforced by the hiring of a new firm, [whose fees are] also payable in United States dollars.

**Since August 2014,** the Republic of Argentina has had a second firm of attorneys dedicated to trying to resolve the issue of the default. **The firm in question is that of Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH),** who will be responsible for finding strategies to ensure that those bondholders that participated in both the 2005 and the 2010 swaps (and that are located in the United States) can collect those amounts currently blocked by the judgments issued by Judge Thomas Griesa.

**According to the terms of the agreement signed by the Assistant Legal Secretary of the Legal and Technical Secretariat of the Ministry of the Economy and Finance, Rodolfo Diana, the hiring of THSH, in which *(Eliminating Variables)* was a participant, is not connected with Argentina's defense in Griesa's court,** since this task has been performed by the Cleary Gottlieb firm since 1989.

In fact, the decision to request the services of this firm of attorneys can also be seen as "a punishment" of Cleary Gottlieb for proving unable to obtain the objectives it had set for itself before the US courts when it decided to enter legal proceedings with the holdouts.

**The agreement with the law firm was authorized via a direct and specialized contractual document issued by the Ministry of the Economy, the file name of which is S01:0163016/14, and whose purpose is to request Tannenbaum Helpern Syracuse & Hirschtritt LLP to** *"assume the representation of the Republic of Argentina on certain matters arising from the effects of the measures adopted by the Legal*

[From the blog (Eliminando Variables)]

*Authorities of the United States of America in the cause of NML Capital Ltd et al. vs. Republic of Argentina, currently being heard before the Southern District Court of the City of New York, United States of America"* (sic). **In other words, it should try to fix the consequences of Argentina's poor strategy in Griesa's court.**



Basis for the hiring of THSH

**In fact, the Government justified the retaining of THSH** on the grounds that the legal measures adopted by Judge Griesa "illegitimately" affected relations between the country and those bondholders who participated in the 2005 and 2010 swaps. Specifically, a paragraph setting forth the basis of the retaining of this firm explains that the law firm will seek to **"guarantee effective compliance by the Republic of Argentina with the obligations it has assumed with the aforementioned bondholders,"** and to ensure that **"the financial entities" observe the contracts that allow the bondholders to collect.**

Thanks to his "Pari Passu" (equal treatment) judgment, Griesa has prevented those bondholders who participated in the swaps from collecting the money owed them by Argentina until such time as the country pays NML and the other funds that emerged victorious from the suit the sum of approximately US$ 1.7 billion. Faced by Argentina's refusal to pay, the judge proposed a mediator, Daniel Pollack, in an effort to secure agreement on the form of payment between the nation and the holdouts.

**In March 2015, Argentina stated in a petition submitted to Griesa's court that it had been the subject of 120 actions for US$ 5.4 billion owed to 37 groups of litigants consisting of 526 persons, as well as from investment funds. In total there are 28 claims with no prior favorable judgment and 498 "post-adjudicative" orders.**

Among the "new plaintiffs" is NML Capital itself (with 8 suits amounting to US$ 1.656 billion), Kenneth Dart (US$ 725 million) and Aurelius (2 new suits amounting to US$ 324 million).

These creditors filed requests with the US judge asking to be added to the judgment in a "me too" capacity in favor of NML Capital, Aurelius and others, a step that would allow them to secure judgment in the suit in a type of expedited proceeding. However, the law firm of Cleary Gottlieb Steen & Hamilton LLP, which is responsible for defending the nation in the US courts, stated that a substantial proportion of those suits had already received favorable judgments, which according to the attorneys would transform those additional suits into a *res judicata*. **Argentina fears that if Griesa allows the "me too" entities to become litigants, the amount owed will increase to over US$ 14 billion.**

The failure to reach an agreement on the 1.7 billion initially demanded has had an exponential effect on the amounts being claimed. It is obvious that this would not have happened had the attempt to reach an agreement had been seen, as was the preferred strategy of Cristina Kirchner's predecessor, and that the expense required to hire THSH would never have been necessary had that path been chosen.

[From the blog (Eliminando Variables)]

### The contract with Tannenbaum Helpern Syracuse & Hirschtritt LLP

**The specific terms of the tasks to be carried out for the nation by Tannenbaum Helpern Syracuse & Hirschtritt LLP remain confidential, since** *(Eliminating Variables)* **could only access an opinion of the Attorney General's Office of the Treasury providing details of part of the agreement.**

The document obtained by this blog states that **"in order to begin working,"** and as an advance, the company, which is headquartered at 900 Third Avenue in New York City, **charged the nation US$ 35 thousand ($289,100 at the exchange rate of the day). Said funds were issued from the "Budgetary Analysis and Implementation Coordination Department of the Directorate of Accounting and Finance of the Directorate General of Administration of the Ministry of the Economy and Finance."** It is obvious that the final amount disbursed by the government will be well in excess of that figure.

In justifying direct hiring by specialization, the Ministry of the Economy stated that *"in view of the nature of the matters to be addressed, given their technical complexity, in addition to the need to adopt urgent measures to allow relations between the Argentine State and the bondholders that participated in the swap operations to be reconfigured, it was deemed advisable to align the Administration's procedures with overall guidelines for straightforward award by specialization."*

**Via opinion 144/14, file PTN S04:0037864/14, dated August 11, 2014, the Attorney General's Office** stated that the Directorate General of Legal Affairs of the Legal Subsecretariat of the Legal and Administrative Secretariat of the Ministry of the Economy and Public Finance had declared that *"the Minister of the Economy and Public Finance is competent to issue the measure under analysis"* (sic), **which without running much risk of error could be interpreted as stating that the decision to retain this law firm was endorsed and authorized by Axel Kicillof himself.**

Although the **Attorney General's Office of the Treasury** ultimately approved the contract between Argentina and THSH, it did have to make some recommendations to Kicillof. **Under the signature of the Assistant Attorney General of the Treasury, Horacio Pedro Diez, the Ministry of the Economy was required to make "additions"** to the agreement with Tannenbaum Helpern Syracuse & Hirschtritt LLP that **the original agreement did not at first have.** This heads-up is in connection with the contractual relationship that Kicillof's team establishes with the new attorneys.

Advance payable to THSH for legal advice in the NML case

For example, **Diez declares in writing as follows:** *"Without prejudice to the provisions set forth in the previous paragraph, and in respect of the circumstances under which the contract to be signed with the aforementioned firm may be implemented, I take the liberty to emphasize the necessity of the latter setting forth the individual and exclusive responsibility of the cosigner, which shall be required to act without any dependency relationship with the National State, as set forth in the transcribed regulations."*

Assistant Attorney General Diez also reminds Kicillof's men that: *"It would be advisable to insert a clause relating to the non-transferability of the contract, since the obligations assumed by the attorneys that form part of the firm being hired have the character of "intuitu personae."*

[From the blog (Eliminando Variables)]

In another point, the official of the Attorney General's Office states that: *"With respect to the purpose of the contract, it would be appropriate to specify the duty to provide information that is necessary in this type of agreement with respect to the attorneys acting on behalf of the National State, through the generation of reports and any other documents that may be requested of it by the contracting authority in order to exchange information and coordinate the strategy and position to be adopted in the legal proceedings."*



Legal recommendations made by Assistant Attorney General Diez to Kicillof's team

**The errors in the initial drafting of the agreements also prompted Diez to recommend that** *"the agreement to be signed contain the obligation that the professionals not be sponsors, representatives, nor advisors in causes or matters against the National State or their decentralized entities."* This remark is in connection with **the handling of sensitive information by THSH, which could translate into a magnificent business for those who handle Argentine debt securities or contracts tied to the evolution of the same.**

**Diez's** report also makes a final comment on the contract with THSH: *"Provision should be made for contractual rescission and precautionary measures relating to the jurisdiction in which any conflicts arising as a result of the contractual relationship being established are resolved,"* he stated.

These are unthinkable errors for such a man as Axel Kicillof, whose extensive track record bears witness to his vast experience in the capital market.

**It is also noteworthy that the individual responsible for drafting the agreement with the New York firm, the attorney Rodolfo Diana, should make so many errors in the preparation of a contract.** Not least since just **a few months prior to the signing of this agreement with Tannenbaum Helpern Syracuse & Hirschtritt LLP, this Ministry of the Economy official was appointed by Cristina Fernández de Kirchner as an associate judge at the National Federal Court of Appeals in Administrative Litigation in the Federal Capital.**

Whatever the reason for this abundance of remarks from the Attorney General's Office, **it is obvious that Argentina has now decided to retain a new firm of attorneys to correct the errors committed in the previous stage of negotiations over the defaulted debt.** And the aim of this hiring, which will not come cheap if the experience of earlier costs is anything to go by, is to search for a solution to the decisions taken by the same officials. **The fact that it has been made without any official announcement and in secrecy may have to do with the impossibility of assuming that any errors of calculation have been made,** something which in the words of minister Kicillof himself seems to occur to those who "live in a bubble," as he adroitly stated in a press conference on April 18, 2015, while assessing those economists who committed the all too human error of not being accurate in their predictions.

**On Twitter:** @EliminandoV



new world **medium**

April 23, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# (Eliminando Variables)

Web de periodismo, investigación e información

sábado, 18 de abril de 1955

## Kicillof contrató a estudio de abogados "blue" para diseñar estrategias que evadan efectos del fallo de Griesa

**Por José M. Stella e Ignacio Montes de Oca**

Que un funcionario kirchnerista reconozca haber cometido un error es un hecho tan inusual que, cuando lo hacen, confiesan sus yerros en algún documento siempre difícil de encontrar. Es el caso de la negociación con los holdouts, conocidos localmente como los "fondos buitre", en la que el equipo del ministro Axel Kicillof se presentó como un triunfador, mientras ordenaba contratar con sigilo a otro estudio de abogados neoyorquino para que le resolviera las complicaciones que traía aparejada su estrategia de resistencia épica frente al embate de los fondos especulativos



Dictamen de la Procuraduría en donde se revela contratación de THSH

Y es así que a la millonaria contratación del bufete Cleary Gottlieb Steen & Hamilton LLP de New York para que represente a la Argentina ante el juez "municipal" Thomas Griesa, se sumó un nuevo reluerzo, también pagadero en dólares estadounidenses.

Desde agosto del 2014, la República Argentina cuenta con un segundo estudio de abogados abocado a tratar de resolver el tema del default. Se trata del estudio Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH), quien se encargará de buscar estrategias que garanticen a aquellos bonistas que accedieron tanto a los canjes del año 2005 como del 2010 (y que se encuentren en los Estados Unidos) cobrar los montos actualmente bloqueados por los fallos del juez Thomas Griesa.

La contratación de THSH, según los términos del acuerdo que firmó el Subsecretario Legal de la Secretaría Legal y Técnica del Ministerio de Economía y Finanzas, Rodolfo Diana, y al que accedió *(Eliminando Variables)*, no está relacionada con la defensa de la Argentina ante el Juzgado de Griesa, ya que en esa tarea se desempeña desde 1989 el estudio Cleary Gottlieb.

La decisión de solicitar los servicios de esta empresa de abogados, de hecho, también puede verse como "un castigo" hacia Cleary Gottlieb por no poder lograr ante las cortes norteamericanos los objetivos que se había propuesto el país al momento de litigar con los holdouts.

El acuerdo con el bufete legal fue autorizada mediante una contratación directa por especialidad, del Ministerio de Economía, cuyo expediente es el S01:0163016/14, y cuyo objeto era pedirle a Tannenbaum Helpern Syracuse & Hirschtritt LLP, que *"asuma la representación de la República Argentina en ciertos asuntos derivados de los efectos de las medidas adoptadas por la Justicia de los Estados Unidos de América en la causa NML Capital Ltd et al v. Republic of Argentina, en trámite por onte el Juzgado de Distrito Sur de la ciudad de Nueva York, Estados Unidos de América"* (Sic)  En otras palabras, deberá tratar de arreglar los efectos de la mala estrategia argentina en el tribunal de Griesa.



Quienes somos

- Ignacio montes de oca
- Jose M Stella

Follow by Email

Email address..

Share It

Share this on Facebook

Tweet this

View slide

Traductor

Select Language ▼

Powered by Google Translate

Suscríbirse a

Entradas

Comentarios

8+1   63

Más vistas durante la última semana en
(Eliminando Variables)



Kicillof contrató a estudio de abogados "blue" para diseñar estrategias que evadan efectos del fallo de Griesa
Por José M. Stella e Ignacio

El Gobierno, de hecho, justificó la contratación de THSH en que las medidas judiciales adoptadas por el juez Griesa, afectaban "en forma ilegítima" las relaciones entre el país y los bonistas que ingresaron a los canjes del 2005 y 2010. Al respecto, en un párrafo donde se fundamenta la contratación de ese estudio, se explica que el estudio de abogados buscará "garantizar el efectivo cumplimiento por parte de la República Argentina de las obligaciones asumidas con los mencionados bonistas", como así también que "las entidades financieras" acaten los contratos que permitan a los bonistas cobrar.

*[imagen de documento]*

Fundamentos de la contratación de THSH

El Juez Griesa, con su fallo "Pari Passu" (tratamiento igualitario), impidió que los bonistas que ingresaron a los canjes cobren el dinero que Argentina les debe, hasta que el país no le pague a NML y a otros fondos que ganaron la demanda por –aproximadamente- unos US$ 1.700 millones. Ante la negativa Argentina de pagar, el juez propuso a un mediador, Daniel Pollack, con el fin de que el país y los holdouts acuerden la forma de pago.

En marzo del 2015, la Argentina afirmó en un escrito presentado ante el juzgado de Griesa, que recibió 120 demandas por US$ 5.400 millones pertenecientes a 37 grupos de litigantes, integrados por 526 personas, como así también fondos de inversión.  En total, hay 28 reclamos sin sentencia favorable previa y 498 pedidos "pos judiciales".

Entre los "nuevos demandantes" se encuentran el mismo NML Capital (con 8 litigios por US$ 1656 millones), Kenneth Dart (US$ 725 millones) y Aurelius (2 nuevos litigios por US$ 324 millones).

Esos acreedores solicitaron al magistrado estadounidense sumarse en calidad de "me too" a la sentencia a favor de NML Capital, Aurelius y otros, lo que les permitiría ganar el litigio en una especie de juicio express. Sin embargo, el estudio Cleary Gottlieb Steen & Hamilton LLP, encargado de defender en los estrados estadounidenses al país, dijo que una parte sustancial de esas demandas ya obtuvieron demandas a su favor, lo que transformaría a esas demandas adicionales –según los abogados- en cosa juzgada. Argentina teme que si Griesa le permite a los "me too" ingresar como litigantes, la cifra se incrementaría a más de US$ 14 mil millones.

La falta de un acuerdo por los 1.700 millones que se demandaban inicialmente, multiplicó exponencialmente el monto de los reclamos. Queda claro que  ésto no hubiera sucedido de haberse buscado un acuerdo - estrategia preferida del antecesor de Cristina Kirchner - y que el gasto que demandará contratar THSH nunca existiría de haberse optado por esa vía.

### El contrato con Tannenbaum Helpern Syracuse& Hirschtritt LLP

Los términos específicos de las tareas que realizará Tannenbaum Helpern Syracuse & Hirschtritt LLP para el país se mantienen confidenciales, ya que (Eliminando Variables) sólo pudo acceder a un dictamen de la Procuración General del Tesoro en donde se detalla la parte medular de ese convenio.

En el documento al que accedió este blog, se afirma que "para empezar a trabajar", y como anticipo, la firma con sede en el 900 de la Third Avenue en la ciudad de Nueva York, le cobró al país US$ 35 mil ($289.100, al cambio de aquellos días), dinero que salió del área de "Coordinación Área Análisis y Ejecución de Presupuesto de la Dirección de Contabilidad y Finanzas de la Dirección General de Administración del Ministerio de Economía y Finanzas". Está claro que la cifra final a desembolsar por parte del gobierno argentino será muy superior a ese número.

Economía, para justificar la contratación directa por especialidad, afirmó que debido "a la atención de los asuntos a encomendarse, dada su complejidad técnica, sumado a la necesidad de adoptar urgentes acciones que permitan reencauzar las relaciones entre el Estado Argentino y los bonistas que ingresaron a las operaciones de canje, tornan aconsejable adecuar el obrar de la Administración a las pautas rectoras de la adjudicación simple por especialidad".

La Procuración, mediante el dictamen 144/14, expediente PTN S04:0037864/14, y con fecha 11 de agosto del 2014, señaló que la propia Dirección General de Asuntos Jurídicos de la Subsecretaría Legal de la Secretaría Legal y Administrativa del Ministerio de Economía y Finanzas Públicas, señaló

Montes de Oca Que un funcionario kirchnerista reconozca haber cometido un error es un hecho tan inusual que, …

El millonario y confidencial acuerdo entre la PSA y la Facultad Regional de Avellaneda de la UTN para hacer…nada
Por José M. Stella e Ignacio Montes de Oca A mediados de los años noventa, en pleno auge de la serie norteamericana Seinfeld, los mismos…

Final a toda orquesta: La millonaria compra de planos para el Centro Cultural Néstor Kirchner
Por José M. Stella e Ignacio Montes de Oca A poco de partir en su primer y definitivo viaje, el transatlántico de lujo HMS Titanic embarcó…

Luis D'Elía: El hombre que nunca se fue del Gobierno
Por Luis Gasulla e Ignacio Montes de Oca Desde que comenzaron a conocerse los audios que recopiló el suicidado fiscal Alberto Nisman, el …

¡El Ministerio Público Fiscal hace un filtro ideológico a los empleados administrativos que contrata?
Por José M. Stella e Ignacio Montes de Oca Es sabido que el Estado no discrimina a la hora de contratar empleados y que la idoneidad es el…

Proteger, trasladar y atender a la presidente Cristina Fernández costó al menos $553 millones desde el 2011
Por José M. Stella e Ignacio Montes de Oca Uno de los grandes interrogantes del fin del mandato Cristina Fernández de Kirchner es saber cu…

El secreto de Tomada: El ministro renueva su despacho a un costo de 85 mil dólares
Por José M. Stella e Ignacio Montes de Oca La gente común suele hacer las mayores reformas al mudarse a una nueva casa. Y es lógico que as…

La Secretaría de Coordinación Estratégica para el Pensamiento Nacional fue de compras: Bolígrafos y stickers para Forster
Por José M. Stella e Ignacio Montes de Oca El filósofo kirchnerista Ricardo Forster es probablemente la más barroca y florida voz del ki…

¿Qué dice el contrato de compra directa que firmó Randazzo con una empresa estatal de trenes de China?
Por Ignacio Montes de Oca (Eliminando Variables) accedió al contrato que firmó el ministro del interior y transporte de la Nación, Floren…

Kicillof ya no confía en el INDEC y contrata a una consultora privada para que mida los precios
Por José M. Stella e Ignacio Montes de

que *"el Señor Ministro de Economía y Finanzas Públicas es competente para el dictado de la medida bajo análisis"* (Sic), lo que podría interpretarse sin mucho margen de error como que la decisión de contratar a este estudio de abogados estuvo avalada y autorizada por el propio Axel Kicillof.



... Oca Desde los tiempos en que Guillermo Moreno era secretario de Comercio Interior, el gobierno ar...



Anticipo a pagarle a THSH por el asesoramiento legal en el caso NML

La Procuración General del Tesoro, que finalmente aprobó el contrato entre la Argentina y el estudio THSH, sin embargo, le realizó algunas recomendaciones a Kicillof. **Con la firma del subprocurador del Tesoro de la Nación, Horacio Pedro Diez, se le exige a Economía "agregados"** al convenio con Tannenbaum Helpern Syracuse & Hirschtritt LLP que, en principio, el acuerdo original no tenía. Este llamado de atención tiene que ver con la relación contractual que el equipo de Kicillof establece con los nuevos abogados.



Blogger

Todos los artículos publicados en (Eliminando Variables)

▼ 2015 (19)
  ▼ abr (4)
    Kicillof contrató a estudio de abogados "blue" par...

    El millonario y confidencial acuerdo entre la PSA ...

    Luis D´Elía: El hombre que nunca se fue del Gobier...

    Proteger, trasladar y atender a la presidente Cris...

  ► mar (6)
  ► feb (1)
  ► ene (8)
► 2014 (55)
► 2013 (108)

Por ejemplo, Diez dice textualmente: *"Sin perjuicio de lo expuesto en el acápite anterior, y para la instancia en la que se instrumente el contrato a suscribir con el mencionado estudio, me permito recordar la necesidad de que en aquél se establezca la responsabilidad propia y exclusiva del co-contratante, quien actuará inexcusablemente sin relación de dependencia con el Estado Nacional, conforme lo disponen las normas transcriptas"*.

El subprocurador Diez también le recuerda a los hombres de Kicillof: *"Resultaría conveniente la inserción de una cláusula relativa a la intransferibilidad del contrato, toda vez que las obligaciones asumidas por los letrados integrantes del estudio a contratar, revisten el carácter de "intuitu personae""*.

En otro de los puntos, el funcionario de la Procuración afirma: *"En lo que respecta al objeto del contrato sería pertinente especificar el deber de información que es menester en este tipo de contrataciones por parte de los abogados que actúan en representación del Estado Nacional, a través de la producción de informes y otros documentos que sean exigidos por la autoridad contratante a fin de intercambiar información y coordinar la estrategia y posición a sostener en la actuación judicial"*.

Las fallas en la redacción inicial del convenio, además, provocaron que Diez recomiende que *"el convenio a suscribir contemple la obligación de los profesionales de no ser patrocinantes o apoderados, ni asesores, en causas o asuntos contra el Estado Nacional a sus entes*



Recomendaciones legales del subprocurador Diez hacia el equipo de Kicillof

*descentralizados"* Esa observación tiene que ver con el manejo de información sensible por parte de THSH, que podría traducirse en un magnífico negocio para los que manejan papeles de la deuda argentina o contratos atados a su evolución.

En el informe de Diez, incluso, se hizo una última observación sobre el contrato con THSH: *"Se debería establecer la posibilidad de rescisión contractual y la previsión relativa a la jurisdicción ante la cual han de resolverse los eventuales conflictos que se susciten a partir de la relación contractual que se establece"*, afirmó.

Se trata de errores incomprensibles para un hombre como Axel Kicillof, con una muy extensa currícula que acredita su vasta experiencia en el mercado de capitales.

Llama también la atención que quien habría sido responsable de redactar el acuerdo con el bufete neoyorquino, el abogado Rodolfo Diana, tenga tantos errores en la confección de un contrato. Sobre todo, porque unos meses antes de la firma de este convenio con Tannenbaum Helpern Syracuse & Hirschtritt LLP, el funcionario de Economía fue nombrado por Cristina Fernández de Kirchner como conjuez de la Cámara Nacional de Apelaciones en lo Contencioso Administrativo Federal de la Capital Federal.

Sea cual fuere la razón de tantas observaciones desde la Procuración, queda claro que ahora Argentina decidió contratar un nuevo estudio de abogados para que corrijan los yerros cometidos en la etapa anterior de la negociación de la deuda en default. Y esa contratación, que no es por un costo menor dada la experiencia que se arrastra del gasto en anteriores instancias, viene a buscar una solución a decisiones tomadas por los mismos funcionarios. Que se haga sin anuncios oficiales y con sigilo, quizás tenga que ver con la imposibilidad de asumir que hubo un error en los pronósticos, algo que en palabras del propio ministro Kicillof, pareciera ocurrirles a los que "viven en un termo", como bien supo definir en una conferencia de prensa el 18 de abril de 2015, al evaluar a los economistas que cometieron la humanidad de no ser certeros en sus predicciones.

**En Twitter: @EliminandoV**

en 12:08                          8 +1 ‹3  Recomendar esto en Google

Etiquetas: Axel Kicillof, Cleary Gottlieb Steen & Hamilton LLP, Contratación Directa, contrato, default, fondos buitre, Ministerio de Economía, Tannenbaum Helpern Syracuse & Hirschtritt LLP, Thomas Griesa

## 36 comentarios:

 **Anónimo** 18 de abril de 2015, 12:16

Es cosa juzgada esto. Argentina sólo tiene que arreglar la forma en que le va a pagar a los holdouts. Qué malgasto!.

Responder

    **Respuestas**

     **Ignacio montes de oca** 18 de abril de 2015, 12:24

    Es un comportamiento caprichoso, es cierto.

    **Responder**

 **Anónimo** 18 de abril de 2015, 12:22

Interesante información. Lo desconocía completamente aunque algo se imaginaba el mercado

Responder

    **Respuestas**

     **Ignacio montes de oca** 18 de abril de 2015, 12:24

    Ahora está confirmado. Gracias.

    **Responder**

 **Capitan Escarlata** 18 de abril de 2015, 12:30

Los arregla cagadas. Un poco tarde los contrataron no?. Otro negocio en el cual alguno cobrará unos buenos mangos.

Responder

    **Respuestas**

     **Ignacio montes de oca** 18 de abril de 2015, 14:07

    El Estado paga por corregir sus errores. Así es hace tiempo.

    **Responder**

 **Anónimo** 18 de abril de 2015, 12:54

Y esto por qué no lo hicieron público? Me lo podrían explicar? Gracias y muy buena nota

Responder

# EXHIBIT B

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
## Office of Legal Counsel

[handwritten:] 133

Case file PTN No. S04:0037864/14
Original No. S01:0163046/14
MINISTRY OF THE ECONOMY AND
PUBLIC FINANCE

BUENOS AIRES, Aug 11 2014

HONORABLE LEGAL SUB-SECRETARY
OF THE LEGAL AND ADMINISTRATIVE SECRETARIAT
OF THE MINISTRY OF THE ECONOMY AND PUBLIC FINANCE:

The participation of the *Procuración del Tesoro de la Nación* [Office of Legal Counsel], pursuant to the provisions of article 66 of the Organic Law of the *Ministerio Público* [Public Prosecutor's Office] No. 24,946 (Official Gazette 3-23-98), is hereby sought regarding the engagement of the United States law firm Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law.

- 1 -

## BACKGROUND

1. The Legal and Administrative Secretariat of the Ministry of the Economy and Public Finance sought the engagement of the of the United States law firm Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law for the purpose of assuming the representation of the Republic of Argentina in certain matters stemming from the effects of the measures taken by the United States of America's justice system in the *NML Capital Ltd. V. Republic of Argentina*
[handwritten initials:] CM AD

I

case, proceeding in the Southern District Court of the City of New York [sic], United States of America (*see* pgs. 1-5 and 6-48).

This measure was undertaken within the context of the adoption of legal measures unlawfully affecting the relationship between the Republic of Argentina and the bondholders who entered into debt swap agreements undertaken within the framework of Decrees No. 1,735 of December 9, 2004 (Official Gazette 12-10-04) and No. 563 of April 26, 2010 (Official Gazette 4-29-10).

It was emphasized that the aforementioned situation was becoming urgent, and there was a need to obtain specialized professional services for the purposes of guaranteeing that the Republic of Argentina's effective fulfillment of its obligations to the aforementioned bondholders would be respected by the financial institutions obliged to allow the bondholders' collection of payments.

Additionally, it was stressed that the firm whose engagement was sought is a firm in the City of New York, founded in the year 1978, with high quality in the legal services it offers, allowing it to be included by the specialty publication *The New Yorker* as "… among the '50 Law Firms that Professionals should know' in New York."

It was also stated that the firm specializes in various professional practice areas (finance, private investment funds, capital markets, corporate law, swaps, general transactions) with experience in the United States of America and abroad, in regulatory and tax issues, etc., having been awarded recognition as the best law firm in that nation in the year 2013 (Best North American Law Firm) by the journal Hedgeweek.

In the same regard, it was stated that Acquisition International Magazine's 2014 International Hedge Fund Awards named the firm's financial services, private funds, and capital

2

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
# Office of Legal Counsel
[handwritten:] 134

markets section the "Capital Formation Law Firm of the Year – USA."

It was pointed out that the qualifications of various specialty areas of the firm in question were established through the evidence in the record accompanying the petition, and that the abbreviated CVs attached demonstrated the suitability and competence of the professionals who compose the firm.

Lastly, and among other things, the conditions to which the engagement would be subject were emphasized; and the Purpose of the Contract, the Payments, Expenditures and Billing Methods, the Confidentiality Obligation, and the possibility of Cancellation of the Contract at any time, with or without cause, were all indicated.

Finally, it was stated that the engagement in question would be undertaken pursuant to the provisions of the Contracting Scheme for the National Administration, approved in Decree No. 1023/01 (Official Gazette 8-16-01) and its implementing regulations, and decisions of the present Advisory Institution in which the direct engagement of the services of law firms to assist the National Administration abroad was allowed were cited.

2. The Director's Office of the Legal and Administrative Secretariat of the Ministry of the Economy and Public Finance assented to the engagement of the aforementioned law firm within the regulatory framework of the *adjudicación simple por especialidad* [specialty vendor
[handwritten initials:] CM AD

3

simple procurement] system, which is one of the permissible systems of selecting vendors within our legal system (*see* pg. 49).

Without prejudice to the foregoing, the need for the participation of the present Institution, pursuant to the provisions of the latter part of Article 66 of Law No. 24,946, was also stated.

3. Subsequently the aforementioned Office of the Director General for Legal Matters solicited a preliminary financial outlay of US$35,000 (thirty-five thousand United States dollars) to serve as an initial retainer for the firm in question (*see* pg. 51), which was provided by the Management of the Budgetary Allocation and Expenditure Unit of the Director's Office of the Ministry of the Economy and Public Finance in the amount of AR$289,100 (two hundred eighty-nine thousand, one hundred pesos) (*see* pg. 53).

4. As a new matter, the Office of the Director General for Legal Matters of said Ministry assumed issued an opinion regarding the proposed order, to be executed by the Ministry of the Economy and Public Finance, by which the authorization and approval of the engagement of the United States law firm Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law would be obtained, and the Legal Sub-secretariat of the Legal and Administrative Secretariat of said Ministry would be authorized to undertake the actions and issue the documents that would be necessary for the execution of the contract (*see* pgs. 54-56).

The specialization required to attend to the matters to be addressed was emphasized, given their technical complexity, in addition to the need to take urgent steps to permit the restoration of normal relations between the Argentine Administration and the bondholders who

4

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
## Office of Legal Counsel

[handwritten:] 135

entered into swap agreements, and it was thus advisable to align the Administration's actions with the regulatory framework of the specialty vendor simple procurement system, which is one of the permissible systems of selecting vendors within our legal system.

Furthermore, it was observed that the Honorable Minister of the Economy and Public Finance is authorized to undertake the measures under analysis, in the exercise of the authority that flows from Law on Ministries No. 22,250 (Official Gazette 12-23-81), as published in 1992, and its subsequent updates; the Law on Financial Administration and Oversight Systems, No.24,156 (Official Gazette 10-29-92); and its Implementing Decree No. 1344/07 (Official Gazette 10-5-07).

Thus, it was concluded that there are no observations to be made regarding the funds pertaining to the present measure, except for the need for the participation of the present Office of Legal Counsel pursuant to the provisions of the final part of Article 66 of Law No. 24,946.

5. Therefore, the orders were transmitted to the present Advisory Institution (*see* pg. 57) with the addition of the aforementioned proposed order, which is included in the record subsequent to page 57.

- II -
### LEGAL ANALYSIS

1. Article 16 of the Law on the Creation of the *Cuerpo de Abogados del Estado* [Corps of [handwritten initials:] CM AD

5

Lawyers of the Administration] No.12,954 (Official Gazette 3-10-47) establishes that, "No provision made by the national government shall name as a legal advisor nor as any other class of official who specifically exercises a function in which the title of lawyer is required, without first obtaining the opinion of the Office of the Director of the Corps of Lawyers of the Administration..."

Additionally, Law No. 24,946, Article 66, provides that, "For purposes of giving effect to Article 27, first part, of the present law, except in cases for which a special regime is authorized by law, the National Administration and its decentralized entities shall be represented in the courts of law and in national and local legal and administrative institutions by professional members of the Corps of Lawyers of the Administration belonging to legal services of the various ministries, secretariats, institutions or decentralized entitles."

It also adds that, "When exceptional situations or special cases make it necessary, said representation may be exercised by other lawyers contracted to serve to assist the Corps of Lawyers of the Administration, pursuant to an authorizing opinion of the Office of Legal Counsel."

The aforementioned provisions, which provide for the preemptive participation of the present Advisory Institution, are intended to authorize the effective exercise of oversight pertaining to the Director of the Corps of Lawyers of the Administration over its members or associates (*see* Opinions 275:259, 370, 276:4 and 24, among others).

However, in the present case, it is notable that the engagement of the aforementioned firm is not intended for the purposes of incorporating its members into the Corps of Lawyers of

6

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
## Office of Legal Counsel
[handwritten:] 136

the Administration, but rather to benefit from its services within the framework of a specific contract, to address issues arising out of the *NML Capital Ltd. V. Republic of Argentina* case, proceeding in the Southern District Court of the City of New York, United States of America. It is within that framework that the present Institution is undertaking its current involvement.

2. Regarding the procedure to be followed for the engagement, the following considerations should be observed:

2.1. As a preliminary matter, it is fitting to recall that the present Office has said that "...it is not within its authority to pronounce upon matters that are not strictly legal, such as those referring to the equity or inequity of contractual provisions, as well as on technical aspects and on matters of suitability, merit, and convenience..." (Opinions 246:64, 244:555 and 246:477, among others).

2.2 In the matter in which the issue is the engagement of an overseas Law Firm to offer its professional services outside the country, which is a situation not provided for by the regulations applicable within our country regarding contracting by the administration, it is fitting to recall that the present Institution has affirmed that "...given the gap in the regulations, the administration's actions will have to be in accordance with general principles applicable to contracting for services..." (Opinions 273:196).

In this sense, in analogous situations, and within the scope of the regulations applicable to [handwritten initials:] CM AD

7

contracts in each case, the direct engagement of the services of law firms to aid the National Administration abroad has been permitted.

2.3 The Contracting Scheme for the National Administration instituted by Decree No. 1023/01 permits, in Article 25, section (d), part 2, the utilization of the system for directly contracting for services for "The undertaking or acquisition of scientific, technical or artistic works whose execution should be entrusted to firms, artists or specialists who are uniquely suited to undertaking them."

The aforementioned regulation adds that, "The need specifically to obtain the services of the natural or legal person, respectively, shall be proven by evidence," and it also provides that, "These contracts shall provide for the complete and exclusive responsibility of the contractor, who shall act without exception free of any employment relationship with the National Administration."

2.4 Additionally, the Regulations of the aforementioned Contracting Scheme, approved by Decree No. 893/12 (Official Gazette 6-14-12) provide, in Article 21, that "status as a uniquely-suited provider as provided for in part 2 of section (2) of Article 25 of Delegated Decree No. 1,023/01 and its amendments shall be satisfied only when specialization and suitability are essential characteristics for the satisfaction of the contract. Status as a uniquely-suited provider shall be established when the need for specialization is proven by evidence and a record is made establishing the proven scientific, technical or artistic capability of the firm, person or artist to whom the execution of the work is being entrusted.

Likewise, article 138 of the aforementioned decree provides that, "In the contracts contemplated by part 2 of section (2) of Article 25 of Delegated Decree No. 1,023/01 and its amendments, the following procedure shall be followed: a) the requesting entity shall formulate

8

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
## Office of Legal Counsel

[handwritten:] 137

the request pursuant to the requirements of article 39 of the present regulation and shall establish in the same the specific need for obtaining the services of the natural or legal person, respectively. The requesting entity shall establish in the petition that the firm, artist or specialist proposed for the undertaking of the pertinent scientific, technical or artistic work is the only one able to undertake it. For said purposes it shall establish that specialization and suitability are essential characteristics for the satisfaction of the contract, and attach the evidence establishing the proven scientific, technical or artistic capability of the firm, person or artist to whom the execution of the work is being entrusted.

2.5 Therefore, on the basis of the foregoing, there are no legal objections to be made to the framework proposed by the Legal Sub-secretariat of the Legal and Administrative Secretariat of the Ministry of the Economy and Public Finance.

3. Without prejudice to the foregoing in the previous section, and for the entity in which the contract to be entered into with the aforementioned law firm is being developed, I take the liberty to recall the need for establishing in said document the complete and exclusive responsibility of the contractor, who shall act without exception free of any employment relationship with the National Administration, as required pursuant to the excerpted regulations.

[handwritten initials:] CM AD

9

Moreover, it would be appropriate to insert a clause regarding the non-transferability of the contract, given that the obligations assumed by the professionals within the law firm to be engaged are of an *intuitu personae* character.

Regarding the purpose of the contract, it would be proper to delineate the duty of information that is appropriate for this type of contract, which is being entered into by lawyers acting in a representative capacity for the National Administration, by means of the production of reports and other documents that may be requested of it by the contracting authorities for the purpose of exchanging information and coordinating strategy and positions to be taken during legal actions.

It is necessary, moreover, for the contract that is to be entered into to include an obligation for the professionals not to represent or advise clients in cases or matters adverse to the National Administration or its decentralized entities.

Finally, the possibility of contractual revocation should be established, along with provisions regarding the jurisdiction within which any possible conflicts arising under the contractual relationship that is to be established should be resolved.

- III -

CONCLUSION

For the aforementioned reasons, there are no legal obstacles to proceeding regarding the direct engagement that is the subject of the inquiry.

10

"2014 – Year in homage to Admiral Guillermo Brown
in the bicentennial of the Naval Battle of Montevideo"

[seal]
Office of Legal Counsel                    [handwritten:] 138

Nevertheless, I repeat the recommendation that the measures individually discussed in point 3 of the previous section be kept in mind.

[handwritten initials:] CM

OPINION No. 144            [signed and stamped:] HORACIO PEDRO DIEZ
                           Assistant Counsel of the Office of Legal Counsel

11



April 22, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**Opinion**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

*"2014- Año de Homenaje al Almirante Guillermo Brown,*
*en el Bicentenario del Combate Naval de Montevideo"*

*Procuración del Tesoro de la Nación*

133

Expte. PTN N.º S04:0037864/14
N.º original S01:0163046/14
MINISTERIO DE ECONOMÍA
Y FINANZAS PÚBLICAS

BUENOS AIRES, 11 AGO 2014

SEÑOR SUBSECRETARIO LEGAL
DE LA SECRETARÍA LEGAL Y ADMINISTRATIVA
DEL MINISTERIO DE ECONOMÍA Y FINANZAS PÚBLICAS:

Se solicita la intervención de esta Procuración del Tesoro de la Nación, en los términos del artículo 66 de la Ley Orgánica del Ministerio Público N.º 24.946 (B.O. 23-3-98), con relación a la contratación del estudio de abogados estadounidenses *Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law.*

- I -

ANTECEDENTES

1. La Secretaría Legal y Administrativa del Ministerio de Economía y Finanzas Públicas propició la contratación del estudio de abogados estadounidenses *Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law* a fin de que asuma la representación de la República Argentina en ciertos asuntos derivados de los efectos de las medidas adoptadas por la justicia de los Estados Unidos de América en la causa *NML Capital Ltd. et al v. Republic of Argentina*, en trámite por ante el Juzgado de Distrito Sur de la ciudad de

1

Nueva York, Estados Unidos de América (v. fs. 1/5 y 6/48).

Fundamentó tal temperamento en la circunstancia de que las medidas judiciales adoptadas afectan en forma ilegítima las relaciones entre la República Argentina y los bonistas que ingresaron a las operaciones de canje de la deuda pública, efectuadas en el marco de los Decretos N.° 1.735 del 9 diciembre de 2004 (B.O. 10-12-04) y N.° 563 del 26 de abril de 2010(B.O. 29-4-10).

Remarcó que la situación descripta tornaba imperiosa y urgente la necesidad de contar con los servicios de profesionales especializados a los fines de garantizar que el efectivo cumplimiento por parte de la República Argentina de las obligaciones asumidas con los mencionados bonistas sea acatado por las entidades financieras obligadas a permitir el cobro por parte de éstos.

Por otra parte, destacó que la firma cuya contratación se propicia es un estudio de la ciudad de Nueva York, fundado en el año 1978, con alta calidad de los servicios legales que presta, lo que le permitió ser incluido por la revista especializada The New Yorker … *entre las "50 Firmas Jurídicas que los Profesionales deben conocer"* en *Nueva York…*

Mencionó, asimismo, que el estudio se especializa en diversas áreas de práctica profesional (finanzas, fondos privados de inversión, mercados de capital, derecho corporativo, *swaps*, transacciones en general) con experiencia en los Estados Unidos de América y en el exterior, en cuestiones regulatorias, impositivas, etc., habiendo sido premiado como la mejor firma legal de ese país en el año 2013 (*Best North American Law Firm*) por la revista Hedgeweek.

En el mismo sentido, indicó que la *Acquisition International Magazine´s 2014 International Hedge Fund Awards*

2



*"2014- Año de Homenaje al Almirante Guillermo Brown,
en el Bicentenario del Combate Naval de Montevideo"*

*Procuración del Tesoro de la Nación*

134

nominó a la sección de servicios financieros, fondos priva-
dos y mercados de capital del estudio como *"Capital Forma-
tion Law Firm of the Year – USA"*.

Señaló que las distintas áreas de especialidad del es-
tudio en cuestión han quedado acreditadas a través de las
constancias obrantes en el expediente; y que los curriculum
abreviados adjuntos, revelan la idoneidad y competencia de
los profesionales que integran el estudio.

Por último, y entre otros aspectos, puntualizó las
condiciones a las que estará sujeta la contratación, e in-
dicó el Objeto del Contrato, los Honorarios, Gastos y Moda-
lidades de Facturación, el Deber de Confidencialidad, y la
posibilidad de Rescisión del Contrato en cualquier momento,
con o sin expresión de causa.

Finalmente aclaró que la contratación en cuestión se
efectuará de acuerdo con lo normado por el Régimen de Con-
trataciones de la Administración Nacional aprobado por el
Decreto N.° 1023/01 (B.O. 16-8-01) y su reglamentación, a
la vez que citó dictámenes de este Organismo Asesor a tra-
vés de los cuales se ha admitido la contratación directa de
los servicios de estudios jurídicos para la asistencia del
Estado Nacional en el extranjero.

2. La Dirección General de Asuntos Jurídicos de la
Subsecretaría Legal de la Secretaría Legal y Administrativa
del Ministerio de Economía y Finanzas Públicas prestó su
conformidad a la contratación del mencionado estudio de
acuerdo con las pautas rectoras de la adjudicación simple
por especialidad, que constituyen una de las formas posi-




bles de selección del contratista en nuestro ordenamiento positivo (v. fs. 49).

Sin perjuicio de ello, recordó la necesidad de requerir la intervención de esta Casa, en virtud de lo dispuesto por el artículo 66 in fine de la Ley N.° 24.946.

3. Con posteriodad la citada Dirección General de Asuntos Jurídicos requirió la afectación presupuestaria preventiva de USD 35.000 (treinta y cinco mil dólares estadounidenses) para afrontar el anticipo de honorarios requerido por el estudio en cuestión (v. fs. 51), la que fue efectuada por la Coordinación Área Análisis y Ejecución de Presupuesto de la Dirección de Contabilidad y Finanzas de la Dirección General de Administración del Ministerio de Economía y Finanzas Públicas por la suma de $ 289.100 (doscientos ochenta y nueve mil cien pesos) (v. fs. 53).

4. En una nueva intervención la Dirección General de Asuntos Jurídicos de ese Ministerio, se expidió sobre el proyecto de resolución, a ser suscripto por el Ministro de Economía y Finanzas Públicas, mediante el cual se propicia la autorización y aprobación de la contratación del estudio de abogados estadounidenses *Tannenbaum Helpern Syracuse & Hirschtritt LLP Attorneys-at-Law* y se faculta al Subsecretario Legal de la Secretaría Legal y Administrativa de ese Ministerio a realizar las gestiones y suscribir la documentación que resulte necesaria para la ejecución del contrato (v. fs. 54/56).

Destacó que la especialidad requerida para la atención de los asuntos a encomendarse, dada su complejidad técnica, sumada a la necesidad de adoptar urgentes acciones que permitan reencauzar las relaciones entre el Estado Argentino y

4



*"2014- Año de Homenaje al Almirante Guillermo Brown,*
*en el Bicentenario del Combate Naval de Montevideo"*

*Procuración del Tesoro de la Nación*

135

los bonistas que ingresaron a las operaciones de canje, tornan aconsejable adecuar el obrar de la Administración a las pautas rectoras de la adjudicación simple por especialidad, que constituye una de las formas posibles de selección del contratista en nuestro ordenamiento positivo.

A su vez, señaló que el Señor Ministro de Economía y Finanzas Públicas es competente para el dictado de la medida bajo análisis, en uso de las atribuciones que se desprenden de la Ley de Ministerios N.º 22.520 (B.O. 23-12-81), texto ordenado en 1992 y sus modificatorias, la Ley de Administración Financiera y Sistemas de Control N.º 24.156 (B.O. 29-10-92) y su Decreto Reglamentario N.º 1344/07 (B.O. 5-10-07).

En razón de ello, concluyó que no tiene observaciones que realizar en cuanto al fondo de la medida en trato, sin perjuicio de reiterar que debería darse intervención a esta Procuración del Tesoro en virtud de lo previsto en la parte final del artículo 66 de la Ley N.º 24.946.

5. En este estado, se remitieron las actuaciones a este Organismo Asesor (v. fs. 57) con el agregado del mencionado proyecto de resolución obrante en un folio a continuación de la foja 57.

- II -

ANÁLISIS DE LA CUESTIÓN

1. El artículo 16 de la Ley de Creación del Cuerpo de

5

Abogados del Estado N.° 12.954 (B.O. 10-3-47) establece que *Ninguna repartición nacional podrá nombrar asesor letrado ni otra clase de funcionario que específicamente ejerza función para la que precise el título de abogado, sin oír previamente a la Dirección del Cuerpo de Abogados del Estado...*

Por su parte, la Ley N.° 24.946 en su artículo 66, determina que *A los efectos de dar cumplimiento al artículo 27 -primera parte- de esta ley, salvo los casos en que por ley se autorice un régimen especial, el Estado Nacional y sus entes descentralizados serán representados y patrocinados ante los tribunales judiciales y organismos jurisdiccionales y administrativos nacionales y locales, por letrados integrantes del Cuerpo de Abogados del Estado dependientes de los servicios jurídicos de los respectivos ministerios, secretarías, reparticiones o entes descentralizados.*

Agrega, asimismo, que *Cuando situaciones excepcionales o casos especiales lo hagan necesario, tal representación, podrá ser ejercida por otros abogados contratados como servicio de asistencia al Cuerpo de Abogados del Estado, previo dictamen favorable del Procurador del Tesoro de la Nación.*

Los referidos procedimientos que establecen la intervención previa de este Organismo Asesor, tienen por finalidad posibilitar el ejercicio efectivo del control que, sobre la designación de los integrantes o colaboradores del Cuerpo de Abogados del Estado le compete a su Director (v. Dictámenes 275:259; 370; 276:4 y 24; entre otros).

Sin embargo, en la especie, cabe destacar que la contratación del estudio mencionado no tiene por objeto incor-

6



*"2014- Año de Homenaje al Almirante Guillermo Brown,
en el Bicentenario del Combate Naval de Montevideo"*

*Procuración del Tesoro de la Nación*

136

porar a sus miembros al Cuerpo de Abogados del Estado; sino
contar con sus servicios en el marco de una contratación
específica, para la atención de cuestiones derivadas de la
causa *NML Capital Ltd. et al v. Republic of Argentina*, en
trámite por ante el Juzgado de Distrito Sur de la ciudad de
Nueva York, Estados Unidos de América. Es en ese marco que
esta Casa toma la presente intervención.

2. Con relación al procedimiento de contratación a
seguir, cabe efectuar las siguientes consideraciones:

2.1. De manera preliminar conviene recordar que esta
Procuración tiene dicho que ... *no resulta de su competencia ex-
pedirse sobre cuestiones que no sean estrictamente jurídicas, ta-
les como las que se refieren a la equidad o inequidad de las fór-
mulas contractuales, así como también a los aspectos técnicos y a
razones de oportunidad, mérito y conveniencia...* (Dictámenes 246:64,
244:555 y 246:477, entre muchos otros).

2.2. En la medida en que se trata de la contratación
de un Estudio Jurídico del exterior para la prestación de
sus servicios profesionales en el extranjero, supuesto no
contemplado en las normas aplicables en nuestro país en ma-
teria de contrataciones administrativas, cabe recordar que
esta Casa ha sostenido que ... *frente al vacío normativo ca-
brá ajustar el obrar administrativo a los principios gene-
rales aplicables en materia de contratación de servicios...*
(Dictámenes 273:196).

En tal sentido, en situaciones análogas y al amparo
del régimen de contrataciones vigente en cada caso, se ad-
mitió la contratación directa de los servicios de estudios



7

jurídicos para la asistencia del Estado Nacional en el ex-
tranjero.

2.3. El Régimen de Contrataciones de la Administra-
ción Nacional instituido por el Decreto N.° 1023/01, en su
artículo 25, inciso d), apartado 2, permite la utilización
del régimen de contratación directa para *La realización o
adquisición de obras científicas, técnicas o artísticas cu-
ya ejecución deba confiarse a empresas, artistas o especia-
listas que sean los únicos que puedan llevarlas a cabo.*

La mencionada norma agrega que *Se deberá fundar la
necesidad de requerir específicamente los servicios de la
persona física o jurídica respectiva,* a la vez que dispone
que *Estas contrataciones deberán establecer la responsabi-
lidad propia y exclusiva del cocontratante, quien actuará
inexcusablemente sin relación de dependencia con el Estado
Nacional.*

2.4. Por su parte, el Reglamento del mencionado Régimen
de Contrataciones, aprobado por el Decreto N.° 893/12 (B.O.
14-6-12), dispone en su artículo 21 que *Se considerará sa-
tisfecha la condición de único proveedor prevista en el
apartado 2 del inciso d) del artículo 25 del Decreto Dele-
gado N° 1.023/01 y sus modificaciones, cuando su especiali-
dad e idoneidad sean características determinantes para el
cumplimiento de la prestación. Quedará acreditada la condi-
ción de único proveedor cuando se fundamente la necesidad
de la especialización y se acompañen los antecedentes que
acrediten la notoria capacidad científica, técnica o artís-
tica de la empresa, persona o artista a quien se encomiende
la ejecución de la obra.*

Asimismo, el artículo 138 del citado decreto, estable-
ce que *En las contrataciones que se encuadren en el aparta-*

8



*Procuración del Tesoro de la Nación*

137

do 2 del inciso d) del artículo 25 del Decreto Delegado Nº
1.023/01 y sus modificaciones, se deberá seguir el siguien-
te procedimiento: a) La unidad requirente deberá formular
el requerimiento cumpliendo con los requisitos del artículo
39 del presente reglamento y deberá fundar en el mismo la
necesidad de requerir específicamente los servicios de la
persona física o jurídica respectiva. La unidad requirente
deberá acreditar en la solicitud que la empresa, artista o
especialista que se proponga para la realización de la obra
científica, técnica o artística pertinente es el único que
puede llevarla a cabo. A tales fines deberá acreditar que
la especialidad e idoneidad son características determinan-
tes para el cumplimiento de la prestación y acompañar los
antecedentes que acrediten la notoria capacidad científica,
técnica o artística de las empresas, personas o artistas a
quienes se encomiende la ejecución de la obra.

2.5. Por ello, en base a los antecedentes mencionados,
no existen reparos jurídicos que formular al encuadre suge-
rido por la Subsecretaría Legal de la Secretaría Legal y
Administrativa del Ministerio de Economía y Finanzas Públi-
cas.

3. Sin perjuicio de lo expuesto en el acápite ante-
rior, y para la instancia en la que se instrumente el con-
trato a suscribir con el mencionado estudio, me permito re-
cordar la necesidad de que en aquél se establezca la res-
ponsabilidad propia y exclusiva del cocontratante, quien
actuará inexcusablemente sin relación de dependencia con el
Estado Nacional, conforme lo disponen las normas transcrip-



9

tas.

Por otra parte, resultaría conveniente la inserción de una cláusula relativa a la intransferibilidad del contrato, toda vez que las obligaciones asumidas por los letrados integrantes del estudio a contratar, revisten el carácter de *intuitu personae*.

En lo que respecta al objeto del contrato sería pertinente especificar el deber de información que es menester en este tipo de contrataciones por parte de los abogados que actúan en representación del Estado Nacional, a través de la producción de informes y otros documentos que le sean exigidos por la autoridad contratante a fin de intercambiar información y coordinar la estrategia y posición a sostener en la actuación judicial.

Es necesario, además, que el convenio a suscribir contemple la obligación de los profesionales de no ser patrocinantes o apoderados, ni asesores, en causas o asuntos contra el Estado Nacional o sus entes descentralizados.

Por último, se debería establecer la posibilidad de rescisión contractual y la previsión relativa a la jurisdicción ante la cual han de resolverse los eventuales conflictos que se susciten a partir de la relación contractual que se establece.

- III -

CONCLUSIÓN

Por las consideraciones vertidas, no existen obstáculos jurídicos para la procedencia de la contratación directa que es objeto de consulta.

10

*"2014- Año de Homenaje al Almirante Guillermo Brown, en el Bicentenario del Combate Naval de Montevideo"*



*Procuración del Tesoro de la Nación*

138

No obstante, reitero la conveniencia de que se tengan en cuenta los extremos individualizados en el punto 3 del apartado anterior.

DICTAMEN N.° 144

HORACIO PEDRO DIEZ
Subprocurador del Tesoro de la Nación

# EXHIBIT C

http://m.cronista.com/Mobile/nota.html?URI=/contenidos/2015/04/20/noticia_0027.html

Cronista.com

Economics and Politics  4/20/15          Midnight

## Debt:  More Lawyers

The Ministry of Economy has hired US law firm Tannenbaum Helpern Syracuse &
Hirschtritt LLP (THSH) as counsel in litigation against the Vulture Funds. As
reported in the blog *Eliminando Variables* [Removing Variables], and based on
official documents, the firm is responsible for seeking alternatives ways for
bondholders trapped by Griesa's decisions to collect, and it will work
independently from Cleary Gottlieb, [the firm] conducting the trial.



new world **medium**

April 23, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional
Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have
employed a team of professional translators, and that we have translated, to the best of our knowledge,
the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

# CRONISTA.COM

Menú

**ECONOMÍA Y POLÍTICA 20/04/2015 | 00:00**

## Deuda: más abogados

Me gusta    Compartir  0      **Twittear  0**

n El Ministerio de Economía contrató al estudio de abogados estadounidense Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH) para que lo asesore en el litigio contra los fondos buitre. Según publicó el blog Eliminando Variables en base a documentos oficiales, este bufet está encargado de buscar alternativas para que los bonistas atrapados por los fallos de Griesa cobren y trabajará de forma independiente a Cleary Gottlieb, que lleva adelante el juicio.

**NOTICIAS RELACIONDAS**



**Más cerca de la salida, pero aún en el hospital**
por Hernan De Goñi

# EXHIBIT D

http://www.perfil.com/economia/Economia-contrato-un-segundo-estudio-de-abogados-por-la-deuda-20150419-0012.html

# Perfil.com > Economic

IN ADDITION TO CLEARY GOTTLIEB

# Ministry of the Economy Hires a Second Law Firm to Handle Debt

Last year, the firm THSH was paid US$ 35,000 to seek other strategies, as revealed by the blog *Eliminando Variables* [Removing Variables]

- By Patricia Valli | 4/22/2015 | 8 19 PM

The Government has hired a new law firm in New York in order to protect its relationship with bondholders who entered into the 2005 and 2010 swaps, as revealed by the blog *Eliminando Variables*. The firm Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH) is responsible for coming up with strategies to successfully make payments to bondholders stuck in their tracks by judge Thomas Griesa, a task which the original



law firm Cleary Gottlieb Steen & Hamilton was not able to accomplish in any of the US legal proceedings.

The agreement bears the signature of the Legal and Technical of Subsecretariat of the Ministry of Economy and Finance, Rodolfo Diana and was authorized by a direct contract with the Ministry of the Economy.  Case file S01:0163016/14 allows Tannenbaum Helpern Syracuse& Hirschtritt LLP to represent "the Republic of Argentina in certain matters stemming from the effects of the measures taken by the United States of America's justice system in the *NML Capital Ltd. V. Republic of Argentina* case." The firm, among whose partners are litigation and "investment fund" specialists, aims to not violate contracts after the judge's decisions and to facilitate the allowing of financial entities to collect, especially since the entering into "partial default" or "payment restriction" when the judge ordered the Bank of New York, Argentina's servicing bank, to not make payments to 2005 and 2010 swap bondholders until Argentina pays the US $1.6 Billion judgment to the vulture funds led by NML's Paul Singer.

http://www.perfil.com/economia/Economia-contrato-un-segundo-estudio-de-abogados-por-la-deuda-20150419-0012.html

As an initial payment, the firm, whose headquarters are located at 900 Third Avenue in New York City, charged "US $35,000, money coming from the Budgetary Analysis and Implementation Coordination Department of the Directorate of Accounting and Finance of the Directorate General of Administration of the Ministry of the Economy and Finance." The rest of the details are unknown. In order to give a market reference, attorneys from the firm Cleary Gottlieb Steen & Hamilton charge between US$ 1,000 and US $1,300 per hour for their services. Since they began representing Argentina in 2004, CGSH's fees have gone up by 50% despite the fact that they have not been successful in the lawsuit.



April 23, 2015

I hereby certify that I am a professional translator, that I abide by the Code of Ethics and Professional Practice of the *American Translators Association*, that I am fluent in Spanish and English, that I have employed a team of professional translators, and that we have translated, to the best of our knowledge, the attached document entitled

**News Article**

From Spanish into English

Signed,

Cathleen Waters

Founder, New World Medium

Translator of French, Spanish, Italian, Portuguese and English

American Translator's Association Membership no. 257918

http://www.perfil.com/economia/Economia-contrato-un-segundo-estudio-de-abogados-por-la-deuda-20150419-0012.html

# Perfil.com > Economía

ADEMAS DE CLEARY GOTTLIEB

# Economía contrató un segundo estudio de abogados por la deuda

El año pasado le pagó US$ 35 mil a la firma THSH para buscar otras estrategias, según reveló el blog Eliminando Variables

• Por Patricia Valli | 22/04/2015 | 20:19



Para salvaguardar la relación con los bonistas que entraron a los canjes de 2005 y 2010, el Gobierno contrató a un nuevo estudio de abogados en Nueva York en agosto del año pasado, según reveló el blog Eliminando Variables. El refuerzo de la firma Tannenbaum Helpern Syracuse & Hirschtritt LLP (THSH), tiene a su cargo la búsqueda de estrategias para destrabar los pagos a los bonistas frenados por los fallos del juez Thomas Griesa que el estudio principal, Cleary Gottlieb Steen & Hamilton, no pudo revertir en ninguna de las instancias legales estadounidenses.

El acuerdo lleva la firma del Subsecretario Legal de la Secretaría Legal y Técnica del Ministerio de Economía y Finanzas, Rodolfo Diana y fue autorizado por contratación directa por especialidad del Ministerio de Economía. El expediente es el S01:0163016/14 habilita a Tannenbaum Helpern Syracuse& Hirschtritt LLP a representar al país "en ciertos asuntos derivados de los efectos de las medidas adoptadas por la Justicia de los Estados Unidos en la causa NML Capital Ltd et al v. Republic of Argentina".

Esta firma, que tiene entre sus socios a especialistas en litigios y "fondos de inversión" apunta a que no se violen los contratos por las resoluciones del juez y que las entidades financieras permitan que los bonistas cobren, sobre todo a partir de la entrada en "default parcial" o "restricción de cobro" desde que el juez le ordenó al Bank of New York, el agente de pago de la Argentina, que no curse los pagos a los tenedores de títulos del canje de 2005 y 2010 hasta que la Argentina no le pague la sentencia por más de US$ 1.600 millones a los fondos buitre

http://www.perfil.com/economia/Economia-contrato-un-segundo-estudio-de-abogados-por-la-deuda-20150419-0012.html

encabezados por NML, de Paul Singer.

Como pago inicial, la firma con sede en el 900 de la Third Avenue en la ciudad de Nueva York, cobró "US$ 35 mil, dinero que salió del área de Coordinación Area Análisis y Ejecución de Presupuesto de la Dirección de Contabilidad y Finanzas de la Dirección General de Administración del Ministerio de Economía y Finanzas". El resto de los detalles se desconocen. Como referencia de mercado, los abogados de la firma Cleary Gottlieb Steen & Hamilton, en tanto, cobran entre US$ mil y 1.300 los servicios por hora. Desde que empezaron a asesorar a la Argentina en 2004, los ingresos de CGSH crecieron 50%, pese a que no lograron resultados en el juicio.

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------x
                           :

| | |
|---|---|
| NML CAPITAL, LTD., | |
| | **ORDER** |
| Plaintiff, | |
| | 08 Civ. 6978 (TPG) |
| – against – | 09 Civ. 1707 (TPG) |
| | 09 Civ. 1708 (TPG) |
| REPUBLIC OF ARGENTINA, | |
| Defendants. | |

----------------------------------------------x

## AMENDED FEBRUARY 23, 2012 ORDER

WHEREAS, in an Order dated December 7, 2011, this Court found that, under Paragraph 1(c) of the 1994 Fiscal Agency Agreement ("FAA"), the Republic is "required . . . at all times to rank its payment obligations pursuant to NML's Bonds at least equally with all the Republic's other present and future unsecured and unsubordinated External Indebtedness."

WHEREAS, in its December 7, 2011 Order, this Court granted partial summary judgment to NML on its claim that the Republic repeatedly has breached, and continues to breach, its obligations under Paragraph 1(c) of the FAA by, among other things, "ma[king] payments currently due under the Exchange Bonds, while persisting in its refusal to satisfy its payment obligations currently due under NML's Bonds."

1

And WHEREAS NML Capital, Ltd. ("NML") has filed a renewed motion for equitable relief as a remedy for such violations pursuant to Rule 65(d) of the Federal Rules of Civil Procedure and the Court's inherent equitable powers.

Upon consideration of NML's renewed motion, the response of the Republic of Argentina (the "Republic") thereto, NML's reply, and all other arguments submitted to the Court in the parties' papers and at oral argument, it is HEREBY ORDERED that:

1.   It is DECLARED, ADJUDGED, and DECREED that NML is irreparably harmed by and has no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA, and that the equities and public interest strongly support issuance of equitable relief to prevent the Republic from further violating Paragraph 1(c) of the FAA, in that:

> a. Absent equitable relief, NML would suffer irreparable harm because the Republic's payment obligations to NML would remain debased of their contractually-guaranteed status, and NML would never be restored to the position it was promised that it would hold relative to other creditors in the event of default.

> b. There is no adequate remedy at law for the Republic's ongoing violations of Paragraph 1(c) of the FAA because the Republic has made clear – indeed, it has codified in Law 26,017 and Law

2

26,547 – its intention to defy any money judgment issued by this Court.

c. The balance of the equities strongly supports this Order in light of the clear text of Paragraph 1(c) of the FAA and the Republic's repeated failures to make required payments to NML. In the absence of the equitable relief provided by this Order, the Republic will continue to violate Paragraph 1(c) with impunity, thus subjecting NML to harm. On the other hand, the Order requires of the Republic only that which it promised NML and similarly situated creditors to induce those creditors to purchase the Republic's bonds. Because the Republic has the financial wherewithal to meet its commitment of providing equal treatment to both NML (and similarly situated creditors) and those owed under the terms of the Exchange Bonds, it is equitable to require it to do so. Indeed, equitable relief is particularly appropriate here, given that the Republic has engaged in an unprecedented, systematic scheme of making payments on other external indebtedness, after repudiating its payment obligations to NML, in direct violation of its contractual commitment set forth in Paragraph 1(c) of the FAA.

d. The public interest of enforcing contracts and upholding the rule of law will be served by the issuance of this Order, particularly here, where creditors of the Republic have no

3

recourse to bankruptcy regimes to protect their interests and must rely upon courts to enforce contractual promises. No less than any other entity entering into a commercial transaction, there is a strong public interest in holding the Republic to its contractual obligations.

2.    The Republic accordingly is permanently ORDERED to specifically perform its obligations to NML under Paragraph 1(c) of the FAA as follows:

a. Whenever the Republic pays any amount due under terms of the bonds or other obligations issued pursuant to the Republic's 2005 or 2010 Exchange Offers, or any subsequent exchange of or substitution for the 2005 and 2010 Exchange Offers that may occur in the future (collectively, the "Exchange Bonds"), the Republic shall concurrently or in advance make a "Ratable Payment" to NML (as defined below and as further defined in the Court's Opinion of November 21, 2012).

b. Such "Ratable Payment" that the Republic is ORDERED to make to NML shall be an amount equal to the "Payment Percentage" (as defined below) multiplied by the total amount currently due to NML in respect of the bonds at issue in these cases (08 Civ. 6978, 09 Civ. 1707, and 09 Civ. 1708), including pre-judgment interest (the "NML Bonds").

c. Such "Payment Percentage" shall be the fraction calculated by dividing the amount actually paid or which the Republic

4

intends to pay under the terms of the Exchange Bonds by the total amount then due under the terms of the Exchange Bonds.

d. The Republic is ENJOINED from violating Paragraph 1(c) of the FAA, including by making any payment under the terms of the Exchange Bonds without complying with its obligation pursuant to Paragraph 1(c) of the FAA by concurrently or in advance making a Ratable Payment to NML.

e. Within three (3) days of the issuance of this ORDER, the Republic shall provide copies of this ORDER to all participants in the payment process of the Exchange Bonds ("Participants"). Such Participants shall be bound by the terms of this ORDER as provided by Rule 65(d)(2) and prohibited from aiding and abetting any violation of this ORDER, including any further violation by the Republic of its obligations under Paragraph 1(c) of the FAA, such as any effort to make payments under the terms of the Exchange Bonds without also concurrently or in advance making a Ratable Payment to NML.

f. "Participants" refer to those persons and entities who act in active concert or participation with the Republic, to assist the Republic in fulfilling its payment obligations under the Exchange Bonds, including: (1) the indenture trustees and/or registrars under the Exchange Bonds (including but not limited to The Bank of New York Mellon f/k/a/ The Bank of New York);

(2) the registered owners of the Exchange Bonds and nominees

of the depositaries for the Exchange Bonds (including but not

limited to Cede & Co. and The Bank of New York Depositary

(Nominees) Limited) and any institutions which act as

nominees; (3) the clearing corporations and systems,

depositaries, operators of clearing systems, and settlement

agents for the Exchange Bonds (including but not limited to the

Depository Trust Company, Clearstream Banking S.A.,

Euroclear Bank S.A./N.V. and the Euroclear System); (4)

trustee paying agents and transfer agents for the Exchange

Bonds (including but not limited to The Bank of New York

(Luxembourg) S.A. and The Bank of New York Mellon (including

but not limited to the Bank of New York Mellon (London)); and

(5) attorneys and other agents engaged by any of the foregoing

or the Republic in connection with their obligations under the

Exchange Bonds.

g. Nothing in this ORDER shall be construed to extend to the

conduct or actions of a third party acting solely in its capacity

as an "intermediary bank," under Article 4A of the U.C.C. and

N.Y.C.L.S. U.C.C. § 4-A-104, implementing a funds transfer in

connection with the Exchange Bonds.

h. Any non-party that has received proper notice of this ORDER,

pursuant to Rule 65(d)(2), and that requires clarification as to

6

> its duties, if any, under this ORDR may make an application to
> this Court, with notice to the Republic and NML.  Such
> clarification will be promptly provided.
>
> i.  Concurrently or in advance of making a payment on the
> Exchange Bonds, the Republic shall certify to the Court and
> give notice of this certification to its Participants, and to counsel
> for NML, that the Republic has satisfied its obligations under
> this ORDER to make a Ratable Payment to NML.

3.     NML shall be entitled to discovery to confirm the timing and
amounts of the Republic's payments under the terms of the Exchange Bonds;
the amounts the Republic owes on these and other obligations; and such other
information as appropriate to confirm compliance with this ORDER;

4.     The Republic is permanently PROHIBITED from taking action to
evade the directives of this ORDER, render it ineffective, or to take any steps to
diminish the Court's ability to supervise compliance with the ORDER,
including, but not limited to, altering or amending the processes or specific
transfer mechanisms by which it makes payments on the Exchange Bonds,
without obtaining prior approval by the Court;

5.     This Court shall retain jurisdiction to monitor and enforce this
ORDER, and to modify and amend it as justice requires to achieve its equitable
purposes and to account for changing circumstances.

7

Dated:  New York, New York
        November, 21 2012

Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
#:
DATE FILED: 11/24/12

8