UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                          :
NML CAPITAL, LTD.,                        :
                                          :
                        Plaintiff,        :   03 Civ. 8845 (TPG)
                                          :   05 Civ. 2434 (TPG)
                                          :   06 Civ. 6466 (TPG)
          -against-                       :   07 Civ. 1910 (TPG)
                                          :   07 Civ. 2690 (TPG)
                                          :   07 Civ. 6563 (TPG)
                                          :   08 Civ. 2541 (TPG)
THE REPUBLIC OF ARGENTINA,                :   08 Civ. 3302 (TPG)
                                          :   08 Civ. 6978 (TPG)
                                          :   09 Civ. 1707 (TPG)
                        Defendant.        :   09 Civ. 1708 (TPG)
                                          :
------------------------------------------------------------------X
                                          :
AURELIUS CAPITAL PARTNERS, LP             :
and AURELIUS CAPITAL MASTER, LTD.,        :
                                          :
                        Plaintiffs,       :
                                          :   07 Civ. 2715 (TPG)
          -against-                       :   07 Civ. 11327 (TPG)
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                        Defendant.        :
                                          :
------------------------------------------------------------------X
                                          :
BLUE ANGEL CAPITAL I LLC,                 :
                                          :
                        Plaintiff,        :
                                          :   07 Civ. 2693 (TPG)
                                          :   10 Civ. 4101 (TPG)
          -against-                       :   10 Civ. 4782 (TPG)
                                          :
THE REPUBLIC OF ARGENTINA,                :
                                          :
                        Defendant.        :
                                          :
------------------------------------------------------------------X *(captions continue on following page)*

**MEMORANDUM OF LAW OF THE REPUBLIC OF ARGENTINA IN OPPOSITION
TO PLAINTIFFS' MOTIONS FOR DISCOVERY SANCTIONS**

```
-------------------------------------------------------X
                                                       :
AURELIUS OPPORTUNITIES FUND II, LLC                    :
and AURELIUS CAPITAL MASTER, LTD.,                     :
                                                       :
                                                       :
                 Plaintiffs,                           :
                                                       :       10 Civ. 1602 (TPG)
             -against-                                 :       10 Civ. 3507 (TPG)
                                                       :
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                                                       :
                 Defendant.                            :
-------------------------------------------------------X
                                                       :
AURELIUS CAPITAL MASTER, LTD. and                      :
AURELIUS OPPORTUNITIES FUND II, LLC,                   :
                                                       :
                                                       :
                 Plaintiffs,                           :
                                                       :       10 Civ. 3970 (TPG)
             - against-                                :       10 Civ. 8339 (TPG)
                                                       :
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                                                       :
                 Defendant.                            :
-------------------------------------------------------X
                                                       :
AURELIUS CAPITAL MASTER, LTD. and                      :
ACP MASTER, LTD.,                                      :
                                                       :
                                                       :
                 Plaintiffs,                           :
                                                       :
             - against-                                :       09 Civ. 8757 (TPG)
                                                       :       09 Civ. 10620 (TPG)
THE REPUBLIC OF ARGENTINA,                             :
                                                       :
                                                       :
                 Defendant.                            :
-------------------------------------------------------X
```

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................3

    A.    The Argentine Debt Litigation And Plaintiffs' Discovery Requests ....................3

    B.    The Republic Produces Responsive Documents And Subsequent Litigation ...........5

    C.    The Parties' Communications Following Appellate Litigation ...........................7

    D.    The Motions Before The Court ...........................................................9

ARGUMENT ............................................................................................10

    I.    THE MOTIONS SHOULD BE DENIED BECAUSE PLAINTIFFS FAILED TO COMPLY WITH LOCAL CIVIL RULE 37.2. ...........................10

    II.    THE SANCTIONS PLAINTIFFS SEEK VIOLATE THE FSIA ......................11

        A.    The FSIA Does Not Permit Sweeping, Aggregate Determinations Concerning The Republic's Property ........................................11

        B.    Discovery Sanctions Are Not A Basis For Attaching Sovereign Property ..............................................................14

    III.    PLAINTIFFS CANNOT OBTAIN FACTUAL FINDINGS AFFECTING BCRA, ENARSA, AND YPF ............................................15

    IV.    PLAINTIFFS ARE NOT ENTITLED TO PRESUMPTIONS OR FINDINGS OF FACT THAT ARE UNREASONABLE AND UNSUPPORTED BY ANY EVIDENCE ..............................................16

    V.    PLAINTIFFS' OTHER SANCTIONS DEMANDS SHOULD BE DENIED .............................................................................22

        A.    Plaintiffs Are Not Entitled To A Waiver Of The Republic's Privileges ..............................................................22

        B.    Plaintiffs Are Not Entitled To Expenses .................................23

CONCLUSION .........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 1609 ....................................................................................................... 14

28 U.S.C. § 1610 ...............................................................................................12-13, 17

Local Civil Rule 37.2 ............................................................................................ *passim*

Fed. R. Civ. P. 37 ................................................................................................. *passim*

**Cases**

*Ali v. Mukasey,*
529 F.3d 478 (2d Cir. 2008) ..................................................................................... 18

*Aurelius Capital Master, Ltd. v. Republic of Argentina,*
589 F. App'x 16 (2d Cir. 2014) .............................................................................. 7, 22

*Aurelius Capital Partners, LP v. Republic of Argentina,*
584 F.3d 120 (2d Cir. 2009) ................................................................................... 3, 17

*Aurelius Capital Partners, LP v. Republic of Argentina,*
No. 07 Civ. 2715 (TPG), 2010 WL 2925072 (S.D.N.Y. July 23, 2010) ........................... 17

*Aurelius Capital Partners, LP v. Republic of Argentina,*
No. 07 Civ. 2715 (TPG), 2012 WL 983564 (S.D.N.Y. Mar. 22, 2012) ........................... 17

*Aurelius Capital Partners, LP v. Republic of Argentina,*
No. 07 Civ. 2715 (TPG), 2013 WL 857730 (S.D.N.Y. Mar. 7, 2013) ............................. 4

*Avent v. Solfaro,*
210 F.R.D. 91 (S.D.N.Y. 2002) ................................................................................. 11

*Burgie v. Euro Brokers, Inc.,*
No. 05 Civ. 968, 2006 WL 845400 (E.D.N.Y. Mar. 30, 2006), *aff'd*, No. 05 Civ. 0968,
2007 WL 1704178 (E.D.N.Y. June 12, 2007) .............................................................. 24

*Chesa Int'l, Ltd. v. Fashion Assocs., Inc.,*
425 F. Supp. 234 (S.D.N.Y.), *aff'd*, 573 F.2d 1288 (2d Cir. 1977) ................................ 24

*County of Suffolk v. Long Island Lighting Co.,*
907 F.2d 1295 (2d Cir. 1990) ................................................................................... 16

**Page(s)**

*Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine,*
951 F.2d 1357 (2d Cir. 1991) .......................................................................... 10

*De Letelier v. Republic of Chile,*
748 F.2d 790 (2d Cir. 1984) ............................................................................ 16

*Dodson v. CBS Broad., Inc.,*
No. 02 Civ. 9270 (KMW) (AJP), 2005 WL 3177723 (S.D.N.Y. Nov. 29, 2005).............. 11

*EM Ltd. v. Republic of Argentina,*
473 F.3d 463 (2d Cir. 2007) ............................................................................ 19

*EM Ltd. v. Republic of Argentina,*
720 F. Supp. 2d 273 (S.D.N.Y. 2010)................................................................ 19

*EM Ltd. v. Republic of Argentina,*
No. 03 Civ. 2507 (TPG), 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) ........................ 3

*EM Ltd. v. Republic of Argentina,*
No. 08 Civ. 6978 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) ........................ 3

*Exp.-Imp. Bank of Republic of China v. Grenada,*
No. 06 Civ 2469, 2010 WL 5463876 (S.D.N.Y. Dec. 29, 2010)..................................... 24

*FDIC v. Connor,*
20 F.3d 1376 (5th Cir. 1994) ........................................................................... 24

*FG Hemisphere Assocs., L.L.C. v. Republique Du Congo,*
No. 01 Civ. 8700 (SAS) (HBP), 2005 WL 545218 (S.D.N.Y. Mar. 8, 2005).................... 24

*FG Hemisphere Assocs., LLC v. Republique du Congo,*
455 F.3d 575 (5th Cir. 2006) ........................................................................... 12

*Funnekotter v. Republic of Zimbabwe,*
No. 09 Civ. 08168 (CM) (THK), 2011 WL 5517860 (S.D.N.Y. Nov. 10, 2011) ..............15-16, 24

*Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.,*
126 F.3d 215 (3d Cir. 1997) ............................................................................ 13

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,*
456 U.S. 694 (1982)....................................................................................13, 14, 15

*Kregler v. City of New York,*
770 F. Supp. 2d 602 (S.D.N.Y. 2011).............................................................. 11

*Kronisch v. United States,*
150 F.3d 112 (2d Cir. 1998) ........................................................................... 21

Page(s)

*Linde v. Arab Bank, PLC*,
269 F.R.D. 186 (E.D.N.Y. 2010) ....................................................................... 21

*Merle Norman Cosmetics v. Martin*,
705 F. Supp. 296 (E.D. La. 1988) ..................................................................... 18

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
262 F. Supp. 2d 134 (S.D.N.Y. 2003) ............................................................... 10

*NML Capital, Ltd. v. Banco Central De La República Argentina*,
652 F.3d 172 (2d Cir. 2011) ........................................................................ 17, 19

*NML Capital, Ltd. v. Republic of Argentina*,
892 F. Supp. 2d 530 (S.D.N.Y. 2012) ............................................................... 19

*NML Capital, Ltd. v. Republic of Argentina*,
C 12-80185 (JSW) (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013) .......... 19

*NML Capital, Ltd. v. Republic of Argentina*,
No. 03 Civ. 8845 (TPG), 2011 WL 1533072 (S.D.N.Y. Apr. 22, 2011) ........... 17

*NML Capital, Ltd. v. Republic of Argentina*,
No. 04-00197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug. 3, 2005) ................. 18

*NML Capital, Ltd. v. Republic of Argentina*,
No. 09 Civ. 7013 (TPG), 2011 WL 524433 (S.D.N.Y. Feb. 15, 2011) ............. 19

*NML Capital, Ltd. v. Space Exploration Techs. Corp.*,
No. 14 Civ. 2262 (SVW), 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015) ........... 18

*NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*,
788 F. Supp. 2d 1111 (C.D. Cal. 2011) ............................................................. 17

*Odhiambo v. Republic of Kenya*,
764 F.3d 31 (D.C. Cir. 2014) ............................................................................ 15

*Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*,
134 F. Supp. 2d 528 (S.D.N.Y. 2001) ............................................................... 12

*Ovadia v. Top Ten Jewelry Corp.*,
No. 04 Civ. 2690, 2005 WL 1949970 (S.D.N.Y. Aug. 12, 2005) ..................... 18

*Peterson v. Islamic Republic Of Iran*,
627 F.3d 1117 (9th Cir. 2010) ..................................................................... 12-13

**Page(s)**

*Piasecki v. Daughters of Jacob Nursing Home,*
808 F. Supp. 1136 (S.D.N.Y. 1992).................................................................................. 16

*Republic of Argentina v. NML Capital, Ltd.,*
134 S. Ct. 2250 (2014) ......................................................................................... 7, 20

*Rubin v. Islamic Republic of Iran,*
637 F.3d 783 (7th Cir. 2011) ...................................................................................... 12

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.,*
490 F.3d 130 (2d Cir. 2007) ........................................................................................ 16

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic,*
No. 10 Civ. 5256 (KMW) (DCF), 2013 WL 3970823 (S.D.N.Y. Aug. 2, 2013)............... 16, 21

*Time Inc. v. Simpson,*
No. 02 Civ. 4917 (JCF), 2002 WL 31844914 (S.D.N.Y. Dec. 18, 2002)........................ 23

*Trans Commodities, Inc. v. Kazakstan Trading House,*
No. 96 Civ. 9782 (BSJ), 1997 WL 811474 (S.D.N.Y. May 28, 1997)............................ 12

*Trilegiant Corp. v. Sitel Corp.,*
272 F.R.D. 360 (S.D.N.Y. 2010) .................................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ................................................................................................. 15

*Walters v. Indus. and Commercial Bank of China, Ltd.,*
651 F.3d 280 (2d Cir. 2011) ........................................................................................ 12

*Williams v. Bank Leumi Trust Co. of New York,*
No. 96 Civ. 6695 (LMM) (AJP), 1999 WL 375559 (S.D.N.Y. June 7, 1999).................. 10

*Wyly v. Weiss,*
697 F.3d 131 (2d Cir. 2012) ........................................................................................ 19

*Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,*
No. 94 Civ. 1942 (DC), 1995 WL 686715 (S.D.N.Y. Nov. 17, 1995),
*order clarified,* No. 94 Civ. 1942 (KMW), 1995 WL 758767
(S.D.N.Y. Dec. 21, 1995).............................................................................................. 24

*Zubulake v. UBS Warburg LLC,*
220 F.R.D. 212 (S.D.N.Y. 2003) ................................................................................... 10

**Page(s)**

**Other Authorities**

Fact Check: Argentina, *available at* http://factcheckargentina.org/ .................................. 11

H.R. Rep. No. 94-1487 (1976), *reprinted in*, 1976 U.S.C.A.A.N. 6604 .......................... 14

Defendant the Republic of Argentina (the "Republic") submits this memorandum of law in opposition to plaintiffs' motions for discovery sanctions in the above-captioned actions, filed on June 17, 2015 ("Motions").

## PRELIMINARY STATEMENT

Plaintiffs' Motions demand impermissible, abusive "remedies" with no basis in law, facts, or fairness.  Rule 37 sanctions cannot alter established facts, nor are they a mechanism for making sweeping factual "findings" untethered to any particular dispute or claim and contradicted by known information and by movants' own concessions.  Rule 37 sanctions also provide no basis for conducting an end run around the FSIA or other governing substantive law. Notwithstanding these principles, plaintiffs essentially seek to non-suit the Republic in these actions – and in any others plaintiffs may choose to bring – even in the face of known *facts* that defeat that result.  Plaintiffs' proposed sanctions are far more than "severe" or "strong medicine;" they are unjust and otherwise impermissible under the law, and the Motions must therefore be denied.

*First*, in plaintiffs' haste to obtain discovery sanctions they are not entitled to on the merits, they violated Local Civil Rule 37.2, which is designed to preclude the kind of guerilla litigation that occurred here by requiring litigants to seek a conference with the court before filing a discovery motion.  Plaintiffs' violation of the Rule is particularly egregious given the drastic nature of the "remedies" they seek, and it alone warrants denial of the Motions.

*Second*, the proposed sanctions would purport to establish the existence of exceptions to immunity under the FSIA.  But this is impermissible.  A discovery sanction is not one of the exceptions to immunity from attachment enumerated in the FSIA, and even if it were, it is well settled that before a court confirms an attachment on sovereign property, it must make an individualized determination as to whether that property is immune.  And even apart from the

FSIA, the Supreme Court has held that Rule 37 requires that fact-preclusive discovery sanctions must relate to a specific fact in issue to which the requested discovery meaningfully relates. Plaintiffs' demands for blanket sanctions are not only speculative and otherwise without basis – having brought at least 15 proceedings in the United States concerning purported Republic property, plaintiffs do not explain what property their proposed "findings" concern – they are also contrary to these basic requirements of the FSIA and Rule 37.

*Third*, under the guise of sanctioning the Republic, plaintiffs seek pronouncements adverse to three entities – BCRA, ENARSA, and YPF – that they claim are the Republic's alter egos. But the law in this circuit is clear:  discovery sanctions may not increase the risk of attachment faced by third parties.  Any of plaintiffs' requests relevant to the property or status of third parties is therefore improper on its face.  Further, it would be manifestly unjust to create confusion about the liability of these entities which, it is undisputed, have their own employees, obligations, and creditors and are otherwise treated as separate from the Republic.  Indeed, this Court has already twice rejected plaintiffs' complaints alleging alter ego claims against ENARSA; the Northern District of California has denied plaintiffs discovery concerning YPF; and BCRA's status is the subject of a separate proceeding currently on appeal to the Second Circuit.

*Fourth*, plaintiffs are not under any circumstances entitled to findings that are contrary to undisputed or established facts.  The rulings plaintiffs seek would require the Court squarely to contradict its own prior decisions, the decisions of other district courts, and the extensive record built in these and related cases during more than a decade of litigation.  The law does not permit that result.

*Finally*, the Court should deny plaintiffs' other requests for sanctions.  The grace and comity owed the Republic goes beyond simple immunity and inheres in its status as a sovereign

state; it is not, as plaintiffs contend, subject to waiver. Nor is there any more merit in plaintiffs' latest attempt to use the discovery process to deprive the Republic of legal counsel. As to expenses, any costs incurred during motion practice are the direct consequence of plaintiffs' own failure to abide by Rule 37.2, and awarding plaintiffs expenses either from the Republic or its counsel is otherwise improper. For each of these reasons, plaintiffs' Motions should be denied.

## BACKGROUND

### A.     The Argentine Debt Litigation And Plaintiffs' Discovery Requests

Years of litigation in this case have demonstrated that the Republic does not have property in the United States that can legally be attached or executed upon under the Foreign Sovereign Immunities Act ("FSIA") (a fact that has not deterred plaintiffs from making repeated, illegal attempts to attach and seize purported Republic assets). *See Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 124 (2d Cir. 2009) (most of plaintiffs' efforts "have been unsuccessful because they concerned property that was immune from execution under the [FSIA] or property that did not belong to the Republic") (internal quotation marks omitted).[1]

Plaintiffs have served dozens of sets of discovery requests on the Republic and third parties, ostensibly to identify property. None of these requests has uncovered property legally subject to execution, but they have permitted plaintiffs to harass the Republic and to conduct a witch hunt of third-party entities and individuals rumored to be doing business with or advising the Republic. *See, e.g.*, Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Misc. 01237 (RCL) (D.D.C. Nov. 6, 2014) (Ex. L) (denying NML's motion to seize the passport of a former director of the World Bank and concluding that "[a]ll of the draconian measures requested by

---

[1] In 12 years of litigation, plaintiffs have only twice successfully attached and executed on property. *See EM Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2009 WL 3149601 (S.D.N.Y. Sept. 30, 2009) (confirming plaintiffs' restraint of approximately $3 million held by BNA on behalf of the Republic's Ministry of Science, Technology, and Productive Innovation); *EM Ltd. v. Republic of Argentina*, No. 03 Civ. 2507 (TPG), 2009 WL 2568433 (S.D.N.Y. Aug. 18, 2009) (confirming plaintiffs' restraint of the Republic's beneficial interests in certain trusts).

NML are unwarranted and unnecessary."); Letter from P. Zimmerman to Judge Griesa, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. July 6, 2015) (Ex. C) ("Non-party [Deutsche Bank AG ('DB')] has been served with dozens of subpoenas over the past few years related to judgments and pending actions filed against the Republic. . . . It is now evident that the subpoenas being issued by NML, Aurelius and other plaintiffs are less an effort to obtain information to locate and ultimately seize attachable assets of the Republic and more a tool under the auspices of the Court to punish entities and affiliates of entities that are identified as having played a role in financial transactions with the Republic."); Letter from W. Dahill and C. Clark to Judge Griesa, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. July 6, 2015) (Ex. B) (despite non-party's production of documents, "NML insists on continuing efforts to harass our clients").[2]   At issue here are two sets of discovery demands.

The *first*, served on the Republic by the Aurelius plaintiffs on December 13, 2011, seeks worldwide discovery of purported Republic assets, including information identifying each asset, debt or property of any kind whatsoever located "anywhere in the world" that Argentina owns or owned during the nearly four-year period defined as the "Relevant Time Period."[3]   Plaintiffs' Requests for Production to Defendant at 4, *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. Dec. 13, 2011) (Ex. Q).   These requests broadly define "Argentina" to include, for example, *all* "agencies, instrumentalities, ministries, political

---

[2] Exhibits are attached to the Declaration of Elizabeth M. Hanly filed with this memorandum of law.

[3] The Aurelius plaintiffs purported to narrow these document requests in response to the Court's rulings that "discovery needs to be tailored to seek *only* information regarding assets that could realistically be seized by plaintiffs," and "that the Republic may have a substantial argument that the subpoenas may be too broad in the categories of documents sought and how Argentina is defined," *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2013 WL 857730, at **1, 3 (S.D.N.Y. Mar. 7, 2013) (emphasis added), but although Aurelius ostensibly reduced the *number* of its requests, it accomplished this largely by combining requests or replacing specific examples of documents sought with broad terminology covering the same or similar subject matter.   *See* Plaintiffs' Requests for Production to Defendant, *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. Dec. 13, 2011) (Ex. Q).

subdivisions, representatives . . . .," as well as all "Persons" in the revised Exhibit 1 to the

demands, which lists *393* entities.  *Id.* at 2, Ex. 1.

The *second* set of requests, served on the Republic by NML on August 14, 2012, seeks

extensive information concerning both purported assets of "Argentina" as well as the relationship

between the Republic and various separate legal entities, including Banco de la Nación

Argentina ("BNA"), Energía Argentina S.A. ("ENARSA"), Yacimientos Petrolíferos Fiscales

("YPF"), and Banco Central de la República Argentina ("BCRA").[4]  Like the first set of

requests, these Requests include a broad definition of "Argentina," encompassing various third

parties, including individuals and entities otherwise entitled to special immunity, such as the

Ministry of Defense and the Ministry of Foreign Affairs.  *See* Plaintiff's Discovery Requests to

Defendant the Republic of Argentina at 1, Ex. A, *NML Capital, Ltd. v. Republic of Argentina*,

No. 03 Civ. 8845 (TPG) (S.D.N.Y. Aug. 14, 2012) (Ex. P).

## B.     The Republic Produces Responsive Documents And Subsequent Litigation

Plaintiffs' repeated representations that the Republic has refused "to produce *any*

documents or to answer *any* of NML's interrogatories," NML Br. at 1 (emphasis in original), are

false.  *See also* Aurelius Br. at 1 (same); NML Br. at 15 (the Republic has refused "to produce

documents or provide any information whatsoever regarding either category of information").

Notwithstanding the overbroad, vague, and burdensome nature of plaintiffs' Discovery

Requests, the Republic produced responsive answers and documents to plaintiffs, including: (1)

stating that it maintains no accounts in the United States in which it keeps funds used for

commercial activity in the United States; (2) describing the organizational relationship between

---

[4] On June 13, 2013, the Aurelius plaintiffs requested all documents and responses provided to NML in response to its discovery requests.  *See* Plaintiffs' Discovery Requests to Defendant the Republic of Argentina, *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. June 13, 2013) (Ex. N).  The Republic has produced to the Aurelius plaintiffs all documents responsive to this request.  Email from K. Bresnahan to D. Rapport, dated July 15, 2013 (Ex. M).

5

the Republic and BCRA, BNA, ENARSA, and YPF; (3) providing a list of the current Ministers,
Secretaries, and Under-Secretaries of the Ministry of Economy and Public Finance (including the
Tesorería General de la Nación) and the Ministry of Federal Planning, Public Investment, and
Services, and the current directors of BCRA, BNA, ENARSA, and YPF; (4) producing the
charters, organizing documents, and/or bylaws of BCRA, BNA, ENARSA, and YPF; (5) stating
that it is not aware of any judicial or administrative decisions outside of the United States
holding BCRA, BNA, ENARSA, or YPF to be alter egos of the Republic or liable for the
amounts owed by the Republic on its defaulted debt;[5] (6) providing organizational charts of the
Ministry of Economy and Public Finance (including the Tesorería General de la Nación), the
Ministry of Federal Planning, Public Investment, and Services, BCRA, and BNA; and (7)
producing documents identifying the current address of the Ministry of Economy and Public
Finance (including the Tesorería General de la Nación), the Ministry of Federal Planning, Public
Investment, and Services, and the current principal offices of BCRA, BNA, ENARSA, and YPF.
*See* Republic of Argentina's Responses and Objections to Plaintiff's Interrogatories and
Document Requests, *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG)
(S.D.N.Y. Sept. 27, 2012) (Ex. O).

Plaintiffs have also received documents responsive to the Discovery Requests from
numerous third parties.  These documents include account statements, records of more than
200,000 wire transfers, and purchase and sale agreements for a variety of entities, including
BNA and YPF, among many others.[6]

---

[5] To the contrary, as noted above, this Court has twice rejected plaintiffs' alter ego claims against ENARSA; the
Northern District of California denied plaintiffs discovery concerning YPF; and plaintiffs' alter ego allegations
concerning BCRA are the subject of a separate proceeding that is still in its early stages and is currently on appeal to
the Second Circuit.

[6] Plaintiffs have received third-party discovery from Bank of America, Bank of New York Mellon, Barclays, BNA,
Citibank, Deutsche Bank, Euroclear, Exxon, Fintech, Georgeson Shareholder, HSBC, J.P. Morgan, Merrill Lynch,
Ocean Bank, Standard Chartered, UBS, and Wells Fargo, among others.

### C.     The Parties' Communications Following Appellate Litigation

Last year, the Supreme Court held that the FSIA did not provide a separate source of immunity for discovery demands on foreign states.  *Republic of Argentina v. NML Capital*, *Ltd.*, 134 S. Ct. 2250 (2014).  Following that ruling, the Second Circuit affirmed this Court's Order in *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16 (2d Cir. 2014), upholding plaintiffs' discovery, but at the same time stressing pointedly that the Republic "is entitled to a degree of grace and comity," and urging consideration of the Republic's "sovereign interests in managing discovery."  *Id*. at 18.  A month after the Second Circuit's decision, plaintiffs wrote to the Republic about the Discovery Requests.  Letter from R. Cohen to C. Boccuzzi (Jan. 23, 2015) (Ex. K).  Plaintiffs did not acknowledge the Second Circuit's instructions concerning "grace and comity" or the Republic's "sovereign interests in managing discovery."  *Id*.  Instead, plaintiffs demanded that the Republic "commence its document production within ten days" and indicated particular interest in a series of electronic databases and reports compiled by the Argentine government.  *Id*. at 3-4.  Plaintiffs also insisted that the Republic produce *all* documents responsive to the Discovery Requests "expeditiously," under threat of contempt and sanctions.  *Id*. at 4.

The Republic responded promptly.  Letter from C. Boccuzzi to R. Cohen (Jan. 30, 2015) (Ex. J).  *First*, the Republic provided to plaintiffs the location where some of the databases and reports plaintiffs mentioned are available.  *Id*. at 2.  These databases and reports include, collectively, records of the Republic's "suppliers and contracts (including prices), organized by commercial activity and geographic location" and  "information about public assets and the current status of public debt."  Letter from R. Cohen to C. Boccuzzi at 3 (Jan. 23, 2015) (Ex. K). *Second*, the Republic agreed that after plaintiffs reviewed this information, the Republic would discuss any questions concerning "matters relevant to the enforcement of plaintiffs' judgments."

Letter from C. Boccuzzi to R. Cohen at 2 (Jan. 30, 2015) (Ex. J). *Third*, the Republic noted that some of the sources plaintiffs identified in their letter concerned property located within Argentina, which the parties have agreed is beyond the scope of the Discovery Requests. *See, e.g.*, Pls.' Reply Mem. of Law at 17, *Aurelius Capital Partners LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. May 27, 2013) ("Consistent with the Court's guidance, Plaintiffs have structured each request to avoid targeting assets that are located in Argentina."). *Finally*, the Republic noted that plaintiffs had not in any way revised the Discovery Requests in response to the Second Circuit's decision but agreed nonetheless to meet and confer on all of the issues raised in plaintiffs' letter. Letter from C. Boccuzzi to R. Cohen at 2 (Jan. 30, 2015) (Ex. J).

The next week, counsel for the parties held a telephonic meet and confer during which they discussed outstanding discovery issues; the timing and procedure for addressing the "scores" of "me-too" *pari passu* motions that plaintiffs told the Republic to expect; and certain information concerning previous discussions with the Special Master. With respect to the Document Requests, counsel for plaintiffs confirmed that they did not intend to alter or amend their Requests in response to the Second Circuit's decision. Counsel for the Republic agreed to discuss with their client the categories of documents the client might be able to produce.

Counsel for the Republic neither committed their client to produce documents nor suggested that their client would refuse to do so. Plaintiffs' representation to the Court that during the meet and confer the Republic "signaled that it would refuse to produce any documents," NML Br. at 7; Aurelius Br. at 7 (same), may be a convenient fig leaf for plaintiffs' failure to comply with the Local Rules, but it is not true. Rather, as is clear from the correspondence plaintiffs cite, counsel for the Republic "signaled" that they would confer with their client, not that the Republic would "refuse to produce any documents." *See* Email from R. Cohen to C. Boccuzzi (Feb. 17, 2015) (Ex. I) ("At the close of the meet and confer on February

6th we agreed to touch base last week so you could tell us the results of your inquiry to your client about its intention to produce any additional documents or information"); Email from C. Boccuzzi to R. Cohen (Feb. 18, 2015) (Ex. H) ("I am speaking with the client about this."). The Republic has in fact made an additional production to plaintiffs consisting of a variety of responsive documents, including minutes from shareholders' and board of directors' meetings, information concerning the composition of third-party entities' boards of directors and auditing bodies, and records of the instructions given to individuals who vote the Republic's shares in these entities. *See* Letter from K. Bresnahan to R. Cohen and E. Friedman (July 15, 2015) (Ex. A).

Two weeks after the meet and confer, counsel for the Republic and for plaintiffs exchanged emails without finalizing their positions. The parties have not spoken about the Discovery Requests since February, and the Republic knew nothing of the Motions until they were filed. Rather than engage in wasteful motion practice, plaintiffs' counsel could have raised the Discovery Requests with counsel for the Republic on any number of occasions in the last four months, including during the meet and confer the parties held on a different set of discovery requests the week before the Motions were filed. Alternatively, plaintiffs could have complied with Local Civil Rule 37.2 and Rule 2(A) of the Court's individual practices. Choosing to do neither, plaintiffs instead filed the Motions before the Court.

### D.   The Motions Before The Court

Plaintiffs now seek unprecedented discovery sanctions pursuant to Rule 37(b) in the form of a court order (i) finding that *any* property of the Republic in the United States is being used for a commercial purpose in the United States and establishing that BCRA, ENARSA, and YPF are the Republic's alter egos, (ii) precluding the Republic from contesting these points, (iii)

9

deeming waived "any privilege" that the Republic might assert, and (iv) awarding plaintiffs

attorneys' fees and other expenses.  *See* NML Br. at 10.

**ARGUMENT**

Courts in this Circuit have consistently held that using Rule 37 to make findings of fact

adverse to a sanctioned party, or to preclude it from arguing its case, is "extreme" and that these

sanctions "should not be given lightly."  *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 220

(S.D.N.Y. 2003) (characterizing adverse inference discovery sanction as "extreme" and declining

to impose it on defendant).  To pass muster under the due process clause, this "strong medicine"

must be applied only when "just" and only when specifically related to the claim at issue.  *Daval*

*Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1366-67 (2d Cir.

1991).  Plaintiffs' Motions manifestly fail this test.

**I.      THE MOTIONS SHOULD BE DENIED BECAUSE PLAINTIFFS FAILED TO
          COMPLY WITH LOCAL CIVIL RULE 37.2.**

The Motions are procedurally improper and should be denied on that threshold basis

alone.  This Court's Local Civil Rules require parties conducting discovery to confer not only

with each other, but also with the Court before engaging in motion practice over discovery

disputes that can be, and often are, resolved in a more efficient manner.  Rule 37.2 of the Court's

Local Civil Rules provides categorically that:

> No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil
> Procedure shall be heard unless counsel for the moving party has first requested
> an informal conference with the Court by letter-motion for a pre-motion discovery
> conference (subject to the instructions regarding ECF published on the Court's
> website and the Judge's Individual Practices) and such request has either been
> denied or the discovery dispute has not been resolved as a consequence of such a
> conference.

Failure to comply with Rule 37.2 "requires that any motion based on the alleged failure to be

given documents . . . be denied."  *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*, 262 F. Supp. 2d

134, 152 (S.D.N.Y. 2003); *see Williams v. Bank Leumi Trust Co. of New York*, No. 96 Civ. 6695

10

(LMM) (AJP), 1999 WL 375559, at *1 (S.D.N.Y. June 7, 1999) (denying motion to compel production of documents because movant failed to comply with Local Civil Rule 37.2); *Kregler v. City of New York*, 770 F. Supp. 2d 602, 611 (S.D.N.Y. 2011) (denying motion to preclude defendants from offering evidence or to strike answers due to movant's failure to comply with Rule 37.2); *Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002) (denying motion to compel where plaintiff did not satisfy meet and confer requirements under the Local Civil Rules); *see also Dodson v. CBS Broad., Inc.*, No. 02 Civ. 9270 (KMW) (AJP), 2005 WL 3177723, at *1 (S.D.N.Y. Nov. 29, 2005) (motion that fails to comply with Local Civil Rule 37.2 is "procedurally defective").[7]

Plaintiffs chose to file their Motions without complying with Local Civil Rule 37.2 or even acknowledging the Rule's existence. By filing the Motions, plaintiffs made a tactical decision to proceed without prior notice to the Republic and to subvert the ordinary course of discovery proceedings in this Court. Perhaps plaintiffs filed the Motions to highlight this issue on the website they created to attack and demean the Republic, *see* "New Sanctions Filing by Creditors," Fact Check: Argentina, *available at* http://factcheckargentina.org/ (the filings "should provide a lot for President Kirchner and her lawyers at Cleary Gottlieb to think about"), but that is no basis for not complying with the rules. Plaintiffs' Motions should be denied.

## II.   THE SANCTIONS PLAINTIFFS SEEK VIOLATE THE FSIA

### A.   The FSIA Does Not Permit Sweeping, Aggregate Determinations Concerning The Republic's Property

Entering plaintiffs' proposed findings and determining, in advance and in the aggregate, that any Republic property plaintiffs may seek to attach is being used for a commercial purpose,

---

[7] The isolated instances in which courts have agreed to hear a motion filed in violation of Local Civil Rule 37.2 are easily distinguishable. For example, in *Trilegiant Corp. v. Sitel Corp.*, 272 F.R.D. 360, 367 (S.D.N.Y. 2010), prior to engaging in motion practice, the parties wrote a joint letter to the court, which the Magistrate Judge endorsed, updating the court on the status of the discovery disputes and seeking guidance as to scheduling.

*see* NML Br. at 2-3, would violate the Court's obligation under § 1610 to determine whether particular sovereign property is in fact immune from attachment under the FSIA.  *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 291 (2d Cir. 2011) ("§ 1610(c) . . . requires a prior judicial determination that the execution is warranted under one of the § 1610(a) or (b) exceptions and *with respect to specifically identified property*") (emphasis added); *Olympic Chartering, S.A. v. Ministry of Indus. & Trade of Jordan*, 134 F. Supp. 2d 528, 536 (S.D.N.Y. 2001) (holding that "since the plaintiff in the instant case has not identified any specific assets in its motion, the Court cannot adequately review the propriety of attaching the assets of the judgment-debtor" for purposes of satisfying § 1610(c)); *Trans Commodities, Inc. v. Kazakstan Trading House*, No. 96 Civ. 9782 (BSJ), 1997 WL 811474, at **1, 3 (S.D.N.Y. May 28, 1997) (vacating state court order authorizing creditor to "undertake any attachment and/or execution against any assets of Defendants as may be necessary to enforce the Judgment" because creditor "failed to obtain a court order specifically addressed to the attachment of funds at" issue); *see also Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 800 (7th Cir. 2011) ("Though not jurisdictional, the immunity conferred by § 1609 is similarly a default presumption, one that inheres in the property of the foreign state . . . where the plaintiff seeks to attach property of the foreign state *itself*, immunity is presumed and the court must find an exception—with or without an appearance by the foreign state—not as a jurisdictional matter but to give effect to the statutory scheme.") (emphasis in original); *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 594 (5th Cir. 2006) ("Prior to issuing a garnishment order, a district court must make factual findings that support application of the § 1610(a) exception to executional immunity during the situs snapshot for *each* form of property.") (emphasis in original); *Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1128 (9th Cir. 2010) ("In light of the special sensitivities implicated by executing against foreign state property, courts should

proceed carefully in enforcement actions against foreign states and consider the issue of immunity from execution *sua sponte*."). Thus, plaintiffs are wrong to demand that the Court treat as "established," NML Br. at 15, their proposed "facts" when they are in reality general assertions that plaintiffs seek to have the Court apply to all of the Republic's property that is, or in the future may be, in the United States, without regard to *any* specific factual dispute or claim.

Plaintiffs in fact acknowledge that courts may only impose sanctions under Rule 37 if they are "related to the particular 'claim' which was at issue in the order to provide discovery," NML Br. at 13 (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)). That same principle is apparent in the language of Rule 37 itself:  under Rule 37(b)(2)(A)(ii), a court may issue an order "prohibiting the disobedient party from supporting or opposing *designated claims* . . . ." Fed. R. Civ. P. 37(b)(2)(A)(ii) (emphasis added).  Similarly, under Rule 37(b)(2)(A)(i), a court may direct that "designated facts be taken as established *for purposes of the action*." Fed. R. Civ. P. 37(b)(2)(A)(i) (emphasis added).[8]

Plaintiffs suggest, without more, that their requests for sanctions meet this criterion because they are "related to the discovery that [the Republic] has refused to produce," NML Br. at 14, but plaintiffs' demands are not tethered to any "particular claim" – or even this particular action – and therefore violate well-settled limits on permissible discovery sanctions.  Instead, plaintiffs ask the Court for general sanctions unrelated to specific claims pending in the current actions and that, in fact, appear to extend beyond the current case to potential future actions.  For instance, plaintiffs ask the Court to "preclude [the Republic] from arguing that its property is not being used for a commercial activity in the United States *whenever NML relies on any of 28 U.S.C. § 1610(a)'s exceptions to immunity from attachment or execution*."  NML Br. at 13

---

[8] Discovery sanctions not explicitly limited to the action before the court are improper.  *See Gen. Ins. Co. of Am. v. E. Consol. Utilities, Inc.*, 126 F.3d 215, 221 (3d Cir. 1997) (court's Rule 37(b) factual findings were improper because they did not "in conformity with Rule 37(b)(2)(A), contain the limitation 'for the purposes of the action'").

(emphasis added).  Presumably, plaintiffs will continue seeking to attach property purportedly belonging to the Republic throughout the country.  And, when they do, they will no doubt try to apply any preclusion or finding entered in response to the Motions.  Plaintiffs do not cite any precedent in which courts have granted sweeping sanctions of this kind, that a movant could deploy whenever and wherever it chose to bring suit, and the Republic is aware of none.

### B.  Discovery Sanctions Are Not A Basis For Attaching Sovereign Property

Plaintiffs' proposed sanctions are also improper because they violate § 1609 of the FSIA, which "prescribes . . . [the] circumstances under which attachment and execution may be obtained against the property of foreign states to satisfy a judgment."  H.R. Rep. No. 94-1487, at 5 (1976), *reprinted in*, 1976 U.S.C.A.A.N. 6604, 6610-11.  Pursuant to 28 U.S.C. § 1609, discovery sanctions are not an independent basis for attaching, arresting, or executing upon sovereign property, which is immune absent a contrary international agreement or the application of one of the FSIA's specific, enumerated exceptions to immunity from attachment.  *Id*. Plaintiffs are thus not entitled to attach *any* of the Republic's property, let alone all of it, unless it is used for a commercial activity within the United States.  Plaintiffs' proposed sanctions, NML Br. at 2-3, are intended to permit them to attach property illegally without regard to its status under the FSIA, a result the FSIA proscribes.

Plaintiffs do not cite any case in which a court has used discovery sanctions as an end run around the FSIA's limitations on attachment and execution, and the Republic is aware of none. Instead, plaintiffs concede that their "factual findings touch on [the Republic's] potential immunities under the FSIA" but blithely conclude that this violation of the statute "is of no moment."  NML Br. at 15.  Plaintiffs cite one case for this premise, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), which held that a district court acting pursuant to Rule 37 could exercise personal jurisdictional over European insurance companies

that did not produce jurisdictional discovery.  In *Compagnie Des Bauxites*, the court made a

particular factual finding about defendants' contacts with the forum state, Pennsylvania, in

relation to the performance of particular contracts, which resulted in the "legal consequence" of

the court exercising personal jurisdiction over the sanctioned party.  *Id.*  Here, however, plaintiffs

are not seeking a particular factual finding with a certain "legal consequence," but rather blanket

sanctions that are at odds with the clear language of a federal statute.  *See Odhiambo v. Republic

of Kenya*, 764 F.3d 31, 42 (D.C. Cir. 2014) (enumeration of exemptions in the FSIA "confirms

that courts are not authorized to create additional exceptions") (quoting *Law v. Siegel*, 134 S. Ct.

1188, 1196 (2014)); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2561 (2011) ("the

Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive

right'" and class certification prevented defendant from raising "its statutory defenses").  Neither

*Compagnie Des Bauxites* nor any other case suggests that plaintiffs, because they have not

received every conceivable document from the Republic, are entitled to disregard the FSIA and

other governing law concerning determinations of immunity or alter ego status.

## III.   PLAINTIFFS CANNOT OBTAIN FACTUAL FINDINGS AFFECTING BCRA, ENARSA, AND YPF

Plaintiffs' second through seventh factual findings and requests for preclusion, NML Br.

at 2-3, are improper for the additional reason that they ask the Court to determine that the

property of *non-parties* is subject to attachment and execution.  It is well-settled law that

sanctions imposed against foreign sovereigns may not expose the assets of third parties, often

agencies or instrumentalities alleged – as here – to be the sovereign's alter egos, to the risk of

attachment or execution.  *Funnekotter v. Republic of Zimbabwe*, No. 09 Civ. 08168 (CM)

(THK), 2011 WL 5517860, at *3 (S.D.N.Y. Nov. 10, 2011) (refusing to conclude that non-

parties were alter egos of Zimbabwe, court found no decisions "supporting the idea that

Respondent's sanctionable behavior can be used as the basis for findings of fact against a third

party"); *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DCF), 2013 WL 3970823, at *6 (S.D.N.Y. Aug. 2, 2013) (denying request for sanctions that "adversely affect" non-party instrumentality "because they expose its assets to potential attachment"); *see also De Letelier v. Republic of Chile*, 748 F.2d 790, 795 n.2 (2d Cir. 1984) ("Rule 37 sanctions ensure that a party will not benefit from non-compliance with discovery orders. Yet, one party to litigation will not be subjected to those sanctions because of the failure of another to comply with discovery, absent a showing that the other party controlled the actions of the non-complying party.").

To the extent plaintiffs' Motions demand factual findings concerning the relationship between BCRA, YPF, ENARSA, and the Republic, they must therefore be denied.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO PRESUMPTIONS OR FINDINGS OF FACT THAT ARE UNREASONABLE AND UNSUPPORTED BY ANY EVIDENCE

Litigants are "not entitled to the benefit of unreasonable inferences, or inferences at war with undisputed facts." *County of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990) (citation omitted) (rejecting inference that contradicted "clear and undisputed" evidence in the record); *Piasecki v. Daughters of Jacob Nursing Home*, 808 F. Supp. 1136, 1142 (S.D.N.Y. 1992) (declining to adopt an inference that is "belied by circumstantial evidence and unsupported by fact or law"); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007) (district court imposing sanctions for noncompliance with discovery orders abused "its discretion if it based its ruling . . . on a clearly erroneous assessment of the evidence.") (citation omitted). Here, the record in this case and in other proceedings, and plaintiffs' own statements, directly contradict the findings plaintiffs ask the Court to make.

Plaintiffs have for years tried to attach and execute upon any property of the Republic in the United States, without regard for whether it was immune under the FSIA or even belonged to

the Republic.  This Court in response has correctly and consistently rejected as contrary to law plaintiffs' claims that various purported Argentine property is "used for a commercial activity in the United States," 28 U.S.C. § 1610(a).  *See, e.g.*, *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2012 WL 983564, at *1 (S.D.N.Y. Mar. 22, 2012) (vacating attachment of interest in U.S. patents, pending patent applications, and royalties generated by license agreements because they were not used for commercial activity in the United States); *NML Capital, Ltd. v. Republic of Argentina*, No. 03 Civ. 8845 (TPG), 2011 WL 1533072, at *6 (S.D.N.Y. Apr. 22, 2011) (vacating attachment of components beings assembled for Argentine aerospace corporation that were not "used for commercial activity within" the United States); *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG), 2010 WL 2925072, at *2 (S.D.N.Y. Jul. 23, 2010) (denying motion for turnover order and for order permitting levy on Republic's interest in trust bonds that were not property "in the United States of a foreign state") (internal quotation marks omitted).

So, too, has every other court to rule on plaintiffs' attempts to attach Republic property. *See, e.g.*, *NML Capital, Ltd. v. Banco Central De La República Argentina*, 652 F.3d 172, 196-97 (2d Cir. 2011) (rejecting NML's attempt to attach property of the central bank of Argentina, notwithstanding plaintiffs' alter ego claim); *Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120 (2d Cir. 2009) (vacating orders of attachment directed to Argentine social security funds not used for commercial activity in the United States); *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1127 (C.D. Cal. 2011) (rejecting NML's attempt to execute on satellite jointly launched by Argentine space agency, NASA, and other nations' space agencies).  Courts have thus already and repeatedly found that the Republic's property in the United States *is not* being used for a commercial activity in the United States.

An order entering plaintiffs' first proposed finding is improper because it would be in direct conflict with the decisions of this Court and others.[9]  *See Merle Norman Cosmetics v. Martin*, 705 F. Supp. 296, 298 (E.D. La. 1988) ("It is a principle of comity between federal district courts to avoid conflict with each other's purview.  It is designed to prevent inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes that require uniform results.").  For example, earlier this year, in *NML Capital, Ltd. v. Space Exploration Techs. Corp.*, No. 14 Civ. 2262 (SVW), 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015), the Central District of California held that the Republic's rights under a contract to launch satellites were not used for a commercial purpose.  That decision is currently on appeal before the Ninth Circuit.  *See NML Capital, Ltd. v. Space Exploration Tech. Corp.*, No. 15-55449.  Plaintiffs would no doubt like to use their proposed discovery sanction to contradict the California district court's ruling and otherwise seek an impermissible litigation advantage in that dispute which they have lost.  Similarly, plaintiffs' first proposed finding is also directly at odds with *NML Capital, Ltd. v. Republic of Argentina*, No. 04-00197 (CKK), 2005 U.S. Dist. LEXIS 47027 (D.D.C. Aug. 3, 2005), which held that the Republic's real property in Maryland and Washington, D.C. was *not*  being used for a commercial purpose.[10]  A finding that the Republic's property in the United States is being used for commercial purposes, which plaintiffs would no doubt use to try to attach this property for a

---

[9] Plaintiffs' proposed discovery sanctions are also barred under the law of the case doctrine, which "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008) (internal citation and quotation marks omitted).  "The doctrine is broad enough to encompass[] a lower court's adherence to . . . the rulings of another judge or court in . . . a closely related case."  *Ovadia v. Top Ten Jewelry Corp.*, No. 04 Civ. 2690, 2005 WL 1949970, at *1 (S.D.N.Y. Aug. 12, 2005) (internal quotations marks and alterations omitted).

[10] Plaintiffs' proposed finding also directly contradicts NML's concession that the majority of the Republic's properties in D.C. and Maryland were not properly subject to attachment.  *NML Capital, Ltd.*, 2005 U.S. Dist. LEXIS 47027, at *1 n.2 (Sixteen of NML's nineteen "attachments were withdrawn on account of the attached properties' diplomatic status" because "[u]nder the FSIA, properties that are part of a state's diplomatic mission are exempt from attachment.").

second time – or to attach clearly immune property owned by the Argentine embassy or consulates – is not appropriate under Rule 37, or indeed on any basis, and the Republic is not aware that any court has ever imposed a similar sanction.[11]

Plaintiffs' second through seventh proposed findings are similarly deficient.  As an initial matter, documents the Republic and third parties produced to plaintiffs in response to the Discovery Requests and other similar requests provide no support for the theory that ENARSA, YPF, and BCRA are alter egos of the Republic.  In fact, this Court has twice dismissed plaintiffs' complaints seeking to impose liability on ENARSA for the debts of the Republic.  *NML Capital, Ltd. v. Republic of Argentina*, 892 F. Supp. 2d 530, 533-34 (S.D.N.Y. 2012) (energy company ENARSA is not a "part of" the Republic or liable for its debts); *NML Capital, Ltd. v. Republic of Argentina*, No. 09 Civ. 7013 (TPG), 2011 WL 524433, at *8 (S.D.N.Y. Feb. 15, 2011) (ENARSA is not an alter ego of the Republic).  Likewise, the Northern District of California rejected NML's alter ego allegations concerning YPF and held that YPF was "a separate juridical entity."  *NML Capital, Ltd. v. Republic of Argentina*, C 12-80185 (JSW) (MEJ), 2013 WL 655211 (N.D. Cal. Feb. 21, 2013).  Finally, plaintiffs have twice tried and failed[12] to restrain and attach BCRA's assets.  *NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172 (2d Cir. 2011); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463 (2d Cir. 2007).  A third

---

[11] To the extent plaintiffs' proposed sanctions affect either the Republic's real property in Maryland and Washington, D.C. or the Republic's rights under its satellite launch contract, these sanctions are barred by collateral estoppel.  *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (collateral estoppel applies where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits").

[12] This Court, and the Second Circuit, reached their decisions after reviewing an extensive factual record, to which plaintiffs and BCRA stipulated.  *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 720 F. Supp. 2d 273, 289-92 (S.D.N.Y. 2010) ("The stipulation describes in detail the kinds of transactions that resulted in deposits in (credits to)" BCRA's account in the United States.); *NML Capital, Ltd. v. Banco Central de la República Argentina*, 652 F.3d 172, 177 & n.8 (2d Cir. 2011) ("By stipulation, the parties have provided a detailed account of the sources of . . . funds" held by BCRA in the United States.)  In addition, during the course of these proceedings, BCRA produced to plaintiffs a number of "transaction and accounting records."  *EM Ltd.*, 720 F. Supp. 2d at 299.  On the basis of this factual record, the Court concluded that "the Republic did not manage the day-to-day operations of BCRA."  *Id.*

action, *EM Ltd. v. Banco Central de la República Argentina*, No. 13-3821(L), in which NML seeks a declaratory judgment that BCRA is the Republic's alter ego for certain, limited purposes, is currently pending before the Second Circuit, which will decide whether NML's complaint is sufficient to survive a motion to dismiss.

The Motions should also be denied because plaintiffs' proposed findings contradict their own prior statements.  Plaintiffs have consistently argued in recent years that they are entitled to extraordinary equitable remedies, or to worldwide discovery, because the Republic *does not* have attachable, commercial property in the United States.  NML Brief at 18, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Jan. 14, 2011) (The Republic has "spirited its assets beyond this Court's reach."); NML Brief at 8, *NML Capital, Ltd. v. Republic of Argentina*, No. 11-4065(L) (2d Cir. Dec. 7, 2011) (the Republic has "spirited its assets outside the United States and elaborately structured its financial affairs to avoid attachment of its assets under the FSIA or the laws of foreign jurisdictions"); NML Brief at 5, *Republic of Argentina v. NML Capital, Ltd.*, No. 12-842 (Mar. 11, 2013) (same); NML Reply Brief at 4, *NML Capital, Ltd. v. Space Exploration Tech. Corp.*, No. 11 Civ. 3507 (C.D. Cal. May 2, 2011) (similar); NML Brief at 2, *NML Capital, Ltd. v. Space Exploration Tech. Corp.*, No. 11 Civ. 3507 (C.D. Cal. Apr. 25, 2011) ("Judgment creditors such as NML have been forced to pursue Argentina throughout the world in those countries which recognize U.S. judgments, or wait for Argentina to bring collectible assets into the United States and execute upon them."); NML Brief at 2, *NML Capital, Ltd. v. Space Exploration Tech. Corp.*, No. 11 Civ. 3507 (C.D. Cal. May 24, 2011) ("Argentina . . . has attempted to move its assets beyond the reach of U.S. courts.").  Courts, including the Supreme Court, have accepted plaintiffs' statements as true.  *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2258 (2014) (explaining that the Republic "apparently has no executable assets in the United States").  Plaintiffs are not now entitled, under the guise of

20

discovery sanctions, to findings that utterly contradict these statements and otherwise have no basis in any fact.

Finally, even if plaintiffs' proposed findings were not demonstrably inaccurate, they would still be improper because plaintiffs have failed to offer *any* evidence that the unproduced documents would support the sanctions they seek. *Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 195-96 (E.D.N.Y. 2010). Plaintiffs cite *Kronisch v. United States*, 150 F.3d 112 (2d Cir. 1998), for the premise that they need not show that the documents claimed to be missing would be favorable, but *Kronisch* actually stands for the proposition that the party seeking sanctions must produce at least "some evidence suggesting that a document or documents relevant to substantiating its claim would have been included among the destroyed [or withheld] files." *Id.* at 128; *see also id.* at 127 ("before we permit the drawing of an adverse inference, we require some showing indicating that the destroyed evidence would have been relevant to the contested issue."). That is because "assuming that a party has intentionally destroyed evidence that it had an obligation to preserve is not the end of the story;" before a court can impose sanctions it must consider "the probable content of the non-produced evidence." *Id.* at 127-28; *see also Thai Lao Lignite (Thailand) Co.*, 2013 WL 3970823, at *6 (denying request for adverse factual designations where movants "failed to show that the evidence Respondent has not produced is relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense") (internal quotation marks omitted).

Here, plaintiffs have offered no proof that the Republic failed to produce documents showing either assets used for a commercial activity in the United States or an alter ego relationship with BCRA, ENARSA, or YPF. Nor would plaintiffs' failure to do so be surprising even if their proposed findings were not demonstrably inaccurate. Plaintiffs are professional litigants (and debt collectors) with billions of dollars under management and an army of lawyers,

lobbyists, and investigators on payroll.  If attachable property existed, plaintiffs would have attached it years ago.[13]

## V.    PLAINTIFFS' OTHER SANCTIONS DEMANDS SHOULD BE DENIED

### A.    Plaintiffs Are Not Entitled To A Waiver Of The Republic's Privileges

Plaintiffs' demand for a comprehensive waiver of "any privilege Argentina may have had over documents and information responsive to [plaintiffs'] discovery request[s]" is improper. Plaintiffs ask the Court to waive "all of Argentina's privileges against discovery," including the "grace and comity" afforded to the Republic, which is in fact not a "privilege" but a recognition of the Republic's sovereign status.  NML Br. at 17, 21-22.  The Court should decline plaintiffs' unprecedented request, particularly because their demand for a comprehensive waiver is based on a misreading of the Second Circuit's opinion affirming the Court's Discovery Order.  In affirming this Court's decision, the Court of Appeals stressed that the Republic "is entitled to a degree of grace and comity," and urged the Court and the parties to closely consider the Republic's "sovereign interests in managing discovery."  *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16, 18 (2d Cir. 2014).  This reference to the grace and comity owed to sovereigns was not an invitation to plaintiffs to argue that it has been "waived."

Plaintiffs' contention, conjured out of thin air, that the Republic has waived attorney-client privilege is, if anything, even more troubling, as it is the latest in a series of attempts to deprive the Republic of legal representation. *See, e.g.*, NML Subpoena Duces Tecum to Tannenbaum Helpern Syracuse & Hirschtritt LLP, May 7, 2015 (Ex. F) (requesting *inter alia* "all Documents Concerning Argentina's authorization or approval of [the firm's] retention," all

---

[13] Plaintiffs' proposed sanctions are, for each of the reasons discussed above, improper and should be denied.  Even if the Court were to consider sanctioning the Republic, plaintiffs would be (at most), consistent with the Court's prior practice, entitled to seek an adverse inference as to particular property actually at issue, rather than a preclusion or a finding of fact.  *See* Order, *Aurelius Capital Partners LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. May 29, 2009); *see also* Letter from C. Boccuzzi to Judge Griesa, *Aurelius Capital Partners, LP v. Republic of Argentina*, No. 07 Civ. 2715 (TPG) (S.D.N.Y. May 29, 2009) (Ex. R).

communications with two other law firms that represent the Republic, "All Documents Concerning Cleary's provision of legal services to [the Republic]," and "All Documents Concerning [legal] advice [given to the Republic by the firm]"); NML Subpoena Duces Tecum to Bleichmar Fonti Tountas & Auld LLP, May 7, 2015 (Ex. G) (same); *see also* Letter from J. Stecher to D. O'Gorman (May 28, 2015) (May 28, 2015) (Ex. E) (Plaintiffs have demanded "virtually every document created by [the law firms], or received by [them], in connection with [their] representation of the Republic, as if the privileges regularly attendant to the attorney-client relationship did not exist."); Letter from S. Tountas to D. O'Gorman (May 28, 2015) (Ex. D) (similar). This Court should not endorse tactics designed to harass the Republic and its counsel and to deprive the Republic of legal representation. Plaintiffs' demand for a waiver of all "privileges" should accordingly be denied.

### B.     Plaintiffs Are Not Entitled To Expenses

Plaintiffs' request for attorneys' fees and other expenses associated with making these procedurally-improper Motions should be denied out of hand. Plaintiffs made the tactical choice to file the Motions in contravention of Local Civil Rule 37.2, which exists precisely to avoid wasteful motion practice of this kind. Having chosen to engage in proscribed motion practice, plaintiffs cannot now complain of the cost of doing so. Awarding expenses to plaintiffs under these circumstances would be manifestly "unjust." Fed. R. Civ. P. 37(b)(2)(C); *Time Inc. v. Simpson*, No. 02 Civ. 4917 (JCF), 2002 WL 31844914, at *2 (S.D.N.Y. Dec. 18, 2002) (By failing to comply with Local Civil Rule 37.2, movant has "foregone the opportunity to narrow the issues and reduce the costs of litigation. Therefore, it shall be precluded from recovering any of the costs, including attorneys' fees, to which it might otherwise have been entitled").[14]

---

[14] To the extent plaintiffs' request for expenses "incurred in [their] effort to bring [the Republic] into compliance with the Discovery Order," NML Br. at 18, is intended to encompass anything other than the cost of the Motions, it is barred by the plain language of Rule 37(b). Fed. R. Civ. P. 37(b)(2)(A), (C).

Even if plaintiffs had not flouted the procedural rules, they would not be entitled to expenses from the Republic or from its counsel.  *First*, precedent in this district concerning sanctions against sovereigns does not support plaintiffs' demands for attorneys' fees from the Republic.  *See Funnekotter*, 2011 WL 5517860, at *3 (denying request to impose monetary sanctions on Zimbabwe); *FG Hemisphere Assocs., L.L.C. v. Republique Du Congo*, No. 01 Civ. 8700 (SAS) (HBP), 2005 WL 545218, at *7 (S.D.N.Y. Mar. 8, 2005) (declining to impose sanctions against the Congo for violating a discovery order); *see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, No. 94 Civ. 1942 (DC), 1995 WL 686715, at *10 (S.D.N.Y. Nov. 17, 1995) (declining to award attorneys' fees against the Emirate of Abu Dhabi), *order clarified*, No. 94 Civ. 1942 (KMW), 1995 WL 758767 (S.D.N.Y. Dec. 21, 1995); *Exp.-Imp. Bank of Republic of China v. Grenada*, No. 06 Civ. 2469, 2010 WL 5463876, at *5 (S.D.N.Y. Dec. 29, 2010) (declining to award attorneys' fees against Grenada).

*Second*, plaintiffs do not allege any conduct by the Republic's counsel that warrants sanctions, nor could they.  The cases plaintiffs cite are thus all inapposite to the pending Motions.  *Burgie v. Euro Brokers, Inc.*, No. 05 Civ. 968, 2006 WL 845400, at *17 (E.D.N.Y. Mar. 30, 2006), *aff'd*, No. 05 Civ. 0968, 2007 WL 1704178 (E.D.N.Y. June 12, 2007) (sanctioned counsel who engaged in misconduct including failure to serve discovery papers and missing multiple show cause deadlines); *Chesa Int'l, Ltd. v. Fashion Assocs., Inc.*, 425 F. Supp. 234, 237-38 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1977) (sanctioning counsel based on a judicial finding that he personally "contributed significantly" to a "pattern of delay and defiance");  *FDIC v. Connor*, 20 F.3d 1376, 1382-83 (5th Cir. 1994) (sanctioned counsel who violated a court order defining the required substance and format of interrogatory responses). Because the only attorney misconduct before the Court is plaintiffs' counsels' violation of Local Civil Rule 37.2, plaintiffs' request for sanctions against the Republic's counsel should be denied.

24

**CONCLUSION**

For the foregoing reasons, plaintiffs' motions for discovery sanctions should be denied.

Dated: New York, New York
July 17, 2015

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____/s/ Jonathan Blackman_____
    Jonathan I. Blackman (jblackman@cgsh.com)
    Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

One Liberty Plaza
New York, New York 10006
(212) 225-2000
Attorneys for the Republic of Argentina

Of Counsel:

Jacob H. Johnston
Elizabeth M. Hanly